IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

|  |  |
|---|---|
| CODE REVISION COMMISSION on Behalf of and For the Benefit of the GENERAL ASSEMBLY OF GEORGIA, and the STATE OF GEORGIA,<br><br>Plaintiff,<br><br>v.<br><br>PUBLIC.RESOURCE.ORG, INC.,<br><br>Defendant. | CIVIL ACTION NO. 1:15-cv-2594-MHC<br><br>**JURY TRIAL DEMANDED** |

## ANSWER AND COUNTERCLAIM OF DEFENDANT PUBLIC.RESOURCE.ORG, INC.

Defendant Public.Resource.Org, Inc. ("Public Resource") responds to the Complaint as follows:

## NATURE OF THIS ACTION

1.    Public Resource admits that this action arises from its copying and distribution of the Official Code of Georgia Annotated ("O.C.G.A.") through the distribution of thumb drives containing copies of the O.C.G.A. and the posting of the O.C.G.A. on two websites.  Public Resource denies that the Plaintiff holds any valid copyright in the O.C.G.A., including its annotations, and therefore denies that

Public Resource – or anyone – requires authorization to copy it.  Public Resource admits that it has facilitated, enabled, encouraged and induced others to view, download, print, copy and distribute the O.C.G.A. without limitation or compensation.  Public Resource admits that it has also created works containing the O.C.G.A.  All other allegations of paragraph 1 are denied.

2.     Public Resource lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in the first sentence in paragraph 2, and therefore denies them.  Public Resource admits that the annotations to the O.C.G.A. include synopses of cases that interpret the O.C.G.A., summaries of Opinions of the Attorney General of Georgia and summaries of research references related to the O.C.G.A.  Public Resource denies the remaining allegations of paragraph 2.

## JURISDICTION AND VENUE

3.     Public Resource admits the allegations of paragraph 3.

4.     Public Resource admits the allegations of paragraph 4.

5.     Public Resource admits that this Court has personal jurisdiction over it.  Public Resource admits doing the acts alleged in paragraph 5 but denies that Plaintiff owns a valid copyright in the annotations, and further denies that Public Resource has infringed any copyright held by the State of Georgia.

6.     Public Resource admits that venue is proper in this Court pursuant to 28 U.S.C. §§ 1391 and 1400.

## PARTIES

7.     Public Resource admits that the Georgia General Assembly enacts laws on behalf of the State of Georgia.  As to the remainder of the allegations in paragraph 7, Public Resource lacks knowledge or information sufficient to form a belief as to their truth or falsity, and therefore denies them.

8.     Public Resource admits the allegation in paragraph 8.

## ALLEGATIONS COMMON TO ALL CLAIMS FOR RELIEF

### Plaintiffs and Their Infringed Copyrighted Works

9.     Public Resource admits the allegations in the first two sentences of paragraph 9.  Public Resource lacks knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations in paragraph 9 and therefore denies them.

10.     Public Resource lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in paragraph 10 and therefore denies them.

LEGAL02/35827060v1

11.    Public Resource lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in paragraph 11 and therefore denies them.

12.    Public Resource lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in paragraph 12 and therefore denies them.

13.    Public Resource denies that judicial summaries, notes and other components of the O.C.G.A. are protected by copyright or otherwise owned by the State of Georgia, and thus denies that Plaintiff's "Copyrighted Annotations" is an accurate description of what was copied and distributed.  Public Resource lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in the second sentence of paragraph 13 and therefore denies them. Public Resource denies the allegations in the third sentence of paragraph 13, all of which are legal conclusions to which no response is legally required.  Public Resource lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in the fourth sentence of paragraph 13 and therefore denies them.

14.    Public Resource admits that Plaintiff does not assert copyright in the O.C.G.A. statutory text itself because the laws of Georgia are and should be free to

4

the public.  Public Resource lacks sufficient information to admit or deny the

remaining allegations in paragraph 14 and therefore denies them.

### Defendant's Copying and Distribution of Plaintiffs' Copyrighted Annotations

15.     Public Resource admits it has copied at least 140 different

volumes/supplements containing the O.C.G.A. and that each of these works has

been posted by it on at least one of its websites and is available to the public for

downloading, viewing and printing, and that the electronic nature of these

documents and their availability on the Internet, magnifies the ease and speed with

which they may be copied and distributed to others.  Public Resource denies that

judicial summaries, notes and other components of the O.C.G.A. are protected by a

copyright owned by the State of Georgia, and thus denies that "Plaintiff's

Copyrighted Annotations" is an accurate description of what was copied and

distributed.

16.     Public Resource admits that it has copied the O.C.G.A. prior to

posting it on its website. Public Resource denies that judicial summaries, notes and

other components of the O.C.G.A. are protected by a copyright owned by the State

of Georgia, and thus denies that "Plaintiff's Copyrighted Annotations" is an

accurate description of what was copied and distributed. Public Resource denies

the remaining allegations in paragraph 16.

17.     Public Resource admits that it has distributed/uploaded the entire O.C.G.A. to the website www.archive.org ("Internet Archive website").  Public Resource denies that judicial summaries, notes and other components of the O.C.G.A. are protected by a copyright owned by the State of Georgia, and thus denies that "Plaintiff's Copyrighted Annotations" is an accurate description of what was copied and distributed.  Public Resource admits that it has labeled all the works with the "CCO 1.0 Universal license" which indicates that members of the public may "copy, modify, distribute and perform the work."  Public Resource admits that individual volumes of the O.C.G.A. have been viewed or downloaded on the Internet Archive website thousands of times. Public Resource denies the remaining allegations in paragraph 17.

18.     Public Resource admits that in January of 2014, Carl Malamud, its founder and president, testified before the U.S. House of Representatives, House Judiciary Committee, to advance an amendment to the U.S. Copyright Act making state and local official legal documents uncopyrightable for reasons of public policy.  Public Resource admits that no such amendment has been adopted by Congress.  Public Resource admits that Carl Malamud has not been nominated for the office of United States Public Printer.  Public Resource denies the remaining allegations of paragraph 18.

LEGAL02/35827060v1

19.     Public Resource admits that Carl Malamud, its founder and president, made the statements attributed to him in Exhibit 2, an article published in Columbia Journalism Review.  Public Resource denies that judicial summaries, notes and other components of the O.C.G.A. are protected by a copyright owned by the State of Georgia, and thus denies that "Plaintiff's Copyrighted Annotations" is an accurate description of what was copied and distributed.  Public Resource denies the remaining allegations of paragraph 19.

20.     Public Resource admits to the copying and distribution of the entire O.C.G.A. on its website at htpps://law.resource.org. Public Resource vehemently denies the bizarre, defamatory and gratuitous allegation that it has a "strategy of terrorism."  Public Resource denies that judicial summaries, notes and other components of the O.C.G.A. are protected by a copyright owned by the State of Georgia, and thus denies that "Plaintiff's Copyrighted Annotations" is an accurate description of what was copied and distributed.  Public Resource admits that it posted on its website and delivered to Plaintiff a Proclamation of Promulgation stating that its deliberate copying and distribution of the O.C.G.A. would be greatly expanded in 2014.  Public Resource admits that it instituted a public funding campaign on the website www.indiegogo.com to support its continued

copying and distribution of the O.C.G.A. and raised approximately $3000.00. Public Resource denies the remaining allegations of paragraph 20.

21.     Public Resource denies that judicial summaries, notes and other components of the O.C.G.A. published by the Georgia Code Revision Commission are protected by a copyright owned by the State of Georgia, and thus denies that "Plaintiff's Copyrighted Annotations" is an accurate description of what was copied and distributed.  Public Resource otherwise admits the remaining allegations in paragraph 21.

22.     Public Resource denies that judicial summaries, notes and other components of the O.C.G.A. are protected by a copyright owned by the State of Georgia, and thus denies that "Plaintiff's Copyrighted Annotations" is an accurate description of what was copied and distributed. Public Resource otherwise admits the remaining allegations in paragraph 22.

23.     Public Resource denies that judicial summaries, notes and other components of the O.C.G.A. are protected by a copyright owned by the State of Georgia, and thus denies that "Plaintiff's Copyrighted Annotations" is an accurate description of what was copied and distributed.   Public Resource otherwise admits the remaining allegations in paragraph 23.

## CLAIMS FOR RELIEF

8

## FIRST CLAIM

24.     Public Resource's responses to paragraphs 1 through 23 above are incorporated by reference as if set forth fully in this paragraph.

25.     Public Resource denies the allegations in paragraph 25.

26.     Public Resource denies the allegations in paragraph 26.

27.     Public Resource denies the allegations in paragraph 27.

28.     Public Resource denies the allegations in paragraph 28.

29.     Public Resource denies the allegations in paragraph 29.

## SECOND CLAIM

30.     Public Resources responses to paragraphs 1 through 23 above are incorporated by reference as if set forth fully in this paragraph.

31.     Public Resource denies the allegations in paragraph 31.

32.     Public Resource denies the allegations in paragraph 32.

33.     Public Resource denies the allegations in paragraph 33.

34.     Public Resource denies the allegations in paragraph 34.

35.     Public Resource denies the allegations in paragraph 35.

LEGAL02/35827060v1

## AFFIRMATIVE DEFENSES

### FIRST AFFIRMATIVE DEFENSE

The complaint and each cause of action alleged fails to allege facts sufficient to state a cause of action.

### SECOND AFFIRMATIVE DEFENSE

Plaintiff has no copyrights in works that government entities have enacted as law.  The O.C.G.A. including annotations, regardless of how they were authored, is the law of Georgia, and the law should be free to the public.  As such, the O.C.G.A. is not copyrightable subject matter and is in the public domain.

### THIRD AFFIRMATIVE DEFENSE

Lack of ownership of the asserted copyrights bars Plaintiff's copyright infringement claims.

### FOURTH AFFIRMATIVE DEFENSE

The fair use doctrine bars Plaintiff's claims.

### FIFTH AFFIRMATIVE DEFENSE

Plaintiff's failure obtain a registration from the U.S. Copyright Office for the allegedly infringed material prior to filing suit bars Plaintiff's claims.

### SIXTH AFFIRMATIVE DEFENSE

Failure to comply with formalities required under the Copyright Act bars Plaintiff's claims.

LEGAL02/35827060v1

## SEVENTH AFFIRMATIVE DEFENSE

The doctrine of copyright misuse bars Plaintiff's claims.

## EIGHTH AFFIRMATIVE DEFENSE

The equitable doctrine of waiver bars Plaintiff's claims.

## NINTH AFFIRMATIVE DEFENSE

Lack of irreparable injury bars Plaintiff's demand for an injunction.

## TENTH AFFIRMATIVE DEFENSE

An injunction would be inimical to the public interest, and thus the public interest bars Plaintiff's demand for an injunction.

LEGAL02/35827060v1

## COUNTERCLAIM FOR DECLARATORY RELIEF

Public Resource.Org, Inc. ("Public Resource") alleges the following against Plaintiff-Counterclaim Defendant Code Revision Commission:

## NATURE OF THE ACTION

1.      Public Resource seeks a declaratory judgment that its copying and distributing the text of the Official Code of Georgia Annotated "(O.C.G.A.") do not infringe any copyright because laws enacted by government entities such as the State of Georgia Legislature are not copyrightable subject matter and are in the public domain.

## THE PARTIES

2.      Public Resource is a California nonprofit corporation with its principal place of business at 1005 Gravenstein Highway North, Sebastopol, California 95472.  Its mission is to improve public access to government records and the law.

3.      As part of its mission to protect and promote the right of the public to know and speak the laws that govern it, Public Resource has undertaken to make certain edicts of government widely available to the public on a noncommercial basis.

LEGAL02/35827060v1

4.     Counterclaim-defendant Georgia Code Revision Commission purports to act on behalf of and for the benefit of the General Assembly of Georgia and the State of Georgia.

## JURISDICTION AND VENUE

5.     This Court has subject matter jurisdiction over the counterclaim pursuant to 17 U.S.C. § 101 et seq (the Copyright Act); 28 U.S.C. § 1331 (federal question); 28 U.S.C. § 1338(a) (exclusive federal copyright jurisdiction); and 28 U.S.C. § 2201 (the Declaratory Judgment Act).

6.     This Court has personal jurisdiction over the Code Revision Commission because the Commission resides, may be found in, or transacts business in this District.

7.     This Court also has personal jurisdiction over the Code Revision Commission because it submitted to jurisdiction for purposes of this Counterclaim by filing the underlying suit against Public Resource in this District.

8.     To the extent that Code Revision Commission had sovereign immunity against suit as an arm of the State of Georgia, it waived such immunity by filing the underlying suit against Public Resource in this District.

9.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 because the Commission may be found in this District and transacts business in this District

LEGAL02/35827060v1

and because a substantial part of the events giving rise to this counterclaim, including the filing of the underlying lawsuit, occurred in this District.

## FACTS

10.     Carl Malamud founded Public Resource in 2007 and serves as its president.  While the Code Revision Commission falsely (and offensively) alleges that he practices a "strategy of terrorism," Mr. Malamud is recognized by government officials and others for his advocacy, over thirty years, for public access to sources of law and for privacy rights.  Among his notable successes was helping to persuade the Securities and Exchange Commission to make EDGAR, its database of corporate filings, available to the public free of charge.

11.     In 1992, Mr. Malamud played a leadership role in the deliberations of the Internet Engineering Task Force ("IETF") on questions of governance of the Internet Standards process.  In 2004, he served as a consultant to the IETF and the Internet Architecture Board on questions of strategic direction and governance.  He is the author or co-author of six Requests for Comments ("RFCs") and several Internet-Drafts, technical memoranda on Internet architecture published by the IETF.  The IETF has designated some of his RFCs as Internet Standards and two more as Proposed Standards.

14

12.     Mr. Malamud has also served as the Founding Chairman of the Board of Directors of the Internet Systems Consortium and the Internet Multicasting Service.  The non-profit Internet Systems Consortium operates a key piece of Internet infrastructure, the "F" root Domain Name Server and is responsible for producing the open source software "BIND," which is considered the standard Domain Name Server software.  The non-profit Internet Multicasting Service operated the first radio station on the Internet, was responsible for placing the SEC EDGAR and US Patent databases on the Internet for the first time, and ran the Internet 1996 World Exposition, a world's fair for the Internet which received the endorsement of 12 heads of state including Presidents Clinton and Yeltsin and participation from 70 countries.  Mr. Malamud's book on the Internet 1996 World Exposition was published by MIT Press in 1997 and included a foreword from His Holiness, the Dalai Lama.

13.     In a letter dated July 16, 2008, the Judicial Conference of the United States recognized Mr. Malamud's work on the subject of privacy violations in the dockets of the U.S. District Courts.  A copy of this letter is attached as Exhibit A and also may be viewed at https://public.resource.org/scribd/7512576.pdf. Also in 2008, he advised the Federal Trade Commission and the Office of the Inspector General, U.S. Department of Defense, on the appearance of Social Security

Numbers in the Congressional Record and private databases.  Also in 2008, he served as an advisor to the Presidential Transition Team on Federal Register issues, an effort that led to fundamental changes in the mechanics of distribution of the Official Journals of Government.

14.     In 2009, Carl Malamud was considered by the Office of Presidential Personnel for the position of Public Printer of the United States.

15.     On December 16, 2009, Mr. Malamud testified before the U.S. House of Representatives Oversight Committee in a hearing about the strategic direction of the National Archives and Records Administration, the parent entity of the Office of the Federal Register.   Mr. Malamud's testimony may be viewed at http://www.archives.gov/era/acera/pdf/malamud-testimony.pdf.

16.     In 2007 and 2011, Mr. Malamud submitted reports to the Speaker of the U.S. House of Representatives about the accessibility and preservation of video used in Congressional hearings.  On January 5, 2011, the Speaker of the House publicly thanked him for those efforts.  Speaker Boehner's letter to Mr. Malamud is attached as Exhibit B and also may be viewed at https://law.resource.org/rfcs/gov.house.20110105.pdf.  At Speaker Boehner's request, Mr. Malamud worked with Chairman Darrell Issa of the Committee on Oversight and Government Reform and placed online over 14,000 hours of video

16

from Congressional hearings that had not been previously available.  Mr. Malamud also worked with the Committee staff to add closed-captioning to House Oversight hearings, the first time congressional hearings were available for people with hearing impairments.

17.    From 2008 to 2015, Public Resource processed over 8 million Form 990 reports of Exempt Organizations it purchased from the Internal Revenue Service and made these reports available on the Internet.  Public Resource identified a large number of privacy violations, such as Social Security Numbers, in these forms. Public Resource's effort resulted in a change in the Internal Revenue Manual to allow the IRS to better redact and protect personal information released by the government.  Public Resource also successfully brought an action under the Freedom of Information Act to compel release of machine-processable (e-filed) versions of Exempt Organization returns, an effort that led to a 2015 decision by the IRS that this information will be released in bulk starting in 2016. The action was docket 3:13-cv-02789 in the Northern District of California before the Hon. William H. Orrick.

18.    On December 12, 2012, Mr. Malamud was appointed as a member of the Administrative Conference of the United States, a federal agency that "promotes improvements in the efficiency, adequacy, and fairness of the

17

procedures by which federal agencies conduct regulatory programs, administer grants and benefits, and perform related governmental functions." Mr. Malamud was a member of the committee that held hearings and drafted ACUS Recommendation 2011-5, "Incorporation by Reference." Mr. Malamud also was one of the signatories of a petition to the Office of the Federal Register that led to a rulemaking procedure that was initiated in 78 Federal Register 60784 and Federal Docket OFR-2010-0001. This led to a change in the procedures specified by incorporation by reference in 1 CFR Part 51 in a final rule that was published November 7, 2014, in 79 FR 66267.

19.    On January 14, 2014, Mr. Malamud testified before the U.S. House of Representatives Judiciary Committee on the Scope of Copyright Protection and submitted a petition from 115 law professors and librarians that proposed the following amendment to the Copyright Act to reinforce longstanding public policy and judicial opinions making state and local official legal documents uncopyrightable for reasons of public policy:

> Edicts of government, such as judicial opinions, administrative rulings, legislative enactments, public ordinances, and similar official legal documents are not copyrightable for reasons of public policy. This applies to such works whether they are Federal, State, or local as well as to those of foreign governments.

18

20.     This language comes directly from Section 206.01, Compendium of Office Practices II, U.S. Copyright Office (1984). It reflects clear and established Supreme Court precedent on the matter in cases such as *Wheaton v. Peters*, 33 U.S. (8 Pet.) 591 (1834) and *Banks v. Manchester*, 128 U.S. 244 (1888). The law belongs to the people, who should be free to read, know, and speak the laws by which they choose to govern themselves.

21.     To accomplish its mission, Public Resource acquires copies of government records, including legal decisions, tax filings, statutes and regulations, and posts them online in easily accessible formats that make them more useful to readers, entirely free of charge.

22.     Public Resource operates the websites public.resource.org, law.resource.org, house.resource.org, bulk.resource.org, yeswecan.org and others.

23.     Public Resource also operates a program that helps the public access over 6,000 U.S. Government-produced videos (such as training and historical films), called FedFlix, which Public Resource originally developed in a joint venture with the National Technical Information Service and subsequently in cooperation with the Archivist of the United States.  FedFlix content has been viewed on YouTube.com more than thirty-eight million times, and all the content

is also available on the Internet Archive.  The YouTube channel may be found at https://www.youtube.com/user/PublicResourceOrg.

24.     Public Resource reformats some of the laws it posts, in order to make them easier to find, more useful and more accessible to the public.

25.     This reformatting includes putting some codes into standard Hypertext Markup Language (HTML), converting graphics into the standard Scalable Vector Graphics (SVG) format, and converting mathematical formulas into the standard Mathematical Markup (MathML) language, all of which are open standards supported by modern web browsers

26.     These steps make the codes, including the diagrams and formulae they contain, viewable with many kinds of computer hardware and software, more accessible to people with disabilities, and easier to translate and annotate.

27.     Public Resource applies rigorous quality control and proofreading when it reformats codes, including the O.C.G.A. at issue in this case.

28.     The growth of the Internet provides a tremendous opportunity for government to inform its citizens in a broad and timely manner about the laws they must follow in carrying out their daily activities.  It also allows business enterprises, university professors and students, non-profits and citizens to better organize and use this information.

29.     Public Resource maintains an agent, registered with the U.S. Copyright Office, to receive notifications of claims of copyright infringement, pursuant to the Digital Millennium Copyright Act, 17 U.S.C. § 512(c)(2).  Public Resource provides contact information for that agent at https://public.resource.org/copyright_policy.html.

30.     Public Resource does not sell any copies of the laws to which it provides access or charge money for such access.

31.     Like many charities, Public Resource offers for sale items bearing its logo, such as stickers, T-shirts and books by its founder.  Total revenue from sales of these products since Public Resource's founding has amounted to less than $100.  Other than sales of such items, all of Public Resource's funding comes from charitable donations.  No text or links soliciting donations appear on pages where codes or laws are displayed within Public Resource's websites.

32.     The State of Georgia enacts and promulgates the laws of the state through its legislature.  The state laws are provided in Code sections.  Periodically, the Georgia General Assembly ("Legislature") revises, modifies and amends its laws through supplemental laws and amendments.  Every single bill introduced in the Georgia Legislature begins with the incantation in the form: "An Act … To amend Article [3] of Chapter [11] of Title [16] of the Official Code of Georgia

Annotated." (Numbering of bill relating to invasions of privacy supplied as an example). http://www.legis.ga.gov/Legislation/20072008/69691.pdf

33.     The Legislature is assisted by Plaintiff-Counterclaim Defendant in publishing the Georgia state laws. Plaintiff-Counterclaim Defendant does not assert copyright in the O.C.G.A. statutory text because it recognizes that the laws of Georgia are not copyrightable subject matter and should be free to the public.

34.     Plaintiff-Counterclaim Defendant, however, claims copyright and asserts copyright in additions to the statutory text in the O.C.G.A, allegedly made by Matthew Bender and Company, a member of the LexisNexis Group ("Lexis/Nexis"), a division of Reed Elsevier Properties, Inc. These include single-paragraph summaries of judicial decisions interpreting sections of the Code, which are derivative works of the judicial decisions themselves, which are not copyrightable subject matter. They also include "notes and other original and creative works added," allegedly by LexisNexis, "to the Georgia statutory text." They include summaries of Opinions of the Attorney General of Georgia and summaries of research references related to the O.C.G.A., cross references, Editor's notes, and Code Commission Notes. The annotations include notice that "The Official Code publication controls over unofficial compilations" and that "[a]ttorneys who cite unofficial publications …do so at their peril." O.C.G.A.

Annotations 1-1-1 and 1-1-10 are attached as Exhibits C and D and can also be viewed at line at https://archive.org/stream/govlawgacode20003#page/2/mode/2up.

35.     Plaintiff-Counterclaim Defendant has alleged that the Code Publishing Contract between LexisNexis and the State of Georgia requires that LexisNexis publish on the Internet, free of charge, the statutory text of the O.C.G.A., and that these "free" Code publications are accessible.

36.     To access the O.C.G.A. via the website link found on the State of Georgia website, www.legis.ga.gov, one must accept the terms of use for the LexisNexis site that govern use of all areas of LexisNexis, ("LexisNexis Terms of Use") even though the Georgia site states that the terms and conditions do not apply to the statutory text and numbering. These terms and conditions are complicated and onerous.  For example, paragraph 22 of the LexisNexis Terms of Use states "Governing Law and Jurisdiction.  The Terms of Use are governed by and construed in accordance with the laws of the State of New York and any action arising out of or relating to these terms shall be filed only in state or federal courts located in New York and you hereby consent to and submit to the personal jurisdiction of such courts for the purpose of litigating any such action."  The LexisNexis Terms of Use also purport to prohibit "public or nonprofit use."  A copy of these terms of use is attached as Exhibit E.

37.     The Georgia Code available "free" on the LexisNexis site does not contain the Annotations, such as the Judicial Summaries, Code Revision Commission Notes, and Attorney General Opinions, and therefore, by definition, is not the "Official" Code of Georgia.

38.     Until at least May 28, 2014, the notice displayed before users could access the "free" online publication included a banner page that the user had to acknowledge before access was granted.  That banner page noted clearly that only the "latest print version of the O.C.G.A. is the authoritative version."  A true copy of this banner page is provided as Exhibit F and can be viewed at:https://web.archive.org/web20140528092032/http://www.lexisnexis.com/hottopics/gacode/layout.htm].

39.     A marketing page for the print version of the O.C.G.A. stresses that the print version is the only official version of the Official Code of Georgia Annotated.  The word "Official" is emphasized throughout this marketing page, including boldface and underlining.  A true copy of this page is provided as Exhibit G and can also be viewed at:

http://www.lexisnexis.com/store/catalog/booktemplate/productdetail.jsp?catId=prod15710352&prodId=6647]

40.     In addition to onerous terms of use and lack of content, the website which the State of Georgia offers as the only place citizens can and should view the O.C.G.A. on the Internet suffers from numerous technical deficiencies.  For example, it is impossible to "bookmark" a section of the code, requiring a user to navigate through each of the volumes, sections and subsections by clicking little boxes before being able to view a relevant paragraph of text.  The lack of a bookmark and the terms of use prohibition against copying means that a citizen cannot readily communicate a section of the code to another citizen.  The system also suffers from numerous technical and security errors in the HTML and other underlying code, meaning that the pages will display differently or not at all on different kinds of web browsers. Finally, the site is highly inaccessible to those that are visually impaired.

## COUNT I

[Declaratory Relief Pursuant to 28 U.S.C. § 2201, et seq. (Declaratory Judgment Act) and the Copyright Act (U.S.C. Title 17)].

41.     Public Resource incorporates by reference the allegations in each of the preceding paragraphs as if fully set forth in this paragraph.

42.     The people are the authors of the law, regardless of who first pens the words that later become law through enactment by a legislature or public agency.

43.    The principle that the law must be public and available to citizens to read and speak has its roots in the concept of the rule of law itself.

44.    The legal principle that ignorance of the law is no defense presumes that all citizens have access to the law.

45.    The First, Fifth and Fourteenth Amendments to the Constitution require that all people have the power to read, speak and disseminate the law.

46.    Laws and regulations are in the public domain and not subject to copyright.

47.    Law and regulations do not lose their public domain status and become subject to copyright because they were drafted by a private party as "works for hire."

48.    Laws and regulations do not lose their public domain status and become subject to copyright because they incorporate material that private parties have drafted or prepared.

49.    There is only one way to express a particular law fully and authoritatively, namely with explicit reference to any matters that the law incorporates into itself.

LEGAL02/35827060v1

50.     Once the Legislature incorporates material into the official version of the Code, use of that material by the public or private parties is lawful through the doctrine of merger.

51.     Public Resource's purpose in using the O.C.G.A. is to facilitate scholarship, criticism and analysis of the Official Code, to inform the public about the laws that govern it, for educational purposes and to encourage public engagement with the law.

52.     Upon their incorporation into law, incorporated expressions are factual as statements of the law.  Public Resource publishes the O.C.G.A. in its entirety.  Scholarship, analysis and other public engagement with the law is not possible without access to the complete Official Code, including summaries of judicial opinions and attorney generals' opinions. Therefore, Public Resource publishes as much of the O.C.G.A. as is necessary to fulfill its purpose.

53.     Even if copyright law protected authorship by private parties after it is incorporated into law, which it does not, Public Resource's use of the complete O.C.G.A. is fair use and therefore not copyright infringement.

54.     There is a real and actual controversy between Public Resource and the Code Revision Commission regarding whether Public Resource's copying,

LEGAL02/35827060v1

publication and reformatting of the O.C.G.A. constitutes infringement of any valid copyright owned by the State of Georgia.

55.     The Code Revision Commission is seeking an injunction against Public Resource that would hinder Public Resource's activities in furtherance of its mission to make the law accessible to all.

56.     The Georgia legislature regularly enacts amendments of the O.C.G.A, not of unofficial publications, and will likely continue to do so.

57.     The Code Revision Commission is likely to assert copyright in the so-called Copyrighted Annotations in future editions of the O.C.G.A. to restrict the public's expression of and distribution of, and access to, those codes.  It would then have the power to inhibit public discourse about and public use of the official code.

58.     The controversy between Public Resource and the Code Revision Commission is thus real and substantial and demands specific relief through a conclusive judicial decree.

59.     Public Resource is entitled to a declaratory judgment that its copying, posting and reformatting of the O.C.G.A., including the annotations, does not infringe any copyright rights owned by the States of Georgia.

LEGAL02/35827060v1

WHEREFORE, Defendant prays:

1.   That the Court denies Plaintiff the relief sought in the Complaint;

2.   That the Court adjudge and decree that the State of Georgia has no valid copyright in any portion of the O.C.G.A. because the O.C.G.A. is in the public domain;

3.   That Public Resource's acts of copying, posting and distributing the O.C.G.A. does not infringe, directly or indirectly, any copyright;

4.   That Public Resource is entitled to its reasonable attorney fees, costs and expenses in this action;

5.   For such other relief as the Court deems just.

## JURY TRIAL DEMAND

Counterclaimant Public Resource demands a jury trial of all issues properly triable to a jury.

Respectfully submitted this 14th day of September, 2015, in accordance with the formatting guidelines approved by the Court in Local Rule 5.1B.

By:   /s/ Jason D. Rosenberg
Jason D. Rosenberg
Georgia Bar No. 510855
jason.rosenberg@alston.com
ALSTON & BIRD LLP
One Atlantic Center
1201 West Peachtree Street
Atlanta, GA  30309-3424
Telephone 404-881-7461
Fax (404) 253-8861

Elizabeth H. Rader
(motion for admission *pro hac vice* to be

filed)
elizabeth.rader@alston.com
ALSTON & BIRD LLP
950 F Street, NW
Washington, DC 20004
Telephone:  202-239-3008
Fax: (202) 239-3333

Attorneys for Defendant

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on Monday, September 14, 2015, I electronically filed

the foregoing ANSWER AND COUNTERCLAIM OF DEFENDANT

Public.Resource.Org, Inc. with the Clerk of Court using the CM/ECF system,

which will automatically send email notification of such filing to all counsel of

record in this case.

By:   /s/ Jason D. Rosenberg
Jason D. Rosenberg
Georgia Bar No. 510855
jason.rosenberg@alston.com
ALSTON & BIRD LLP
One Atlantic Center
1201 West Peachtree Street
Atlanta, GA  30309-3424
Telephone 404-881-7461
Fax (404) 253-8861

LEGAL02/35827060v1