# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| CODE REVISION COMMISSION on Behalf of and for the Benefit of the GENERAL ASSEMBLY OF GEORGIA  and the STATE OF GEORGIA,<br><br>      Plaintiff,<br><br>v.<br><br>PUBLIC.RESOURCE.ORG, INC.,<br><br>      Defendant. | CIVIL ACTION NO. 1:15-cv-2594-MHC |

## MOTION OF AMICUS CURIAE MATTHEW BENDER & COMPANY, INC. FOR LEAVE TO FILE AN AMICUS CURIAE BRIEF IN SUPPORT OF PLAINTIFF

Matthew Bender & Company, Inc., a member of the LexisNexis Group ("LexisNexis") respectfully moves, pursuant to the Court's inherent authority, to file a brief as amicus curiae explaining that Public.Resource.Org, Inc. ("PRO") cannot meet its burden under the fair use defense in this case.  LexisNexis has attached its proposed brief and evidentiary exhibits to this Motion.

Federal district courts possess the inherent authority to accept amicus briefs. *In re Bayshore Ford Trucks Sales, Inc.*, 471 F.3d 1233, 1249 n.34 (11th Cir. 2006) (stating "district courts possess the inherent authority to appoint 'friends of the court' to assist in their proceedings"); *Ga. Aquarium, Inc. v. Pritzker*, No. 1:13-cv-3241, 2015 U.S. Dist. LEXIS 133566 at *11 (N.D. Ga. Sept. 28, 2015).

"Courts typically grant amicus status where the parties 'contribute to the court's understanding of the matter in question' by proffering timely and useful information." *Id.*, *citing Conservancy of Sw. Fla. v. U.S. Fish & Wildlife Serv.*, No. 2:10-cv-106, 2010 U.S. Dist. LEXIS 94003 (M.D. Fla. Sept. 9, 2010). This authority supports the Court's exercise of its discretion to accept this amicus brief.

As explained more fully in the attached proposed brief, LexisNexis creates and distributes the annotations at issue in this proceeding pursuant to a contract with the Plaintiff, it is uniquely situated to explain factually and legally why PRO's affirmative fair use defense should fail based on the four factors in this analysis set forth by the Supreme Court.

WHEREFORE, LexisNexis requests that this Court accept and consider the proposed brief attached hereto.

Respectfully submitted this 17th day of May 2016.

TROUTMAN SANDERS LLP


　　/s/ *John M. Bowler*
Michael D. Hobbs, Jr. (GA Bar No. 358160)
John M. Bowler (GA Bar No. 071770)
*Counsel of Record for Amicus Curiae*
Troutman Sanders LLP
Suite 5200, 600 Peachtree Street, N.E.
Atlanta, Georgia 30308-2216
Phone: (404) 885-3330
Fax: (404) 962-6588
michael.hobbs@troutmansanders.com
john.bowler@troutmansanders.com

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

|  |  |
|---|---|
| CODE REVISION COMMISSION on Behalf of and for the Benefit of the GENERAL ASSEMBLY OF GEORGIA  and the STATE OF GEORGIA, | CIVIL ACTION NO. 1:15-cv-2594-MHC |
| Plaintiff, | |
| v. | |
| PUBLIC.RESOURCE.ORG, INC., | |
| Defendant. | |

## PROPOSED BRIEF OF AMICUS CURIAE MATTHEW BENDER & COMPANY, INC., IN SUPPORT OF PLAINTIFF

TROUTMAN SANDERS LLP
Michael D. Hobbs, Jr. (GA Bar No. 358160)
John M. Bowler (GA Bar No. 071770)
*Counsel of Record for Amicus Curiae*
Troutman Sanders LLP
Suite 5200, 600 Peachtree Street, N.E.
Atlanta, Georgia 30308-2216
(404) 885-3330
michael.hobbs@troutmansanders.com
john.bowler@troutmansanders.com

# TABLE OF CONTENTS

**Page**

IDENTITY AND INTERESTS OF AMICUS CURIAE .........................................iv

ARGUMENT ............................................................................................................1

I.     FACTUAL BACKGROUND.........................................................................1

     A.     Free Online Distribution of Georgia Laws.........................................2

     B.     Creation of the Annotations ...............................................................2

     C.     Misappropriation of the Annotations .................................................6

II.    PRO DOES NOT MAKE FAIR USE OF THE COPYRIGHTED
      ANNOTATIONS...........................................................................................7

            a.     PRO's Verbatim Copying and Online Posting of the
                 Annotations is not Transformative .............................................8

            b.     The Annotations are Entitled to Broad Copyright
                 Protection ..................................................................................14

            c.     PRO Misappropriates the Annotations Verbatim ...................18

            d.     PRO's Misappropriation Destroys the Commercial
                 Market for the O.C.G.A ............................................................19

            e.     PRO's Misuse is Not a Fair Use .............................................23

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Author's Guild, Inc. v. HathiTrust,*
  755 F.3d 87 (2d Cir. 2014) ...............................................................................10

*BMG Music v. Gonzalez,*
  430 F.3d 888 (7th Cir. 2005) ......................................................................21, 24

*Cambridge Univ. Press v. Patton,*
  769 F.3d 1232 (11th Cir. 2014) .................................................................passim

*Campbell v. Acuff-Rose Music, Inc.,*
  510 U.S. 569, 114 S. Ct. 1164, 127 L. Ed. 2d 500 (1994) .........................passim

*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., Inc.,*
  499 U.S. 340 (1991)...........................................................................................15

*Harper & Row, Publishers v. Nation Enters.,*
  471 U.S. 539 (1985)....................................................................................passim

*Home Legend, LLC v. Mannington Mills, Inc.,*
  784 F.3d 1404 (11th Cir. 2015) ........................................................................15

*Infinity Broad. Corp. v. Kirkwood,*
  150 F.3d 104 (2d Cir 1998) ..............................................................................19

*Lawrence v. Dana,*
  15 F. Cas. 26 (C.C.D. Mass. 1869)...................................................................16

*Pac. & S. Co. v. Duncan,*
  744 F.2d 1490 (11th Cir.1984) .........................................................................18

*Peter Letterese & Assocs. v. World Inst. of Scientology Enters.,*
  533 F.3d 1287 (11th Cir. 2008) ...............................................................8, 11, 18

*Seltzer v. Green Day, Inc.,*
  725 F.3d 1170 (9th Cir. 2013) ..........................................................................10

*Soc'y of Holy Transfiguration Monastery, Inc. v. Gregory*,
    689 F.3d 29 (1st Cir. 2012), *cert. denied*, 133 S. Ct. 1315, 185 L. Ed. 2d
    195 (2013) ................................................................................................. 12

*Sony Corp. of Am. v. Universal City Studios, Inc.*,
    464 U.S. 417 (1984) ...................................................................................... 8

*W.H. Anderson Co. v. Baldwin Law Pub. Co.*,
    27 F.2d 82 (6th Cir. 1928) ........................................................................... 16

*Weissmann v. Freeman*,
    868 F.2d 1313 (2d Cir. 1989) ...................................................................... 12

*Worldwide Church of God v. Phila. Church of God, Inc.*,
    227 F.3d 1110 (9th Cir. 2000) ..................................................................... 12

**STATUTES**

17 U.S.C. 107(4) ............................................................................................... 19

17 U.S.C. § 101 ................................................................................................. 16

17 U.S.C. § 102(a) ............................................................................................ 15

17 U.S.C. § 107(1) ......................................................................................... 8, 11

17 U.S.C. § 107(2) ............................................................................................ 14

17 U.S.C. § 107(3) ............................................................................................ 18

Copyright Act, 17 U.S.C. § 107 ..................................................................... 7, 8

Georgia Code § 10-7-21 ..................................................................................... 3

Official Code of Georgia Annotated series ..................................................... 5, 6

# IDENTITY AND INTERESTS OF *AMICUS CURIAE*

LexisNexis provides and publishes analytic legal research materials. Pursuant to the terms of a contract with the Code Revision Commission on Behalf of and For the Benefit of the General Assembly of Georgia and the State of Georgia (the "Commission"), LexisNexis has responsibility for (1) publically and freely distributing the statutory texts of Georgia, and (2) researching, creating, managing, publishing, distributing and licensing an annotated version of Georgia's statutory code as the Official Code of Georgia Annotated.  As such, LexisNexis has specific knowledge of the facts relating to the creation, use and market for the copyrighted annotations in the Official Code of Georgia Annotated that form the subject of this proceeding.

Counsel for the amicus curiae declares that this brief was authored in total with no assistance from the parties to this proceeding and that no individuals or organizations other than the *amicus* made a monetary contribution to the preparation and submission of this brief.

## ARGUMENT

### I.  FACTUAL BACKGROUND

LexisNexis is a leading global provider of content-enabled workflow solutions designed specifically for professionals in the legal, risk management, corporate, government, law enforcement, accounting, and academic markets. LexisNexis originally pioneered online information with its Lexis® and Nexis® services.  LexisNexis also provides and publishes analytic legal research materials. *See* Affidavit of Anders Ganten (attached as *Amicus Exhibit 1;* hereinafter, "Ganten Affidavit"), ¶3.

LexisNexis has executed a contract with the Commission (the "Contract") under which LexisNexis is responsible for researching, managing, creating, publishing, and distributing an annotated version of State laws as the Official Code of Georgia Annotated ("O.C.G.A.").  *Id.* at ¶4.  The Contract is awarded under an open bid process, whereby LexisNexis and third parties may present bids to administer the Commission's project to publish and distribute the laws of the state of Georgia in both hard bound book and electronic format.  *Id.* at ¶5.  Under the Contract, LexisNexis provides two functions: (1) publically and freely distributing the statutory texts of Georgia and (2) researching, creating, managing, publishing, and distributing annotations to the O.C.G.A. as a work for hire. *Id.* at ¶6.

### A.      Free Online Distribution of Georgia Laws

To distribute the statutory portion of the codification of Georgia's laws as required in the Contract, LexisNexis provides online 24/7/365 access to the statutory text of Georgia laws and the Georgia Constitution via a link to the State of Georgia website located at www.legis.ga.gov.   Ganten Affidavit, ¶7.   All statutory text and numbering, numbers of titles, chapters, articles, parts and subparts, captions and history lines are included in this publication. This online resource is entirely free to users.   *Id.* at ¶8.   The online electronic version of Georgia's laws includes robust features and capabilities, such as "terms and connectors" searching and "natural language" searching.  *Id.* at ¶9.  Online Georgia code users may also print copies, save it to their hard drive in PDF format, or e-mail copies to others.  *Id.* at ¶10.

### B.      Creation of the Annotations

As part of its obligations under the Contract, LexisNexis's team of attorney-editors creates annotations for the relevant statutes in the O.C.G.A. (the "Annotations").  Ganten Affidavit, ¶11.  These editors create substantive original Annotations on select legal cases regarding the constitutionality, purpose, intent, and meaning of words and phrases, as well as illustrations of particular statutory provisions.  *Id.* at ¶12.  These Annotations generally provide a brief description of

the application or interpretation of statutes, rules, laws or constitution, as well as analysis and guidance of the legal holdings within a case that have relevance to those provisions.  *Id.* at ¶13.  *Amicus Exhibit 2* provides an example of the statutory text and LexisNexis's Annotations to Official Georgia Code § 10-7-21.  *See also* Ganten Affidavit, ¶14 (confirming *Amicus Exhibit 2* is a true and accurate copy of the material).

The creation of the Annotations for the entire Georgia code requires a labor-intensive, creative process.  Ganten Affidavit, ¶15.  The LexisNexis editors, who are all attorneys, begin by reading case law opinions to identify discussion points and interpretation issues regarding the Georgia code, court rules, and constitutional provisions at issue.  *Id.* at ¶16.  The material is subjectively analyzed for noteworthiness, along with a determination of whether the court or other authority's discussion is relevant to an understanding of the provision.  *Id.* at ¶17.  After cases are culled and selected for inclusion, the editors then verify each potential source to ensure validity and to gain an understanding of how the statutory provision relates to the issue being discussed.  *Id.* at ¶18.

Upon verification, the editors draft the Annotation focusing on succinctness, accuracy, and guidance for future readers.  *Id.* at ¶19.  Each Annotation is an original and creative work of authorship that is protected by copyrights owned by

3

the State of Georgia as a work for hire. *Id.* at ¶20.  The Annotation often includes a written analysis of the court's application of the law to the particular facts of the case law opinion, or describing the court's interpretation or construction of the provision.  *Id.* at ¶21.  Certain cases are selected for an in-depth review and analysis by a quality review team and further editing.  *Id.* at ¶22.  For those Annotations created by the editors in the specialized Prospective Case Law Enhancements group, LexisNexis forwards the Annotations to Georgia legal analysts for additional review and editing. *Id.* at ¶23.

Once the Annotation is checked for accuracy, style, and jurisdictional requirements, the most on-point and specific classification, as selected by the editors, is assigned to the Annotation from the LexisNexis taxonomy scheme for indexing.  *Id.* at ¶24.  Upon completion, the Annotation is included for online and print product publication.  *Id.*

The O.C.G.A. is subject to continuous review to ensure that the information is accurate.  *Id.* at ¶25.  LexisNexis also makes additions to the statutory text of state laws previously approved and enacted by the legislature of the State of Georgia. When appropriate, subsequent history is added to each case Annotation. *Id*.  When LexisNexis determines that the Annotation is no longer relevant due to negative treatment, it is removed or limited.  *Id.*

4

As shown in *Amicus Exhibit 2,* the Annotations created by LexisNexis not only include case notes, but also Attorney General opinions, advisory opinions of the State Bar, law reviews, and bar journals.   Ganten Affidavit, ¶26.   The LexisNexis editorial staff regularly reviews these materials and subjectively selects those it deems the most noteworthy for inclusion in its Annotations to the statutory and constitutional texts.  *Id.* at ¶27.  The O.C.G.A. series also includes the United States Constitution, commentary from the Corporate Code Committee of the Business Law Section of the State Bar of Georgia, the Rules and Regulations of the State Board of Workers' Compensation, and the Rules and Regulations of the Subsequent Injury Trust Fund.   *Id.* at ¶28.   These secondary and regulatory materials are selected, compiled and assimilated by the LexisNexis editorial staff. *Id.*

Pursuant to the Contract, the State of Georgia owns the copyright in the Annotations as a work for hire, which it exclusively licenses to LexisNexis. *Id.* at ¶29.   LexisNexis does not charge the Commission any fee to create the Annotations.   *Id.*   Instead, in recognition of the significant time, expertise and creativity required to generate the O.C.G.A., the Contract authorizes LexisNexis to charge a fee to customers accessing online copies and to sell hardcopy books and CDs of the work.   The Commission places a contractual cap on the amount

LexisNexis may charge for such access and works. *Id.* Contractually, LexisNexis must also incur the expense of keeping inventory on hand to provide a reasonable supply of complete sets of hard copies of the O.C.G.A. so that it may fill any request within two weeks. *Id.*

If the Annotations were not subject to copyright protection or if the PRO and the public could freely access the O.C.G.A. as a fair use under the Copyright Act, LexisNexis could not recoup its significant investment of creativity and resources in developing the Annotations, and it would lose all incentive to remain in the Contract or create the Annotations, unless it were directly paid for such services. *Id.* at ¶30.

### C.    *Misappropriation of the Annotations*

Defendant    Public.Resource.Org,    Inc.    ("PRO")    has    repeatedly distributed/uploaded the entire O.C.G.A. for public viewing and use without the permission of the State of Georgia. For example, PRO "admits that it has distributed/uploaded the entire O.C.G.A.[1] to the website www.archive.org." (Answer & Counterclaim, Court Dkt. 16, ¶ 17).  PRO further admits that "it has copied at least 140 different volumes/supplements containing the O.C.G.A. and

---

[1] As the Defendant has copied, distributed and uploaded the Annotations in their entirety, the arguments set forth herein apply to all of the Annotations.

that each of these works has been posted by it on at least one of its websites and is available to the public for downloading, viewing and printing….” (*Id.*, ¶ 15).

## II. PRO DOES NOT MAKE FAIR USE OF THE COPYRIGHTED ANNOTATIONS.

PRO asserts that its wholesale copying of the Annotations constitutes fair use under the Copyright Act, 17 U.S.C. § 107. (Answer & Counterclaim, Court Dkt. 16, Fourth Affirmative Defense).   A claim of fair use is an affirmative defense, with the all burdens placed on the putative infringer.  *See Harper & Row, Publishers v. Nation Enters.,* 471 U.S. 539, 562 (1985); *Cambridge Univ. Press v. Patton,* 769 F.3d 1232, 1280 (11th Cir. 2014).

In determining whether application of the fair use is warranted, the Copyright Act mandates the review of four factors: (1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes; (2) the nature of the copyrighted work; (3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and (4) the effect of the use upon the potential market for or value of the copyrighted work.   17 U.S.C. § 107. These four statutory factors are not to be treated in isolation from one another. *See Campbell v. Acuff-Rose Music, Inc*., 510 U.S. 569, 578 (1994). Rather, they are “[a]ll are to be explored, and the results weighed together, in light of the purposes of copyright.” *Id.* at 578.

### a. PRO's Verbatim Copying and Online Posting of the Annotations is not Transformative.

The first factor listed in Section 107 inquires about "the purpose and character of the use." 17 U.S.C. § 107(1). This has several facets, including (1) the extent to which the use is a "transformative" rather than merely superseding use of the original work, and (2) whether the use is for a nonprofit educational purpose, as opposed to a commercial purpose. *Peter Letterese & Assocs. v. World Inst. of Scientology Enters.*, 533 F.3d 1287, 1309 (11th Cir. 2008). The Supreme Court described the "central purpose" of this factor as determining whether "the new work merely supersedes the objects" of the copied work or whether the new work is "transformative." *Campbell*, 510 U.S. at 579, (quoting *Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417, 455, n.40 (1984)). The Eleventh Circuit further instructs:

> A transformative work is one that adds something new, with a further purpose or different character, altering the first work with new expression, meaning or message. On the other hand, a work that is not transformative, and that merely supersedes the objects of the original creation, is less likely to be entitled to the defense of fair use because of the greater likelihood that it will supplant the market for the copyrighted work, fulfilling demand for the original.

*Peter Letterese & Assocs.* 533 F.3d at 1310 (internal citations and quotation marks omitted).

PRO does not transform the Annotations.  PRO does not add, edit, modify, comment on, criticize or create any analysis or notes of its own. Ganten Affidavit, ¶31.  The Annotations are already made available in a digital format by LexisNexis with a robust, fully searchable engine.  *Id.*  PRO's use of the Annotations is for exactly the same purpose as LexisNexis, and the Commission makes the Annotations available—for legal and scholarly research and public and judicial review.  *Id.*  As held by the Eleventh Circuit, the verbatim copying of the Annotations for the same purpose as the original work is not transformative. *Patton*, 769 F.3d at 1262–1263 ("Defendants' use of excerpts of Plaintiffs' works is not transformative. The excerpts of Plaintiffs' works posted on GSU's electronic reserve system are verbatim copies of portions of the original books which have merely been converted into a digital format….Nor do Defendants use the excerpts for anything other than the same intrinsic purpose—or at least one of the purposes—served by Plaintiffs' works: reading material for students in university courses.") (citations omitted).

PRO's sole justification in support of its verbatim copying and free distribution of the Annotations without authorization is that it purports to provide wider distribution of the Annotations.  In Paragraph 15 of its Answer, PRO admits that "it has copied at least 140 different volumes/supplements containing the

O.C.G.A. and that each of these works has been posted by it on at least one of its websites and is available to the public for downloading, viewing and printing, and that the electronic nature of these documents and their availability on the Internet, magnifies the ease and speed with which they may be copied and distributed to others." (Answer & Counterclaim, Court Dkt. 16, ¶ 15).

Courts have routinely rejected arguments that this is transformative use. *See, e.g., Author's Guild, Inc. v. HathiTrust,* 755 F.3d 87, 101 (2d Cir. 2014) ("[T]he district court concluded that the 'use of digital copies to facilitate access for print-disabled persons is a transformative' use.  This is a misapprehension; providing expanded access to the print disabled is not 'transformative'" (citation omitted)); *Seltzer v. Green Day, Inc.,* 725 F.3d 1170, 1177 (9th Cir. 2013) ("In the typical 'non-transformative' case, the use is one which makes no alteration to the *expressive content or message* of the original work*."* (emphasis in original)).

PRO's verbatim copying and posting of the Annotations is expressly designed to merely supplant the O.C.G.A. as already distributed and made available online by LexisNexis, which is neither transformative nor a fair use as a matter of law.  *See Campbell*, 510 U.S. at 578–579 (stating that, where the copier's work "merely supersedes the objects of the original creation," it is neither transformative nor a fair use.); *HathiTrust*, 755 F.3d at 96 (stating that "[a]dded

10

value or utility is not the test: a transformative work is one that serves a new and different function from the original work and is not a substitute for it" and only finding fair use when no new, human-readable copies of any books were put into circulation and where there was little to no discernible resemblance between the original work and the database).

This Court must also consider under the first factor whether the Defendants' use is for a nonprofit educational purpose, as opposed to a commercial purpose. "[T]he commercial or non-transformative uses of a work are to be regarded as 'separate factors that tend to weigh against a finding of fair use,' and 'the force of that tendency will vary with the context.'" *Peter Letterese & Assocs.*, 533 F.3d at 1309 (alteration in original) (quoting *Campbell*, 510 U.S. at 585). That the Defendant is a non-profit does not end the inquiry pursuant to § 107(1). The Supreme Court has explained that "[t]he crux of the profit/nonprofit distinction is not whether the sole motive of the use is monetary gain but whether the user stands to profit from exploitation of the copyrighted material without paying the customary price." *Harper & Row*, 471 U.S. at 562. Courts in several cases have found that educational use of copyrighted works by a nonprofit entity (or an individual associated with such an entity) was commercial even though the secondary user was not selling the items in question, in which "profit" took the

form of an indirect economic benefit or a nonmonetary, professional benefit. *See, e.g., Soc'y of Holy Transfiguration Monastery, Inc. v. Gregory*, 689 F.3d 29, 61 (1st Cir. 2012), *cert. denied*, 133 S. Ct. 1315, 185 L. Ed. 2d 195 (2013) (finding that the first factor weighed against fair use where an archbishop used copyrighted translations of a religious text on his website; although the use was educational, the archbishop profited from the use, in part, in the form of enhanced professional reputation); *Worldwide Church of God v. Phila. Church of God, Inc.*, 227 F.3d 1110, 1118 (9th Cir. 2000) (finding the first factor weighed against fair use where a religious organization distributed copies of a copyrighted book for use in its religious observance; the use was nontransformative, and although the use was educational, the organization profited indirectly by using the work to attract new members who would tithe ten percent of their income); *Weissmann v. Freeman*, 868 F.2d 1313, 1324 (2d Cir. 1989) (finding that the first factor weighed against fair use where a professor claimed an assistant's paper as his own work and copied it for use in his class, under the professor's name, because the professor profited from the use by enhancing his professional reputation and gaining a valuable authorship credit).

Here, the Defendant acknowledges that it has posted the Annotations on its websites where it solicits and receives funds and sells products.  (Answer &

Counterclaim, Court Dkt. 16, ¶ 5).  Moreover, the founder of the Defendant clearly engages in the business of self-promotion.  In fact, in the Defendant's counterclaim, the name of the founder of the Defendant is mentioned repeatedly to extol his professional reputation with scant mention of the Defendant itself. (Answer & Counterclaim, Court Dkt. 16, Counterclaim ¶¶ 10-19).  These factors weigh against the fair use of the Annotations.

The Defendant further claims that the unauthorized verbatim dissemination of the Annotations benefits the public. This is not true. As set forth more fully with respect to the fourth fair use factor, the activities of the Defendant destroy the marketplace and economic incentives for LexisNexis to create the Annotations. Ganten Affidavit, ¶31.  It is simple economics that if customers can get the full text of every single Annotation for free, they will not buy hardcopies from LexisNexis or pay to license the exact same Annotations. Given that, LexisNexis will not continue to incur the significant time and expense required to prepare the Annotations and the public will no longer have access to this significant benefit.  It will, as cautioned by the Eleventh Circuit, kill "the proverbial goose that laid the golden egg."  *Patton*, 769 F.3d at 1258. Contrary to the Defendant's assertions that, as a California corporation, it knows what is best for Georgia citizens, the duly elected state legislature, whose members comprise the Commission, have

13

analyzed the issue and decided that the deal reflected in the Contract fairly benefits the public.  They incur no taxpayer expense in the preparation of the Annotations, then allow the people who actually use the Annotations to purchase hardcopies or online access to them, instead of using the tax dollars of all Georgia citizens to pay for the services required to create the Annotations, or to simply provide no Annotations at all.

Accordingly, PRO's verbatim copying and distribution of the Annotations is not transformative, does not benefit the public, and this factor weighs heavily in the favor of the Commission.

### b.  The Annotations are Entitled to Broad Copyright Protection.

The second factor listed in Section examines the "nature of the copyrighted work."  17 U.S.C. § 107(2).  As described above, the selection, writing, editing, statutory commentary and creativity  of the Annotations requires skill and analysis in reviewing a wealth of materials and drafting original materials to inform and educate users about courts and agencies applying the Georgia code and their citation in third party materials.  The Annotations are far from a mere recitation of facts like a phone book; rather, they are originally created works of authorship.

The creation of the Annotations requires a tremendous amount of work from a team of editors. However,

> [t]he effort that creative labor requires does not render the labor
> uncreative. Drafting and editing a novel usually requires months or
> years of toil over a keyboard. A masterpiece painting may require
> many preliminary studies and countless hours of exacting brushwork.
> Carving or assembling a sculpture may involve backbreaking physical
> exertion. All of those are examples of creative labor that is creative.

*Home Legend, LLC v. Mannington Mills, Inc.*, 784 F.3d 1404, 1411 (11th Cir.

2015).  The creation of the Annotations involve far more than sweat of the brow

labor.  Rather, each Annotation requires selection, drafting skills, choice of words,

decisions regarding third-party sources and a myriad of other choices, all of which

confirm that the Annotations are original works entitled to broad copyright

protection.  *See* Ganten Affidavit, ¶¶11–28.

The Copyright Act extends protection to copyright owners "in original

works of authorship fixed in any tangible medium of expression, now known or

later developed, from which they can be perceived, reproduced, or otherwise

communicated, either directly or with the aid of a machine or device."  17 U.S.C.

§ 102(a).  The U.S. Supreme Court instructs that the amount of originality required

to extend copyright protection to a work is exceedingly low, that only a "modicum

of creativity" is needed, and that copyright protection will be provided to the work

"no matter how crude, humble or obvious it might be."   *Feist Publ'ns, Inc. v.*

*Rural Tel. Serv. Co., Inc.*, 499 U.S. 340, 345-346 (1991) (internal citations

omitted).

The Copyright Act itself <u>specifically</u> lists "annotations" in the works entitled to copyright protection. 17 U.S.C. § 101.   A long line of cases—beginning in the nineteenth century—recognize the copyright protection in annotated cases and statutes.  *See, e.g., W.H. Anderson Co. v. Baldwin Law Pub. Co.*, 27 F.2d 82 (6th Cir. 1928); *Lawrence v. Dana*, 15 F. Cas. 26 (C.C.D. Mass. 1869).  Moreover, the United States Copyright Office's own treatise expressly recognizes the protectability of annotations.   U.S. COPYRIGHT OFFICE, COMPENDIUM OF U.S. COPYRIGHT OFFICE PRACTICES §§ 313.6(C)(2), 717.1 (3d ed. 2014) (stating also that "[a] legal publication that analyzes, annotates, summarizes, or comments upon a legislative enactment, a judicial decision, an executive order, an administrative regulation, or other edicts of government may be registered as a non-dramatic literary work").  In fact, the Copyright Office has a long history of registering annotated statutes—from the earliest available online record of 1951 (Copyright Reg. AA0000204179 for *Vernon's Annotated Statutes of the State of Texas*) to the most recent in 2015 (Copyright Reg. TX0008001813 for *Annotated Statutes of New Mexico 2015 Advance Code Service*), with hundreds of other registrations issued by the Copyright Office for state statutory annotations in the intervening years. The Annotations themselves are the subject of numerous registrations in the U.S. Copyright Office.

Since 2003, Thomson West has created its own annotations to the Official Georgia Code in its *West's® Code of Georgia Annotated*, and it sells hardcopies and licenses access to its annotations to recoup the costs and profit from the efforts. Ganten Affidavit, ¶33.  As shown in *Amicus Exhibit 2*, the LexisNexis Annotation is different from the West annotation, confirming that the creation of the Annotations requires originality, creativity and selections that create different works, not slavish copies regardless of the author.

Turning to the specific nature of the Annotations, that they contain fact and not fiction does not end the inquiry for fair use purposes.  Indeed, the Eleventh Circuit admonished the district court in *Cambridge University Press v. Patton* for exactly this approach:

> Here, the District Court held that "because all of the excerpts are informational and educational in nature and none are fictional, fair use factor two weighs in favor of Defendants. *Cambridge Univ. Press*, 863 F. Supp. 2d at 1242. We disagree. . . . Accordingly, we find that the District Court erred in holding that the second factor favored fair use in every instance. Where the excerpts of Plaintiffs' works contained evaluative, analytical, or subjectively descriptive material that surpasses the bare facts necessary to communicate information, or derives from the author's experiences or opinions, the District Court should have held that the second factor was neutral, or even weighed against fair use in cases of excerpts that were dominated by such material.

769 F.3d  at 1269-1270.

17

The Annotations contain exactly the evaluative, analytical or subjectively descriptive analysis and guidance that the Eleventh Circuit instructed weighed against fair use.  *See* Ganten Affidavit, ¶26.  Moreover, the analysis and guidance, selection are carefully crafted by LexisNexis' editors, who have years of legal and statutory experience to illustrate and interpret the Code.  *Id.* at ¶26.  Accordingly, the second factor in the fair use analysis also weighs heavily against PRO.

### c.  PRO Misappropriates the Annotations Verbatim.

The third factor is "the amount and substantiality of the portion used in relation to the copyrighted work as a whole." 17 U.S.C. § 107(3). A court must ask whether the defendant has "helped [herself] overmuch to the copyrighted work in light of the purpose and character of the use." *Peter Letterese & Assocs.*, 533 F.3d at 1314 (quoting *Campbell*, 510 U.S. at 587). This factor recognizes that the more of a copyrighted work that is taken in quantity and quality, the less likely the use is to be fair. *See Harper & Row, Publrs.*, 471 U.S. 539, 565 (1985) (holding that the third factor disfavored fair use because the defendant copied a qualitatively substantial portion of the original work, even though the defendants copied only approximately 300 words out of the 200,000 words in the plaintiffs' work). Indeed, where a defendant "uses virtually all of a copyrighted work, the fair use defense drifts even further out of its reach."  *Pac. & S. Co. v. Duncan*, 744 F.2d

1490, 1497 (11th Cir.1984); *see also Infinity Broad. Corp. v. Kirkwood*, 150 F.3d 104, 109 (2d Cir 1998) (reversing lower court's dismissal based on fair use and noting "generally, it may not constitute a fair use if the entire work is reproduced") (quoting NIMMER ON COPYRIGHT, § 13.05[A][3] at 13-178 (1997).

In this case, PRO simply has misappropriated every single word of every Annotation. Rather than employing the red pencil of an editor, PRO's sole tool has been a bulk industrial electronic scanner. In its Answer, PRO even admits that, "it has copied at least 140 different volumes/supplements containing the O.C.G.A. and that each of these works has been posted by it on at least one of its websites and is available to the public for downloading, viewing and printing . . . ." (Answer & Counterclaim, Court Dkt. 16, ¶¶ 15).

The law is clear that this third factor heavily disfavors a finding of fair use by PRO and the fair use defense drifts even further out of PRO's reach.

### d.  PRO's Misappropriation Destroys the Commercial Market for the O.C.G.A.

The fourth factor is "the effect of the use upon the potential market for or value of the copyrighted work." 17 U.S.C. 107(4). The "central question" is whether, assuming that everyone engaged in the conduct of the defendant, the use "would cause substantial economic harm such that allowing [the conduct] would

19

frustrate the purposes of copyright by materially impairing [the defendant's] incentive to publish the work." *Patton*, 769 F.3d at 1276. The Supreme Court has expressly stated that this factor forms the most central inquiry of the fair use doctrine. *Harper & Row, Publishers, Inc.*, 471 U.S. at 566 (stating "[t]his last factor is undoubtedly the single most important element of fair use"). "More important, to negate fair use one need only show that if the challenged use 'should become widespread, it would adversely affect the potential market for the copyrighted work.' . . . 'If the defendant's work adversely affects the value of any of the rights in the copyrighted work … the use is not fair.'" *Id.* at 568 (citations omitted). As in *Cambridge Press v. Patton*, 769 F.3d at 1275, "[b]ecause Defendants' use is nontransformative and fulfills the educational purposes that Plaintiffs, at least in part, market their works for, the threat of market substitution here is great and thus the fourth factor looms large in the overall fair use analysis."

A judicial decree that PRO's wholesale copying of the copyrighted Annotations constitutes a fair use will destroy the economic viability of creating and maintaining the O.C.G.A. *See* Ganten Affidavit, ¶31. Simply, no person will pay for Annotations when they are available online for free.

However, the Annotations are not free to create. The overhead costs of creating and maintaining Annotations are high because the tasks require time and

skill.  *Id.* at ¶¶11–28.  For example, the Contract requires that the Annotations be drafted and edited by attorneys.  *Id.* at ¶16.

LexisNexis's sole revenue to recoup these costs is through hard copy sales and licensing online access to the O.C.G.A. as permitted by the Contract, and which are easily and economically offered to the public.  *Id.* at ¶32.  Because PRO has copied every word of every Annotation verbatim and posted them free of charge, PRO's misappropriation completely destroys LexisNexis's ability to recover these costs.  *Id.*; s*ee Patton*, 769 F.3d at 1275 ("Because Defendants' use is nontransformative and fulfills the educational purposes that Plaintiffs, at least in part, market their works for, the threat of market substitution here is great and thus the fourth factor looms large in the overall fair use analysis."); *BMG Music v. Gonzalez,* 430 F.3d 888, 890 (7th Cir. 2005) (finding "[m]usic downloaded for free from the Internet is a close substitute for purchased music; many people are bound to keep the downloaded files without buying originals").

In *Cambridge University Press v. Patton*, 769 F.3d at 1278-79, in its analysis of this fourth factor, the Eleventh Circuit examined whether the plaintiffs were actually licensing the subjects works for the use desired by the Defendants. Unlike *Cambridge University Press*, where the Defendant desired to license portions of the works for limited educational uses, which the plaintiffs did not

21

actually license, in the instant case, the Defendant has made and wants to make permanently available the underline O.C.G.A.   (Answer & Counterclaim, Court Dkt. 16, ¶ 17).  LexisNexis already licenses the entire O.C.G.A. and portions thereof in hardcopy and electronic formats. The revenues from such licensing reinforce the value of the O.C.G.A. and the damage that would be inflicted if the entire O.C.G.A. were made available for free.  *See Patton*, 769 F.3d at 1278 ("The District Court also properly took into account that widespread use of similar unlicensed excerpts could cause substantial harm to the potential market. Thus, where there was a license for digital excerpts available, the District Court generally held that the fourth factor weighed against a finding of fair use.")

The Copyright Act does not prevent PRO from independently creating its own annotations.   Indeed, since 2003, Thomson West has created its own annotations to the Official Georgia Code in its *West's® Code of Georgia Annotated*, and it sells hardcopies and licenses access to its annotations to recoup the costs and profit from the efforts.  Ganten Affidavit, ¶33.  As shown in *Amicus Exhibit 2*, the LexisNexis Annotation is different from the West annotation, confirming that PRO could do the same through its own independent creation, but it has instead sought to free ride by copying the Annotations without authorization (and without any of the associated overhead costs).

The central question under the fourth factor is whether Defendant's use—taking into account the damage that might occur if "everybody did it"—would cause substantial economic harm such that allowing it would frustrate the purposes of copyright by materially impairing a publisher's incentive to publish the work. *See Harper & Row*, 471 U.S. at 566–67. That PRO's misappropriation of the each and every word comprising the Annotations and public posting of them without charge or license will naturally and surely destroy the market for sales and subscriptions of the Annotations confirms that this central factor in the fair use analysis heavily weighs in favor of the Commission. *Patton*, 769 F.3d at 1281 ("[b]ecause Defendants' copying was nontransformative and the threat of market substitution was therefore serious, the District Court erred by not affording the fourth factor additional weight in its overall fair use calculus.")

### e.  PRO's Misuse is Not a Fair Use.

The goal of the Commission in creating the Annotations is that a fully annotated version of the laws of the State of Georgia exist and be maintained with a fair allocation of cost to Georgia taxpayers.   These copyright-protected Annotations provide a valuable service to legal professionals and the lay citizenry who pay a reasonable fee for this access as set by the Commission.   Georgia citizens who do not use the Annotations pay nothing for their creation.

PRO has inappropriately placed its own policy judgment in a position higher than that of the Commission—the copyright owner of the Annotations.  *BMG*, 430 F.3d at 891 (stating "[c]opyright law lets authors make their own decisions about how best to promote their works; copiers . . . cannot ask courts (and juries) to second-guess the market and call wholesale copying 'fair use' if they think that authors err in understanding their own economic interests or that Congress erred in granting authors the rights in the copyright statute").  But PRO has also undermined the ability of the Commission to create the Annotations in the first place.  LexisNexis respectfully submits that should not be decided unilaterally by the Defendant under the guise of fair use.

As each of the four fair use factors not only tilts in favor of the Commission, but rather weighs heavily in its favor, LexisNexis urges this Court to hold that the Defendant has not met its burden of proving its improper activities fall under the fair use defense, and confirm that PRO's misappropriation of the Annotations constitutes copyright infringement.

*[valediction and signature on following page]*

Respectfully submitted this 17th day of May 2016.

TROUTMAN SANDERS LLP

  /s/ *John M. Bowler*
Michael D. Hobbs, Jr. (GA Bar No. 358160)
John M. Bowler (GA Bar No. 071770)
*Counsel of Record for Amicus Curiae*
Troutman Sanders LLP
Suite 5200, 600 Peachtree Street, N.E.
Atlanta, Georgia 30308-2216
Phone: (404) 885-3330
Fax: (404) 962-6588
michael.hobbs@troutmansanders.com
john.bowler@troutmansanders.com

## <u>CERTIFICATE OF COMPLIANCE</u>

I certify that the foregoing brief, including footnotes, has been prepared in

Times New Roman 14 font and is in compliance with Local Rule 5.1.

By:   /s/ *John M. Bowler*

## CERTIFICATE OF SERVICE

I hereby certify that I have electronically filed the foregoing MOTION OF AMICUS CURIAE MATTHEW BENDER & COMPANY, INC. FOR LEAVE TO FILE AN AMICUS CURIAE BRIEF IN SUPPORT OF PLAINTIFF and PROPOSED BRIEF OF AMICUS CURIAE MATTHEW BENDER & COMPANY, INC., IN SUPPORT OF PLAINTIFF with the Clerk of Court using the CM/ECF system which will automatically serve all counsel of record.


Dated: May 17, 2016

TROUTMAN SANDERS LLP


    /s/ *John M. Bowler*

Michael D. Hobbs, Jr. (GA Bar No. 358160)
John M. Bowler (GA Bar No. 071770)
*Counsel of Record for Amicus Curiae*
Troutman Sanders LLP
Suite 5200, 600 Peachtree Street, N.E.
Atlanta, Georgia 30308-2216
Phone: (404) 885-3330
Fax: (404) 962-6588
michael.hobbs@troutmansanders.com
john.bowler@troutmansanders.com

28472676

27