## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| CODE REVISION COMMISSION on Behalf of and For the Benefit of the GENERAL ASSEMBLY OF GEORGIA and the STATE OF GEORGIA, | ) ) ) ) ) ) | |
| Plaintiff, | ) ) | **CIVIL ACTION** |
| v. | ) ) | **FILE NO.   1:15-CV-2594-MHC** |
| PUBLIC.RESOURCE.ORG, INC., | ) ) | |
| Defendant. | ) ) | |
| | ) | |

## DEFENDANT PUBLIC.RESOURCE.ORG, INC.'S
## MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR
## SUMMARY JUDGMENT

# TABLE OF CONTENTS

I.   INTRODUCTION ...................................................................................................1

II.  SUMMARY OF FACTS AND ARGUMENTS ....................................................2

III. LEGAL ARGUMENTS ..........................................................................................5

    A.   The Standard for Summary Judgment ...................................................5

    B.   The O.C.G.A., including annotations prepared by Lexis/Nexis, is not
        copyrightable, because creating and maintaining the O.C.G.A. is a core
        legislative function. ................................................................................5

        i.   The law of a state cannot be copyrighted under U.S. law. .........5

        ii.  The O.C.G.A. is an edict of government because the Legislature,
            acting through the Code Revision Commission, requires the
            O.C.G.A. to include the annotations. ..........................................8

        iii. The State's decision to outsource preparing and maintaining the
            O.C.G.A. to Lexis/Nexis cannot circumvent U.S. copyright law to
            allow Georgia to own a copyright in the annotations. .............10

    C.   Copyright does not protect the O.C.G.A.'s annotations because there are
        so few ways to accurately summarize opinions and few reasonable ways to
        arrange research reference material that the expression lacks sufficient
        originality and creativity. ......................................................................11

    D.   To the extent any portion of the O.C.G.A. is copyrightable, Public
        Resource's scanning and posting of the O.C.G.A. is a fair use of the
        copyrighted works..................................................................................13

        i.   The purpose of Public Resource's non-commercial use, to make
            Georgia's only official Code accessible to the public, favors fair
            use...............................................................................................14

        ii.  The nature of the copyrighted work favors fair use. ................18

        iii. Public Resource used no more than necessary to serve the purpose
            of making the official Code more available to citizens of Georgia
            and the general public. ...............................................................19

        iv.  The record contains no evidence of harm to the copyright holder or
            the value of the O.C.G.A. ..........................................................20

IV.  CONCLUSION .................................................................................................................24

LEGAL02/36379790v4

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*A.V. ex rel Vanderhye v. iParadigms, LLC*,
  562 F.3d 630 (4th Cir. 2009) ...............................................................................15

*American Inst. of Physics v. Schwegman, Lundberg & Woessner, P.A.*,
  No. 12-528, 2013 WL 4666330 (D. Minn. Aug. 30, 2013).................................15

*Authors' Guild, Inc. v. Hathitrust*,
  755 F.3d 87 (2d. Cir. 2014) ................................................................................15

*Authors' Guild v. Google, Inc.*,
  804 F.3d 202 (2d. Cir. 2015) (Leval, J), *cert. denied*, No. 15-849, 2016 WL
  1551263 (April 18, 2016) ............................................................. 15, 20, 21, 23

*Banks v. Manchester*,
  128 U.S. 244, 253 (1888) ..............................................................................6, 7

*Bellsouth Advert. & Publ'g Corp. v. Donnelly Info. Publ'g, Inc.*,
  999 F.2d 1436 (11th Cir. 1993) (en banc) ...................................................11, 18

*Building Officials & Code Adm. Int'l. Inc. v. Code Tech., Inc.*,
  628 F.2d 730 (1st Cir. 1980)...............................................................................7

*Campbell v. Acuff-Rose Music, Inc.*
  510 U.S. 569 (1994) ..................................................................................passim

*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986) ...........................................................................................5

*Consumers Union of United States, Inc. v. General Signal Corp.*,
  724 F.2d 1044 (2d Cir. 1983).............................................................................18

*Davidson v. Wheelock*,
  27 F. 61 (Minn. Cir. Ct.1866) .............................................................................6

*Eldred v. Ashcroft*,
  537 U.S. 186 (2003) .........................................................................................13

*Feist Publ'ns., Inc. v. Rural Tel. Serv. Co.*,
  499 U.S. 340 (1991) ....................................................................................13, 18

LEGAL02/36379790v4

*Harrison Co. v. Code Revision Comm'n*,
   244 Ga. 325 (1979)...........................................................................................6

*Katz v. Google, Inc.*,
   802 F. 3d 1178 (11th Cir. 2015)..........................................................14, 20

*Matthew Bender & Co., Inc. v. West Pub. Co.*,
   158 F.3d 674 (2d Cir. 1998) ..........................................................12, 13, 19

*Nash v. Lathrop*,
   142 Mass. 29 (1886) 6 N.E. 559 (1886).........................................................6, 11

*Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417 (1984) ..............................20, 24

*Swatch Grp. Mgm't. Serv. Ltd. v. Bloomberg L.P.*,
   756 F.3d 73 (2d. Cir. 2014) ..........................................................15, 19

*United States v. Lanier*,
   520 U.S. 259 (1997)...........................................................................................7

*Warren Publ'g, Inc. v. Microdos Data Corp.*,
   115 F.3d 1509 (11th Cir. 1997) (en banc) ........................................................12

*Wheaton v. Peters*,
   33 U.S. 591 (1834) ...........................................................................................5, 8

**RULES**

Fed. R. Civ. P. 56(c)(6) ...........................................................................................5

**STATUTES**

17 U.S.C. § 107(1) ...........................................................................................14

17 U.S.C. § 107(2) ...........................................................................................18

17 U.S.C. § 107(3) ...........................................................................................19

17 U.S.C. § 107(4) ...........................................................................................20

17 U.S.C. § 201...........................................................................................11

17 U.S.C. § 102(b) ...........................................................................................11

Ga. Code Ann. § 1-1-1 (West 2016), note...........................................................10

LEGAL02/36379790v4

Ga. Code Ann. § 50-2-1 (West 2016) .........................................................................13

**OTHER AUTHORITIES**

Compendium of U.S. Copyright Office Practices § 313.6(c) (2) (3d ed. 2014)........................7, 8

Ga. Const., art. 3, Section 5, ¶ 1 ...............................................................................9

U.S. Const., art. I, § 8, cl. 8 ...............................................................................13, 18

LEGAL02/36379790v4

# I. __INTRODUCTION__

Civilized nations have long embraced the concept of the Rule of Law—the principle that prescribed law, rather than the whims and desires of any individual, should govern society.  The law is our central protection against tyranny and injustice.  Only if the law is truly free and available can the State reasonably expect people and enterprises to obey the law, to know their rights under the law, and to evaluate and participate in the noble work of improving the law.

Public.Resource.Org proudly scanned and posted online the Official Code of Georgia Annotated ("O.C.G.A.").  By filing this action, the State seeks to restrict citizens' access to Georgia's laws through a dubious claim of copyright in the O.C.G.A's annotations.  The Court should prevent this attempt—and grant Public Resource's motion—for two principal reasons.  First, the annotations to the O.C.G.A. are not copyrightable.  The O.C.G.A. is an edict of government and creating the annotations is a core legislative function.  Additionally, the O.C.G.A.'s annotations are not copyrightable under the merger doctrine because there are very few ways to express the ideas contained in them.  Second, even the annotations were copyrightable, Public Resource's posting them constitutes a noninfringing fair use of the copyrighted work.

The law belongs to the people.  The O.C.G.A., including its annotations, is Georgia's only official Code. No claim of copyright can or should be used to prohibit its distribution.  Making the O.C.G.A. free, available and useable to all allows everyone, whether he or she is a lawyer or layperson, journalist, teacher or student, part of a nonprofit charitable entity or a multinational corporation, or merely a concerned citizen—everyone—to better understand, use, and comply with the law.  Granting Public Resource's motion for summary judgment will help ensure the citizens of this state, and others, fair and equal access to the laws of the State of Georgia.

## II.  SUMMARY OF FACTS AND ARGUMENTS

When Carl Malamud started Public.Resource.Org, Inc. ("Public Resource"), he believed the Rule of Law would be strengthened by the wider availability on the Internet of primary legal materials, the raw materials of our democracy. Declaration of Carl Malamud ("Malamud Decl.), Ex. A at ¶¶ 1, 14-15, 19.  In order to promote public education and public safety, equal justice for all, a better informed citizenry, more efficient markets, and the Rule of Law, Public Resource has undertaken to make edicts of government available on a noncommercial basis. *Id.* at ¶ 45.  One of these edicts is the O.C.G.A, which Public Resource purchased

from Lexis/Nexis, scanned, and posted on its website and on that of the Internet Archive.  Stipulation of Facts, Dkt. 17 ("Stip.") at ¶¶ 34-36.

The State of Georgia enacts and promulgates its laws through its legislature. *Id.* at ¶ 44.  The Code Revision Commission assists the legislature in publishing the laws it enacts in the O.C.G.A.  *Id.* at ¶ 82.  Most of the commissioners are Georgia's elected officials and the Commission's work is supervised by elected legislators.  Ex. D, Ga. Code Ann., Foreword at ix-x.  In 2006, the Commission entered into an agreement for publication with Matthew Bender & Co., Inc. ("Lexis/Nexis").  Ex. F at 1.  The Commission, however, retained oversight and ultimate control over publishing the O.C.G.A.  *Id.* at 3.  The agreement specifies the Commission's and Lexis/Nexis's respective roles in codifying, publishing, and maintaining the O.C.G.A.  It also specifies what the annotations Lexis/Nexis prepares, under the Commission's direct supervision, must contain.  *Id.* at 2, 4-5. In return, the State gives Lexis/Nexis exclusive rights to publish the printed O.C.G.A., sell it on CD-ROMs, and provide paid subscribers access to it online. Stip. at ¶¶ 84-85.  This exclusivity produces the absurd result that Fastcase, which partners with the State Bar of Georgia to provide its legal research service free to the Bar's 42,000 members, can only provide those lawyers with an "unofficial

compilation" of the Code of Georgia, with titles and catchlines written by Fastcase. Declaration of Edward Walters ("Walters Decl."), Ex. L at ¶¶ 8-13).[1]

The publishing agreement also requires that Lexis/Nexis provide Georgia's statutes, stripped of their annotations, on a website that the public can access for free, if they first agree to accept Lexis/Nexis's terms of use.  Ex. F at 11-12; Stip. at ¶ 73-75, 86-87; Dkt. 17-10; Dkt. 17-9.  At least one citizen of Georgia found the requirement to accept those terms of use distasteful, particularly a provision requiring users to agree to jurisdiction in a New York court and provisions prohibiting reuse (such as posting) of the laws on the site even by public and non-profit users.  Declaration of Clay Johnson Ex. K at ¶ 10).  The Lexis/Nexis website also suffers from technical limitations that make it difficult for users to locate and read the laws of Georgia.  *Id.* at ¶¶ 11-18.

In addition to these shortcomings, there are other good reasons why Georgia's citizens, and others wishing to know and understand Georgia's laws, might not find the Lexis/Nexis website as useful as the printed O.C.G.A. or another website that provides functionality different from Lexis/Nexis's website. While the

---

[1] Fastcase is the plaintiff in a declaratory judgment action pending in this district concerning rights to reproduce Georgia law, *Fastcase v. Lawriter LLC, dba Casemaker*, Case No. 1:16-cv-00327-TCB.

Lexis/Nexis free website displays the statutory text and numbering, without the annotations the statutory text simply is not the one official Code of Georgia.

## III.  LEGAL ARGUMENTS

### A.    The Standard for Summary Judgment

Under Fed. R. Civ. P. 56(c)(6), summary judgment is appropriate where the pleadings, discovery, and affidavits on file show that no genuine issue of material fact exists and the movant is entitled to judgment as a matter of law.  The moving party meets its burden of demonstrating the absence of a genuine issue of material fact by showing "that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986).  Once this initial burden has been met, the nonmoving party must point to specific evidence of material fact from which a reasonable jury could return a verdict in its favor.  *Id.* at 323-24.  Here, both parties agree that summary judgment is appropriate: whether Public Resource's use of the O.C.G.A. infringes a copyright turns on issues of law.

### B.    The O.C.G.A., including annotations prepared by Lexis/Nexis, is not copyrightable, because creating and maintaining the O.C.G.A. is a core legislative function.

#### i.    *The law of a state cannot be copyrighted under U.S. law.*

It is well established that judicial opinions and statutes are in the public domain and not subject to copyright protection.  The U.S. Supreme Court

announced this rule first in *Wheaton v. Peters*, 33 U.S. 591, 668 (1834) observing

"[t]he Court are unanimously of the opinion, that no reporter has or can have any

copyright in the written opinions delivered by this Court; and that the judges

thereof cannot confer on any reporter any such right." Subsequent cases explained

and expanded the rule. In *Banks v. Manchester*, the Supreme Court invalidated an

Ohio law that authorized the official reporter for the Ohio Supreme Court to obtain

copyright on that court's opinions. 128 U.S. 244, 253 (1888). Importantly, "the

whole work done by judges constitutes the authentic exposition and interpretation

of the law, which, binding every citizen, is free for publication to all, whether it is

a declaration of unwritten law, or an interpretation of a constitution or statute." *Id.*

The Massachusetts Supreme Judicial Court articulated the policies underlying the

rule:

> Every citizen is presumed to know the law thus declared, and it needs
> no argument to show that justice requires that all should have free
> access to the opinions, and that it is against sound public policy to
> prevent this, or to suppress and keep from the earliest knowledge of
> the public the statutes or the decisions and opinions of the justices.

*Nash v. Lathrop*, 142 Mass. 29, 35, 6 N.E. 559 (1886).

This same rule prohibits copyright in a state's constitution and statutes. A

contract cannot grant a publisher the exclusive right to publish a state's

constitution and statutes. *Davidson v. Wheelock*, 27 F. 61 (Minn. Cir. Ct.1866).

"States' laws are public records open to inspection, digesting and compiling by anyone." *Harrison Co. v. Code Revision Comm'n*, 244 Ga. 325, 329 (1979). Laws are created by legislators who are government employees, so there is no justification for the copyright monopoly. *Banks*, 128 U.S. at 244. And the public—not a state government—owns the law because "the citizens are the authors of the law, and therefore its owners, regardless of who actually drafts the provisions, because the law derives its authority from the consent of the public, expressed through the democratic process." *Building Officials & Code Adm. Int'l. Inc. v. Code Tech., Inc.*, 628 F.2d 730, 734 (1st Cir. 1980). Citizens also must have free access to the laws that govern them to satisfy the notice requirement of the due process clause. *Id.* "The… principle is that no man shall be held criminally responsible for conduct which he could not reasonably understand to be proscribed." *United States v. Lanier*, 520 U.S. 259, 265 (1997).

The U.S. Copyright Office recognizes that government edicts are in the public domain:

> As a matter of longstanding public policy, the U.S. Copyright Office will not register a government edict that has been issued by any state, local, or territorial government, including legislative enactments, judicial decisions, administrative rulings, public ordinances, or similar types of official legal materials. Likewise, the Office will not register a government edict issued by any foreign government or any translation prepared by a government employee acting within the course of his or her official duties.

- 7 -

Compendium of U.S. Copyright Office Practices § 313.6(c) (2) (3d ed. 2014)

(citations omitted).  The Compendium specifically addresses annotations, stating:

"…the Office may register annotations that summarize or comment upon legal

materials issued by a federal, state, local, or foreign government, unless the

annotations themselves have the force of law."  *Id.* (citations omitted).

> ii.   **The O.C.G.A. is an edict of government because the Legislature, acting through the Code Revision Commission, requires the O.C.G.A. to include the annotations.**

The Commission contends that the State owns copyright in the O.C.G.A.'s

annotations because the General Assembly enacts the statutory text, but not the

annotations.  Am. Compl., Dkt. 11 at ¶ 11 ("The judicial summary is only added in

the annotated publication and is not enacted as law.").  The first flaw in that

argument is that the rule that law is not subject to copyright does not make

enactment the sole touchstone for whether a work is an edict of government.

*Wheaton v. Peters*, for example, states that no reporter can have copyright in

written opinions delivered by the Supreme Court.  33 U.S. at 668.  Therefore, the

Court's analysis should instead focus on the Georgia Assembly's decisions to

include annotations in the State's only official Code.

There is no official code of Georgia that is not annotated.  Georgia's

Legislative Counsel publishes the *User's Guide to the Official Code of Georgia*

*Annotated.*  Ex. N.  The *Guide* underscores the annotations' importance for understanding and using the official law of Georgia.  First, it tells those who write about the Code to cite the O.C.G.A. rather than one of the unofficial codes.  *Id.* at xvii.  Second, it explains that some annotations are indexes, tables and research references that advise the reader of other materials relevant to understanding the nuances and interpretations of the statutory text itself.  *Id.* at xxi-xxii.  Third, it explains that the manuscript of 53 Code titles enacted in 1981 was not the official Code until the Annotations, indexes, editorial notes and other materials were added.  *Id.*  The General Assembly enacted a printed manuscript version, called *Code of Georgia 1981: Legislative Edition*.  Ex. D at xi.  The Legislature passes acts "to amend….the Official Code of Georgia Annotated."  Ga. Const., art. 3, Section 5, ¶ 1.  The General Assembly established the Commission to ensure, among other things, that the O.C.G.A., the State's only official Code, will contain the annotations.  Ex. D at ix-x.

Summaries of judicial decisions, opinions of the Attorney General of Georgia, and Advisory Opinions of the State Bar, are examples of annotations important to understanding Georgia's laws.  The publication agreement requires the O.C.G.A to include these.  Ex. F at 2.  Presumably, the General Assembly and Commission want a citizen, reading a statute to understand the law that governs

her conduct, to be able to learn from the O.C.G.A. how judges, Georgia's Attorney General and the State Bar have interpreted and applied that statute.  One summary warns that "[a]ttorneys who cite unofficial publications of 1981 code do so at their peril" and that "Official Code publication controls over unofficial compilation." Ga. Code Ann. § 1-1-1, note (judicial decisions).  Some buy the O.C.G.A. for its annotations.  Ex. I at 2.  For all these reasons, the O.C.G.A., including the annotations, must be treated as one work by the General Assembly and the Commission, and not subject to copyright.

> ### iii. The State's decision to outsource preparing and maintaining the O.C.G.A. to Lexis/Nexis cannot circumvent U.S. copyright law to allow Georgia to own a copyright in the annotations.

The Commission alleges that the annotations are copyrightable because they are "original and creative works of authorship" Lexis/Nexis prepares for the O.C.G.A. as works for hire for the State of Georgia.  Am. Compl., Dkt. 11 at ¶¶ 2, 13.  But the work-for-hire doctrine cannot circumvent the time-honored rule excluding edicts of government, including official codes, from copyrightable subject matter.  That the Commission contracts with a publisher to help prepare and update the annotations that are an important part of the only official Code does not make those annotations separate copyrightable works.  The Commission is the author of the annotations it hires Lexis/Nexis to prepare just as if the

Commissioners and their legislative staff had prepared the annotations themselves. "In the case of a work for hire, the employer or other person for whom the work was prepared is considered the author." 17 U.S.C. § 201.

Many kinds of law could be considered works for hire. For example, *Nash v. Lathrop* involved a contract between Massachusetts and a publisher that purported to give the publisher the exclusive right to publish certain judicial opinions. 142 Mass 29, 6 N.E. 559 (1886). The Massachusetts Supreme Court, however, recognized that the legislature could not constitutionally contract to keep opinions or statutes out of public access. *Id.* 142 Mass at 35, 6 N.E. at 560. This Court should reach the same result.

### C. Copyright does not protect the O.C.G.A.'s annotations because there are so few ways to accurately summarize opinions and few reasonable ways to arrange research reference material that the expression lacks sufficient originality and creativity.

Section 102(b) of the Copyright Act, 17 U.S.C. § 102(b), precludes copyright for "any idea, procedure, process, system, method of operation, principle or discovery, regardless of the form in which it is described, explained, illustrated, or embodied in such work." Under the merger doctrine, copyright does not protect expression when there is only one way, or so few ways to express an idea, that protecting the expression would effectively protect—and remove from the public domain—the idea itself. *Bellsouth Advert. & Publ'g Corp. v. Donnelly Info.*

- 11 -

*Publ'g, Inc.*, 999 F.2d 1436, 1442 (11th Cir. 1993) (en banc); *Warren Publ'g, Inc. v. Microdos Data Corp.*, 115 F.3d 1509, 1518 n. 27 (11th Cir. 1997) (en banc).

Courts have similarly found expression in a compilation or derivative work not copyrightable by finding that the selections or editorial decisions lacked sufficient creativity or originality for copyright when they were conventional and dictated by the need the compilation serves.  For example, the Second Circuit, while declining to invoke the merger doctrine, agreed with Matthew Bender that West Publishing's case reports lacked enough originality or creativity for copyright because "industry conventions or other external factors so dictate selection that any person composing a compilation of the type at issue would necessarily select the same categories of information."  *Matthew Bender & Co., Inc. v. West Pub. Co.*, 158 F.3d 674, 681-82 (2d Cir. 1998).  The *Matthew Bender* court recognized that "West's editorial work entails considerable scholarly labor and care, and is of distinct usefulness to legal practitioners" but reasoned that, for any editor of judicial opinions "faithfulness to the public domain original is the dominant editorial value, so that the creative is the enemy of the true."  *Id.* at 688.

That same reasoning applies to the O.C.G.A's annotations.  As to the summaries, lawyers are trained to identify an opinion's holding, operative facts and reasoning and distill them into a more succinct summary.  It is not surprising,

therefore, that the O.C.G.A.'s case summaries home in on the same facts, language and holdings as the case summaries in West's Code of Georgia, Annotated, an unofficial compilation. *Compare* Ga. Code Ann. § 50-2-1 ann. *with* Ga. Code Ann. § 50-2-1 ann. (West 2016). Their similarities flow directly from the public domain opinions. Likewise, Editor's notes, indexes, lists of law review articles and other reference materials are meant to be accurate compilations of uncopyrightable facts about the statutes, organized, as provided in the publication agreement, so as to be most useful for legal research. Lexis/Nexis's editorial work, like West's in the *Matthew Bender* case, no matter how scholarly, laborious and useful, lacks sufficient creativity to make these annotations original or protectable aspects of the O.C.G.A.

> **D.     To the extent any portion of the O.C.G.A. is copyrightable, Public Resource's scanning and posting of the O.C.G.A. is a fair use of the copyrighted works.**

The primary objective of copyright is not to reward the labor of authors, but to "promote the Progress of Science and the useful Arts…" *Feist Publ'ns., Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 349 (1991) (quoting U.S. Const., art. I, § 8, cl. 8); *see also Campbell v. Acuff-Rose Music, Inc.* 510 U.S. 569, 574 (1994). In other words, "copyright's purpose is to promote the creation and publication of free expression." *Eldred v. Ashcroft*, 537 U.S. 186, 219 (2003). The fair use doctrine

exists to serve that purpose by providing for some lawful use of copyrighted materials without the copyright holder's authorization.  *Campbell*, 510 U.S. at 574. Section 107 of the Copyright Act, which codifies the fair use doctrine, requires a court to consider four nonexclusive factors, each discussed below.  Because the factors are nonexclusive, and fair use is an equitable doctrine, courts must consider every case on its own facts.  *Id.* at 560; *Campbell*, 510 U.S. at 577-78.  Whether a given secondary (allegedly infringing) use constitutes fair use may be resolved via summary judgment if a reasonable trier of fact could reach only one conclusion. *Katz v. Google, Inc.*, 802 F. 3d 1178, 1184 (11th Cir. 2015).  Here, summary judgment is appropriate because the material facts are not in dispute.

> ### i. The purpose of Public Resource's non-commercial use, to make Georgia's only official Code accessible to the public, favors fair use.

The first factor in a fair use inquiry is "the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes."  17 U.S.C. § 107(1).  Here, it is undisputed that Public Resource's use is for nonprofit, educational use.  Stip. at ¶ 57; Malamud Decl., Ex. A at ¶ 45.  Beyond that, the critical inquiry is "whether the work merely supersedes the objects of the original or instead adds something new, with a further purpose or different character." *Campbell*, 510 U.S. at 579.  For example, a Second Circuit

LEGAL02/36379790v4

panel held that digitizing entire copyrighted books for Google's Library Project and Google Books project is fair use. *Authors' Guild v. Google, Inc.*, 804 F.3d 202, 225 (2d. Cir. 2015) (Leval, J), *cert. denied*, No. 15-849, 2016 WL 1551263 (April 18, 2016). Thus, an important focus is whether the use is "transformative." *Campbell*, 510 U.S. at 579. "Reproduction of an original without any change can still qualify as fair use when the use's purpose and character differs from the original, such as photocopying for use in a classroom." *American Inst. of Physics v. Schwegman, Lundberg & Woessner, P.A.*, No. 12-528, 2013 WL 4666330, at *11 (D. Minn. Aug. 30, 2013). For example, making an exact digital copy of a student's thesis for the purpose of detecting plagiarism is a fair use. *A.V. ex rel v. iParadigms, LLC*, 562 F.3d 630, 639 (4th Cir. 2009). Likewise, a financial reporting service's copying and dissemination of an entire sound recording of a public company's conference call, to tell a wider audience what the company had represented to investment analysts, was found to be fair use. *Swatch Grp. Mgm't. Serv. Ltd. v. Bloomberg L.P.*, 756 F.3d 73, 85 (2d. Cir. 2014). Libraries' creation of digital copies of entire copyrighted books by scanning them to create a "digital library" and allow the public to search that library to locate where specific words or phrases appear in the digitized book has been held to be a fair use. *Authors' Guild, Inc. v. Hathitrust*, 755 F.3d 87, 97 (2d. Cir. 2014). These cases illustrate

- 15 -

that the purpose of using an entire work determines whether that use qualifies as fair use.

The Commission wants Georgia lawyers and citizens to be able to read and use the O.C.G.A's annotations, but only by purchasing a printed publication, CD-ROM, or Lexis subscription service (or using one purchased by a library or other institution).  On the other hand, Public Resource's mission is to improve public access to government records and the law.  Malamud Decl., Ex. A at ¶15, 19, 45.  Public Resource's purpose in scanning and posting the O.C.G.A. was to facilitate scholarship, criticism and analysis of the official Code, to inform and educate the public about the laws that govern it, and to encourage public engagement with the law.  *Id.* at 45.  Some citizens would prefer not to have their use of their laws tracked or find Lexis/Nexis's terms of use distasteful.  Johnson Decl., Ex. K at ¶ 10.  Public Resource therefore wants the public to have free access to the official Code, including the annotations that make it official and authoritative, on a better website.  Malamud Decl., Ex. A at ¶ 45.  But Public Resource does not just want to save citizens a trip to the library or the cost of a Lexis/Nexis product.  It also wants the O.C.G.A. to be free for download so that people will be able to use the Internet and programming skills to create other websites that make the O.C.G.A. even more useful to Georgia's citizens and the general public.  Making an official code

available in bulk enables volunteers in the community to create a better web.
Declaration of Beth Noveck, Ex. C at ¶7.

By purchasing, scanning, and posting the O.C.G.A. volumes, Public
Resource strives to provide a significantly more useful version.  Malamud Decl.,
Ex. A at ¶ 45.  Each scanned volume also has Optical Character Recognition,
which makes it significantly more accessible to visually impaired people.  *Id.* at
¶46.  The process of posting each volume includes significant metadata, such as the
names of the titles included in each volume, making them more easily discovered
using search engines.  *Id.* The process of posting each volume creates a version
that is compatible with e-Book readers, smart phones, and tablets.  *Id.*  Public
Resource also provides all the volumes in bulk on its servers, allowing users to
quickly access the entire Code or a specific volume, and copy and paste relevant
sections into their own documents.  *Id.*

Additionally, the Internet Archive's user interface allows readers to search a
volume of the O.C.G.A., displaying "pins" for each page that contain the search
term, allowing a reader to quickly look for key phrases in different locations.  *Id.*
It also allows the reader to bookmark a particular page and send a link via email or
social media.  Public Resource's purpose in scanning and posting of the O.C.G.A.,
and certainly the purposes of the third party uses that Public Resource seeks to

enable, are therefore transformative in a way that "promotes the Progress of Science and the useful Arts," U.S. Const. art 1 § 8 cl. 8.  Therefore, the first factor favors a finding of fair use and not infringement.

### ii. The nature of the copyrighted work favors fair use.

The second factor requires courts to consider "the nature of the copyrighted work."  17 U.S.C. § 107(2).  "[S]ome works are closer to the core of intended copyright protection than others, with the consequence that fair use is more difficult to establish when the former works are copied."  *Campbell*, 510 U.S. at 586.  The scope of fair use is greater with respect to informational—as opposed to more creative—works are involved.  *Consumers Union of United States, Inc. v. General Signal Corp.*, 724 F.2d 1044, 1049 (2d Cir. 1983).  Copyright in a factual compilation is "thin" and does not extend to the facts themselves.  *Feist,* 499 U.S. at 349-51; *Bellsouth*, 999 F.3d at 1445.

As discussed above, the O.C.G.A. is a compilation and primarily a factual work. Assuming that the annotations contain sufficient original expression to be copyrightable—if they were not part of the State's only official Code—the O.C.G.A.'s purpose is still to impart facts.  The General Assembly and the Commission decided that the authorized, official Code should, in one publication, provide both the statutory text and annotations essential to understanding,

interpreting and using the law of Georgia.  Ex. D at xi.  The O.C.G.A's purpose is
not to showcase the law drafters' form of expression, or the editors' skills in
summarizing cases or preparing accurate indexes.

Moreover, most of the annotations—such as indexes, tables, and research
references—are even less expressive and more factual than the summaries of
judicial decisions and attorney general and state bar opinions.  See *User's Guide*,
Ex. N at xxi-xxii.  In *Matthew Bender,* the court affirmed the district court's
decision that West's selection and arrangement of preexisting facts in its case
reports displayed insufficient creativity to be protectable.  *Matthew Bender*, 158
F.3d at 688.  For similar reasons, the second statutory factor favors holding that
Public Resource's posting of the O.C.GA. is a fair use.

### iii.   *Public Resource used no more than necessary to serve the purpose of making the official Code more available to citizens of Georgia and the general public.*

The third fair use factor is "the amount and substantiality of the portion used
in relation to the copyrighted work as a whole."  17 U.S.C. § 107(3).  This factor
asks whether "the quantity and value of the materials used are reasonable in
relation to the purpose of the copying."  *Campbell*, 510 U.S. at 586.  Verbatim
copying of a written work may sometimes be necessary to adequately convey the
facts.  *Swatch*, 756 F.3d at 85.  Likewise, home videotaping of entire movies and

- 19 -

television shows for certain noncommercial purposes qualifies as fair use.  *Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417, 449-450 (1984).

Here, Public Resource posted the entire O.C.G.A. because posting only the statutory text would not serve the same purpose.  Scholarship, analysis and other public engagement with the law is undermined without access to the complete official Code, including summaries of judicial opinions and attorney generals' opinions.  Judges, lawyers and citizens treat the annotations as authoritative and rely on them to interpret the code.  Therefore, Public Resource posts as much of the O.C.G.A. as is necessary to fulfill its purpose.

### iv.    The record contains no evidence of harm to the copyright holder or the value of the O.C.G.A.

The fourth fair use factor is "the effect of the use upon the potential market for, or value of the copyrighted work."  17 U.S.C. § 107(4); *Campbell*, 510 U.S. at 590.  Specifically, courts consider whether the secondary use brings to the market a competing substitute for the original, or its derivative, "so as to deprive the rights holder of significant revenues because of the likelihood that potential purchasers may opt to acquire the copy in preference to the original."  *Authors Guild v. Google*, 804 F.3d at 223.  In the *Google* case, the court considered whether snippet views of digitized books were a significantly competing substitute for the plaintiffs' copyrighted books and concluded that they were not.  *Id.* at 224.  Even if

Google's use could cause some loss of sales, because sometimes a snippet view will satisfy a searcher's need for access to a text, the Second Circuit still found fair use.  The court also reasoned that the sales lost because of a snippet view occur in relation to interests not protected by copyright, such as historical facts.  *Id.*

Here, there is no evidence that Public Resource's posting of the O.C.G.A. brings to the market a competing substitute for the original so as to deprive the State of significant revenues.  First, because of the publishing agreement's unusual nature, the State does not receive revenue from royalties on the sale of printed, bound volumes of the O.C.G.A. in the first place.  Ex. O at 14.  If Lexis/Nexis loses any sales of the printed, bound volumes because citizens can read the O.C.G.A. online for free, only Lexis/Nexis is deprived of revenues, and it is not the copyright holder.  Second, while the Commission does receive royalties from the licensing fees for the CD-ROM and on-line versions of the O.C.G.A., there is no evidence that Public Resource's posting of the O.C.G.A. has lessened those royalties or is likely to do so.  In the State's fiscal year 2014, the amount of these licensing fees was $86,747.91.  Ex. J.  Even if Lexis/Nexis never sold another CD-ROM of the O.C.G.A, which is unlikely, this is hardly significant compared to the cost of paying the General Assembly's legislative staff involved in drafting laws and maintaining the Code.  Instead, the Commission alleges that if Lexis/Nexis

cannot recoup its costs to develop the annotations, "the State of Georgia will be required to either stop publishing the annotations altogether or pay for development of the annotations using tax dollars." Am. Compl., Dkt. 11 at ¶ 2. Assuming this were true, it is not harm to the market for the O.C.G.A.  It is a different kind of harm.

Importantly, the publishing agreement requires Lexis/Nexis to track use of the unannotated code on the free Lexis/Nexis website and, after each publishing year, provide reports to the Commission including "the effect, if any, on subscriptions to the Code in print and on CD-ROM."  Ex. F at 12.  Public Resource requested production of those reports in discovery.  The Commission produced a one-page summary of monthly accesses, which Public Resource assumes is Lexis/Nexis's report under the agreement.  Ex. H.  But that document does not address the free website's effect, if any, on paid subscriptions.

On the other hand, many public domain works, such as religious texts, Shakespeare's plays and *The Federalist Papers*, can now be found on the Internet, yet many individuals still purchase new, printed versions of them.  Most libraries and law firms within Georgia will prefer to continue purchasing the printed, bound volumes for their patrons' use, as they have done since the O.C.G.A. was first published.  Many other official state codes are available, in their entirety, on the

- 22 -

Internet, but the printed editions still sell well.  And a citizen merely seeking to consult the only official Code of Georgia on a particular issue would be highly unlikely to purchase the whole O.C.G.A. from Lexis/Nexis in the first place, so no sale is lost when that citizen consults the O.C.G.A., including annotations, using Public Resource's website.  Likewise, if a legislator from another state, or her staff, wants to compare proposed legislation to the analogous Georgia statute, she is unlikely to purchase the printed edition of the O.C.G.A from Lexis/Nexis, so no sale is lost when she consults it using Public Resource's website instead.

And, as in the *Google Books* case, the ability of Public Resource's copy to satisfy a citizen's need to otherwise consult an authorized copy of the O.C.G.A. bound or on CD-ROM will generally occur in relation to interests not protected by copyright, namely finding specific facts as part of broader research.  Students, for example, are hardly in a position to buy a Lexis/Nexis product to read selected annotations.  For legal research, for example, a student or lawyer might refer to the annotations to find the year a statute was last revised, or which cases cite a specific statutory provision of interest.  These are facts, and the State's copyright (if any) does not extend to facts in a book, only certain expression.  *See Authors Guild v. Google*, 804 F.3d at 224 (quoting *Hoehling v. Univ. Studios, Inc.*, 618 F.2d 972, 974 (2d Cir. 1980)).  Only the laziest student or lawyer would rely on a judicial

summary—even a succinct and accurate one—without reading the actual judicial decision, which is in the public domain.  Therefore, the Court may conclude that Public Resource's scanning and posting does not offer a competing substitute for the printed O.C.G.A. that deprives the State of significant revenues.  For the same reasons, Public Resource does not contribute to third parties' infringement because the scanned O.C.G.A. on the Internet has substantial noninfringing uses that also do not deprive the State of significant revenue.  *See Sony*, 464 U.S. at 456 (finding no contributory infringement where video recorders had substantial noninfringing uses and studios failed to show any likelihood of substantial harm).  Therefore, the fourth factor is neutral or favors fair use.

## IV.  <u>CONCLUSION</u>

For the reasons set forth above, the Court should grant summary judgment in favor of Public Resource on its counterclaim and both the Commission's claims. Respectfully submitted this 17th day of May, 2016.

By: */s/ Elizabeth H. Rader*
_____
Jason D. Rosenberg
Georgia Bar No. 510855
jason.rosenberg@alston.com
Sarah P. LaFantano
Georgia Bar No. 734610
sarah.lafantano@alston.com
ALSTON & BIRD LLP
One Atlantic Center

- 24 -

1201 West Peachtree Street
Atlanta, GA  30309-3424
Telephone 404-881-7461
Fax (404) 253-8861

Elizabeth H. Rader
*Admitted pro hac vice*
elizabeth.rader@alston.com
ALSTON & BIRD LLP
950 F Street, NW
Washington, DC 20004
Telephone:  202-239-3008
Fax: (202) 239-3333

*Attorneys for Defendant*

- 25 -

CODE REVISION COMMISSION on )
Behalf of and For the Benefit of the )
GENERAL ASSEMBLY OF )    **CIVIL ACTION**
GEORGIA and the STATE OF )
GEORGIA, )    **FILE NO.   1:15-CV-2594-MHC**
 )
       Plaintiff, )
 )
v. )
 )
PUBLIC.RESOURCE.ORG, INC., )
 )
       Defendant.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I have filed the foregoing **Defendant**

**Public.Resource.Org, Inc.'s Memorandum of Law In Support of Its Motion**

**for Summary Judgment** was electronically filed with Clerk of Court using the

CM/ECF system which will automatically send notification of such filing to all

attorneys of record.


*/s/ Sarah P. LaFantano*
Sarah P. LaFantano
Georgia Bar No. 734610

LEGAL02/36379790v4