# EXHIBIT E

Reprinted with permission from the Georgia State Bar Journal, Volume 18, Number 3, February 1982. Copyright State Bar of Georgia. Statements expressed within this article should not be considered endorsements of products or procedures by the State Bar of Georgia.

# THE MAKING OF A NEW CODE

## The Official Code of Georgia Annotated: Recodification in Georgia



By Terry A. McKenzie

ON NOVEMBER 1, 1982, the first Official Code of Georgia in almost 50 years will become effective.[1] The adoption of this Code represents years of effort by the General Assembly, the Code Revision Commission, the Office of Legislative Counsel, the State Bar of Georgia, and the Michie Company. This article reviews the recodification process in Georgia and describes the features of the new Code in an effort to provide information that will be helpful in using the new Code.

### History of Recodification

Official codes were enacted by the General Assembly or became effective following their enactment in 1863, 1868, 1873, 1882, 1889, 1910, and 1933. In addition to these official codes, several private individuals and companies have published unofficial codes in Georgia. These unofficial codes were not enacted by the General Assembly.

Recognizing the length of time that had elapsed since the adoption of the Code of 1933 and the changes that have occurred in the law and in state government since that time, the General Assembly created the Code Revision Study Committee in 1976.[2] This committee recommended that the recodification process be undertaken. To carry out this recommendation, the General Assembly in 1977 created the Code Revision Commission (the "Commission").[3] The Commission is composed of the Lieutenant Governor and four members of the Senate, the Speaker and four additional members of the House of Representatives, and five members appointed by the president of the State Bar of Georgia, one of whom is a senior judge of the superior courts and one of whom is a district attorney. The Office of Legislative Counsel provides staff services to the Commission. Following presentations by five law publishers, the Commission entered into a contract on June 19, 1978 with the Michie Company for the preparation and publication of the Official Code of Georgia Annotated.

### The Recodification Process

Immediately following the execution of the contract with the Michie Company, the Commission and its staff began developing the rules of style that are used in the new Code. A three unit numbering system was adopted for Code section numbers.[4] Uniform designations were developed for subsections, paragraphs, subparagraphs, divisions, and subdivisions of Code sections.[5] The Code was divided into titles, titles into chapters, chapters into articles, articles into parts, and parts into subparts. Rules for capitaliza-

tion and punctuation were adopted and a dictionary[6] was selected as a standard reference work. Standard headings were developed for those types of sections that are repetitive in nature, such as definition sections.[7]

Following the adoption of the rules of style, the editorial staff of the Michie Company arranged the statutes into 53 titles selected by the Commission. This was done by actually cutting and pasting copies of the Code of 1933 and all Georgia laws enacted since 1933. In addition, statutes enacted prior to 1933 that were inadvertently omitted from the Code of 1933 were included. The statute copy that resulted from this process thus contained the text of the laws as they were actually enacted by the General Assembly.

The editors then began a title-by-title examination of this material. A main memorandum and one or more supplemental memoranda were sent to the Commission for each title. The questions and proposals for changes contained in the memoranda were examined by the staff, proposed responses were developed, and the questions and proposals were then considered and resolved by the Commission itself. More than 100,000 questions were resolved in this manner. In addition to making the changes resulting from resolving the questions contained in the memoranda, the editors also made grammatical changes, corrected typographical errors, renumbered Code sections and portions thereof, corrected cross-references within the text, and made changes necessitated by rules of style. All of these changes were examined and approved by the Commission and its staff.

Upon completion of this process, each title was typeset in a page proof format and was again examined completely by the editors and the Commission's staff. The page proofs were proofread several times and every memoranda question and response was compared with the page proofs to ensure that the editorial work was correct. Throughout this process, every effort was made to avoid changes in the substance of the law. In those instances in which the Commission felt that a substantive change had to be made, a separate bill was introduced in the General Assembly to accomplish the change. these bills were enacted in the 1980 and 1981 regular sessions of the General Assembly.

In reviewing the memoranda and page proofs, the Commission and its staff received the assistance of several hundred people in the state. The Code Revision Overview Committee of the State Bar and a number of committees, sections, and individual members of the Bar reviewed memoranda or page proofs and provided valuable assistance to the Commission. In addition, each department of state government and a number of organizations assigned people to work with the Commission in the recodification project.

Upon completion of the review of the page proofs, the Michie Company printed 500 sets of the statutory portion of the Code. This manuscript version is entitled the *Code of Georgia 1981 Legislative Edition*. It is this document that was enacted by the General Assembly. Copies of the legislative edition have been placed in the office of the clerk of the superior court or the county law library in each county so that members of the Bar may examine them. The text of the statutes contained in the legislative edition is currently being merged with annotations, notes, and other material and will be published in the early summer of 1982 as the Official Code of Georgia Annotated. This new Code will become effective on November 1, 1982 and will repeal the Code of 1933 and most general laws of the state as of the effective date.

### Types of Changes

As noted earlier, in the preparation of the new code typographical errors were corrected, grammatical corrections were made, and the laws were converted into the style adopted by the Commission. While these changes are important from an aesthetic point of view and constitute a major portion of the changes made in the statutory law, they are not the most important changes made.

In the past when an Act of the General Assembly was declared unconstitutional, there was no established procedure to ensure that such Act was specifically repealed by the General Assembly. These Acts are not included in the new Code and are repealed by its adoption.

There are also many laws that are still in effect in a technical sense but that are obsolete either from the mere passage of time, through the advancement of technology or society in general, or as a result of changes in the law itself. As an example, under Chapter 78-2 of the Code of 1933, the state provided pensions for ex-Confederate soldiers and their widows. In 1912, there were 19,972 soldiers and widows receiving pensions, but they are all now deceased. Thus, Chapter 78-2 has become obsolete through the passage of time. As another example, under an 1826 Act, now codified as Code Section 40-1403, the Comptroller General is required to reside in the state capitol building. This provision may have served a purpose at a time when communications were slow, but it is hardly necessary today and it has been many years since this



*Terry A. McKenzie is a Deputy Legislative Counsel and is in charge of the Code Revision Division of the Office of Legislative Counsel of the General Assembly of Georgia. He received his B.B.A. degree in 1966 and his J.D. degree in 1969 from the University of Georgia.*

# NEW CODE

provision was observed. Such obsolete laws have been omitted from the new Code.

Since the last official code was adopted in 1933, there have been several major reorganizations in state government. A number of the changes in the structure of state government were accomplished through broadly worded statutes. The Executive Reorganization Act of 1972[8] is an example of this method of reorganization. Using fairly broad language, this Act transferred functions or assigned powers and duties without specifically amending the text of the statutes directly affected. Thus, the Ocean Science Center of the Atlantic Commission was abolished and its functions were divided between the Department of Natural Resources, the Board of Regents of the University System of Georgia, and the Department of Industry and Trade and this division of functions was accomplished without a specific amendment to the law creating the commission.[9] The Code revision process has corrected the language of the statutes to carry out the various reorganization Acts.

In addition to reorganization Acts, there have been a number of statutes and constitutional amendments that have changed the titles of public officials. These have been given effect in the new Code. For example, the term "ordinary" has been changed to "judge of the probate court."[10]

Of major significance has been the resolution of conflicts in the law and the deletion of material that had previously been repealed by implication. In performing this part of the recodification process, very careful attention was given to the rules of statutory construction, always keeping in mind the intention of the General Assembly in enacting a particular statute. Conflicts, of necessity, must be resolved if all general statutes are being enacted at one time in a new code because there will not be a latest expression of the General Assembly once everything is reenacted in one Act. As an example, Code Section 5-104 provides that the Commissioner of Agriculture shall be allowed one clerk to assist in the duties of his office. Later appropriations Acts and the laws dealing with the State Merit System of Personnel Administration allow the employment of more than one employee. In preparing the new Code, such conflicts in the law have been resolved and statutes have been repealed in the revision process to avoid unintended results from the adoption of the new Code.

## Contents of the Code

The Official Code of Georgia Annotated will contain 53 titles. In addition to these titles, a separate volume will contain the United States Constitution and the Constitution of Georgia. The constitutions will not be assigned Code title numbers but will retain their original internal designations.

Until all annotations, editorial notes, and other materials are completed, it is impossible to determine the number of volumes that the new Code will contain. Each volume will contain between 700 and 850 pages, will be stub bound to allow for substantial pocket parts before a volume will need replacement, and will be bound so that the book will lie open at any page. The Michie Company will sell individual volumes of the Code in addition to complete sets.

A new index is being prepared for the Code. The general index will contain no double jump or blind references. Each provision in the Code will be adequately indexed and, under the provisions of the code revision contract, each provision of the Code must be cited in at least two index entries. Each volume of the code will also contain an individual volume index. Both of these indexes will contain popular names of Acts where they are ascertainable. In addition to the general index, a new local and special laws index has been prepared. This index contains all local laws enacted since 1730. This has been compiled after a complete reading of each Act and represents a significant historical resource.

Following each Code section is a history line that will trace that Code section back to its origin. If a Code section originated in a prior code, rather than in a separate Act, such fact will be noted with the abbreviation "Orig." The section number of the Act in which the Code section or amendment thereto actually appears will be given in each citation in addition to the volume and page number of the Georgia laws at which the Act may be found. Also, each official code and the section number thereof will be given in the history line for a Code section to show where that new Code section appeared in prior official codes. While a Code section's history can easily be traced backwards through the history lines, conversion tables will also be included in the new Code so that a researcher can easily trace Code sections from their origin forward to the new Code. The Code will also contain a note detailing the history of prior codes in Georgia.

Where appropriate, Code sections will be followed by cross-references to related provisions of the Code as well as by appropriate references to the United States Code. Code sections that have been cited in articles or notes in law reviews published in Georgia, including the *Georgia State Bar Journal*, will be followed by a reference to such articles or notes. Editorial notes will also be included where the editors or the Commission feel that such notes would be helpful.

The editorial staff of the Michie Company has read and annotated all appropriate Georgia cases and federal cases construing Georgia law. The annotations contain direct quotations from the reported decisions where possible. Annotations contain the full name of the case, the full *Georgia Reports* and *Georgia Appeals Reports* citations, the full *Southeastern Reporter* citation, and the year of decision. Annotations will generally be arranged by subject matter with cases involving the constitutional-

# NEW CODE

ity of the statute appearing first.

In addition to judicial decisions, the annotations will also include summaries of the *Opinions of the Attorney General.* Following the *Opinions of the Attorney General* will be research references that will cite the user of the Code to appropriate articles or notes in *American Jurisprudence, Corpus Juris Secundum, American Law Reports,* and *Uniform Laws Annotated.*

## Points to Ponder

The adoption of the Official Code of Georgia Annotated marks a departure from prior codes in several respects. Unlike a number of prior codes, the new Code contains a specific repealer that repeals all prior codes and most prior general laws of the state. If a law was omitted from the Code of 1933, it was not necessarily repealed as a result of the omission. Code Section 1-1-10 of the new Code repeals all prior laws except for those excepted from repeal. In addition to specific Code sections or Acts that are listed, Code Section 1-1-10 exempts 15 classes of Acts and resolutions from repeal. These classes include laws that are not normally contained in a code because they are of limited duration or of limited interest to researchers. Examples of these types of laws include appropriations Acts, resolutions authorizing leases of state property, local Acts, resolutions creating study committees of the General Assembly, and Acts or resolutions directing that a memorial be erected or that a bridge be named in honor of someone. Although not codified, citations to these Acts and resolutions will be carried in the index.

The important point to remember is that the Official Code of Georgia Annotated will be the official publication of the general laws of this state that are contained therein. Future general Acts of the General Assembly will be drafted as amendments to this Code and it is this Code that will be cited in state publications.

Code revision is an ongoing effort. The Commission will continue in existence and can make recommendations and introduce legislation, through its members, to maintain the Official Code of Georgia Annotated. The Commission will also provide members of the Bar with a conduit for comments and suggestions for improvements in the Code.

The State of Georgia holds a copyright for the Official Code of Georgia Annotated. Under the provisions of the contract with the Michie Company, the Commission will control the price of the Code to subscribers, the price of pocket parts, and the replacement of individual volumes of the Code. The Commission intends to allow the replacement of volumes only when that becomes absolutely necessary. While the final price to subscribers will not be fixed until later, the Michie Company is offering a prepublication price of $600 per set to subscribers until March 1, 1982.

The Commission and the Michie Company have designed the new Code to make it as easy to use as possible. Every attempt has been made to make the arrangement of the laws within the Code as logical as possible and to allow for orderly future growth. A user's guide will be provided with the Code to explain its usage.

In addition to the user's guide, subscribers are encouraged to read the foreword and Title 1. Title 1, "General Provisions," contains the rules of statutory construction, definitions of terms that are used throughout the Code, a statement of legislative intent, statements relating to the effect of the new Code, and repealers and exceptions thereto.

A card will be placed in each set of the new Code containing a toll-free telephone number for the Michie Company. Anyone having a question or comment concerning the new Code is encouraged to call the publisher or the Commission.

The index for the new Code will also contain postage-paid cards that can be used if there is any question or comment concerning index entries. The preparation of an index is one of the most difficult aspects of publishing. Every effort is being made to ensure that the index for the new Code will be of the highest quality and will be easy to use. Anyone who feels that additional index entries would be helpful or who has difficulty finding a Code section in the new Code is encouraged to fill out and mail one of the postage-paid cards or to use the toll-free telephone number. Since the index has not been completed, members of the Bar are also encouraged to provide the Commission with their suggestions for particular index entries now so that such suggestions can be incorporated into the index prior to publication. Correspondence can be addressed to the Commission at 316 State Capitol, Atlanta, Georgia 30334.

## Conclusion

On November 1, 1982, the State of Georgia, the General Assembly, and the legal profession will enter a new era in Georgia. The Code Revision Commission, the Office of Legislative Counsel, the Michie Company, and the hundreds of people who have participated in the recodification process believe that it will be a positive step forward.

### FOOTNOTES

1. Ga. L. 1981, Ex. Sess., p. 8.
2. Ga. L. 1976, p. 739.
3. Ga. L. 1977, p. 922, amended by Ga. L. 1978, p. 230.
4. The three unit numbering system is used in a number of state codes. Under this system the Code section number is a combination of the title, chapter, and section numbers, separated by dashes. Thus, Code Section 25-2-3 is Code Section 3 of Chapter 2 of Title 25. While articles, parts, and subparts of the Code are numbered, they are not reflected in Code section numbers.
5. Subsections are designated (a), (b), etc.; paragraphs are designated (1), (2), etc.; subparagraphs are designated (A), (B), etc.; divisions are designated (i), (ii), etc.; and subdivisions are designated (I), (II), etc.
6. *Funk & Wagnalls Standard College Dictionary,* copyright 1977 by Harper & Row, Publishers, Inc.
7. In connection with definitions sections, users of the Code should note Code Section 1-3-2 of the Official Code of Georgia Annotated.
8. Ga. L. 1972, p. 1015, as amended.
9. Ga. L. 1972, p. 1015, Sections 705, 1518, and 2203.
10. Article VI, Section VI, Paragraph IV of the Constitution of Georgia of 1976.