# EXHIBIT G

# PUBLICATION MANUAL
## FOR THE
# OFFICIAL CODE OF GEORGIA ANNOTATED



## State of Georgia
## CODE REVISION COMMISSION

**4th Edition**
**December 2010**

Compiled on Behalf of the Commission by
### The Office of Legislative Counsel

**316 State Capitol**
**Atlanta, Georgia 30334**
**Phone: (404) 656-5000**

COMM000044

# PREFACE

The Code Revision Commission of Georgia, pursuant to those powers granted under Chapter 9 of Title 28 of the Official Code of Georgia Annotated and acting through the Office of Legislative Counsel as staff for the commission, has compiled this Publication Manual for use in publishing the Official Code of Georgia Annotated.

This manual specifies: general procedures for transmission of statutory materials to the publisher; the system for arranging, numbering, and designating material within the Code; and various other publishing details associated with the codification or recodification of the Code and laws of Georgia, including but not limited to case annotations, historical notes, research references, notes on law review articles, cross-references, summaries of the opinions of the Attorney General of Georgia, editor's notes, Code Revision Commission notes, and such other material as the commission determines to be useful to users of the Code.

This manual is organized as follows:

> Chapter 1 provides general background information relating to the Code and its publication, organization, and style.

> Chapter 2 relates to Acts generally and their transmission to the publisher following sessions of the General Assembly.

> Chapters 3 through 35 relate to specific Code contents and style thereof, etc.  These chapters are generally arranged in the order in which the elements appear in volumes of the Code.

> Appendixes A through C relate to specific publisher's tasks relating to updating internal references, supplements, and revised volumes.

COMM000045

**TABLE OF CONTENTS**

1.    GENERAL PROVISIONS

1.2_   Definitions
1.2    Background
1.3    Contract
1.4    General content of the O.C.G.A.
1.5    Citation form
1.6    General arrangement and numbering system
1.7    Arrangement of specific types of materials within the Code
1.8    Order of notes and annotations under units and Code sections
1.9    Printing specifications and type sizes
1.10   Dictionary
1.11   Effective date of Code
1.12   Official nature
1.13   Office of Legislative Counsel (state contact)


2.    ACTS–GENERALLY

2.1    Approval by the Governor; veto; veto override
2.2    Types of Acts
2.3    Codification of Acts
2.4    Numbering and citations of bills and Acts
2.5    Transmission of bills, Acts, and veto and veto override information
2.6    Comparing of Acts
2.7    Reading of Acts
2.8    Text of statutes as source for Code updating
2.9    Proofreading


3.    SECRETARY OF STATE'S CERTIFICATES

3.1    Generally


4.    TITLE AND CHAPTER ANALYSES

4.1    Title analysis
4.2    Chapter analysis
4.3    Analyses in supplements

December 2010

5.     RUNNING HEADS AND CORNER HEADS

5.1    Running heads
5.2    Corner heads


6.     HEADINGS AND CATCHLINES

6.1    Functions
6.2    Official or unofficial status
6.3    Rules for catchlining
6.4    Capitalization


7.     CONSTITUTION TEXT AND AMENDMENTS

7.1    Generally
7.2    Tables of comparable provisions
7.3    Citation form; references
7.4    Proposed amendments (Georgia Constitution)
7.5    Local amendments (Georgia Constitution)


8.     STATUTORY TEXT AND AMENDMENTS–GENERALLY

8.1    Restated language and directory language in Acts
8.2    Amended Code sections set out in full
8.3    Use of restated language set out in Act
8.4    Amended subsection with fewer paragraphs than old Code section


9.     STATUTORY TEXT AND AMENDMENTS–REVISER BILLS; REVISER ACTS

9.1    Generally
9.2    Organization and history cites
9.3    Incorporation procedure
9.4    Code sections printed in full
9.5    Amendment notes
9.6    Amendments to same Code section by other Acts in same session


10.    STATUTORY TEXT–INTERSTATE COMPACTS

December 2010

COMM000047

10.1    Style
10.2    Quotation marks
11.     REPEALS–GENERALLY

11.1    Scope of discussion
11.2    Form for repeal lines
11.3    Repeals of sublevels
11.4    Form for analyses of repealed provisions
11.5    Editor's notes
11.6    Reserved Code sections
11.7    Reused Code sections
11.8    Repeal lines in original O.C.G.A. volumes
11.9    Repeal prior to effective date


12.     REPEALS AND REENACTMENTS; AMENDATORY REVISIONS OF ENTIRE UNITS

12.1    Generally
12.2    Treatment of amendatory revisions of entire units
12.3    Treatment of repeals and reenactments
12.4    Reenactment of lapsed Code sections
12.5    Repeal of Code section and reuse of number


13.     HISTORICAL CITATIONS

13.1    Generally
13.2    Constitution Paragraphs
13.3    New Code sections
13.4    Amendments to Code sections
13.5    Delayed or contingent amendments to Code
13.6    Delayed and contingent amendments to the Constitution
13.7    Directory amendments to units
13.8    Amendment of Code section not having a history cite
13.9    Number redesignated by General Assembly
13.10   Code sections in amendatory revisions of units
13.11   Repeals and reenactments of Code sections
13.12   Double drafting at 1982 session
13.13   Code sections omitted from 1981 Code and added later
13.14   Amendment to effective date or other uncodified section of Act


14.     DELAYED EFFECTIVE DATES–GENERALLY

December 2010

COMM000048

14.1    Introduction
14.2    Memos to state
15.      DELAYED EFFECTIVE DATES–DELAYED ENACTMENTS

15.1    Generally


16.      DELAYED EFFECTIVE DATES–DELAYED AMENDMENTS

16.1    "Delayed amendment" defined
16.2    Effective on or before July 1 of following year
16.3    Effective after July 1 of following year
16.4    Multiple delayed amendments
16.5    Code section or sublevel amended but same Act provides for repeal of amendment
16.6    Caution


17.      DELAYED   EFFECTIVE   DATES–DELAYED   REPEALS;   TERMINATION
          PROVISIONS

17.1    Delayed repeal of Code section
17.2    Delayed repeal of subsection
17.3    Delayed repeal of unit
17.4    Effective after July 1 of following year
17.5    Caution
17.6    Effective date extended by legislation
17.7    Termination of Code sections (sunsetting)
17.8    Comparison of editor's notes and delayed effective date notes


18.      DELAYED EFFECTIVE DATES–DELAYED REPEALS AND REENACTMENTS

18.1    Generally
18.2    Effective between September 1 and the following July 1, inclusive
18.3    Effective after July 1 of year following supplement shipment


19.      DELAYED EFFECTIVE DATES–CONTINGENT DATES GENERALLY

19.1    Generally
19.2    Instructions from state as to unusual situations
19.3    Funding contingencies
19.4    Conversion of notes

December 2010

COMM000049

20.     DELAYED EFFECTIVE DATES–CONTINGENT ENACTMENTS

20.1    New unit
20.2    New Code section
20.3    Retirement provisions requiring concurrent funding


21.     DELAYED EFFECTIVE DATES–CONTINGENT AMENDMENTS

21.1    Generally
21.2    If Code section appears in bound volume only
21.3    If Code section appears in supplement or in current revised volume
21.4    When text is set out in 11 point type
21.5    Concurrent funding of retirement provisions
21.6    Reenactment of repealed and reserved Code section


22.     EFFECTIVE DATE NOTES

22.1    Generally
22.2    Default dates
22.3    Veto override
22.4    Notes
22.5    Form of notes generally
22.6    Date preceding approval by Governor
22.7    Change of effective date by later legislation
22.8    Retention of effective date notes


23.     AMENDMENT NOTES

23.1    Generally
23.2    Form
23.3    Stylistic items
23.4    Order and location of changes
23.5    Terminology
23.6    Multiple amendments
23.7    Reviser Acts
23.8    Veto Acts
23.9    Retention of amendment notes

December 2010

COMM000050

24.     CROSS-REFERENCES

24.1    Generally


25.     CODE COMMISSION NOTES; CHANGES IN STATUTORY TEXT; CONFLICTS;
        DISCREPANCIES IN ACTS; STATUTORY CONSTRUCTION

25.1    Changes in text generally; Code Commission notes
25.2    Effective date references in Code section text
25.3    Discrepancies between AP and ENR versions of bills or Acts
25.4    Problems and inconsistencies in amendments
25.5    Multiple and conflicting amendments and enactments
25.6    Enactment of new Code section with obviously wrong number
25.7    History cite
25.8    Missing Code text or other apparently inadvert change
25.9    Code commission note errors


26.     EDITOR'S NOTES–GENERALLY

26.1    Introduction
26.2    Required editor's notes each year under Code Section 1-1-1
26.3    Examples
26.4    Deleting notes in volume revision


27.     EDITOR'S NOTES–RESOLUTION ACTS

27.1    Generally
27.2    Specific types of resolutions to be noted
27.3    Form of notes
27.4    Retention of notes


28.     EDITOR'S NOTES–REPEALS

28.1    Generally
28.2    Delayed repeals
28.3    Sublevel repeals
28.4    Repeal of single Code section
28.5    Repeal of entire unit

December 2010

COMM000051

28.6    Previously repealed Code sections in chapter presently being repealed
28.7    Retention of editor's notes under repeal lines
28.8    Amendment by other Acts in year of repeal
28.9    Code section itself provides for automatic repeal
28.10   Entire chapter repealed that contains earlier repealed Code sections
28.11   Former chapter repealed in previous years and new chapter now enacted
28.12   Comparable provisions
28.13   Repeal and reenactment of previously repealed and reserved Code section


29.     LAW REVIEWS AND BAR JOURNAL

29.1    Generally
29.2    List of periodicals read
29.3    Categories of annotations
29.4    Reading of publications
29.5    Format of notes
29.6    Order


30.     CASE NOTES

30.1    Generally
30.2    Scope
30.3    Cites to Georgia Constitution
30.4    Cites to 1933 Code
30.5    Unconstitutional local Acts
30.6    Notes to entire unit
30.7    In accords
30.8    Analyses of notes
30.9    Order of case notes
30.10   Order of string cited cases
30.11   Catchlines and black-letter lines
30.12   Running catchlines
30.13   Decisions under prior law
30.14   Cited only
30.15   Style rules for case notes
30.16   Information in parentheses at end of case cite
30.17   How case note style differs from Code section text
30.18   Record of deleted notes
30.19   Shepard's treatment


31.     ATTORNEY GENERAL OPINIONS

December 2010

31.1   Generally
31.2   Receipt of opinions
31.3   Numbering of opinions
31.4   Annotations
31.5   Citation form
31.6   Editors's notes
31.7   Opinions under prior law


32.   STATE BAR ADVISORY OPINIONS

32.1   Generally


33.   RESEARCH REFERENCES

33.1   Generally
33.2   Form
33.3   Order
33.4   Retention of ALR notes


34.   INDEXES

34.1   General index
34.2   Volume indexes
34.3   Index of local and special laws and general laws of local application


35.   TABLES

35.1   Conversion tables generally
35.2   Disposition of Acts tables
35.3   Codification of language from pre-Code Act
35.4   Corresponding provisions of 1933 and 1981 Codes


APP. A.      INTERNAL REFERENCE UPDATES

A.36_   Generally
A.37_   Currency
A.38_   Updating references other than in Code section text
A.39_   Updating references in Code section text
A.40_   Georgia administrative rules and regulations

December 2010

COMM000053

## APP. B.      PUBLISHER'S SPECIAL TASKS ON SUPPLEMENTS

B.1    Generally
B.2    Proposed Constitutional amendments
B.3    Corporations comments
B.4    Rules and regulations of State Board of Workers' Compensation; rules and regulations of
       Subsequent Injury Trust Fund
B.5    Delayed effective dates from prior years

## APP. C.      PUBLISHER'S SPECIAL TASKS ON REPLACEMENT VOLUMES

C.1    Statute text
C.2    Statute catchlines and unit headings
C.3    Case notes
C.4    Editor's notes and Code Commission notes
C.5    Cross-references
C.6    U.S. Code notes
C.7    Administrative rules and regulations
C.8    Amendment notes and effective date notes
C.9    Delayed effective date notes
C.10   Notes under repealed Code sections or units
C.11   Notes under repealed and reenacted units
C.12   Research references

## INDEX

December 2010

COMM000054

# 1. GENERAL PROVISIONS

## 1.1.   Definitions

As used in this manual, the term:

(1) "Act" means a bill that has been approved by the Governor or has become law without such approval.

(2) "Bill" means a piece of legislation that has passed both houses of the General Assembly.

(3) "Code" means the Official Code of Georgia Annotated.

(4) "Code section" or "section" means a portion of the Code designated by the three-unit numbering system (title-chapter-section).   Strict adherence to Georgia Code style would call for the use of the term "Code section" rather than "section" in referring to a section of the Code.   In this manual, however, the terms "Code section" and "section" will be used interchangeably where the context will allow.   However, normally, "Code Section" is used when referring to a particular Code section, e.g., "Code Section 5-5-1."   "Code section" is used when making a general reference, e.g., "this Code section."

(5)   "Georgia Laws" or "Ga.   L." means the state published compilation of Acts and Resolutions enacted at a session of the General Assembly of Georgia.

(6) "State" means the Office of Legislative Counsel, acting as staff for the Georgia Code Revision Commission pursuant to Code Section 28-9-4.

(7) "Sublevel" means a subsection, paragraph, subparagraph, division, or subdivision of a Code section.

(8) "Unit" means a title, a chapter, an article, a part, or a subpart of the Code.

## 1.2.   Background

The Georgia General Assembly holds regular sessions annually, beginning on the second Monday in January and lasting up to 40 legislative days, determined by an ongoing and frequently changing schedule set by the legislature.   In recent years, the regular session has adjourned *sine die* on or around the beginning of April but has also extended into late April. Extraordinary sessions are called occasionally to deal with specific urgent matters.

Upon completion of each session, the House and Senate prepare enrolled versions of all bills that passed both houses.   These enrolled bills are sent to the Governor, who has 40 days after

COMM000055

adjournment *sine die* to veto bills; otherwise, the bills will become law without such approval. Upon signature, Acts are sent to the publisher to begin the process of updating the Official Code of Georgia Annotated.

Pursuant to Code Sections 28-9-3 and 28-9-5, the Code Revision Commission of the State of Georgia is authorized to contract with a publisher to provide for the publication and maintenance of the Official Code of Georgia Annotated. The Code Revision Commission is made up of representatives from the House, Senate, and the State Bar. The Office of Legislative Counsel acts as staff for the commission pursuant to Code Section 28-9-4.

For further background information regarding preparation, adoption, and research of the Code, see:

McKenzie, T., *The Making of a New Code*, Georgia State Bar Journal (February 1982).

Johnson, Nancy P. and Deel, Nancy Adams, *Researching Georgia Law*, Georgia State University Law Review (May 1998).

## 1.3.  Contract

The Code is produced pursuant to a contract between the Code Revision Commission and a publisher selected by the commission. The contract provides for a wide range of specific editorial procedures pertaining to the Code, and its requirements must be considered and satisfied whenever any editorial policy decisions related to the Code are to be made.

## 1.4.  General content of the O.C.G.A.

The material comprising the Code includes:

(1) All statutory provisions, annotations, captions, catchlines, headings, history lines, editorial notes, cross-references, indexes, title and chapter analyses, research references, amendment notes, Code Commission notes, and other material related to or included in such Code at the direction of the commission;

(2) The United States Constitution and the Georgia Constitution, as amended;

(3) General index, indexes related to local and special laws, and conversion tables; and

(4) Other material as provided in the publishing contract.

The Code shall include the codification of Georgia laws prepared by the Code Revision Commission and the (then) Michie Company and enacted by the General Assembly of Georgia

Χη. – Πγ. 1                                            December 2010

COMM000056

by an Act approved September 3, 1981 (Ga. L. 1981, Ex. Sess., p. 8), and subsequent current legislative enactments of the General Assembly of Georgia.

## 1.5.  Citation form

The Official Code of Georgia Annotated may be cited as "O.C.G.A."   See Code Section 1-1-8 as to citation of the Official Code of Georgia Annotated.

## 1.6.   General arrangement and numbering system

The Official Code of Georgia Annotated is arranged into 53 Code titles.   Beginning with the 2011 annual updates, those titles are divided among Volumes 3 through 40 as follows:

| Volume | Title(s) | | Volume | Title(s) |
|---|---|---|---|---|
| 3 | 1-3 | 23 | | 31-32 |
| 4 | 4-6 | 24 | | 33 (book 1 of 2) |
| 5 | 7-8 | 25 | | 33 (book 2 of 2) |
| 6 | 9 (book 1 of 2) | | 26 | 34 |
| 7 | 9 (book 2 of 2) | | 27 | 35-36 |
| 8 | 10 | | 28 | 37-39 |
| 9 | 11 | | 29 | 40 |
| 10 | 12 | | 29A | 41-42 |
| 11 | 13 | | 30 | 43 |
| 12 | 14 | | 31 | 44 (book 1 of 2) |
| 13 | 15 | | 32 | 44 (book 2 of 2) |
| 14 | 16 (book 1 of 3) | | 33 | 45 |
| 14A | 16 (book 2 of 3) | | 34 | 46 |
| 14B | 16 (book 3 of 3) | | 35 | 47 |
| 15 | 17 | | 36 | 48 (book 1 of 2) |
| 16 | 18-19 | | 37 | 48 (book 1 of 2) |
| 17 | 20 | | 38 | 49-50 |
| 18 | 21 | | 39 | 51 |
| 19 | 22-23 | | 40 | 52-53 |
| 20 | 24 | | | |
| 21 | 25-26 | | | |
| 22 | 27-30 | | | |

In addition to the 53 titles, the Constitution of the United States (Volume 1) and the Constitution of Georgia (Volume 2) are included in separate volumes with their original internal numbering systems retained.   No Code title numbers have been assigned to the Constitutions.

COMM000057

With the exception of Title 1, "General Provisions," titles within the Code are arranged in alphabetical order. A list of the Code title numbers and names appears in the front of each volume of the Code.

Where appropriate, titles within the Code are divided into chapters, chapters are divided into articles, articles are divided into parts, and parts are divided into subparts. An exception to this arrangement occurs in Title 11, the "Commercial Code." Because of the importance of maintaining the numbering scheme of the Uniform Commercial Code throughout the United States, Title 11 does not follow the numbering scheme used in the remaining titles of the Code.

Title, chapters, articles, parts, and subparts of the Code are designated with Arabic numerals. If a new title, chapter, article, part, or subpart is added between two existing titles, chapters, articles, parts, or subparts, it will be designated by the preceding numeral plus a capital letter. Thus, if two new chapters are to be added between Chapters 4 and 5 of a title, they will be designated as Chapters 4A and 4B.

A three-unit numbering system is used to designate Code sections, with the first unit reflecting the title number, the second unit reflecting the chapter number, and the third unit reflecting the section within the chapter. Thus, Code Section 2-5-1 is the first Code section of Chapter 5 of Title 2. Code section numbers are not consecutive in the Code. Note that this system does not reflect article, part, or subpart locations of Code sections.

At the end of each article, part, or subpart, gaps are typically left between Code section numbers to allow for future enactments; typically, the third-tier number skips to the next multiple of ten and then (unless the Code section number at the end of the article, part, or subpart ended with a multiple of ten) skips ten more numbers before the Code section numbering resumes. Thus, for example, Article 17 of Chapter 2 of Title 20 ends with Code Section 20-2-732; the first section of Article 18 is numbered Code Section 20-2-750;   Article 20 of Chapter 3 of Title 20 ends with Code Section 20-3-800, a multiple of ten, and Article 21 thus begins with Code Section 20-2-810.

If a new Code section is added between two existing Code sections, the new Code section will be designated with the preceding Code section number followed by a period and one or more numerals. Thus, if two new Code sections are added between Code Sections 2-5-38 and 2-5-39, the new Code sections will be designated as Code Sections 2-5-38.1 and 2-5-38.2.

Where appropriate, Code sections are divided into subsections, subsections are divided into paragraphs, paragraphs are divided into sub-paragraphs, subparagraphs are divided into divisions, and divisions are divided into subdivisions. These units are designated as follows:

> Subsections—(a), (b), (c), (d), etc.

> Paragraphs—(1), (2), (3), (4), etc.

COMM000058

Subparagraphs—(A), (B), (C), (D), etc.

Divisions—(i), (ii), (iii), (iv), etc.

Subdivisions—(I), (II), (III), (IV), etc.

If it becomes necessary to add new subsections, paragraphs subparagraphs, divisions, or subdivisions between existing subsections, paragraphs, subparagraphs, divisions, or subdivisions, the new material will be designated as follows:

Subsections—(a), (a. 1), (a.2), (b)

Paragraph—(l), (1.1), (1.2), (2)

Subparagraph—(A), (A.1), (A.2), (B)

Division—(i), (i.1), (i.2), (ii)

Subdivision—(I), (I.1), (I.2), (II)

If a Code section has introductory language followed by a list, subsection designations are not used to designate the items in the list, but each item is given a paragraph designation. This helps to maintain the flexibility of the numbering system. Definitions sections are examples of this system of numbering items in a list.


## 1.7.   Arrangement of specific types of material within the code

Title 1 of the Official Code of Georgia Annotated relates to general provisions applicable either to the adoption of the Code itself or to the enactment of laws generally. Title 1 contains an expression of legislative intent in the enactment of the Code, provides for severability for the Code and future laws as well, preserves certain types of Acts which are not codified, provides for the specific repeal of prior codes and laws, describes classes and categories of persons, provides for rights of persons, provides for rules of statutory construction, and provides for definitions of terms used throughout the Code. All persons are urged to read Title 1 prior to using the Code.

In the same manner that Title 1 contains material which is applicable to the entire Code, most titles within the Code contain a general provisions chapter as Chapter 1 of the title. This chapter contains definitions and other material of general application throughout the particular title.

Within each chapter, article, part, and subpart certain types of material generally will be arranged in a uniform manner throughout the Code. The short title of a law, if any, will be the first Code section, followed by the Code section stating the purpose or legislative findings, followed by Code section defining certain words and phrases used in that law. Within the body of the chapter,

COMM000059

article, part, or subpart, related Code sections will be grouped together. Penalty Code sections are generally at the end of the material to which they relate.

## 1.8.   Order of notes and annotations under units and Code sections

After each unit and Code section, notes and annotations (as applicable) are ordered as follows:

(1)   Delayed effective date notes.

(2)   Effective date notes.

(3)   Amendment notes.

(4)   Cross-references to related provisions of the Code.

(5)   Code Commission notes.

(6)   Editor's notes.

(7)   U.S. Code references.

(8)   Administrative rules and regulations.

(9)   Commentaries (e.g., State Bar comments in Titles 14 and 53).

(10)   Law reviews.

(11)   Case notes for opinions of the Supreme Court of Georgia, Court of Appeals of Georgia, and all decisions of the federal courts in cases which arise in Georgia.

(12)   Opinions of the Attorney General of Georgia.

(13)   Opinions of the State Bar.

(14)   Opinions of the Judicial Qualifications Commission.

(15)   Research references.

## 1.9.   Printing specifications and type sizes

**(a) Type face:** Century.

COMM000060

**(b) Type page size:**   30 x 50 picas.

**(c) Trim page size:**   6 5/8 x 10 inches.

**(d) Type size:**

    Text:   11 point on 12.

    Notes:   9 point on 10 double column.

    Index:   9 point on 10 double column.

**(e) Page number:**

    Bottom of page, centered, roman font.

**(f) Titles and chapters:**

    Begin at top of page in all cases. Title begins on right-hand page in all cases. Chapter begins at top of page, either left or right.

**(g) Statute headings:**

    Title:   14 point, all caps, bold, centered.

    Chapter:   12 point, all caps, bold, centered.

    Article:   11 point, all caps, roman font, centered.

    Part:   11 point, caps and small caps, roman font, centered.

    Subpart:   11 point, caps and lower case, roman font, centered.

**(h) Statute analyses:**

    Title:   11 point, caps and lower case, roman font, wide measure. No section symbols.

    Chapter:   9 point, double column, roman font. Within chapter analysis, where the following headings are used, they should appear as follows:

        Article:   9 point, caps and lower case, bold, center.

        Part:   9 point, caps and small caps, roman font, center.

COMM000061

Subpart:   9 point, caps and lower case, roman font, center.

**(i) Notes:**

Type size and format generally:   9 point, double column.

Analysis:   (preceding notes) The word "Analysis" should be 9 point, caps and small caps, bold.   Individual analysis entries are 9 point, caps and small caps, roman font, wide measure, flush left.
Headings:

(1) "Judicial Decisions," "Opinions of the Attorney General," "Research References": 9 point, caps, bold, center, wide measure.

(2) Analysis headings within body of notes:   9 point, caps & small caps, bold, center, narrow measure.

Attorney General Opinions:   (notes) 9 point, double column, roman font; (heading) 9 point all caps, bold, wide measure. AG Opinion notes will follow all case note material.

**(j) Subsection and other internal catchlines:**

(1) Subsection: Bold, followed by period. No dash; run in text following.

(2) Paragraph: Bold, followed by period. No dash; run in text following.

(3) Subparagraph: Bold, followed by period. No dash; run in text following.

In the case of double designations with internal catchlines, higher designation sits alone with catchlines and next designation starts a new paragraph.   It is possible that the Code section will not begin with an alphabetic subsection designation and that the Code section will start with the paragraph level which is always numeric.   The type style and appearance remains the same.

**(k) Margins:**

Where there is blocked text following a sublevel designation, the margins have a tendency to become misaligned.   Please check the Acts carefully to be sure that the material is printed in the format intended.

COMM000062

### 1.10.  Dictionary

In the preparation of the Code, the Code Revision Commission and the original publisher (The Michie Company) utilized Funk & Wagnalls Standard College Dictionary, copyright 1977 by Harper & Row, Publishers, Inc., as a standard reference work.


### 1.11.  Effective Date of Code

The Official Code of Georgia Annotated was completed in 1982 following four years of editorial preparation.   The Code, which repealed and replaced the former 1933 Official Code of Georgia, became effective November 1, 1982. (See Code Section 1-1-9.)


### 1.12.  Official nature

The O.C.G.A. carries the force of statutory law in Georgia; see Code Section 1-1-1.  For annual legislation (reviser Acts) reenacting the O.C.G.A. as amended by the text and numbering as contained in each year's supplements, see, e.g., Ga. L. 2010, p. 878, § 54, and other statutes cited in the editor's notes under Code Section 1-1-1, per Manual Section 9.1 .


### 1.13.  Office of Legislative Counsel (state contact)

The Office of Legislative Counsel provides staff for the Code Revision Commission.   Mr. Sewell Brumby is the Legislative Counsel.   The primary contact person for Code matters is Mr. Wayne Allen, Deputy Legislative Counsel, 316 State Capitol, Atlanta, Georgia 30334 (e-mail: wayne.allen@legis.ga.gov).   The secondary contact person is Ms. Betsy Howerton, Deputy Legislative Counsel (e-mail: betsy.howerton@legis.ga.gov).   Ms. Joyce Hall assists in handling correspondence with the publisher during supplement production, e.g., proof review, memo answers, etc. (e-mail: joyce.hall@legis.ga.gov).   Ms. Tracy Cochran assists in sending new legislation to the publisher (e-mail: tracy.cochran@legis.ga.gov).   Ms. Beth Yinger is the Senior Editor for the state (e-mail: beth.yinger@legis.ga.gov).   Ms. Natasha Spurrier maintains the state's data base (e-mail: natasha.spurrier@legis.ga.gov).   While e-mail is generally preferred for routine correspondence, the main phone number for all of the above contacts is 404-656-5000.

COMM000063

## 2.   ACTS--GENERALLY

### 2.1.   Approval by the Governor; veto; veto override

The Governor has 40 days after the end of the session to sign or veto bills.   Any bill becomes law if it is not vetoed within 40 days after adjournment, whether the bill is approved by the Governor or not. The Governor usually takes some action on every bill, either signing or vetoing, although on rare occasions a bill has become law without his or her approval (i.e., the bill was neither signed nor vetoed within the requisite period).

If a Governor's veto of a bill is successfully overridden by the requisite constitutional majority in each house of the General Assembly, then the bill becomes an Act (often specifically referred to as a veto override Act), effective on the date that the second house successfully overrode the veto unless the Act specifies a later effective date.

Resolutions proposing amendments to the 1983 Constitution of Georgia are not subject to veto by the Governor, and his or her approval or lack thereof is without legal effect.   Nevertheless, the Governor typically does approve such resolutions.

### 2.2.   Types of Acts

There are three major types of Acts:

(1) General Acts of general applicability ("general Acts"), which may be either:

(A) Acts that amend the Code; or
(B) Acts that do not amend the Code, such as appropriations Acts;

(2) Population Acts, which are general Acts that apply to political subdivisions within a specified population range only ("population Acts").  The 1983 Constitution provides (in Article III, Section VI, Paragraph IV): "No population bill, as the General Assembly shall define by general law, shall be passed."   Population bills are defined in Code Section 28-1-15; and

(3) Local Acts, which apply to political subdivisions as specified by name.   Local Acts are not codified by the General Assembly.

### 2.3.   Codification of Acts

COMM000064

**(a) In General.**  Only those Acts which contain specific Code section assignments will be codified; no other Acts are to be codified.  However, uncodified Acts or portions of Acts where relevant to interpretation or application of the Code should be noted.

**(b) Code Section Numbers.**  Because Code section numbers are considered a part of the Act,  codify Acts in the locations assigned by the General Assembly.  (However, see Manual Sections 25.5(b) and 25.6 regarding duplicate and erroneous Code section assignments by the General Assembly.)

### 2.4.   Numbering and citation of bills and Acts

**(a) Bill numbers.**  Bills are designated by a House Bill Number or a Senate Bill Number, depending on the house in which the bill originated.  (NOTE: The "HB" and "SB" designation must always be attached to the number when citing a bill in this manner.  Thus "HB 1," "HB 2," SB 1," "SB 2." Resolutions are designated by House Resolution Numbers and Senate Resolution Numbers ("HR 1," "HR 2," "SR 1," "SR 2").

**(b) Act numbers; veto Act numbers.**  When a bill is signed by the Governor or otherwise becomes law without approval, it is given an Act number that corresponds to the order in which it was signed by the Governor or otherwise became law.  (First bill signed in a biennium is Act #1, second bill signed is Act #2, etc.)  Similarly, when a resolution becomes law, it is given an Act number.

However, a previously vetoed bill for which the veto has been overridden by the requisite constitutional majority in each house will be given a Veto Act number corresponding to the previous Veto number (see, e.g., Veto Act No. 25, Ga. L. 2008, p. VO1; cf. Veto No. 25, Ga. L. 2007 at p. 371A); this should not to be confused with the Veto Override number, which is based upon the order of all vetoes overridden during the same biennium (see, e.g., Veto Override No. 1, Ga. L. 2008, p. VO1.

The state supplies corresponding bill and Act numbers as they become available.

**(c) Georgia Laws page numbers.**  The session laws are printed in Volumes I and II of Georgia Laws, which are prepared by the state.  In recent years, Volume I has been divided into two books, with general and supplemental appropriations Acts printed alone in Book 2 of Volume I (see, e.g., Ga. L. 2008, Vol. I, Book 2); all other general Acts are printed in Act-number order in Book 1 of Volume I, except that veto override Acts (which have a different Act-number scheme, per subsection (b) of this section)  have been published at the beginning of that same book (see, e.g., Ga. L. 2008, p. VO1).  Constitutional amendments generally are printed last in Book 1 of Volume I. Local Acts are published in Act-number order in Volume II, which may or may not be divided into multiple books, depending upon volume size limitations.   The Georgia Laws are used to determine the page numbers in the citations to the legislation.

COMM000065

**2.5.   Transmission of bills, Acts, and veto and veto override information**

**(a) Copies of bills as passed.**   Bills and resolutions passed by both houses of the General Assembly will be transmitted electronically to the publisher by the state, first in "as passed" (AP) bill versions prior to signature by the Governor (and typically containing striking and underscoring) so that the publisher may begin work on preparing amendment notes, etc.; in no case should these AP versions be used for purposes of updating the publisher's Code data base.

**(b) Enrolled Acts.**   Later, as bills become law, enrolled Acts (ENR) will be transmitted electronically (without striking and underscoring).   The ENR versions are the sole authoritative versions for purposes of updating the publisher's Code data base. If there is any discrepancy between the "as passed" version of a bill and the enrolled Act, the enrolled Act will control, and in such a case amendment notes, etc. prepared based on the superseded AP version must be revised as necessary to accurately reflect the ENR version.   See Manual Section 25.3 regarding discrepancies.

**(c) Vetoed bills and veto overrides.**   The state will inform the publisher as to any vetoed bills or veto overrides.   Veto Override Acts will be transmitted electronically by the state to the publisher, the same as other enrolled Acts.

**(d) Funding.**   The state will inform the publisher as to which bills contingent upon funding have been funded.

**2.6.   Comparing of Acts**

The state should be notified of any textual discrepancies between AP and ENR versions discovered by the publisher when preparing amendment notes.   The state will notify the publisher of any discrepancies found in the strike-through and underscored language for correction of the amendment note and the addition of an Editor's note or a Code Commission note in the following year's supplement.   See Manual Section 25.8 regarding missing text.

**2.7.   Reading of Acts**

The contract requires the publisher to read all Acts.

**2.8.   Text of statutes as source for Code updating**

In updating Code text with legislation, the publisher shall copy the exact language of the text of the statutes as it appears in the enrolled Acts sent to the publisher by the state, except as

COMM000066

otherwise specifically instructed by state.   Furthermore, the publisher shall make every effort to eliminate the need to keystroke any material from an Act and should lift the text of the statute directly from the Act.

## 2.9.   Proofreading

**(a) Generally**.   The publishing contract with the State of Georgia requires: "The Publisher shall be responsible for proofreading and other quality control procedures sufficient to ensure that such materials accurately incorporate the enactments of the General Assembly." Although the state has editorial proofreading staff, it is primarily the publisher's responsibility to ensure that the text is accurate and complete before sending any proof pages to the state.

**(b) Bracketing**.   In order to easily identify for the state the location of changes, proof pages must be marked with brackets in accordance with the following rules:

(1) Bracketing should be done when:

(A) The Act enacts a new Code section (everything would then be bracketed as new), even in a supplement which is the first one for that volume.
(B) Amended subsections exist (only brackets where changes occur; bracket redesignated subsections), even in a supplement which is the first one for that volume.
(C) New notes appear (case notes,   notes, amendment notes, etc.).
(D) Text has been modified to reflect a repeal.
(E) New history has been added (bracket only the line with the change).

(2) Double bracketing should be done when:

(A) Text material has been keystroked in manually rather than loaded from electronic version (this should be a rare occurrence).
(B) New charts, graphics, or forms are added which were not loaded from electronic version.

COMM000067

## 3.   SECRETARY OF STATE'S CERTIFICATES

### 3.1.   Generally

In each statutory volume as well as in the volume containing the Constitution of Georgia, there is included in the front matter a certification by the Secretary of State of Georgia that the statutes or constitutional provisions contained in that volume are true and correct copies of such material as enacted by the General Assembly of Georgia, all as the same appear of file and record in the office of the Secretary of State.   The state will annually provide the publisher with a new certificate to be copied for use in any volumes that are to be replaced in that year.

COMM000068

## 4.   TITLE AND CHAPTER ANALYSES

### 4.1. Title analysis

Preceding each title in the Code is a title analysis which lists the numbers and captions of each chapter within the title.

### 4.2.   Chapter analysis

Preceding each chapter in the Code is a chapter analysis which lists each article, part, and subpart within the chapter and each Code section and its catchline.

### 4.3.   Analyses in supplements

(a) Title.   In title analyses in the supplement, list only chapters for which text appears in the supplement.

(b) Chapter.   In chapter analyses in the supplement, list all sections for which text appears in the supplement or which are listed as repealed in the supplement.

(c) Repeals.   See Manual Section 11.4 regarding treatment of repeals in analyses.

COMM000069

## 5.   RUNNING HEADS AND CORNER HEADS

### 5.1.   Running heads

Running heads differ between verso (left hand) and recto (right hand) pages and according to content of the volume.

    (1) Verso pages:
        Code: Title name (shortened if necessary to fit space)
        Ga. Constitution: "Georgia Constitution"
        U.S. Constitution: "Constitution of the United States"

    (2) Recto pages:
        Code: Chapter name (shortened if necessary to fit space)
        Ga. Constitution: Article name (shortened if necessary to fit space)
        U.S. Constitution: "Constitution of the United States" or "Amendments to the Constitution", as applicable

### 5.2   Corner heads

On both verso and recto pages:

    (1) Upper left: identifies the most specific level in the Code (i.e., title, chapter, article, part, subpart, or Code section), Ga. Constitution (i.e., article, section, or paragraph), or U.S. Constitution (i.e., article, section, or amendment) with which the first line of any text on the page is associated--no exceptions.

    (2) Upper right: identifies the most specific level in the Code (i.e., title, chapter, article, part, subpart, or Code section), Ga. Constitution (i.e., article, section, or paragraph), or U.S. Constitution (i.e., article, section, or amendment) with which the last line of any text on the page is associated--no exceptions.   E.g.:

    (Code)        T. 1
                  T. 1, C. 1
                  T. 1, C. 1, A. 1
                  T. 1, C. 1, A. 1, P. 1
                  T. 1, C. 1, A. 1, P. 1, S. 1
                  1-1-1

                  (Note: if a particular corner head is too long for space available, mark proof to delete the most specific detail in that corner head as necessary to fit)

COMM000070

(Ga. Const.)   Art. 1
                Art. 1, § 1
                Art. 1, § 1, ¶ 1

(U.S. Const.)   Art. 1
                Art. 1, § 1
                Amend. 1

COMM000071

# 6. HEADINGS AND CATCHLINES

## 6.1. Functions

**(a)   Generally.**   An ideal heading or catchline should serve both hierarchical and descriptive functions.

**(b)   Hierarchical.**   The hierarchical function of headings (used with units) and catchlines (used with Code sections) gives the user an overview of the contents of a unit or Code section.   The notion of a hierarchy implies both a vertical relationship and a horizontal relationship of Code section catchlines and unit headings within a title.   The vertical relationship of catchlines and headings reflects the arrangement of provisions in a title from the general to the particular--that is, an arrangement in which the subject matter of each Code section represents a category of the subject matter of the unit within which it is located, and the subject matter of each unit represents a category of the subject matter of the next superior unit.   The horizontal relationship of catchlines and headings reflects the function of each Code section in a unit, and of each unit under a superior unit, as giving separate treatment to a discrete aspect of the superior unit.

**(c)   Descriptive.**   Catchlines and headings also should be descriptive--that is, they should give a sufficient representation of the contents of the Code section or unit.

**(d)   General guidelines.**   Three general catchline guidelines are:

(1) A catchline should not duplicate an element of the next superior heading.   This would obscure the vertical relationship of the Code sections and units in the title (e.g., a chapter which is captioned "State Tollway Authority" contains a Code section creating the authority; the Code section should be catchlined "Creation" rather than "Creation of State Tollway Authority").

(2) A catchline should be sufficiently different from the catchlines of the other Code sections in the same unit as to distinguish the contents of that Code section from the contents of the other Code sections.   This recognizes the horizontal relationship of the Code sections.

(3) A catchline should sufficiently describe the contents of the Code section and should be neither underinclusive nor overinclusive.   This serves the descriptive function of catchlines.

Providing further guidelines for a heading and catchlining system is difficult because the two functions to be served are frequently in conflict.   The hierarchical function may best be served by a series of brief headings and catchlines that allow for an overview of a title by quick reference to the headings and catchlines therein, but it also may inadequately represent

COMM000072

(through either underinclusion or overinclusion) the extent of the provision of the title.  A long, descriptive heading or catchline might better serve to reveal the contents of the unit or Code section but would defeat the purpose of allowing a comprehension of the scope of the title by means of a quick reference to the analysis.  Also, a series of long, descriptive catchlines may obscure the horizontal relationship of Code sections, since the catchlines would not then indicate any common strain running through all of the Code sections but would instead convey a sense of "strung together" provisions with no clear interrelationship. A properly conceived system of catchlines would serve to draw a proper middle ground between the two functions.

**(e)  Additional guidelines.**  The potential for conflict presented by the two functions of catchlines should be kept in mind in considering the following additional guidelines:

(1)  Every provision of a Code section should be addressed, at least in general terms, by some element of the catchline.  This policy primarily stresses the descriptive function of a catchline.  However, in order to serve the hierarchical function as well, each descriptive word or phrase in the catchline should be sufficiently general as to embody as many specific provisions as possible.

(2)  A catchline should be sufficiently general in order to accommodate, as far as possible, subsequent amendments without the need to rewrite the catchline.  For example, a Code section sets a license fee of $15.00.  Although a catchline reading "Fifteen-dollar license fee" may serve to describe with some specificity the contents of the Code section, and while the catchline is probably brief enough to serve the hierarchical function, the catchline would become obsolete if the fee were later changed to $20.00.  A catchline reading simply "License fee" would likely be preferable, since such a catchline would cover the contents of the Code section regardless of the amount of the fee.

(3)  If a catchline is divided into parts separated by semicolons or dashes, the separate parts should stand in horizontal relation to one another.  That is, each separate part of a catchline should deal with a distinct part of the Code section.  For example, the three parts of a catchline reading "License requirement--License requirement for minors--License requirement for minors completing hunter training course" do not stand in horizontal relation to one another, since the three parts do not describe three mutually exclusive aspects of the general subject "licenses.")

(4)  Catchlines should not contain unnecessary words.  A catchline reading "Purpose" is preferable to one reading "Legislative purpose and declaration of intent"; a catchline reading "Rules and regulations" is preferable to one reading "Promulgation of rules and regulations by Board of Natural Resources."

(5)  A catchline should not assert the positive or the negative; rather, the "label" style should be used.  Code sections often require or prohibit certain activities, without more,

COMM000073

but just as often requirements and prohibitions are conditioned on specified contingencies or are suspended in certain instances or for certain persons. A catchline reading "License required" would be overbroad if the Code section required a certain license but also exempted several classes of persons from the requirement. In addition, in order to serve the hierarchical function, catchlines should list the subject of a Code section, not paraphrase the language of the Code section in shorthand form ("License required" is intended as shorthand for "A license is required.") Also, a positive or negative assertion in a catchline would violate the policy that a catchline be broad enough to accommodate future amendments. A neutral catchline such as "License requirement" would avoid these problems and would be preferable.

## 6.2. Official or unofficial status

Generally, Code section catchlines and headings do not constitute part of the law (see Code Section 1-1-7) and may be written by the publisher as appropriate. However, if any catchlines or headings are included in an Act, they are considered official and no revision should be made. Catchlines for uniform legislation, such as the Uniform Commercial Code, should be left as enacted by the Act, absent obvious error. CAUTION: If the General Assembly should ever enact a new title of the Code, the publisher should observe any heading attached to that title by the General Assembly.

If catchlines for subsections are omitted from an amending Act, the state should be notified before any revision is carried out. In the following year, the state will likely enact a catchline in the Reviser's Act to make the subsection catchline official.

Headings and catchlines in the Georgia Constitution are official (unlike statute catchlines) and can only be changed if amended by resolution and ratification.

## 6.3. Rules for catchlining

General rules for catchlining are:

(1) Do not make catchlines run; that is, do not use the word "Same" construction. If an amended Code section has a "Same" catchline do not carry the "Same" in the supplement but carry the word or words which "Same" is intended to represent.

For all newly enacted Code sections, do not write a catchline containing a "Same." In replacement volumes rewrite catchlines as necessary to eliminate "Same" constructions.

(2) In Code sections with a series of defined terms: Use the catchline: "Definitions."

COMM000074

(3)  In Code sections with a single term being defined: Proceed as shown in following illustration: "Dogs defined."

(4)  Code section defining term and also containing substantive provisions: Do not put the defined term in the catchline unless the defined term applies to more than just that Code section.

(5)  Code sections setting out a penalty only: "Penalty."

(6)  Code sections describing prohibited activity and also setting out a penalty for that activity: "Prohibited action; penalty."

(7)  Short title of units: "Short title."

(8)  "Act" or short title as a unit heading: Do not use the word "Act" as a unit heading, even if the word "Act" is part of the short title.   (Thus, even though the short title may be "Junkyard Dealers Act," the unit itself should carry the heading "Junkyard Dealers.")  Furthermore, do not use a short title as a heading unless it is truly descriptive.  (For example, the heading for T. 15, C. 21, A. 10 should be "Georgia Driver's Education Commission" not "Joshua's Law.")

(9)  Try to make catchlines no longer than three lines of type in the printed books.  Longer catchlines should be shortened on replacement of the volume.   Originally, Code style called for very detailed and, hence, lengthy catchlines.

(10)  "Etc": As with the word "same," "etc." should be deleted from catchlines and headings upon replacement of volumes.   Often a general more inclusive term can be substituted for a list ending with "etc."

(11)  Catchlines should generally contain semicolons; not dashes.   The word following a semicolon would be lower cased.   However, if a dash is used, the next word would be capitalized.

(12) Reference is always made to the words "this Code section" or "Code Section 1-2-3" and not "Section" when referring to a Code section in a catchline.

(13)  Repealed, reserved, or redesignated spans.   Show only the span numbers without a catchline in span references that have been repealed, reserved, or redesignated.   No text should follow the span.

## 6.4.  Capitalization

See Manual Section 1.9.

COMM000075

# 7.   CONSTITUTION TEXT AND AMENDMENTS

## 7.1.   Generally

The Code contains both the United States Constitution (in Volume 1) and the Georgia Constitution of 1983 (in Volume 2).  Both are annotated.  This chapter of the manual will be concerned primarily with the Georgia Constitution.

The catchlines in the Georgia Constitution and text are official and must appear as adopted. Supplement catchlines should be the same as in the bound volume, unless changed by amendment.  There are no reviser's bill or Code Section 28-9-5 (Code Commission notes) changes to the Constitution.

## 7.2.   Tables of comparable provisions

The current Georgia Constitution was approved at the November, 1982, general election, became effective January 1, 1983, and is designated the "Constitution of the State of Georgia of 1983" or "Ga. Const. 1983" for short.  The three most recent previous constitutions were designated the 1976 Constitution, the 1945 Constitution, and the 1877 Constitution.  Tables 11 through 14 of Volume 41 indicate corresponding provisions of the current and three preceding constitutions. Comparative Tables 1 and 2 at front of Volume 2 show corresponding provisions of the 1983 and 1976 constitutions.

## 7.3.   Citation form; references

(a) Citing U.S. Constitution.  Cite as "U.S. Const., art. I, sec. I, cl. 3" or "U.S. Const., amend. 14."  Less formal citation forms are also permissible in case notes in citing very well known provisions, such as the "commerce clause," "Bill of Rights," "Fourteenth Amendment," etc.

(b) Citing Georgia Constitution.

(1) In general.  In citing the Georgia Constitution in annotations, it is imperative that the year of the Constitution be included in the citation.  A sample citation to the current Constitution would be "Ga. Const. 1983, Art. I, Sec. I, Para. I."  For prior constitutions, substitute the appropriate year in this form.  Note also that "Code Section" and "§" are not used in citing the Constitution.

(2) Prior Georgia Constitutions.

COMM000076

(A) Case notes.   Many case notes refer to prior versions of the Georgia Constitution such as the Constitutions of 1877, 1945, 1976.   These references are not translated directly to the corresponding provision of the 1983 Constitution, but a parenthetical translation to the current constitution is added following the reference.   Example: "Const. 1945, Art. I, Sec. I, Para. I (now Const. 1983, Art. I, Sec. II, Para. X)."

Often, the references to a prior Georgia Constitution will not contain the date of the Constitution.   The publisher must insert this as well.   One can generally assume that the reference in the note is to the Constitution in effect as of the date of the case. However, this cannot always be assumed - check the translation to the 1983 Constitution for sense and look up the case, if necessary.

If there is no comparable provision in the 1983 Constitution, consider either editing out the constitutional reference or deleting the note if it has no further value. Another alternative is to insert "former" preceding the reference.

(B) Cross-references.   Translate references directly.   That is, insert a reference to the corresponding 1983 Ga. Const. provision and delete the reference to the prior Ga. Const.   Cross-references in any remaining original volumes (no edition year printed on spine) will be to the 1976 Constitution and will, therefore, need to be translated.

## 7.4.   Proposed amendments (Georgia Constitution)

**(a) Review.**   As the publisher reviews Acts and resolutions each year, it should identify any resolution which contains a proposed amendment to the Georgia Constitution (See, e.g., Ga. L. 1984, p. 1713).

**(b) Notes.**   The publisher should write a note for each proposed amendment as illustrated in the following:

> **Proposed amendments.** - Amendment of the Georgia Constitution proposed by Ga. L. 2004, p. 1111, if ratified, would...[if amending existing text of Constitution, describe the proposed text change here.   If adding an entirely new Article, Section, Paragraph, or subparagraph, quote in full the proposed new material to be added here].

This will be the first note under the Constitutional provision to which it is assigned.   Keep in mind that amendments are submitted to voters at the general election held in each even-numbered year (Ga. Const. 1983, Art. X, Sec. I, Para. I), so the supplement for each even-numbered year will carry proposed amendments from that year as well as any from the previous year.

**(c) Election results.**   In mid-November of each even-numbered year, the publisher should request from the Office of Legislative Counsel the   results of the prior November election

COMM000077

regarding each proposed amendment.   For those proposed amendments receiving a majority vote of approval, the publisher should prepare the amendment to be directly incorporated into the next CD, any electronic version, and supplement; and a historical citation should be added in accordance with Section 13.2 of this manual.   In addition, a  note should be added to describe the revision with specificity, as illustrated in the following:

> **Editor's notes.** - The constitutional amendment (Ga. L. 1984, p. 1713, § 1) which inserted "and to provide public library facilities" following "salad bars" was ratified at the general election held on [date of election].

If the amendment is defeated, a note will also need to be added.  This  note should be similar to the following:

> **Editor's notes.** - The constitutional amendment proposed in Ga. L. 1988, p. 2100, § 4, which would have revised subparagraph (A) to delete the reference to the State School Superintendent, was defeated in the general election on November 8, 1988.

If duplicate sublevels are enacted, do not redesignate either sublevel.   No Code Commission notes are allowed in the Constitution.   If ratified, the duplicate numbering system is retained.  Contact the state as to order of duplicates.


## 7.5.  Local amendments (Georgia Constitution)

Just as Georgia has had a long history of "local Acts" which apply only to designated localities, Georgia Constitutions prior to 1983 were amended over the years by "local constitutional amendments" which affect only certain localities.   While these amendments were fashioned as actual additions to specific Paragraphs of the Constitution, the Constitution itself is not printed with each local amendment set out in full.   This is an analogous situation to "local Acts," which are not printed in the O.C.G.A.

With the advent of the 1983 Constitution, the practice of adopting local constitutional amendments ended.   Furthermore, the 1983 Constitution provides that all existing local amendments which were not specifically continued by local law, local ordinance, or local resolution were repealed on July 1, 1987 (Ga. Const. 1983, Art. XI, Sec. I, Para. IV).

A local amendment may have amended either the 1877, the 1945, or the 1976 Constitution, depending on the year of adoption of the amendment.   The "continuing" Act will give the session law cite of the local amendment, but the publisher will need to consult the Local Laws Index (Volumes 42 and 42A) to determine which Paragraph of a given Constitution was amended by the local amendment.

Continued amendments are found in Appendix Four in Volume 2.

COMM000078

# 8. STATUTORY TEXT AND AMENDMENTS–GENERALLY

## 8.1.   Restated language and directory language in Acts

Amendments to the Code as made in Acts may be described in (1) restated form, with striking and/or underscoring, setting out the entire unit, Code section, or sublevel as amended; (2) directory form, describing the specific change to be made but without setting out the unit, Code section, or sublevel as amended; or (3) a combination of (1) and (2).

## 8.2.   Amended Code sections set out in full

Amended Code sections are to be set out in full in the supplement.

## 8.3. Use of restated language set out in Act

The full text of all Code sections with restated language in an Act should always be picked up for the supplement, even if the amendment only affects a sublevel of the Code section.   If only a sublevel is set out in the Act, the publisher should pick up that sublevel from the Act and get the remaining portion from the latest version of the Code section.

## 8.4.   Amended subsection with fewer paragraphs than old Code section

When a subsection is amended so that it contains fewer paragraphs than previously existed, there is no need to set out a line accounting for the old paragraphs.

Note, however, that if sublevels are specifically repealed, as opposed to disappearing through an amendment, it is necessary to have a line accounting for the repealed sublevel.   See Manual Section 11.3 for a discussion of treatment of repealed sublevels.   Case notes,   notes, etc. should be checked for references to sublevels which are no longer in existence.

COMM000079

## 9. STATUTORY TEXT AND AMENDMENTS--REVISER BILLS; REVISER ACTS

### 9.1.  Generally

Each year the Office of Legislative Counsel drafts three omnibus bills called "reviser bills" (a general reviser bill covering all titles except Titles 21 and 47; an elections reviser bill covering Title 21 only; and a retirement reviser bill covering Title 47 only) which when enacted (thus becoming reviser Acts) make various changes in the Code for the primary purpose of correcting errors in punctuation, grammar usage, capitalization, etc., resulting from the original codification and subsequent amendments.

The general reviser Act (typically in Section 54 of that Act) annually reenacts the entire statutory portion of the Code (except for Title 47) as contained in Volumes 3 through 40 of such publication or replacement volumes thereto, as amended by the text and numbering of Code sections as contained in the most recently published year's supplements.   An editor's note of the form prescribed in Manual Section 26.3(16) should be included and updated annually under Code Section 1-1-1 to inform the reader of the annual reenactments of the Code.

### 9.2.  Organization and history cites

The general reviser Act is arranged by Act section numbers that correspond to Code title numbers.  Within each Act section, there is a list of item numbers for each individual change within that particular title.   Do not include item numbers in history cites.

### 9.3.  Incorporation procedure

Most of the revisions effected by any reviser Act are of a "directory" nature, that is, they describe how a certain Code section is to be amended rather than quoting the Code section or sublevel as amended.   In many of these cases, the publisher must transfer the described corrections directly to the affected sublevel.   It is essential that the described corrections be read carefully so that an accurate incorporation may be made.   For example, in a situation in which a change such as follows is described:

SECTION 25.
Title 25 of the Official Code of Georgia Annotated, relating to fire protection and safety, is amended in:
(1)   Code Section 25-14-3, relating to the Safety Fire Commissioner and standards for testing cigarettes, reports, and exceptions, by replacing "commissioner" with "Commissioner" each time it appears in paragraphs (5) and (8) of subsection (b) and subsections (d) through (g).

COMM000080

it is very easy to overlook the reference to "each time"in the directory language or to overlook an occurrence of the word to be replaced in the Code text.   Publishing staff must use great care in reviewing a reviser Act to assure that described revisions are incorporated in all proper locations and with proper punctuations.

### 9.4.   Code sections printed in full

Any Code section affected by a reviser Act correction must be printed in full in the supplement, as would be done for any other amended Code section.

### 9.5.   Amendment notes

See Manual Section 23.7 as to general form of amendment notes for reviser Acts.

### 9.6.   Amendments to same Code section by other Acts in same session

In situations where a Code section affected by a reviser Act is also amended by another Act from the same year, any "descriptive" amendment note prompted by the reviser Act should be quickly checked against the amendment note prompted by the other Act to see whether the two notes duplicate each other in any way.   (This may occur if the other Act takes a reviser bill correction into account but underscores it as if it were material being newly enacted.)   In case of such duplication, see Manual Section 25.6 regarding the form of amendment notes for duplicate changes; see also Manual Sections 23.6 and 25.5 for general treatment of Code sections amended by multiple Acts.

Beginning with the 2010 regular session of the General Assembly, each of the reviser bills contains a provision stating that in case of conflict between a provision of the reviser Act and another Act enacted at the same session, the other Act will control to the extent of the conflict. This allows a substantive change in another Act to prevail over a reviser Act change, without regard to the order in which bills are approved by the Governor.   In case of such an occurrence, an editor's note of the form prescribed in Manual Section 25.5 (a)(3)(A) should be used.

COMM000081

## 10. STATUTORY TEXT–INTERSTATE COMPACTS

### 10.1.   Style

Interstate compacts should be left exactly as they are written since each state enacts identical language.

The language of the compact may not conform to O.C.G.A. style.

Capitalization, punctuation, and numbering will all be left exactly as they appear within the compact.

### 10.2.   Quotation marks

Compacts are enclosed in quotes in Acts, as is the text of most legislation.  While such quotes are usually deleted elsewhere, quotes enclosing the text of compacts should be retained, since compacts are usually set out in the Code following introductory language reading something like "The text of the compact is as follows:."  This means that quotes within the text of the compact (usually single quotes) should also be kept as is, instead of making them double quotes as would ordinarily be done when deleting the quotes that appear in the Act at the beginning and end of the section text.

Many of the compacts now in the Code do not follow this style.   The publisher should note what is required to conform them to this style upon replacement of volumes and inform the state of any such suggested changes.

COMM000082

# 11. REPEALS - GENERALLY

## 11.1.   Scope of discussion

This section deals with the effect and handling of repealed units, Code sections, and Code section sublevels.  For the treatment of situations in which an Act repeals the Code sections comprising a unit and enacts new Code sections under the same unit number, see Manual Chapter 12.

When a single Code section is repealed, its Code section number and catchline are set out, followed by a notation that the particular section has been repealed, a citation of the repealing Act (including the bill number in the same manner as prescribed for historical citations; see Manual Section 13.1(d)), and the effective date of the repeal.  Span references are set out without any catchline.  An editor's note under the repeal line lists citations to the Georgia Laws on which the repealed Code section was based, and refers the user to the Code provisions, if any, now covering the subject of the repealed Code section.

Repeal lines are not set out for Code sections repealed by implication in a repeal and reenactment of a unit (e.g., where the old chapter consisted of 1-1-1 through 1-1-25 and the new chapter consists of 1-1-1 through 1-1-15, the Code sections repealed by implication would be 1-1-16 through 1-1-25.)  These implied repealed Code sections are accounted for in an editor's note setting out the former Code section numbers and their histories, at the beginning of the unit.  This would also apply to any .1, .2, etc., references that may exist.

A separate editor's note should account for any Code sections previously repealed  prior to the repeal of the unit.

## 11.2.   Form for repeal lines

   **(a) Repeal of a Code section not redesignated.**   (See Manual Section 12.2 for redesignations.)

   (1) In text:

      2-2-22. Grounds for revocation; hearing.

         Repealed by Ga. L. 2011, p. 3, § 3/HB 1, effective July 1, 2011.

         **Editor's notes. --** This Code section was based on [set out the entire history verbatim].

   (2) In analysis:

COMM000083

2-2-22.   Grounds for revocation; hearing [Repealed].

**(b) Repeal of two consecutive Code sections.**   Combine into a span repeal line if only two Code sections are repealed and this is all that exists in the chapter, article, part, or subpart. Use the word "and" in the Code section span.   Do not add a parenthetical, except in delayed repeals.   See (e) below for further discussion and for treatment of three or more consecutive Code sections.

**(c) Repeal of an article or part.**

(1) In text:

ARTICLE 3

GLASS GRINDERS

Part 4

Liability for Shards

2-2-20 through 2-2-30.

Repealed by Ga. L. 2011, p. 3, § 3/HB 1, effective July 1, 2011.

**Editor's notes. --** This part was based on [organize and set out history for all Code sections in part].

(2) In chapter analysis:

2-2-20 through 2-2-30 [Repealed].

**(d) Repeal of a chapter.**

(1) In text:

CHAPTER 2

OPTOMETRISTS

2-2-1 through 2-2-22.

Repealed by Ga. L. 2011, p. 3, § 3/HB 1, effective July 1, 2011.

**Editor's notes. --** This chapter consisted of Code sections [see Section 28.5 for style of Editor's notes].

COMM000084

If the Act says that the chapter, article, etc. is reserved, set the information out like above, but add "Reserved." at the beginning of the repeal paragraph, e.g.:

Reserved. Repealed by Ga. L. 2011, p. 3 § 3/HB 1, effective July 1, 2011.

(2) In title analysis:

2. Optometrists, 2-2-2 through 2-2-22. [Repealed]

**(e) Repeal of a consecutive series of Code sections:**

If only two Code sections are repealed and this is all that exists in the chapter, article, part, or subpart the word "and" should be used and these Code sections should not be set out separately. No parenthetical following the Code section span.   If only two Code sections are repealed and this is not all that exists in the chapter, article, part, or subpart, these Code sections should be set out separately.

Two consecutive repealed Code sections would also be set out separately when there are more than two Code sections in a chapter, article, part, or subpart and the two consecutive Code sections are repealed independently by separate legislation and the full chapter, article, part, or subpart has not been repealed and reenacted.

If three or more Code sections within a chapter, article, part, or subpart, that is not amended in its entirety, are repealed and reserved by a single Act, whether this is accomplished by one or more sections in the Act, a spanned reference is used and they are not set out independently.

(1) In text:

2-2-29 through 2-2-32.

Repealed by Ga. L. 2011, p. 2, § 22/HB 2, effective July 1, 2011.

(2) In chapter analysis:

2-2-29 through 2-2-32 [Repealed].

(3) Entire unit consisting of two Code sections:

ARTICLE 2

Χη. – Πγ. 3                                                            December 2010

NEMATODES

2-7-200 and 2-7-201.

Repealed by Ga. L. 2011, p. 5, § 1/HB 3, effective July 1, 2011.

## 11.3.  Repeals of sublevels

**(a) At beginning or in middle of Code section.**  If an Act deletes a sublevel from the beginning of a Code section (that is, deletes subsection (a)) or deletes a sublevel from the middle of a Code section, carry the sublevel designation and add the appropriate word "Repealed"   (see © below for reserved sublevels) following it, e.g.:

### 2-2-5.  Corporations.

(a) As used in this Code section, the term "corporation" includes person.

(b) Repealed.

(c) All corporations shall be required to register with the Secretary of State.

Retain the punctuation of the repealed sublevel.   Thus, if it ended in a semicolon, keep the semicolon following "Repealed" and if it ended in a period, keep the period following "Repealed."

**(b) At the end of a Code section.**  If an Act deletes a sublevel from the end of a Code section, there is no need to carry the sublevel designation and "Repealed"; merely delete the entire sublevel.   (Exception: See subsection (c) of this section.)

**(c) Repealed and reserved sublevels.**  As happens with Code sections, occasionally an Act will delete the language of a sublevel and will specifically "reserve" the sublevel designation.  In these situations, the word "Reserved" with the correct punctuation (rather than "Repealed.") should be added following the sublevel designation.   This should be done regardless of whether the sublevel in question falls at the beginning, middle, or end of the Code section.

**(d) Repeals treated as amendments.**  Repeals of sublevels are treated like amendments (deletions) and an amendment note is required.   Amendment notes are discussed in Manual Chapter 23.   The amendment note should refer to these as deletions, not repeals.

## 11.4.   Form for analyses of repealed provisions

When listing repealed entries in analyses, the following rules apply:

COMM000086

In title analyses and in tables of contents in the preliminary pages, the period falls preceding the bracketed word "Repealed", e.g.:

> 8. Economic Development Council, 10-8-1 through 10-8-5. [Repealed]

However, in chapter analyses, the period follows the bracketed word "Repealed", e.g.

> 10-1-236. Action by dealer against distributor for violation of article [Repealed].

## 11.5.   Editor's notes

The publisher will have to prepare an Editor's note indicating the laws on which the repealed provisions were based to accompany the repeal line.   See Manual Chapter 28 for style of these notes.

## 11.6.   Reserved Code sections

Occasionally an Act will contain language of the following sort: Code Section 2-2-22 is amended by striking and reserving that Code section in its entirety.   This type of language is to be construed simply as repealing the Code section as this Code section has not been redesignated.   However, this type of language requires some indication of the fact of the "reservation," even though the language has no effect different from that of a straight repeal other than reserving the Code section number.   Thus, any Code section affected in this manner should be treated in text as shown in the following example:

> 2-2-22.   Grounds for revocation; hearing.
>
> Reserved. Repealed by Ga. L. 2011, p. 2 § 22/HB 1, effective July 1, 2011.

There is no need to refer to the fact of reservation in the analysis.   In the analysis, treat this like any other repeal.

The word "Reserved" should not be used following a unit heading.   The only time this will be used following one of those units is when there have never been any existing Code sections under a unit heading, unless the unit has been statutorily reserved.

## 11.7. Reused Code sections

When a Code section is repealed and the number is later reused for a different Code section, retain the editor's note that appeared under the repeal line, but insert a reference to the subject

COMM000087

matter of the Code section that was formerly codified with that number, since the catchline for the old Code section will now be gone.

> **Editor's notes. --** This Code section formerly pertained to unlawful acts upon hospital grounds, including possession and use of alcohol and drugs, trespass, and escape. The former Code section was based on Ga. L. 1964, p. 499, § 1, and Ga. L. 1985, p. 149, § 31.

## 11.8.   Repeal lines in original O.C.G.A. volumes

In several places in the remaining original O.C.G.A. volume (19), there may be repeal lines. This resulted from the fact that the final classification scheme of the Code was approved by the state prior to the 1981 session.   Thus, any 1981 repeals of Acts upon which new Code sections were based had to be accounted for by a repeal line in the new Code, renumbering of Code sections not being an option at that point.   These repeal lines require no editor's notes to explain their presence and should be carried forward intact into subsequent replacements.  (If it ever happens that such a number is reused, it is possible that an Editor's note will be needed to explain that the number was listed as repealed in the original Code.)

## 11.9.   Repeal prior to effective date

If a Code section is repealed prior to becoming effective, set out the   repeal line and an editor's note stating the fact that the Code section was repealed prior to becoming effective.   If repealed by another Act, give the cite of the repealing Act.   Include a relating to statement in the editor's note to give the user some insight into what the contents would have been if the Code section had become effective.

COMM000088

## 12. REPEALS AND REENACTMENTS; AMENDATORY REVISIONS OF ENTIRE UNITS

### 12.1.  Generally

**(a) Repeal and reenactment.**   A true "repeal and reenactment" (or "R & R") occurs when a unit is repealed and, in the same Act, a group of Code sections is enacted and given the number designation of the repealed unit.   An R & R wholly revamps the affected unit, wiping the slate clean and starting over again.  In most cases the general subject matter of the "old" unit and the "new" unit will be the same, and some of the provisions of the new unit may have antecedents in the old unit; however, there will be no direct correlation between similarly numbered Code sections in the old unit and in the new unit.   A true R & R is usually identifiable in an Act by language such as the following: "Title 22 of the Official Code of Georgia Annotated, ..., is amended by repealing Chapter 2, relating to..., and enacting a new Chapter 2 to read as follows:...."

**(b) Amendatory revision of entire unit.**   A distinction may be made between R & Rs and amendatory revisions of entire units.   An amendatory revision of an entire unit represents a straight amendment of some or all of the Code sections in the existing unit, which is set out in its entirety.   There will be a one-to-one correspondence between most Code sections of the old unit and most Code sections of the new unit, even though some Code section numbers of the old unit may be redesignated in the new unit.

**(c) Distinguishing between the two types.**   If an Act refers to the repeal of an existing unit and enactment of a new (underscored) unit with the same number designations or if it shows all sections of the existing unit as being stricken completely and followed by new underscored sections, then it is an R & R.   If an Act uses striking and underscoring in relation to existing Code text of an entire unit, some of which text remains unchanged, then it is most likely an amendatory revision of the unit. Consult the state as needed for guidance.

### 12.2.   Treatment of amendatory revisions of entire units

**(a) Code sections with amended text.**   For every Code section in which a change in language is effected, the Code section will be printed in the supplement, accompanied by an amendment note.

**(b) Code sections reenacted without change in text or Code section number.**   If a Code section is restated without change in language and without change in designation:

(1) In bound volume only.   If the Code section appears only in the bound volume, carry only the catchline in the supplement accompanied by the following note:

Xη. – Πγ. 1

COMM000089

> **Editor's notes.** -- Ga. L. [cite], effective [date], reenacted this Code section without change.   Refer to bound volume for text of this Code section.

> If the Code section is later amended and thus printed in the supplement, convert the Editor's note into an amendment note.   The Ga. L. cite will be added to the history cite even though the Code section will not appear in the supplement.   Delete the second sentence of the note when it is converted to an amendment note.

Retention of Editor's notes for Code sections reenacted without change are to be treated the same as amendment notes - See Manual Appendix C.

> (2) In supplement.   If the Code section appears in the supplement, print the Code section and add the Editor's note as directed in (b)(1) above without the second sentence, and also add the Act to the history.

When a previously repealed and reserved Code section is reenacted without change, the standard Editor's note for a reenactment without change should be modified as follows:

> **Editor's notes.** – Ga. L. 2002, p. 1324, § 1-7, reenacted the reservation of this Code section without change.

**(c) Code section without change in text but redesignated.**   If a Code section is restated without change but is given a new Code section number:

> (1) Carry the entire text of the restated Code section in the supplement, with the new Code section designation, along with an amendment note describing the changed Code section number (see style of amendment note in (d) below);

> (2) Place an Editor's note under the old number as follows:

> **20-2-308.**

> **Editor's notes.** -- Ga. L. [cite], effective [date], redesignated former Code Section 2-2-22 as present Code Section 2-2-23.

If the old number is not reused, carry only the old number, with the word "redesignated" not in brackets (the same in the analysis), and the above editor's note.

> (3) Place appropriate "Code 1981" and "Code 1981, enacted by" citations in the history line as described in Manual Section 13.8 regarding treatment of history lines for redesignated Code sections.   (Note that the "as redesignated by" construction would not be used if striking and underscoring was not used, since the directory language of the Act does not specifically direct the redesignation of individual Code section numbers.)

> (4) Transfer any notes from the old location to the new location.

COMM000090

**(d) Code section redesignated with change in Code section text.**   An amendment note is required.   The amendment note should describe the redesignation as well as the text changes.

> **Example:**

> **The 1990 amendment,** effective July 1, 1990, redesignated former Code Section 40-3-41 as present Code Section 40-3-43, and in the first sentence of subsection (b), substituted "to this Code section" for "thereto".

**(e) Code section number reused with different subject matter.**   Carry the new text and an editor's note (see (c)(2) above) and also add to the end of the editor's note a brief description of the subject matter of the Code section formerly codified there.

**(f) History cite.**   The history of the prior Code section (whether or not the Code section designation was changed) should be carried forward to the new Code section.

## 12.3.   Treatment of repeals and reenactments

**(a) Editor's Note.**   In an R & R, it will be necessary to place an editor's note under the unit heading to indicate the fact of the repeal and reenactment.   In the note, include:

(1) The cite for the R & R Act;

(2) The effective date;

(3) The Code section numbers of the repealed unit;

(4) A brief description of the subject matter of the repealed unit, if sufficiently different from that of the new unit; and

(5) The Acts upon which the repealed unit was based.

> **Editor's notes. --** Ga. L. [cite], effective [date], effective July 1, 20__, repealed the Code sections formerly codified at this [unit] and enacted the current [unit].   The former [unit] consisted of Code Section 2-2-20 through 2-2-30, relating to administrative procedure, and was based on Ga. L. 1981, Ex. Sess. p. 8 (Code enactment Act) and Ga. L. [cite of any subsequent amending Acts].

**(b) Steps to implement:**

(1) Write the editor's note so that it appears as illustrated in the following example:

> **Editor's notes. --** Ga. L. [cite], effective [date], repealed the Code sections formerly codified at this [unit] and enacted the current [unit].   The former [unit]

COMM000091

consisted of Code Sections 2-2-20 through 2-2-30, relating to administrative procedure, and was based on Ga. L. 1981, Ex. Sess., p. 8 (Code enactment Act) and Ga. L. [cite of any subsequent amending Acts].

(A) If the subject matter of the repealed unit is sufficiently different from the subject matter of the new unit, also add a brief description of the old subject matter, as illustrated in the following example:

> **Editor's notes. --** [Same first sentence as in (b)(1) above.] The former unit, which dealt with regulation of farm implement retailers, consisted of Code Section 2-2-20 through 2-2-30 [etc.].

(B) If the repealed unit contained any decimal-point numbers, the Editor's note should specify which of those numbers appeared in the repealed unit.   Note the following example:

> **Editor's notes. --** [Same first sentence as in (b)(1) above.] The former [unit] consisted of Code Sections 2-2-20 through 2-2-25, 2-2-25.1, 2-2-25.2, and 2-2-26 through 2-2-30 and was based on Ga. L. [cite].

(C) If the repealed unit was divided into further units, this should also be specified as illustrated in the following:

> **Editor's notes. --** [Same first sentence as in (b)(1) above.] The former chapter consisted of Code Sections 2-2-2 through 2-2-5 (Article 1), 2-2-20 through 2-2-35 (Article 2), and 2-2-50 through 2-2-67 (Article 3).

(2) After writing the editor's note, it will be necessary for the publisher to indicate the new placement of any annotations (including cross-references, law reviews, case notes, etc.) appearing in the supplement under the former chapter.

**(c) Other notes.**  For any R & R, it will normally not be necessary to place amendment notes, effective date notes, or editor's notes under the individual Code sections in the affected unit.   The editor's note at the front of the unit will normally suffice.

**(d) History lines.**   For any R & R, do <u>not</u> carry forward the history lines of Code sections of the former unit to corresponding Code sections of the current unit.   The editor's note at the front of the unit will suffice to give the history of the repealed unit.

## 12.4.   Reenactment of lapsed Code sections

COMM000092

See Manual Section 13.12 for discussion of newly enacted Code sections which in fact derive from pre-Code Acts.  In addition to adjusting the history and the tables, the publisher should determine whether any judicial decisions or Attorney General opinions construing the pre-Code Acts should be annotated.  The statutes edition of Shepard's should be consulted for these purposes.

### 12.5.   Repeal of Code section and reuse of number

When a Code section is repealed and its Code section number later reused for different subject matter, the following editor's note is used:

> **Editor's notes. --** Ga. L. 1985, p. 1413, § 1, repealed former Code Section 31-16-4, pertaining to appointment of a kidney disease control officer, and enacted the present Code section.   The former Code section was based on Ga. L. 1972, p. 708, § 1.

COMM000093

## 13.   HISTORICAL CITATIONS

### 13.1.   Generally

**(a)   Georgia Laws.**   Generally, each Code section is followed by a history line which includes citations to the Georgia Laws and prior official compilations of the laws of the state pertaining to substantially the same subject matter as the present Code section. Unofficial codes are not cited in the history lines.   No history line is included for those Code sections which were enacted by the Official Code of Georgia Annotated itself until these sections are otherwise amended.   Examples of these types of Code sections include those Code sections in Title 1 dealing with the enactment of the Official Code of Georgia Annotated and Code sections in other titles which provide new titlewide definitions not previously included in the law.   See Manual Section 13.7.

Quite often the history lines not only will reflect the most recent specific enactment of a Code section but also will trace similar provisions of law existing prior to the most recent specific enactment, even though that enactment may not have expressly amended any of the prior similar provisions and may in fact have repealed them. For example, Ga. L. 1977, p. 396 enacted a new game and fish code (now codified primarily at Title 27) which repealed most of the then-existing provisions of law relating to game and fish. However, rather than beginning each history line in Title 27 with the most recent specific enactment (Ga. L. 1977, p. 396), the publisher examined the pre-1977 game and fish Acts, compared the subject matter of those Acts with the subject matter of each section of Ga. L. 1977, p. 396, and added history where appropriate. This tracing procedure serves the purpose of providing more complete historical information and recognizes the fact that many repeals by the General Assembly have the practical effect of amending or renumbering existing provisions of law.

In some cases the history lines may provide a quick method of translating sections of the Code to sections of prior codes. However, since the history lines do not cite unofficial codifications of provisions of Georgia law, reference generally should be made to the conversion tables in Volume 41 whenever a translation of a new Code section to a prior provision of law is desired.

**(b)   Enactment and amendments.**   Every Code section must contain a citation to the Act which enacted it, as well as to any Acts which subsequently amended it (see Manual Section 13.5 for exception).   This is called the historical citation, often referred to as the "history cite" or just the "history."

**(c) Indention.**   The historical citation is enclosed in parentheses and is run into the last line of text of the Code section or of the Paragraph of the 1983 Constitution; any runover lines are indented the same as the runovers of the sublevel to which it is attached.   (That is, if the Code section or Paragraph ends with a subsection or subparagraph, the history runover is flush left; etc.)   However, if a Code section ends with an oath or a table or other special

COMM000094

material not constituting a textual subunit, the history line is not run into the last line of text but begins flush left on a new line.

**(d) Citation of Acts.**

(1) Acts of the General Assembly enacted prior to 2005 are cited as follows:

(A) The year and session of the General Assembly in which the Act was enacted, always preceded by the abbreviation "Ga. L." (for "Georgia Laws");

(B) The page number of the session laws on which the Act begins; and

(c) The section or sections of the Act which affect the Code section in question. Do not refer to subsections of Act sections, even for cites to reviser's bill.   Example: Ga. L. 2004, p. 1000, § 1.

(2) Acts of the General Assembly enacted in 2005 or later are cited the same as in paragraph (1) of this subsection, except that the corresponding House bill (HB), Senate bill (SB), House resolution (HR), or Senate resolution (SR) number, preceded by a forward stroke, is added at the end.   Example: Ga. L. 2005, p. 1000, § 1/HB 1.

(3) Cites to Acts from the same year are listed separately in full (do not try to combine cites to Acts from the same year).  Citations to Acts from the same year are arranged in chronological order according to when the Act was approved by the Governor or became law without such approval.  This can usually be determined by the ascending numerical order of Georgia Laws page numbers of each cite; however, the pagination in the Georgia Laws (and hence in the historical citation) for an Act that became law via a veto override may be distinct from other Acts; see Manual Sections 2.4 and 22.3 regarding veto override Acts).

## 13.2   Constitution Paragraphs

Beginning with the 2007 revised Volume 2, history cites will be provided for numbered Paragraphs (in their entirety) of the 1983 Constitution, as follows:

(1) Numbered Paragraphs contained in original 1983 Constitution.

(A) No citation will be added to a numbered Paragraph contained in the original 1983 Constitution as approved by Ga. L. 1981, Ex. Sess. p. 143, §1, unless and until an amendment to such Paragraph has been approved by the General Assembly and ratified by the voters.

COMM000095

(B) If an amendment to a numbered Paragraph contained in the original 1983 Constitution has been approved and ratified, then add a cite to show the origin of the Paragraph in the 1983 Constitution plus a Ga. L. cite for the amendment, including a House or Senate resolution number for such amendment, e.g.:

> (Ga. Const. 1983, Art. 9, § 2, Para. 7; Ga. L. 1984, p. 1709, § 1/HR 444; Ga. L. 2002, p. 1497, §1/HR 391).

(2) Numbered Paragraphs not contained in but subsequently added to original 1983 Constitution.

(A) If a numbered Paragraph was not contained in the original 1983 Constitution as approved by Ga. L. 1981, Ex. Sess. p. 143, §1, but was added by other resolution, then add a history cite for the added paragraph including the approving resolution; e.g:

> (Ga. Const. 1983, Art. 1, § 4, Para. 1, approved by Ga. L. 2004, p. 1111, §1/SR 595).

(B) If a numbered Paragraph added to the original 1983 Constitution has been amended after it became a part of the Constitution, add a cite for the subsequent amendment; e.g.:

> (Ga. Const. 1983, Art. 15, § 1, Para. 1, approved by Ga. L. 2010, p. 1000, § 1/HR1; Ga. L. 2012, p. 1050, §1/HR2).

## 13.3.   New Code sections

**(a) Number assigned by General Assembly.**   Example: "Code 1981, § 2-2-22, enacted by Ga. L. 1982, p. 1, § 1."   This applies only to new Code sections, not to amendments to existing Code sections.

**(b) Number redesignated in year of enactment under Code Section 28-9-5.** If, in the year of enactment, a Code section is redesignated pursuant to Code Section 28-9-5 powers, the new number is used in the "enacted by" construction, even though technically that is not the number actually "enacted by" the legislature.   Therefore, follow the procedure in (a) above.

## 13.4.   Amendments to Code sections

Add the Ga. L. cite for each Act that amends the Code section irrespective of whether it was given effect or superseded.

COMM000096

### 13.5.   Delayed and contingent amendments to the Code

Cites to Acts amending the Code with delayed effective dates are included immediately, rather than waiting for the Act to become effective, since the text of delayed amendments is set out in 11 point type.  Cites to Acts with contingent effective dates are also added immediately, even though the contingency may not yet be fulfilled or may never be fulfilled, since there should be a complete record of Acts purporting to amend each Code section.

### 13.6.   Delayed and contingent amendments to the Constitution

All proposed amendments to the 1983 Constitution are contingent upon ratification by a majority of those persons voting in the next state-wide general election held in an even-numbered year following adoption by the General Assembly and, unless otherwise specified in the resolution proposing the amendment, the effective date of a ratified amendment is delayed until January 1 of the year following such ratification.  Add the Ga. L. cite for a resolution that amends a Constitution Paragraph only if the proposed amendment was ratified by the voters.

### 13.7.   Directory amendments to units

Occasionally an Act will direct certain changes to be made "throughout" a specified unit of the Code but will not list the particular Code sections affected.  (For example, an Act might provide: "Chapter 2 of Title 2 is amended by changing 'movable home' to 'mobile home' wherever that term appears.")  Any Code section affected by such an Act should have the Act listed in its history cite.  (Note also that in these situations the state may provide the publisher with a list of the Code sections affected so the publisher will not have to search the unit.)

### 13.8.   Amendment of Code section not having a history cite

If a Code section was created anew pursuant to the 1981 recodification (see, e.g., Code Sections 46-1-3 and 46-1-4), no historical citation was attached to it, and if that Code section is subsequently amended, a notation must be added to show the origin of the Code section in the 1981 Code.  Thus, if Code Section 46-1-3 is subsequently amended by Ga. L. 1990, p. 1, § 1, add an original Code 1981 cite plus the amended Act, as follows: "(Code 1981, § 46-1-3; Ga. L. 1990, p. 1, § 1.)" Also, add a   note precisely as follows:

> **Editor's notes. --** This Code section was created as part of the Code revision and was thus enacted by Ga. L. 1981, Ex. Sess., p. 8 (Code enactment Act).

### 13.9.   Number redesignated by General Assembly

COMM000097

If an Act renumbers a Code section or Constitution Paragraph, such redesignation must be acknowledged in the history citation.  As with other historical citations, the citation of the redesignating Act should include the bill number in accordance with Manual Section 13.1(d). For example, if Code Section 2-2-22 is renumbered as Code Section 2-2-23 by a 2011 Act, the citation would read "Code 1981, § 2-2-23, as redesignated by Ga. L. 2011, p. 1, § 1/HB 6." When a Code section is redesignated, a "Code 1981" cite for the Code section's former number also must be added to the history cite.

If a Code section was part of the original 1981 Code, the former Code section number will not yet be in the history and a reference to it needs to be added at this point.  Add a cite to the former number in the form "Code 1981, § 1-2-3."  The cite should be inserted following any 1981 or earlier history and preceding any 1981 Ex. Sess. or later history.

> **Example:**
>
> > (Code 1933, § 20-301; Ga. L. 1980, p. 1, § 1 Code 1981, § 22-2-2; Ga. L. 1982, p. 1, § 2; Code 1981, § 22-2-3, as redesignated by Ga. L. 2011, p. 1, § 1/HB 7.)

If the Code section was not part of the original 1981 Code, the former Code section number should already be in the history, in the form "§ 22-2-2, enacted by Ga. L. 1982, p. 1, § 1" so no other reference to the former Code section number needs to be added.

If the Code section had no history cite prior to redesignation (such as a Code section created anew as part of the 1981 recodification), then a history cite should be created, consisting of a "Code 1981" cite and an "as redesignated by" cite.

> **Example:**
>
> > (Code 1981, § 22-2-2; Code 1981, § 22-2-3, as redesignated by Ga. L. 2011, p. 100, § 3/HB 8.)

## 13.10.   Code sections in amendatory revisions of units

Treat these like ordinary amendments.  That is, add the Act's "Ga. L." cite.  Note: If the Code section is redesignated, use the form in Manual Section 13.8, whether the Code section text is also amended or not.

## 13.11.   Repeals and reenactments of Code sections

Treat these like new Code sections.   See Manual Section 13.3.  Do not pick up any old history, regardless of whether Code section numbers are reused and regardless of the existence of comparable old and new provisions.

COMM000098

## 13.12.   Double drafting at 1982 session

Many Acts during the 1982 session were "double-drafted" to allow for the November 1, 1982, transition to the Code.   "Double drafted" means that the same Act enacted comparable Code 1933 and Code 1981 provisions, the Code 1933 provision to be repealed 11/1/82 and the Code 1981 provision to become effective on that date.   Make sure that the Code 1981 cite follows the Code 1933 cite.

>   **Example:**

>   (Code 1933, § 92-104.1, enacted by Ga. L. 1982, p. 85, § 1; Code 1981, § 1-2-3, enacted by Ga. L. 1982, p. 85, § 2.)

## 13.13.   Code sections omitted from 1981 Code and added later

Some new Code sections enacted in 1982 or later were in fact derived from pre-1981 Acts but were not included in the 1981 Code.   (Most of these appear to result from reconsideration by the Code commission of earlier decisions to omit Code sections from the Code.)   The state must tell the publisher whether a given new Code section is in fact a reenactment of a lapsed Code section; there is really no other way to determine this.   For these types of Code sections, indicate the pre-1981 Code section and session law on which the new Code section was based and add a "Code 1981, § _____, enacted by" cite; for example:

>   (Ga. L. 1899, p. 32, § 1; Civil Code 1910, § 3256; Code 1933, § 67-103; Ga. L. 1947, p. 529, § 1; Ga. L. 1961, p. 468, § 1; Code 1981, § 44-14-35.1, enacted by Ga. L. 1983, p. 3, § 33; Ga. L. 1990, p. 256, § 1; Ga. L. 1991, p. 94, § 44.)

An editor's note should be added to read as follows:

>   **Editor's notes.** -- The provisions of this Code section were previously enacted in substantially similar form by [pre-1981 Ga. L. cite].   However, those provisions were not enacted as part of the original Code by the Code enactment Act (Ga. L. 1981, Ex. Sess., p. 8).

See Manual Section 12.4 for identification and creation of annotations in this situation.   See also Manual Section 35.2 for handling of tables in this situation.

## 13.14.   Amendment to effective date or other uncodified section of Act

The cite to an Act amending the effective date or other uncodified section of a previous Act and not specifically amending a Code section should not be in the history line but should be included in an editor's note.

COMM000099

## 14. DELAYED EFFECTIVE DATES--GENERALLY

### 14.1.   Introduction

Some Acts specify an effective date which falls after the date when the supplement is to be published.   The procedure for handling individual delayed effective date (DED) situations depends on several considerations, including:

(1) Whether the Act works an amendment, an enactment, a repeal and reenactment, or a repeal;

(2) Whether the Act affects a unit or a Code section;

(3) Whether the Act is effective before September 1 of the year of shipment, on or after September 1 of the year of shipment and up to and including the following July 1, or after July 1 of the year following the year of shipment;

(4) Whether the current version appears in the bound volume or in the supplement;

(5) Whether the state directs special treatment; and

(6) Whether the Act works an extensive or minor revision.

Manual Chapters 15 through 21 describe methods of handling delayed enactments, delayed amendments, delayed repeals and reenactments, delayed repeals, and contingent material.

### 14.2.   Memos to state

The handling of a delayed effective date situation should be memoed to the state to see if a deviation from normal procedure is desired or to suggest a procedure for an out-of-the-ordinary situation not covered by the general rules.

COMM000100

## 15.   DELAYED EFFECTIVE DATES –
## DELAYED ENACTMENTS

### 15.1.   Generally

**(a)   Text.**   In newly enacted date certain delayed enactments, carry the text of the new material in 11 point type.

**(b) Note.**   In newly enacted date certain delayed enactments, carry a regular "Effective date note" and not a "Delayed effective date note."   See Manual Chapter 22 regarding effective dates for newly enacted material:

   (1) If a new unit is enacted, place the effective date note only under the unit heading; or

   (2) If only a new Code section is enacted, place the effective date note under the Code section.

**(c) Parenthetical.**   Carry a catchline parenthetical in each new Code section as follows:

   "2-2-22. (Effective [Date Certain]) Penalty."

   If a date certain, place the date in the parenthetical, e.g., "(Effective July 1, 2000)", whenever possible.   See Manual Chapter 19 for contingent effective date enactments.

**(d) History cite.**   Cite the enacting legislation by its Ga. L. cite in the historical citation of each new Code section.

**(e) Contingencies.**   See Manual Chapters 20 and 21 for contingent delayed legislation.

COMM000101

## 16.   DELAYED EFFECTIVE DATES –
## DELAYED AMENDMENTS

### 16.1.   "Delayed amendment" defined

Delayed amendments are those amendments that do not become effective until September 1 of the year of enactment or later.   (Note "delayed amendments" do not include contingent amendments, which are treated separately in this manual.   See Manual Section 21.)

A "delayed" amendment becomes effective on a future date certain, while a "contingent" amendment becomes effective only upon the occurrence of an event specified in the Act, such as funding or a referendum.

### 16.2.   Effective on or before July 1 of following year

(a)   **Generally.**   Handling of delayed amendments is a function of (1) effective date, (2) whether the current version of the Code section is in the bound volume or supplement, (3) whether the state directs special treatment, and (4) the nature of the amendatory changes.

If an entire unit is affected, parentheticals are not added to the unit headings.   They are, however, added to the Code section catchlines of each Code section in the unit.

The general rules for handling postponed amendments are set out below.   Note: While a vast majority of delayed amendments fit within one of the following categories, some will require special treatment.   Also the standard treatment can be modified in cases where such would be more convenient and understandable to the user.

**(b)(1) Code section or sublevel amended–current version in supplement.**   Carry new text in 11 point type   Insert "(For effective date, see note.)" at the beginning of the Code section catchline and following the designation of the amended sublevel(s), i.e., "(a) (For effective date, see note.) Text of sublevel...."   Add amendment note describing change. Add "Delayed effective date" note either (A) quoting the prior version of the sublevel in full or (B) if the amendment is not extensive, referring the user to the Amendment note to determine the prior version.   Examples of the forms for these delayed effective date notes are as follows:

(A)   **"Delayed effective date.--**Subsection (b), as set out above, becomes effective January 1, 1996.   Until January 1, 1996, subsection (b) reads as follows: '[quote version effective until January 1, 1996, here--include designation of sublevel in quoted language]'."

COMM000102

(B) **"Delayed effective date.**--Subsection (b), as set out above, becomes effective January 1, 1996.  For version of subsection (b) in effect until January 1, 1996, see the 1995 amendment note."

(C) **"Delayed effective date.**--Paragraph (2.1), as set out above, becomes effective March 31, 2009.  Until March 31, 2009, there is no paragraph (2.1)."

The amendment note referred to in the delayed effective date note in (1)(B) above should be as descriptive as possible, and, if the Code section is extensively amended and short, the amendment note can set out the text.  The form for the note would then be: "**The 1995 amendment,** effective July 1, 1995, rewrote this Code section (or subsection), which read '..........'."

**(2) Code section or sublevel amended–changes extensive, current version in bound volume.**  Carry new text in 11 point type.  Insert "(For effective date, see note.)" at the beginning of the Code section catchline and following the designation of the amended sublevel(s), i.e., "(a) (For effective date, see note.) Text of sublevel...."  Add an amendment note describing the extensive changes.  Add a delayed effective date note, referring the user to the bound volume.

Example:

**Delayed effective date.**--For version of this Code section (or sublevel) effective until January 1, 1998, see the bound volume.

Do not use a note referring to the bound volume unless the changes are extensive.  If they are not extensive, use the style set out in (1)(B) above.


**16.3.   Effective after July 1 of following year**

**(a) Code section or sublevel amended–current version in bound volume**. Set out the text of the delayed version in the supplement, together with a parenthetical at the beginning of the Code section catchline and following the designation of the amended sublevel, e.g., "(Effective January 1, 1999.  See note.)."  Also add an amendment note and a delayed effective date note.   The DED note should read as follows:

**Delayed effective date.**  This Code section, as set forth above, is effective on January 1, 1999.  For the version of this Code section effective until that date, see the bound volume.

**(b) Code section or sublevel amended–current version in supplement**.  Generally set out two versions of the Code section in 11 point type in the supplement (in special cases such as very lengthy Code sections, e.g., Code Section 48-8-3, the state may give special instructions).

COMM000103

The catchline of the current version should read: "1-2-3. (Effective until July 1, 1999.   See note.) Short title."

The catchline of the delayed version should read "1-2-3. (Effective July 1, 1999.   See note.) Short title."

> **Editor's notes.**–Code Section 1-2-3 is set out twice in this Code.   The first version is effective until January 1, 1999, and the second version becomes effective on that date.

**(c) Placement of notes.**   The history cite to the delayed amendment should only appear in the delayed version.   The amendment note for the delayed amendment should only appear under the delayed version.   All other notes should appear only under the current version, unless they relate specifically to the delayed version.


## 16.4.   Multiple delayed amendments

If a Code section is amended with a delayed effective date beyond two years and is amended again before the delayed effective date occurs, set out both versions in the supplement.


## 16.5.   Code section or sublevel amended but same Act provides for repeal of amendment

Treat the delayed repeal of the amendment as a delayed amendment.   Add "(For effective date, see note.)" to the catchline and as a sublevel parenthetical where applicable.   In the following amendment note, use, e.g.:

> **The 1995 amendment**, effective July 1, 1995, and repealed effective July 1, 1998, ...."

Also, add a Delayed effective date note explaining the delayed repeal of the amendment, e.g.:

> **Delayed effective date.**–This Code section, as set forth above, is effective on July 1, 1998, in accordance with Ga. L. 1995, p. 1500, § 2, which provides for repeal of the amendment made by § 1 of that Act.


## 16.6.   Caution

If a Code section was previously set out twice in the supplement and one of the versions has become effective so as to supersede the other (either due to the passage of time or the fulfillment of a contingency), then delete the obsolete version and omit the effective date parentheticals and delayed effective date notes from the now current version.

COMM000104

## 17.   DELAYED EFFECTIVE DATES--DELAYED REPEALS; TERMINATION PROVISIONS

### 17.1.   Delayed repeal of Code section

If an Act repeals a Code section effective between September 1 of the supplement year and July 1 of the following year, inclusive:

(1) For a Code section, the text of which is printed only in the bound volume, in the supplement print the catchline and add a parenthetical in the catchline (note that the language of this parenthetical differs from that used in the situation where a subsection is repealed - see Manual Section 17.2), add a repeal line, and add an editor's note referring the user to the bound volume and citing the history of the Code section, e.g.:

**31-7-143. (Repealed effective March 1, 2012) Committee proceedings and records immune from discovery or use as evidence in civil actions.**

Repealed by Ga. L. 2011, p. 1000, § 2/HB 9, effective March 1, 2012.

**Editor's notes.**--Ga. L. 2011, p. 1000, § 2 provides for the repeal of this Code section, effective March 1, 2012.   For provisions of this Code section effective until that date, see the bound volume.

(2) For a Code section, the text of which is printed in the supplement, carry the text of the Code section, add "(Repealed effective _____)" to the catchline, and also carry an editor's note as follows:

**Editor's notes.**--Ga. L. 2011, p. 1000, § 2 provides for the repeal of this Code section effective March 1, 2012.

Do not add the repealing Act to the historical citation.

### 17.2.   Delayed repeal of subsection

If a sublevel, such as a subsection or a paragraph, is repealed, add a parenthetical at the beginning of the text of the affected sublevel.   The parenthetical should read: (Repealed effective _____.)   If the repeal provision is not expressed in the text of the sublevel itself, add an explanatory editor's note following the Code section, e.g.:

**Editor's notes**–Ga. L. 1997, p. 1000, § 2 provides for the repeal of subsection (b), effective March 1, 1998.

If the repeal provision is expressed in the text of the sublevel itself, no editor's note is needed.

COMM000105

After the repeal has become effective, if the repeal was not expressed in the sublevel itself, convert the existing editor's note to past tense to read as follows:

> **Editor's notes**–Ga. L. 1997, p. 1000, § 2 provided for the repeal of former subsection (b), effective March 1, 1998.

If the repeal was expressed in the text of the sublevel itself, there was no editor's note, and the repeal has become effective, add an editor's note:

> **Editor's notes**– Former subsection (b) was repealed on its own terms effective March 1, 1998.

## 17.3.   Delayed repeal of unit

If an Act repeals an entire unit effective between September 1 of the supplement year and July 1 of the following year, inclusive:

(1) If the text of all Code sections in the unit appears in the bound volume only:

(A) In the supplement, print the unit heading and Code section span and add a parenthetical to the Code section span line, e.g.:

**ARTICLE 10**

**HOSPITAL FINANCING AUTHORITY**

**31-7-190 through 31-7-208. (Repealed effective March 1, 2012)**

Repealed by Ga. L. 2011, p. 1000, § 2/HB 9 , effective March 1, 2012.

> **Editor's notes.**– Ga. L. 2011, p. 1000, § 2 provides for the repeal of this article effective March 1, 2012.   For provisions of this article effective until that date, see the bound volume.

(B) For each Code section for which annotations but not text appear in the supplement, add a parenthetical to the catchline preceding the annotations and add a supplement editor's note referring back to the note under the unit heading (see example below), and retain the annotations.

> **Editor's notes.**– See the Editor's note following the [unit] heading as to the repeal of this Code section.

Χη. – Πγ. 2                                    December 2010

(2) If the entire unit is not being repealed, for each Code section for which annotations do not appear in the supplement, proceed as in (1)(B) above.   Do not list separate catchlines for two or more consecutive Code sections; i.e.:

**2-2-29 through 2-2-35. (Repealed effective March 1, 1996)**

**Editor's notes.--**See the editor's note following the [unit] heading as to the repeal of these Code sections.

(3) If the text of any of the Code sections in the unit appears in the supplement retain the text and proceed as in (1)(B) above.

## 17.4.   Effective after July 1 of following year

**(a) Bound volume.**   If the Code section appears in the bound volume only, in the supplement add a parenthetical to the catchline "(Repealed, effective _____)", an Editor's note, and refer the user back to the bound volume for the text of the Code section. Do not add a repeal line. E.g.:

**2-2-29. (Repealed effective _____) Catchline.**

**Editor's note.**– Ga. L. 1995, p. 1000, § 2 provides for the repeal of this Code section effective March 1, 1996.   For provisions of this Code section effective until that date, see the bound volume.

**(b) Supplement.**   If the Code section appears in the supplement, carry the existing text with a parenthetical in the catchline and an Editor's note like that in (a), but do not refer the user to the bound volume.   Do not add a repeal line.

## 17.5.   Caution

In a future supplement, the delayed repeal will have to be treated as a regular repeal.   At that time, the publisher must be sure to carry out all functions required for regular repeals, including writing editor's notes to list the history of the repealed material.

## 17.6.   Effective date extended by legislation

If an amendment is made to a previous "Act" and not specifically to a codified portion of the Code and that amendment extends the effective date of that "Act," an Editor's note should carry this history but the cite should not be reflected in the history line.

## 17.7.   Termination Code sections (sunsetting)

Χη. – Πγ. 3

COMM000107

**(a) Generally.**  Throughout the Code there are a number of Code sections which specify dates for the eventual repeal of units or sections of the Code.  There may also be Code sections which provide for their own repeal on certain dates.

**(b) Treatment as delayed repeal.**  If the date in such a termination section does not occur before the shipping date of the next year's supplement, it is necessary to note its effect under the Code sections affected and to list the repeal date in the catchline of any Code sections.  Treat as a delayed repeal.  A follow up is needed each year on units, Code sections, or sublevels sunsetting.

**(c) Treatment as repeal.**  If the termination date falls before the date of the next supplement, and if the termination section is not amended so as to extend the date, then treat the affected Code sections as repealed.  A repeal line in this situation should read as follows: "Repealed pursuant to Code Section 2-2-22, which provided for the repeal of this [unit or Code section] on July 1, 1994."

**(d)  Termination on its own terms.**  See Manual Section 28.9 for termination of a unit or Code section on its own terms.

## 17.8.  Comparison of editor's notes and delayed effective date notes

Editor's notes are used with the former language of a unit, Code section, etc. describing what will no longer be in effect.

Delayed effective date notes are used with new language describing what will become effective.

Both notes are used in a repeal and reenactment; i.e., editor's notes describing the former language that will no longer be in effect and delayed effective date notes describing the new language that will become effective.

See Manual Chapter 26 regarding editor's notes generally.

See Manual Section 26.3 regarding deletion of editor's notes in volume revision.

COMM000108

## 18.   DELAYED EFFECTIVE DATES--
## DELAYED REPEALS AND REENACTMENTS

### 18.1.   Generally

A delayed repeal and reenactment of a unit of material can be very confusing for a Code user, since (1) provisions within the unit are often extensively renumbered and rearranged, (2) some Code sections of the current version of the unit may already appear in the supplement, and (3) annotations will appear under Code sections in the current version whose counterparts in the delayed version will probably have been redesignated.

### 18.2.   Effective between September 1 and the following July 1, inclusive

**(a) Text of current version**.  If any or all Code sections in the current version of the unit are in the supplement, these should continue to appear in the supplement until the delayed version becomes effective.

**(b) Code section catchlines in current version**. The catchline of all Code sections of the unit already in the supplement should contain a parenthetical.  Example: "2-2-22. (Effective until [date]) Penalty."

**(c) Text of delayed version**.  Print all Code sections of the delayed repealed and reenacted version of the unit in 11 point type.   Note: All provisions of the current version of the unit in the supplement are to appear before the delayed version.   Current and delayed versions of the individual Code sections are not to be paired together.

**(d) Code section catchlines in delayed version**.  Carry a catchline parenthetical in each Code section catchline.   Example: "2-2-22. (Effective [date]) Penalty."

**(e) Editor's notes; delayed effective date (DED) notes**.  If any or all provisions of the current version are in the supplement, include a DED note under the unit heading of the current version in the style of the following example:

> **Delayed effective date.--**Ga. L. 1995, p. 139,  § 1, revised Chapter 8 of Title 34, effective January 1, 1996.  For the version of Chapter 8 effective until January 1, 1996, consult the bound volume and the Code sections in this version of Chapter 8 in the supplement.  For the version effective January 1, 1996, see the version of Chapter 8 following this version.

Under the unit heading of the delayed version, a delayed effective date note and also an editor's note should appear, as in the following examples:

COMM000109

> **Delayed effective date.--**Ga. L. 1995, p. 139, § 1, revised Chapter 8 of Title 34, effective January 1, 1996.  For the version of Chapter 8 effective until January 1, 1996, consult the bound volume and the Code sections set out in the preceding version of Chapter 8 in the supplement.  For the version effective January 1, 1996, see this version of Chapter 8.

> **Editor's notes.--**Ga. L. 1995, p. 139, effective January 1, 1996, repealed the Code sections formerly codified at this chapter and enacted the current chapter.  The former chapter consisted of §§ 34-8-1 through 34-8-7.1, 34-8-8 through 34-8-19 (Article 1); 34-8-30 through 34-8-41.1, 34-8-2 through 34-8-49.1, and 34-8-50 through 34-8-53 (Article 2; 34-8-70 through 34-8-83 (Article 3; 34-8-100 through 34-8-104 (Article 4); 34-8-110 through 34-8-115 (Article 4A); 34-8-120 through 34-8-132 (Article 5); 34-8-150 through 34-8-160 (Article 6); and 34-8-170 through 34-8-177 (Article 7); and was based on Ga. L. 1989, p. 302, §§ 1, 2; Ga. L. 1989, p. 305, §§ 1-5; Ga. L. 1989, p. 594, § 1; Ga. L. 1990, p. 870, § 1.

Following each individual Code section of the delayed version, include a delayed effective date note (DED) referring the user to the note under the unit heading, e.g.:

> **Delayed effective date.--**For information as to the delayed repeal and reenactment of this [unit], see the delayed effective date note at the beginning of this [unit].

## 18.3.   Effective after July 1 of year following supplement shipment

**(a) Text of current version.**  If any or all Code sections in the current version of the unit are in the supplement, these should continue to appear in the supplement in 11 point type until the delayed version becomes effective.

**(b) Code section catchlines in current version.**  The catchline of all Code sections of the current version already in the supplement should contain a parenthetical as to the effective date.   Example: "2-2-22. (Effective until [date]) Penalty."

**(c) Text of delayed version.**   Print new Code sections and catchlines in 9 point wide-measure type (but do not carry a history line for the 9 point versions and do not carry any amendment notes).  Note: All provisions of the current version of the unit that are set out in the supplement are to appear before the delayed version.  Current and delayed versions of individual Code sections are not to be paired together.

**(d) Code section catchline in delayed version.**  Carry a catchline parenthetical in each Code section catchline.   Example: "2-2-22. (Effective [date]) Penalty."

**(e) Editor's notes; delayed effective date notes.**  These are handled the same way as discussed in Manual Section 18.2(e) above.

COMM000110

**(f) Changes in following year's supplement.**   In the following year's supplement, change the 9 point type to 11 point type, deleting the now-repealed versions from the supplement. Also, be sure to change the Code section catchlines as appropriate.

COMM000111

# 19. DELAYED EFFECTIVE DATES--CONTINGENT DATES
# GENERALLY

## 19.1.   Generally

Occasionally an Act will not specify a particular date on which it becomes effective but will instead specify an event which must occur before the Act will become effective.  For example, an Act may become effective upon the ratification of a specified constitutional amendment, or upon the appropriation of a sum of money, or upon adoption of the Act by a city or county. Such an effective date is referred to as a contingent effective date.

## 19.2.   Instructions from state as to unusual situations

While certain standard procedures are set down herein for handling contingent effective dates, the state will occasionally direct a different treatment depending on the determination of the likelihood of the contingency coming to pass.  As with delayed effective dates, any situation involving a contingent effective date should be memoed to the state.

## 19.3.   Funding contingencies

If funded, the effective date is the date funded, not the date the bill was effective (normally July 1 for General Appropriations Acts).

## 19.4.   Conversion of notes

If there is any pertinent information contained in any funding contingency notes not already carried in editor's notes, carry such notes until the contingency is met.  As to any funding contingency notes which should be retained after the contingency has been met, contact the state with a query.

COMM000112

## 20. DELAYED EFFECTIVE DATES--CONTINGENT ENACTMENTS

**20.1.   New unit**

**(a) Type.**   Print the unit in 11 point type.

**(b) DED note.**   Print a "delayed effective date" note at the front of the unit describing the contingency.

**(c) Editor's note.**   Under each Code section in the unit place the following note:

> **Editor's notes--**For information as to the effective date of this Code section, see the delayed effective date note at the beginning of this [unit].

**(d) Parenthetical.**   Place the following parenthetical in the catchline of each Code section: "(For effective date, see note)".

**(e) Contingency not met.**   If new unit is set out in the volume only (replacement volume year of enactment) and the contingency is not met in subsequent years, set out the unit heading and a delayed effective date note only in the supplement stating that contingency was not met for the current year.

**(f) History.**   Print the enacting Act in the history of each Code section.

**20.2.   New Code section**

**(a) Type.**   Print the Code section in 11 point type.

**(b) DED note.**   Print a "delayed effective date" note under the Code section describing the contingency, i.e.:

> **Delayed effective date.--**Ga.  L.  _____,  §  _____  provides this Code section becomes effective only when funds are specifically appropriated for purposes of the Act in an Appropriations Act making specific reference to that Act.  Funds were not appropriated [during current session].

**(c) Parenthetical.**   Place the following parenthetical at the beginning of the catchline: "(For effective date, see note)".

**(d) Contingency not met.**   Same as Manual Section 20.1(e) above.

**(e) History.**   Print the enacting Act in the history line.

COMM000113

### 20.3.   Retirement provisions requiring concurrent funding

See Manual Section 21.5.   Special attention must be paid in this area.

December 2010

COMM000114

## 21. DELAYED EFFECTIVE DATES--CONTINGENT AMENDMENTS

### 21.1.   Generally

Do not incorporate contingent amendments into the text until the contingency has been met. (For newly enacted Code sections, see Manual Section 20.5.)   For amended Code sections, until the contingency is met, set out the text, as it would read, in a delayed effective date note.   Also, include a parenthetical "(For effective date, see note)" in the Code section catchline.   Do add the cite to the historical citation immediately, however.

As to the delayed repeal of a subsection, where the repeal will not take effect until a contingency is met, see Manual Section 17.2.

### 21.2.   If Code section appears in bound volume only

(a) Catchline.   Carry the catchline only in the supplement, no parenthetical is necessary.

(b) Amendment note.   Add amendment note describing change.   The last sentence of the amendment note should read: "For effective date of this amendment, see the delayed effective date note." Add delayed effective date note reading as follows:

Delayed effective date.–Ga. L. 20__, p. __, § _, provides that the 20__ amendment becomes effective [describe contingency].   This Code section as amended is not set out in the Code owing to the delayed effective date.

If the amendment is contingent upon appropriation of funds, and funds are not appropriated as of the time of publication, include such information in the delayed effective date note as follows:

"Funds were not appropriated at the 1995, 1996, or 1997 sessions of the General Assembly."

Finally, add language to the DED note explaining how the Code section will read after the contingency is met as follows:

"After the appropriation is made [or, whatever contingency is met], this Code section [or whatever particular sublevel] will read as follows: [quote pertinent language].

After the contingency has been met, convert the pertinent information that needs to be retained in the delayed effective date note to an editor's note.   See © below.

Thus, a final printed note may read as follows:

COMM000115

**Delayed effective date.--**Ga. L. 1994, p. 1154, § 1, provides that the 1994 amendment becomes effective only when funds are specifically appropriated for purposes of the Act in an Appropriations Act making specific reference to that Act. This Code section as amended is not set out in the supplement owing to the delayed effective date. Funds were not appropriated at the 1994, 1995, 1996, or 1997 sessions of the General Assembly. After the appropriation is made, subsection (a) will read as follows: [quote subsection (a)].

**(c) Contingency met.** If the contingency is later met, then in a subsequent supplement the Code section as amended must be printed and an editor's note written describing the contingency and the date of its satisfaction. Carry the Act in the history line even if the contingency has not been met.

### 21.3.   If Code section appears in supplement or in current revised volume

Basically follow the same procedure as in Manual Section 21.2 above. Since the current text appears in the supplement, retain the current text and add a parenthetical to the catchline. Do not incorporate the amendment, but do include the amendatory act in the history. The second sentence in the delayed effective date note set out in Manual Section 21.2 above should read: "This Code section, as set out above, does not reflect the amendment by that Act owing to the delayed effective date."

Observe the same cautionary point as above.

### 21.4.   When text is set out in 11 point type

When the text already appears in the supplement or a new replacement volume is involved, add a parenthetical immediately preceding the catchline as follows:

**15-11-9.1. (For effective date, see note) Intake and probation services of juvenile courts.**

### 21.5.   Concurrent funding of retirement provisions

**(a) In general.** In even numbered years, some of the legislation pertaining to retirement of public employees is made contingent upon concurrent funding. Most, but not all, such provisions are in Title 47. Acts requiring concurrent funding contain a provision that the Act is effective only if concurrently funded and that the provision is repealed (without ever having taken effect) if not concurrently funded.

COMM000116

**(b) Determination of concurrent funding.**   The state auditor's report on concurrent funding is sent in each even-numbered year during supplement production.   The report is also printed in the Georgia Laws.

**(c) Section text.**   If the Act is concurrently funded, set out the Code section as affected by the Act.   If not funded, do not give effect to the Act.   Note: If the Act purported to enact a new Code section, but was not funded, a repeal line will be needed, so there is a place for the editor's note (see (d) below).   Do not create a catchline since the Code section never was effective, but include a description of its subject matter in the editor's note.

**(d) Notes required.**

(1) Enacted Code sections.   If funded, an effective date note (See Manual Chapter 22) is all that is needed.   The note should not refer to the fact that the Act was subject to a funding contingency.   If not funded, an Editor's note is needed instead of an effective date note.   The form for the Editor's note is:

Editor's notes.--Ga. L. 1988, p. 697, § 1, which would have enacted a Code Section 47-10-117, pertaining to contributions for prior service credit, was not concurrently funded as required by Code Section 47-20-50 and, therefore, did not become law and was repealed on July 1, 1988.   See state auditor's report at Ga. L. 1988, p. CCLXXXIV.

(2) Amended Code sections.   If funded, an amendment note (see Manual Chapter 23) is all that is required.   The note should not refer to the fact that the Act was subject to a funding contingency.   If not funded, an Editor's note is needed instead of an amendment note.   The form for the Editor's note is:

Editor's notes.--Ga. L. 1988, p. 697, § 1, which would have amended subsections (c) and (f) and would have added a subsection (h), was not concurrently funded as required by Code Section 47-20-50 and, therefore, did not become law and was repealed on July 1, 1988.   See state auditor's report at Ga. L. 1988, p. CCLXXXIV.

**(e) History cite.**   Every Code section amended by the Act should include a cite to the Act in its history cite, even if the Act is not concurrently funded.   Newly enacted Code sections would carry a cite to the Act, if concurrently funded.

**(f) Effective date.**   If funded, the amendment is effective on the date it is funded, not the date the bill was effective.   (Normally July 1 for General Appropriations Acts.)

**21.6.   Reenactment of repealed and reserved Code section**

COMM000117

If a previously enacted Code section is reenacted without change in legislation that contains a contingency, do not use amendment notes or delayed effective date notes.  Use the following editor's note:

> **Editor's notes.** – Ga. L. 2002, p. 1324, § 1-8, which reenacted this Code section without change, becomes effective only if funds are specifically appropriated for the purposes of the Act in an appropriations Act making specific reference to that Act and shall become effective when funds so appropriated become available for expenditure. Funds were not appropriated at the 2002 session of the General Assembly.

COMM000118

## 22. EFFECTIVE DATE NOTES

### 22.1.  Generally

A Georgia Act may sometimes contain a specific effective date provision.  This can be expressed as a date certain, contingent upon an event such as funding, or effective upon approval by the Governor.  For those Acts which are effective upon approval by the Governor, obtain approval date information from the Legislative Counsel's office.

### 22.2.  Default dates

**(a) Generally.**  Unless a different effective date is specified in the Act, a general Act signed by the Governor or becoming law without such approval between January 1 and June 30, inclusive, becomes effective July 1 of that year, and an Act signed by the Governor or becoming law without such approval between July 1 and December 31, inclusive, becomes effective January 1 of the following year (See Code Section 1-3-4).

**(b) Compensation of certain officials.**  Code Section 1-3-4.1 provides a January 1 effective date rule for general Acts increasing the compensation of any county officer listed in Article 9, Section 1, Paragraph 3 of the Georgia Constitution 1983 or Title 15, Chapter 10.  See the cross-references under Code Section 1-3-4.1 for a listing of the Code sections that this conceivably could affect.

### 22.3 Veto override.

Treat the veto override Act as becoming effective on the date that the second house successfully overrode the veto, unless the Act specifies a later effective date.

### 22.4.  Notes

An effective date note is required for every new Code section.   Exceptions: If an entire new unit is enacted create just one note for the entire unit, to be placed under the unit heading.

### 22.5.  Form of notes generally

**(a)   On or before September 1.**   For Acts effective on or before September 1 of the current year:

  **Effective date.--**This Code section (or chapter, etc.) became effective (date).

COMM000119

**(b)   After September 1 but before July 1.**   For Acts effective after September 1 of the current year but on or before July 1 of the following year.

> **Effective date.--**This Code section (or chapter, etc.) becomes effective (date).

Caution:   "becomes" changes to "became" the following year.

If the effective date provision of the Act contains more language than simply a date, such as "for taxable years beginning on or after July 1, 1990," or applicability language, this language should be recited in full in an editor's note setting out the language in full.


## 22.6.   Date preceding approval by the Governor

Sometimes an Act will have an effective date that precedes the date of approval by the Governor.  In that case, treat the Act as if it had no specified effective date (see Manual Section 22.2) and add an editor's note like the following:

> **Editor's notes. --** Ga. L. 1994, p. ___, § __, approved by the Governor April 14, 1994, provided that the effective date of this Code section is April 1, 1994.  See Op. Att'y Gen. No. 76-76 for construction of effective date provisions that precede the date of approval by the Governor.


## 22.7.   Change of effective date by later legislation

If an amendment is made to a previous Act and not specifically to a codified portion of the Code and that amendment extends the effective date of that Act, an Editor's note should explain this, but the cite to the Act amending the effective date should not be reflected in the history line. Place the note at each unit or Code section for which delayed effective date of enactment, amendment, or repeal has been changed.


## 22.8.   Retention of effective date notes

Effective date notes are kept indefinitely in supplements.  Typically, only the last three years' notes are kept in replacement volumes--notes from sessions held in the year of replacement and the two preceding years.   The effective date note should not contain applicability or contingency language.   This language should be contained in an editor's note.

COMM000120

## 23. AMENDMENT NOTES

### 23.1.  Generally

An amendment note is required for every amendment to a Code section.  Amendments by separate Acts are considered as separate amendments (See Manual Section 23.6), while amendments to a given Code section by different sections of the same Act are considered one amendment unless such amendments have different effective dates.

At the time of creating amendment notes, the publisher should review each Code section and catchline and, where appropriate, create a new catchline in light of the amendment modification. Please note that special and careful attention needs to be given to the continuing accuracy of the catchlines.   The general rule is that if the publisher thinks the catchline should be modified, then it probably should be; the publisher should not hesitate to modify the catchlines to reflect the content of the Code section since such catchlines are not part of the statutory text.   The only exceptions are those catchlines in  Title 11 and Interstate Compacts; in these cases, do not modify the catchlines since they are typically part of the statutory text.

Amendment notes should describe all changes as concisely as possible but, at the same time, in such a manner that the user can readily ascertain what the change is and where it occurs, using consistent language and style, and only the changes made to existing text by amendment. Applicability language should not be contained in an amendment note but language should be added  referring  the  user  to  an  editor's  note,  i.e.  'See editor's note    for applicability.' Reenactment of Code sections without change should be expressed in an Editor's note and not an amendment note.

Please watch the length of amendment notes.   A note should not be so long that it is not usable by the reader.   However, it must be long enough to accurately reflect the changes made by the statute.

### 23.2.  Form

The form of amendment notes is illustrated by the following example:

**The 20__ amendment**, effective _____, (description of amendment).

Some Acts do not contain any specific effective date provision, in which case the default date specified in Code Section 1-3-4 (currently July 1 of the year of enactment if passed during a regular session of the General Assembly).   See Manual Section 22.2.   Other Acts may have specified  effective  dates,  become  effective  upon  approval  by  the  Governor,  or  become effective upon certain contingencies.

COMM000121

If the effective date provision of the Act contains more language than simply a date, such as "for taxable years beginning on or after January 1, 1990" or applicability language, this language should not be contained in the amendment note but should be recited in full in an editor's note.  The last sentence of the amendment note should state: "See editor's note for applicability."

Example:

> **Editor's notes.--**Ga. L. 20___, p. _____, § __, not codified by the General Assembly, makes this Code section applicable to all proceedings initiated in magistrate courts pursuant to Code Section 15-10-2 after January 1, 1996, and to all proceedings initiated in superior courts pursuant to Code Section 15-6-8 after January 1, 1997.

For more information on Editor's notes, see Manual Section 26.

### 23.3.   Stylistic items

**(a) Format.**   The style to use when citing sublevels in amendment notes follows the same format used in annotations.  All citations may be run together and, for example, references may be made to "paragraph (a)(1)" as is currently done in annotations.  The name of the sublevel is determined by the last character in a string, i.e. (a)(1) is a paragraph, (a)(1)(A) is a subparagraph, (1)(A)(i) is a division, and (A)(i)(I) is a subdivision. Never refer to the designation by the first character, i.e., (a)(1)(A) as a subsection.

**(b) Quotes and commas.**   The punctuation goes inside the quotes if it is part of the quoted material, otherwise it goes outside the quotes.   This is necessary so that the reader can know if the punctuation is, in fact, part of the amended material.

In the following example, the comma is not part of the quoted material:

> "in subsection (a), inserted "except the municipality",

However, in the next example, the comma is part of the quoted material and was changed by the Act:

> "in subsection (a), inserted "except the municipality,"

Note that this style differs from the punctuation style in other types of notes and in text, where certain punctuation always goes inside the quotes.

**(c) Locational phrases and commas.**   After the locational phrases such as "in subsection (a)" or "in subsection (b)", always insert a comma.   E.g. "in subsection (a), added paragraph (5)."  Also, in consecutive phrases there should always be a comma or a semicolon preceding such a phrase, if the description follows the phrase.

COMM000122

**(d) Semicolons.**   Use semicolon as a device to add clarity for the user.   Semicolons can be extremely helpful when a number of commas are involved.   Use semicolons to separate descriptions of changes from subsection to subsection.   When many commas are involved, a semicolon can signal to the user that the changes subsequent to the semicolon relate to a different subsection.

Take the following note as an example:

> "in subsection (a), inserted "or she" in five places, deleted "not" following "shall" in the first sentence in paragraph (1), and substituted "75 percent" for "28 percent" in the second sentence in paragraph (3); in subsection (b), substituted "death penalty" for "life imprisonment" in the first sentence and "felony" for "misdemeanor" in the third sentence; and, in subsection (c), substituted "may" for "shall"."

In this example, note how the use of semicolons between the subsection descriptions, instead of commas, made the note easier to follow.   In very complicated notes, use semicolons even more extensively than this.   See the example in Manual Section 23.4(e).

**(e) Designations.**   If an Act adds a designation to the existing provisions, the proper style is, e.g.,

> "designated the existing provisions of this Code section as subsection (a) and added subsection (b).",
>    or, e.g.:
> "designated the existing provisions of subsection (b) as paragraph (1) and added paragraph (2)."

For more information on redesignations, see Manual Section 23.5(b)(5).

**(f) Spans.**   In spans, use the word "through".   E.g., "in subsections (e) through (j)."

**(g) Effective date.**   Include the effective date in the note.

**(h) "Relating to" and "respectively."**   Use a comma prior to "relating to" and prior to and after "respectively."

**(i) Added provisions.**   If a new subsection or sublevel is added, say, e.g., "added subsection (d).   do not say "added a new subsection (d)."

**(j) Redesignation.**   If the Code section is redesignated by amendment, mention that fact in the amendment note.   For example:

> **The 1997 amendment**, effective July 1, 1997, redesignated former Code Section 40-4-6 as this Code section.

COMM000123

**(k) Next-to-last sublevels.**  If the Code section has introductory language and a series of sublevels, and the next-to-last subdivision contains the word "and" at the end, but new sublevels are added which omit the word "and" at the end of that next-to-last sublevel, do not add the word "and."  The publisher should memo the situation to the state and follow the state's instructions.  Similarly, do not remove the now improper existing "and" without consulting the state.  Typically, these changes require a Code Commission note.

### 23.4.   Order and location of changes

**(a) Notes by year.**  All amendment notes are arranged in ascending numerical order by year.

**(b) Single paragraph for each year.**  All amendments for a given year are contained in a single paragraph, with the amendments being described in Act-number order.  Do not begin a new paragraph for each subsequent amendment in a single year.  See Manual Section 23.6, below, for an example.

**(c) Order of change within Code section.**  Describe the changes in the order in which they occur (except changes throughout the Code section, or in more than one place in the Code section, are described at the beginning).

**(d) Location of change.**  Always state the location of the change.  State the subsection, paragraph, etc., of the change and the sentence in which it occurs.  E.g., "inserted 'not' in the third sentence in subsection (b)."

**(e) Which to describe first–change or location?**  Whether to describe the change or location first depends on the circumstances.  The bottom line is to do it the way that makes it easiest for the user to follow the note.  When many changes are involved, this can be difficult, and some thought is required.  If a single change is involved, the smoothest flowing method is to put the location last.  E.g.:

> "inserted 'not' in subsection (a)"

(instead of saying "in subsection (a), inserted 'not'").

However, if several changes occur in a subsection, or if several subsections have changes in them, put the location first.  E.g.:

> "in subsection (a), inserted 'not' in the first sentence and deleted 'from henceforth' at the end of the second sentence"

or,

> "in subsection (a), added 'from henceforth' at the end; in subsection (b), added the second sentence; and, in subsection (c), deleted the former third sentence, relating to fees."

Χη. – Πγ. 4                                    December 2010

COMM000124

Where it becomes more involved is when there are multiple changes in multiple sublevels of multiple subsections. The following note illustrates the preferred style for complicated notes of this type:

> "in subsection (a), in the introductory language, deleted 'full-time' following 'employed' and 'or if not full-time employees while engaged in pursuit of official duty' following 'below'; in paragraph (7), inserted 'or her' in the first sentence and 'or she' in the second sentence; in paragraph (8), substituted "Chief probation officers, probation officers, intensive probation officers, and surveillance officers' for 'Probation supervisors'; in paragraph (10), substituted 'State and federal trial and appellate' for 'Trial' in the first sentence and added the second sentence; in paragraph (2) of subsection (b), designated the existing language as subparagraph (A), added subparagraph (B), and, in subparagraph (A), substituted 'a member's' for 'his' in the first sentence and, in the second sentence, substituted 'subparagraph' for 'paragraph' and 'that member' for 'him'; and added subsection (d)."

Note the use of semicolons in this example. The note is so complex that we used semicolons to separate descriptions of paragraphs, not just subsections.

## 23.5.  Terminology

**(a)  Specific key terms.**  There is very specific terminology used to describe the changes, and it is imperative that the publisher adhere to this terminology. Consistency is very important. The key terms are:

- · added
- · inserted
- · substituted
- · deleted
- · redesignated
- · Code section (not simply "section)
- · rewrote [this Code section] [subsection __]
- · following (not "after")
- · preceding (not "before")

(b)(1) Use "added" when a whole new unit of some sort is being added (e.g., a new proviso, sentence, subparagraph, paragraph, subsection), or when the language is added to the beginning or end of a whole unit.  E.g., "added the proviso at the end of the second sentence" or "added 'Pursuant to subsection (b) of this Code section' at the beginning of subsection (c)."

COMM000125

The following terminology may also be used: "added the language beginning with ... and ending with ...."   This will allow shortening the length of the amendment note.  However, be sure that the reader can easily distinguish where the material is being added.

(2) Use "inserted" only when language other than a complete unit is being inserted into the Code section, not at the beginning or end of a complete unit.   E.g., "inserted ', except for the commission,' in the second sentence in subsection (d)."   Do not say "inserted the second sentence."   "Added" is the correct term when dealing with complete units.

If stating that language was inserted in a particular area and it is obvious that it replaces language beginning a sentence, it is not necessary to specifically state that the first word of the existing sentence has been lower cased.   If stating that language was substituted, it is necessary to be specific.

(3) Use "substituted" when one word or phrase is being deleted and another is being inserted in its place.   E.g., "substituted 'commissioner' for 'chief' in the second and third sentences."   If addition of one or two adjacent words, which technically are not part of the specific change, would help make it clearer to the user what is going on, add the adjacent words.   E.g., instead of saying "substituted '40' for '20'," say "substituted '40 days' for '20 days'," even though the word "days" has not changed from the earlier version.   Never use "substituted" unless both a deletion and insertion is involved.

In each of the above situations (additions, insertions, substitutions), the location of the change must be described.   State the subsection or sublevel and the sentence number, but do not quote any specific language adjacent to the change, unless there are other instances of the phrase, making it necessary to distinguish which is the one that was changed.

(4) When describing deletions, however, it is essential to quote the language adjacent to the deletion, as this is the only way the user can locate from where the language was deleted.   E.g., "deleted 'and this includes the legislature' following 'punished for sexual harassment' in the second sentence in subsection (c)."   If the language is deleted from the beginning or end, it is not necessary to quote adjacent language.   Just say, e.g., "deleted 'from henceforth' from the end of subsection (c)."

Also, in describing deletions, the deleted language must be quoted verbatim.   However, if it is very lengthy language, such as an entire unit being deleted, a description of the subject matter is preferable.   E.g.: "deleted the former fifth and sixth sentences, relating to fees in magistrate courts and fees in municipal courts, respectively."   Notice that the words "relating to" are used here.   Do not use terminology such as "regarding," "dealing with," or "concerning."   Once again, consistent terminology is expected.

(5) "Redesignated" is the term to use when the amendment changes the numbering of subsections, paragraphs, etc., within a Code section.   Do not use "relettered" or "renumbered."   Because great specificity is required, do not use "made related stylistic

COMM000126

changes" to refer to punctuation changes or change of "or" or "and" in connection with a redesignation.   Spell out those changes, e.g.:

> **The 1997 amendment**, effective July 1, 1997, deleted "and" from the end of paragraph (c)(1), added "and" at the end of paragraph (2), and added paragraph (3).

Describe the change in sublevel designation before describing language changes within the redesignated sublevel.   E.g."

> **The 1997 amendment**, effective July 1, 1997, redesignated former subsection (b) as subsection (c), and, in subsection (c), substituted "director" for "commissioner" in three places.

When describing the redesignation, use the form "redesignated former subsection (b) as present subsection (e)" when describing redesignations of previously existing designations.   However, it is not necessary to say "present" (as in the immediately above example) if the subsection has not previously existed.

See Manual Section 23.3(e) above, for further information on the style of notes involving redesignations of sublevels.

(6) When referring to a Code section in an amendment note, never simply say "this section."  Always refer to it as "this Code section."  Note that the word "section" is lower cased in this example.   However, when the reference is to a specifically designated Code section, the word should be capitalized.   E.g., "Code Section 5-10-2."

(7) "Rewrote" should be used extremely sparingly, but it is necessary when the changes are so extensive that the amendment note would be unreasonably long.   If only specific subsections were rewritten, only state that those particular subsections were rewritten, but specifically describe the changes in the rest of the Code section.   Simply say "rewrote this Code section (or sublevel)."  Do not say: "rewrote this Code section to the extent that a detailed comparison would be impracticable."  The publisher should be less inclined to use "rewrote" if the amended Code section last appeared in the supplement than if it last appeared in the bound volume.   In the latter case, the reader can still refer to the previous version to determine the changes, but in the former case, the previous version has disappeared.   A good rule of thumb is that the note is probably too long if it is more than one column.

(8) Use "following" rather than "after."

(9) Use "preceding" rather than "before."

COMM000127

### 23.6.  Multiple amendments

**(a) No conflict.**  If a Code section is amended by more than one Act at a given legislative session, and there is no conflict, the form of the amendment note is as follows:

> **The 20__ amendments.**  The first 20__ amendment, effective _____, (description of amendment).  The second 20__ amendment, effective _____, (description of amendment), etc.

The order of amendments in the amendment note is determined by the Ga. L. page number (which is determined by the ascending order of Act numbers) not by bill number or effective date.  If the publisher has yet not been provided with the Ga. L. page numbers at that time, the order can be determined from the Act numbers.

Standard language should be used if two bills make identical changes rather than detailing what each bill did.  E.g.,

> The second 20__ amendment, effective _____, made identical changes.

**(b) Conflict.**  If there is a conflict among amendments, place a sentence at the end of the amendment note stating: "See the Code Commission note regarding the effect of these amendments." and add a Code Commission note.  (See Manual Section 25.5(a)(2) for the forms of these types of Code Commission notes and for further discussion of conflicting amendments and enactments.)  However, if the conflict is resolved according to a special conflict resolution provision contained in one of the conflicting Acts whereby that Act cedes its control (see Manual Sections 9.6 & 25.5(a)(3)(A)), an editor's note rather than a Code Commission note is used  to explain the resolution of the conflict, and a sentence at the end of the amendment note should refer the reader to the editor's note regarding the effect of the amendments.

The state generally sends a list of conflicts and how they are to be resolved.  If the publisher discovers a conflict which is not listed by the state, the publisher must ask about it to determine how the Code section will read.

All cites should appear in the historical citation, regardless of whether they are given effect.

### 23.7.  Reviser Acts

Because of the length of the general reviser Act (see Manual Chapter 9), and because most of the corrections effected by it are very minor, a standardized amendment note is used to describe most reviser Act corrections as follows:

COMM000128

> **The [year] amendment**, effective [date], part of an Act to revise, modernize, and correct the Code, revised language and punctuation in this Code section.

Of course, if only language or only punctuation is revised, this standard note should be adjusted accordingly.   However, if the correction is a minor change (as opposed to a very minor change), it should be described in the same manner as any other amendment would be.   Always include the phrase "part of an Act to revise, modernize, and correct the Code," before the described change.

Amendment notes for reviser Act corrections in Title 21 and Title 47 should say revise, modernize, and correct "this title" rather than "the Code," because there are separate reviser Acts for these titles.

Use the following as a guide to whether the change is minor or very minor:

> Minor changes: any added or deleted words, including minor words like "the"; changes or corrections of references to the O.C.G.A., U.S. Code, state and federal constitutions, rules; references to Act names.

> Very minor changes: capitalization, punctuation, correction of spelling and typos. When in doubt, treat the change as minor and describe in detail.

## 23.8.   Veto override Acts

In the case of an amendment to a Code section made via an overridden veto, the amendment should be included in the amendment notes for the year in which the override occurred (which may be a year later than the year in which the bill originally passed).

The amendment note (or effective date note in the case of a newly enacted Code section, etc.) for a veto override should refer the reader to an editor's note which provides the procedural history of the passage, veto, veto override, and effective date.   E.g.,

> **The 2008 amendment,** effective January 28, 2008, substituted "the director of the Senate Budget Office, and the director of the House Budget Office" for "and the director of the Legislative Budget Office" at the end of the Code section. See the Editor's note.

See Manual Section 26.3(15) for the form of the editor's note.

## 23.9.   Retention of amendment notes

Amendment notes are kept indefinitely in the supplements.   Only the last three years' notes are kept in replacement volumes, i.e. notes from sessions held during the year of replacement and

COMM000129

the two preceding years.   The publisher is not required to review these notes until the volume is replaced.

COMM000130

## 24. CROSS-REFERENCES

### 24.1.  Generally

**(a)  Location.**  Appropriate cross-references between related provisions of the Code are included at the beginning of the annotations for a particular title, chapter, article, part, subpart, or Code section.

These are notes referring the user to a related Code section.   In these notes, section symbols are to be used.   (This is an exception to the general policy of using "Code section".)

As amendment notes are being created, attention should be paid to the creation of cross-reference notes.   During the proof review, the publisher should also look for additional cross-references that may be appropriate.   Also, the state may suggest cross-references which should be implemented.

(b)(1) Related provisions should be cross-referenced to one another.   Consider whether an attorney in practice would find the cross-reference useful rather than cross-referencing provisions only tangentially or vaguely related.

(A) Cross-reference specific provisions under more general provisions relating to the same subject.

(B) Do not cross-reference provisions within the same chapter, article, or part.

(C) If adding a cross-reference under one provision, and the referenced provision does not refer back to the first provision, add a cross-reference to the first provision under the second provision.

(D) Cross-reference related constitutional and statutory provisions under each other.

(i) References under a single Code section should be arranged as follows: U.S. Constitution, Ga. Constitution, Titles 1 through 53 (that is, references are arranged in ascending numerical order), and court rules, in the order they appear in the court rules book.

(ii) The style for each cross reference to statutory provisions other than specific Code sections should be in descending order of units within the Code, using single-letter abbreviations separated by commas for each unit designation; e.g., a cross-reference to Part 1 of Article 3 of Chapter 5 of Title 7 would be "T. 7, C. 5, A. 3, P. 1."  Older cross-references differing from this style should be converted when volumes are replaced.

COMM000131

(iii) The "As to ... see" style for cross-references that was used in the original Code volumes should be eliminated.


(iv)   Any cross-reference notes following the old styles referenced in (ii) and (iii) above should be changed when the volume is replaced.

(v) Provisions in the Constitution and in the Code that essentially duplicate each other should be cross-referenced to one another.   Conflicts caused by amendments to one and not the other should be addressed to the Code commission.

(vi) If Code sections are renumbered or if subsections are redesignated, be careful to search for references that may now be inaccurate due to the amendment.

(vii) Cross-references to the state and federal constitutions should be added more frequently.   Review case annotations to determine any relevant constitutional provisions.

(viii) If a Code section has been repealed, please be sure to eliminate any cross-reference notes to that newly repealed Code section.

COMM000132

## 25. CODE COMMISSION NOTES; CHANGES IN STATUTORY TEXT; CONFLICTS; DISCREPANCIES IN ACTS; STATUTORY CONSTRUCTION

**25.1.   Changes in text generally; Code commission notes**

**(a) Absolutely no change in statutory text without written authorization from state.** The publisher has no authority to make any changes or corrections in Code section text without the prior approval in writing of the state.   Absent such permission, Acts are to be printed exactly as received.

Do not add subsection catchlines if the existing Code section contains subsection catchlines. If a new subsection is added without containing a subsection catchline, notify the state and they will determine if a correction can be made.

**(b)   Code Commission notes.**   In 1985, the General Assembly enacted Code Section 28-9-5, which empowers the Code Revision Commission to authorize certain enumerated changes in legislative Acts when the Acts are published into the supplement.    The publisher should not make a concerted search of the Acts each year to weed out such errors as are described in Code Section 28-9-5, but when such an error comes to the publisher's attention an appropriate change (after approval has been given) may be made.   The publisher should memo or call but document the state regarding the change and asking for permission to correct it with a Code Section 28-9-5 note (Code Commission note).   Please bear in mind that Code Section 28-9-5 is a very limited power.

No Code Commission change should be made to Title 21, parts of Title 28, Code Section 46-2-1 (districting), Title 47, the Constitution, and certain other parts of the Code, i.e., compacts and U. S. Justice Department approved Code sections.

Reference is always made to the words "Code section" and not the word "Section" when referring to a statute in the O.C.G.A.

A reference to the federal U.S.C. or U.S.C.A. (no space between the letters) should contain the word "Section" preceding the cite.   Both corrections would require a Code Commission note.

**(c) Approval required in advance for any change.**   Do not make any change until approval has been obtained from the state.   Proof sent to the state for its approval must specifically set out any Code Commission notes for purposes of documentation.   Do not set out a Code Commission note (or the change it refers to) without first sending a memo or notifying the state.

**(d) General form of notes.**   The Code Commission note must specify the year of the change, i.e., the year the correction was initially made. (Code Commission notes regarding

COMM000133

conflicts differ in form; see Manual Section 25.5(a)).   A comma follows the Code section number and the year.

Example:

**Code Commission notes.--**Pursuant to Code Section 28-9-5, in 1995, a comma was inserted following "license" in the second sentence in subsection (a).

Use past tense ("was") in notes, rather than present perfect tense ("has been").

In describing misspellings, say "corrected a misspelling of 'rapacious'" rather than setting out the misspelled version in the note.

**(e) Retention of notes.**   The Code Commission notes describing changes made pursuant to Code Section 28-9-5 are the only record of such changes.   Therefore, they should not be deleted in later supplements or replacement volumes, unless the language is deleted by a later amendment.   Modifications to notes indicating changes in location and deletion of portions no longer valid may be made.   The state may change this retention policy at some future point.

## 25.2.   Effective date references in Code section text

The words "effective date of this Act, subsection, etc..." in a Code section should be changed to reflect the actual date the Act became effective.   This change will require a Code Section 28-9-5 note (a Code Commission note) and prior approval from the state.

## 25.3.   Discrepancies between AP and ENR versions of bills or Acts

These should always be brought to the attention of the state.   Usually, the electronic ENR version controls, per instruction from the state, since this has been corrected.   However, the state should be notified of discrepancies.   See Manual Section 2.5 regarding transmission of bills and Acts.

## 25.4.   Problems and inconsistencies in amendments

**(a)   Generally.**   The Georgia Acts generally are clear as to their effect.   However, there occasionally are some anomalies in enactments that may make it impossible to incorporate an Act exactly as described within the Act.

**(b) Disagreement between directory language and restated language.** An Act might say "Amend Code Section 2-2-22 by changing "$20.00" to "$30.00" so that the Code section

COMM000134

reads '2-2-22.  A fee of $40.00 is required.'" Since in Georgia the general rule is that the quoted language of an Act takes precedence over the directory language, the conflict would normally be resolved in favor of the $40.00 figure.  In such cases, the state should always be consulted.  The amendment note should contain language stating that "$20.00" was changed to "$40.00" and not address the issue of disagreement between directory language and quoted language.  An editor's note would be carried only when the directory language purports to amend one unit or sublevel and the quoted unit or sublevel differs from the directory language and the error is in the directory language.  If the quoted Code section number contains the error, then a Code Commission note would be required to change the designation.

**(c) Amendment to wrong Code section, subsection, sentence, etc.**

(1) Occasionally, an amendment will read something like the following: "Title 27 is amended by revising Code Section 17-5-5, relating to penalties for unlicensed fishing, in its entirety," where, in fact, a reference to Code Section 27-5-5, not Code Section 17-5-5, was intended.  The state should be informed of the discrepancy.  Unless the state gives different directions, the amendment should then be incorporated according to a reasonable interpretation of legislative intent.  An Editor's note should also be written pointing out the error in the Act.  E.g.:

> **Editor's notes.**--Ga. L. 1993, p. 118, § 1, which amended this Code section, purported to amend Code Section 17-5-5 but actually amended Code Section 27-5-5.

(2) This situation may also occur in connection with references to subsections, paragraphs, subparagraphs, divisions, and subdivisions.  It may also occur in connection with sentences of a Code section; for example, an amendment may read "Delete $20.00" from the first sentence of Code Section 2-2-22" when in fact the figure $20.00" occurs only in the second sentence of Code Section 2-2-22.  Treat these in the manner noted above; that is, carry the correct treatment of this amendment in the Amendment note and carry the discrepancy in an Editor's note.

## 25.5.  Multiple and conflicting amendments and enactments

**(a) Multiple amendments; substantive conflicts.**  The Office of Legislative Counsel, acting on behalf of the Code Revision Commission, analyzes Code sections affected by multiple bills passed at the most recently adjourned session of the General Assembly.  The state performs this analysis as soon as possible after adjournment and, after expiration of the period in which the  Governor may veto bills, sends written instructions to the publisher regarding how to publish the affected Code sections, pursuant to Code Section 28-9-3.  (If the state neglects to do this, the publisher should attempt to follow the principles outlined in this subsection and should inform the state of the suggested resolution or the inability to

COMM000135

reach a resolution.   If a conflict has not been resolved prior to the page proof being shipped, the publisher should send a memo to the state concerning multiple amendments, and the state should send a response, in writing, to the publisher to ensure that differing interpretations of the actual extent of the conflict do not occur.)

Bearing in mind that the three imperatives of statutory construction are: "(1) read the statute; (2) read the statute; (3) read the statute," Henry J. Friendly, "Mr. Justice Frankfurter and the Reading of Statutes," Benchmarks, 196, 202 (1967), the state applies the following principles for purposes of publishing the Code when construing multiple bills that affect the same Code section, as derived from decisions of the Georgia appellate courts (and federal appellate courts, if applicable) and the preeminent legal treatise on statutory construction:

(1) **Give effect to all amendments if possible**. Acts passed during the same legislative session and amending the same Code section shall be considered in pari materia, and full effect shall be given to each, if that is possible.   Singer & Singer, 1A Sutherland Statutory Construction 384-385 (7th ed. 2009); id. at 512 (citing Adcock v. State, 60 Ga. App. 204 (1939)); GMAC v. Whisnant, 387 F.2d 774, 775-776 (5th Cir. 1968) (construing Georgia statutes).   Thus, when a Code section is amended by two (or more) Acts enacted at the same session of the General Assembly, one should first attempt to incorporate the changes made by both Acts.   This is usually not a problem if the two Acts amend two different parts of a Code section, unless, despite the separate placement, the substantive effects of the amendments conflict.   Language carried forward unchanged in one amendatory Act shall not be read as conflicting with changed language contained in another Act passed during the same session:

> [O]nly those provisions of the earlier amendment which cannot be reconciled with the later amendment are repealed, regardless of whether the later amendment purports to set out the original act or amendment as amended and omits the earlier amendment. The fact that in the same legislative session several bills to amend the same act may be introduced in each of the two houses of the legislature independently of each other, and passed within a few days of each other, and only accidentally in the order of their introduction, makes it impractical for the last amendment to include in its body all previous amendments passed at that session, when it purports to set out the original act as amended....

1A Sutherland Statutory Construction, supra, at 384-385; see Reeves v. Gay, 92 Ga. App. 309 (1893);

(2) **In case of conflict, the general rule is that the later enacted Act controls to the extent of the conflict.**   Acts are in conflict with each other only to the extent that they cannot be given effect together.   See Montgomery v. Bd. of Educ. of Richmond County, 74 Ga. 41 (1885). If such an irreconcilable conflict occurs between two Acts, then, to the extent of the conflict, the later enacted Act (as determined by the order in which the bills became law with or without approval by the Governor, without regard to effective date)

COMM000136

impliedly repeals and supersedes the earlier enacted Act.  County of Butts v. Strahan, 151 Ga. 417 (1921); Keener v. McDougall, 232 Ga. 273 (1974); 1A Sutherland Statutory Construction, supra, at 513-514.  If Acts with conflicting provisions have different effective dates, then the conflict will not arise until such time as both Acts are to be effective; because repeal occurs on the effective date of a later enacted statute, the earlier enacted statute remains in operation until the later enacted statute takes effect. 1A Sutherland Statutory Construction, supra, at 515.

Thus, the order in which conflicting Acts become law, with or without the Governor's approval, is important, and the result in some such cases may be significant. Since Acts are numbered sequentially and arranged in ascending numerical order in the Georgia Laws, an Act with a higher Act number or Georgia Laws page number usually controls over one with a lower Act number or page number.  (However, a veto override Act may be paginated differently in the Georgia Laws; in such a case, the date of override must be checked and compared to the date of enactment of other legislation.  See Manual Sections 2.4 (c) & 22.3).

In the event of a conflict, the controlling provision should be incorporated into the Code, but changes to the existing text from both bills should be set out in the amendment note, and a Code Commission note (referenced in the amendment note; see Manual Section 23.6(b)) should be used to direct the reader to the version which was incorporated.   The form of the Code Commission note used here (citing Code Section 28-9-3) differs from the note used for nonsubstantive corrections (citing Code Section 28-9-5, as described in Manual Section 25.1(d)):

> **Code Commission notes**–Pursuant to Code Section 28-9-3, in 20__, the amendment of [sublevel ___ of] this Code section by Ga. L. 20__, p. __, § _, was treated as impliedly repealed and superseded by Ga. L. 20__, p. __, § _, due to irreconcilable conflict.  See County of Butts v. Strahan, 151 Ga. 417 (1921); Keener v. McDougall, 232 Ga. 273 (1974).

However, such language is not necessary if there is no conflict involved in the amendments.   Regardless, all cites should appear in the history line irrespective of whether they were given effect; this is true for superseded amendments and enactments; and

**(3) There are exceptions to the general rule for conflict resolution.**   The general rule for conflict resolution does not apply:

(A) To a later enacted Act that contains a special conflict resolution provision surrendering such Act's controlling effect.  (Such provisions may be found in reviser Acts; see Manual Section 9.6.)  In case of a conflict involving an Act with such a special provision, an editor's note (not a Code Commission note) should be used, explaining how the conflict was resolved in accordance with the Act:

COMM000137

**Editor's notes. -** Ga. L. 2010, p. 878, § 54(e), not codified by the General Assembly, provides: "In the event of an irreconcilable conflict between a provision in Sections 1 through 53 of this Act and a provision of another Act enacted at the 2010 regular session of the General Assembly, the provision of such other Act shall control over the conflicting provision in Sections 1 through 53 of this Act to the extent of the conflict." Accordingly, the amendment to subsection (a) of this Code section by Ga. L. 2010,   878, § 42, was not given effect.

The editor's note should be referenced in the amendment note; compare Manual Section 23.6(b).

(B) When an earlier enacted Act repeals (rather than amends) a Code section (i.e., in a case where the bill uses the term "to repeal", "by repealing", or "is repealed" in the bill title or directory language or in case of a true repeal and reenactment of a unit as described in Manual Section 12.1) and a later enacted Act (whether at the same session or a subsequent session) purports to amend the same Code section after the repeal has become effective.  A repealed statute cannot be amended.  Lampkin v. Pike, 115 Ga. 827 (1902).  In such a case, do not attempt to revive and amend the repealed Code section, but instead explain the prior repeal, the purported amendment, and the effect of the purported amendment in a Code Commission note such as the following:

**Code Commission notes. -**Former Code Section 53-8-29 was repealed effective January 1, 1998, by operation of Ga. L. 1996, p. 504, § 10. However, Ga. L. 2004, p. 161, § 11, effective July 1, 2005, purported to amend the former Code section to read as follows:
"In all respects other than as provided in Code Sections 53-8-27 and 53-8-28, all sales pursuant to Code Section 53-8-27 shall be made as provided in Code Sections 29-3-35 and 29-5-35, relating to sales for reinvestment by guardians. All such sales shall be approved and confirmed by the judge of the superior court by appropriate order, and the entire proceedings shall be recorded on the minutes of the superior court and properly indexed."
For effect of subsequent amendment of a repealed statute, see Lampkin v. Pike, 115 Ga. 827 (1902).

**(b) Duplicate Code section number enacted without substantive conflict.**  If an Act enacts a new Code section with a number that duplicates a Code section number already in use, either from a prior year's enactment or from an enactment of that same year, the publisher should point out the problem to the state.

The usual resolution in this situation is to assign a new number to the last enacted Code section pursuant to Code Section 28-9-5 (unless the two Code sections address the same subject matter in irreconcilably conflicting ways; see subsection (a) of this section).  The number should be assigned so as to place the Code section immediately following the Code section whose number it duplicates.  The unofficial number should be a decimal number (say, Code Section 2-2-22.1) unless the number would fall at the end of a unit, in which case a whole number should be used.  In these types of situations, a Code Commission note like

COMM000138

the following should be placed below both the Code section retaining the original designation and the Code section(s) which are redesignated:

> **Code Commission notes.--** Pursuant to Code Section 28-9-5, in 20__,   Code Section 1-1-1, as enacted by Ga. L. 20__, p. 1, § 2,   was redesignated as Code Section 1-1-2.

The state will send a memo giving final direction as to which Code section retains the assigned designation and the Code section that will then be redesignated with that redesignation.

**(c) Duplicate sublevel designations.**   An Act which enacts a new sublevel designation that is already in use should be treated in a manner similar to that described above for Code section designations.   The second enacted sublevel should be given a new designation pursuant to Code Section 28-9-5 so that the sublevel will immediately follow the sublevel whose designation is being duplicated.   Approval or disapproval from the state is needed and a Code Commission note should be used as follows:

> **Code Commission notes.**--Pursuant to Code Section 28-9-5, in 1994, subsection (c), as enacted by Ga. L. 1991, p. 1389, § 5, was redesignated as subsection (d).

## 25.6.   Enactment of new Code section with obviously wrong number

The procedures in Manual Section 25.4 would also be applicable in a situation in which a new enactment is assigned an obviously wrong Code section number.   For example, if an Act says "Title 40 is amended by adding a new Code section to follow Code Section 40-10-9 to read as follows: '4-10-10.   A fee of $11.00 is required.'" It is obvious that the "4-10-10" designation in the quoted language of the new Code section itself is a typographical error and may be changed pursuant to Code Section 28-9-5.   A Code Commission note is required.

## 25.7.   History cite

Whenever a newly enacted Code section is redesignated pursuant to Code Section 28-9-5, the new number should be the one to appear in the history, even though technically the new number was not "enacted by" the legislature.   See Manual Section 13.8.

If one Act is determined to have wholly superseded another Act amending the same Code section, both Acts should nevertheless be included in the history cite.

## 25.8.    Missing Code text or other apparently inadvertent change.

COMM000139

It is important that the state be immediately notified of any missing Code text (i.e., Code text omitted without striking) or other apparently inadvertent changes, so that the appropriate resolution may be determined and authorized by the state.   Such resolution will typically involve either the general rule or one of the exceptions stated below:

**(1) General rule for inadvertent omission of previously enacted Code text**. The general rule is that, when an enrolled Act inadvertently omits previously enacted Code text (i.e., the missing text was not shown as being stricken in the AP version of the bill), the omitted text will not be not retained in the Code.  In such a case, the inadvertent discrepancy will be noted in an editor's note, such as follows:

> **Editor's notes.**-- Ga. L. 20__, p. __, § _, did not reenact and did not strike ... in this Code section (sublevel).

However, as discussed in paragraph (2) of this section, there are two large exceptions to the general rule.

**(2) Exceptions for amendments made by previous Acts.**  Two exceptions to the general rule involve cases where an amending Act ignores amendments made to the same Code section, subsection, etc., by previous Acts:

(A) The first exception is the case of multiple amending Acts passed at the same session of the General Assembly, in which case the Acts are construed together if possible, and only those provisions of the earlier enacted amendment which cannot be reconciled with the later enacted amendment are repealed; see Manual Section 25.5 for treatment of multiple amendments and enactments.

(B) The second exception is the case where an amendment ignores changes made to the same Code section, subsection, etc., by a prior year's amendment (e.g., language added by a prior year's amendment is omitted without striking in the subsequent amending Act).  This occasionally happens in "carryover" legislation, when a bill introduced in the first year of a biennium does not receive final passage until the second year of the biennium, and the bill is not updated before passage in the second year to reflect changes made to the same Code provisions by other legislation that passed during the first year.  Whether to retain the omitted prior change depends upon legislative intent, which must be determined by the state.

> (i) If the state determines that there was no legislative intent to repeal or modify the prior amendment, then do not omit the prior amendment, but instead incorporate the change made by the current year's amendment into the existing Code text as previously amended.  See Reeves v. Gay, 92 Ga. 309 (1893).  Add a Code Commission note such as follows:

> > **Code Commission notes.**--Ga. L. 2000, p. ___, § 1, amended subsection (a) of this Code section and in so doing omitted without

COMM000140

expressing an intent to repeal or modify the amendment made to that subsection made by Ga. L. 1999, p. __, § 3.  The two amendments were not irreconcilably conflicting, and the amendment to subsection (a) of this Code section made by Ga. L. 1999, p. __, § 3, was treated as not having been repealed by Ga. L. 2000, p. ___, § 1.  See Reeves v. Gay, 92 Ga. 309 (1893).

(ii) If the state determines that there was  legislative intent to repeal or modify the prior amendment, the latest Act will control, and no Code Commission note is necessary.   Follow the general rule in paragraph (1) of this subsection.

## 25.9.   Code Commission note errors

If the state has requested a page proof correction (Code Commission note) one year and the correction was not made but the Code Commission note was added to the Code section or the correction to the text was made incorrectly or incompletely, i.e., failing to add a comma following the date "July 1, 2000," in the text of the Code section, the state will ask again to make this correction the following year.   Correct the previous year's note to encompass both years stating the complete correction in full only one time.   The style of the note is as follows:

**Code Commission notes.**–Pursuant to Code Section 28-9-5, in 2000 and in 2001, [state in full the changes made in 2000 and 2001, do not list them separately].

COMM000141

# 26. EDITOR'S NOTES--GENERALLY

## 26.1.   Introduction

If the editorial staff of the original publisher, the Code Revision Commission, or the commission's staff felt that an explanatory note would be helpful to users of the Code, such notes were added as editorial notes in the initial publication of the Code.

Editor's notes are used to describe uncodified material which relates to the unit, Code section, case notes, annotations, judicial decisions, or Attorney General opinions.  Examples are uncodified short titles (when these appear they are usually the first section in an Act), applicability clauses, and severability clauses (when these appear, they are usually near the end of an Act).

Be sure to use the phrase "not codified by the General Assembly" in such notes when appropriate.  Do not reference uncodified portions of an Act that has been superseded by another Act and has not been given effect.  The superseded Act should be reflected only in the history line, the amendment note, and the Code Commission note. (See Manual Section 25.5(a) regarding conflicting amendments or enactments.)

Do not add Editor's notes translating such text items as references to "this Act" or references to "the effective date of this Code section."  For those, use Code Commission notes after getting approval from the state to make the translation (See Manual Section 25.1).

## 26.2.   Required editor's notes each year under Code Section 1-1-1

Code Section 1-1-1 deals with the enactment of the Code and provides the authorization for the work that is done to the O.C.G.A.  Each year, the first editor's note cumulatively listing those Acts which reenact the Code must be updated, and a new citation must be added at the end for that uncodified portion of the latest annual general reviser's bill that provides for reenactment of the Code (typically § 54 of the bill).   These notes must be reviewed and updated carefully.   See Manual Section 26.3(16) for the form of such notes.

## 26.3.   Examples

Following are examples of specific types of editor's notes (do not include the following language in amendment notes or effective date notes but refer the reader to the editor's note):

### (1) Short title.

Χη. − Πγ. 1

COMM000142

> **Editor's notes.--**Ga. L. 1995, p. 381 § 1, not codified by the General Assembly, provides: "This Act shall be known and may be cited as 'The Death Penalty Reform Act of 1995.'"

This type of note needs to follow every Code section in the Act which contains the uncodified short title, unless the Act enacts an entire unit such as a chapter, article, etc. In that case, a single note at the beginning of the unit is sufficient. Note that the language is quoted, not paraphrased. This note is not necessary if the short title of the Act was codified.

**(2) Applicability language.**

> **Editor's notes.--**Ga. L. 1997, p. 1250, § 5, not codified by the General Assembly, makes subsection (b) of this Code section applicable to cases filed on or after January 1, 1997, and makes subsection (c) of this Code section applicable to cases filed on or after January 1, 1998.

**(3) Severability.**

> **Editor's notes.--**Ga. L. 1997, p. 975, § 7, not codified by the General Assembly, provides for severability.

Note the very brief language of the note. When a section of the Act refers to severability, be sure to read the section carefully. Sometimes the section will actually be providing for nonseverability.

**(4) Resolutions.**

> **Editor's notes.--**By resolution (Ga. L. 1986, p. 529), the General Assembly designated the English language as the official language of Georgia.

> **Editor's notes.--**By resolution (Ga. L. 1992, p. 1560), the General Assembly created the Joint Study Committee on State and Local Government Environmental Enforcement Authority, to be abolished on December 31, 1992.

See Manual Chapter 27 for a complete discussion.

**(5) Preceding notes to decisions.** Frequently, editor's notes are used to immediately precede notes to decisions (and following the heading) when a note is needed to explain that the case notes were decided under prior law (see Manual Section 30.13(b)) or to explain some unusual aspect of some of the case notes of which the user should be aware.

**(6) Comparable provisions.** The only note that should generally appear under a repealed Code section (or unit) is an editor's note enumerating the Ga. L. on which the repealed section was based. The second sentence of the Editor's note should refer the user to the present comparable provisions (if any), e.g.:

COMM000143

> **Editor's notes.**--Ga. L. 1990, p. 2048, § 4, provided for the repeal of this Code section effective January 1, 1991.   For present comparable provisions, see Code Section 40-5-21.

**(7) Delayed repeals, reenactments, contingencies.**   See Manual Chapters 17 through 21 for examples.

**(8) Conflicts and errors.**   See Manual Section 25.4 for discrepancies in directory language when an Act purports to amend something other than what is quoted in the section of the Act.

**(9) Constitution.**   See Manual Chapter 7 for examples.

**(10) Effective date of previous Act amended.**   See Manual Sections 17.6 and 22.7 for examples.

**(11) Redesignations.**   When existing Code sections are designated as a new article, part, etc., place an editor's note at the beginning of the unit explaining the new designation.   Set out only those Code sections which may have also been amended or which previously appeared in the supplement.

When existing Code sections are redesignated as a new chapter, i.e. 36-19-1 thru 36-19-10 redesignated as 36-65-1 thru 36-65-10, carry the word redesignated in the analysis and carry an editor's note following the Code section span designations, which does not contain the word "Redesignated" in parenthesis, of the former chapter explaining the redesignation to the user and an editor's note at the beginning of the new chapter with the former history and cites of the previous chapter.   Set out all of the new Code sections, with redesignated language in the history lines.   See also Manual Section 13.8.   Do not add a repeal line.   This would also apply to an individual Code section redesignated to a new chapter or title.

When two Acts enact duplicate chapter numbers, Code section numbers, or sublevel numbers, notify the state for redesignation purposes and carry the redesignation in a Code Commission note, not an editor's note.   See Manual Chapter 13 for historical citations.

**(12) Repeals and reenactments.**   See Manual Chapters 11 and 12 for examples.

**(13) Code sections amended not having previous history cite.**   See Manual Section 13.7 for examples.

**(14) Quoted text.**   When quoting a passage of more than one sublevel from the same source and such passage is not to be set as an excerpt, quotation marks are used at the beginning of each paragraph and at the end of the last paragraph.   That is, quotation marks are not used at the end of any paragraph in the quotation except the last one.

**(15) Veto override.**   An editor's note for a veto override should provide the procedural history of the passage, veto, veto override, and effective date.   E.g.,

COMM000144

>    **Editor's notes.**--Ga. L. 2008, p. VO1, which amended this Code section, was passed
> by the General Assembly as HB 529 at the 2007 regular session but vetoed by the
> Governor on May 30, 2007. The House overrode the veto on January 14, 2008, the
> Senate overrode the veto on January 28, 2008, and the Act became effective on that latter
> date.

**(16) Code reenactment:** Under Code Section 1-1-1, an editor's note of the following form
should be included and updated annually to inform the reader of the annual reenactments of
the Code as provided in the general reviser Acts (do not quote the uncodified reenactment
provision of each general reviser Act, due to the great and unnecessary cumulative length of
such notes which would otherwise result over the years):

>    **Editor's notes. -** For the Acts reenacting the Official Code of Georgia Annotated as amended by
> the text and numbering contained in the 2000 through 2010 supplements, see Ga. L. 2001, p. 4, §
> 54; Ga. L. 2002, p. 415, § 54; Ga. L. 2003, p. 140, § 54; Ga. L. 2004, p. 631, § 54; Ga. L. 2005,
> p. 60, § 54; Ga. L. 2006, p. 72, § 54; Ga. L. 2007, p. 47, § 54; Ga. L. 2008, p. 324, § 54; Ga. L.
> 2009, p. 8, § 54; Ga. L. 2010, p. 878, § 54; and Ga. L. 2011, p. ___, § 54, respectively.

Notice that the latest cited supplement year is always one year prior to the latest cited year of
the Georgia Laws.


## 26.4.   Deleting notes in volume revision

Where an editor's note is more than three years old (i.e., not from a session held in the year of
replacement or the two preceding years) and refers only to an effective date provision which has
ripened (and not to applicability, severability, short title, etc.), the editor's note should be deleted
from the replacement volume.

COMM000145

# 27. EDITOR'S NOTES–RESOLUTION ACTS

## 27.1. Generally

The publisher will note Resolution Acts that are:

(1) Proposed amendments to the Georgia Constitution (see Manual Chapter 7 for these); or

(2) Related to the subject matter of codified provisions.

## 27.2.   Specific types of Resolution Acts to be noted

The following types should be noted:

(1) Joint committees to study the need for legislation, such as revision of Georgia's evidence laws (place where the subject is treated in the Code--for example, a note re: revision of evidence laws would go at the beginning of Title 24).

(2) Designation of official symbols or items, etc.   Place at the beginning of Title 50, Chapter 3, Article 3.

(3) Designation of a day, week, or month in every year as a time for honoring something. Example "Georgia Muscle Car Week."  Place at beginning of Title 1, Chapter 4.  Do not note the resolution if it is for one year only.

(4) Naming of parks, memorials, historic areas.  Place in Title 12, Chapter 3, at the beginning of the most appropriate article therein.

## 27.3.   Form of notes

The general form is:

**Editor's notes. --**By resolution (Ga. L. 1986, p. 529), the General Assembly designated the English language as the official language of Georgia.

**Editor's notes. --**By resolution (Ga. L. 1992, p. 1560), the General Assembly created the Joint Study committee on State and Local Government Environmental Enforcement Authority, to be abolished on December 31, 1992.

COMM000146

### 27.4.  Retention of notes

Notes are retained indefinitely, unless the resolution itself contains a termination provision, such as the date on which a study committee is abolished, or the note otherwise becomes obsolete.

COMM000147

## 28. EDITOR'S NOTES--REPEALS

### 28.1.   Generally

When a Code section, consecutive series of Code sections, or entire unit is repealed, an editor's note must be created to list all prior Codes and Ga. L. on which the repealed provisions were based and, if necessary, to indicate the subject matter of the repealed provisions.   (In supplements in the past, Editor's notes referred the user to the bound volume to determine the history of the Code section or unit.  This treatment is no longer adequate with the advent of online and CD products.  The editor's note should always include the full history of the Code section.)

### 28.2.   Delayed repeals

See Manual Chapter 17.

### 28.3.   Sublevel repeals

See Manual Section 11.3.

### 28.4.   Repeal of single Code section

The editor's note should quote the prior history verbatim from the historical citation.   The style is as follows:

> **Editor's notes. --** This Code section was based on Code 1933, § 45-1101, enacted by Ga. L. 1979, p. 1094 § 4; Ga. L. 1993, p. 91, § 27.

If a .1, .2, etc. Code section is repealed independently in the supplement, those Code sections should be carried forward into the revised volume and not dropped or covered by an Editor's note.

### 28.5.   Repeal of entire unit

The editor's note must specify all of the Code sections that were in the unit.  If .1, .2, .3, etc. Code sections were included within the repeal, they must be specified.  If the unit contained subunits, such as articles or parts, the breakdown of each subunit must be included.   E.g.:

> **Editor's notes. --** This chapter consisted of Code Sections 14-2-1 through 14-2-7, 14-2-7.1, 14-2-8 through 14-2-10 (Article 1), 14-2-20 through 14-2-23 (Article 2),

COMM000148

14-2-40 through 24-2-43 (Article 3), 14-2-60 through 14-2-63 (Article 4), 14-2-80 through 14-2-98 (Article 5), 14-2-110 through 14-2-123 (Article 6), 14-2-140 through 14-2-156 (Article 7), 14-2-170 through 14-2-177 (Article 8), relating to business corporations, and was based on Ga. L. 1968, p. 565, § 1; Ga. L. 1969, p. 152, § 1; Ga. L. 1970, p. 195, § 1; Ga. L. 1970, p. 243, § 1; Ga. L. 1970, p. 605, § 1; Ga. L. 1972, p. 433, § 1; Ga. L. 1973, p. 833, § 1; Ga. L. 1975, p. 778, §1; Ga. L. 1976, p. 1102, § 1; Ga. L. 1976, p. 1576, §; Ga. L. 1977, p. 324, § 1.

## 28.6.   Previously repealed Code sections in chapter presently being repealed

If there are Code sections at the end of a chapter which have previously been repealed, and now the entire chapter is being repealed, incorporate the earlier repealed Code sections into the existing repeal by adding paragraphs at the beginning of the Editor's note that explains the former repeal.   For example:

> **Editor's notes. --** Former Code Section 14-2-8 (Ga. L. 1968, p. 565, § 3), relating to taxation of small business, was repealed by Ga. L. 1996, p. 126, § 5,
> This chapter consisted of Code Sections 14-2-1 through 14-2-7, relating to small business, and was based on Ga. L. 1968, p. 565, § 2; Ga. L. 1978, p. 12, § 4; Ga. L. 1995, p. 21, § 6.

## 28.7.   Retention of editor's notes under repeal lines

The editor's notes described above should be retained indefinitely under repeal lines.   If the repealed Code section numbers are later reused, the Editor's note should still be retained; the note should be modified, however, by inserting "former" preceding the reference to the repealed provisions in the note.

## 28.8.   Amendment by other Acts in year of repeal

Caution!   Whenever a Code section is repealed, check to see whether another Act in the year of the repealer amended or purported to amend the Code section.   If so, consult the state to see whether the amending Act should be added to the editor's note.

## 28.9.   Code section itself provides for automatic repeal

The catchline should contain a parenthetical reference to the delayed repeal and no editor's note is needed.

For a sublevel which provides for automatic repeal of itself, see Manual Section 11.3.

COMM000149

**28.10.   Entire chapter repealed that contains earlier repealed Code sections**

In this situation, do not set out a separate line for each of the earlier repealed Code sections. One spanned reference and editor's note at the beginning is sufficient.   The editor's note should have the citations to the repealing Acts worked into the list of Acts on which the unit was based.

**28.11.   Former chapter repealed in previous years and new chapter now enacted**

In this case, add a normal effective date note at the chapter level.   Also retain the existing editor's note explaining the repeal of the former chapter and change the introductory language to indicate "former."

> **Editor's notes. --** The former chapter consisted of Code Sections 14-2-1 through 14-2-7, 14-2-7.1, 14-2-8 through 14-2-10 (Article 1), 14-2-20 through 14-2-23 (Article 2), 14-2-40 through 24-2-43 (Article 3), 14-2-60 through 14-2-63 (Article 4), 14-2-80 through 14-2-98 (Article 5), 14-2-110 through 14-2-123 (Article 6), 14-2-140 through 14-2-156 (Article 7), 14-2-170 through 14-2-177 (Article 8), relating to business corporations, and was based on Ga. L. 1968, p. 565, § 1; Ga. L. 1969, p. 152, § 1; Ga. L. 1970, p. 195, § 1; Ga. L. 1970, p. 243, § 1; Ga. L. 1970, p. 605, § 1; Ga. L. 1972, p. 433, § 1; Ga. L. 1973, p. 833, § 1; Ga. L. 1975, p. 778, §1; Ga. L. 1976, p. 1102, § 1; Ga. L. 1976, p. 1576, §; Ga. L. 1977, p. 324, § 1.

**28.12.   Comparable provisions**

The only note that should generally appear under a repealed Code section or unit is an editor's note enumerating the Ga.  L. on which the repealed section or unit was based.   The second sentence of the editor's note should refer the user to the present comparable provisions (if any), e.g.:

> **Editor's notes.--**Ga. L. 1990, p. 2048, § 4, provided for the repeal of this Code section effective January 1, 1991.   For present comparable provisions, see Code Section 40-5-21.

**28.13.   Repeal and reenactment of previously repealed and reserved Code section**

When a unit is repealed and reenacted and a previously repealed and reserved Code section is reenacted without change, the standard editor's note for a reenactment without change should be modified as follows:

COMM000150

**Editor's notes.** – Ga. L. 2002, p. 1324, § 1-7, reenacted the reservation of this Code section without change.

COMM000151

# 29. LAW REVIEWS AND BAR JOURNAL

## 29.1.   Generally

Appropriate articles and notes from each law review which is published in the State of Georgia and from the Georgia State Bar Journal are noted following the title, Code section, or other unit to which they relate.

## 29.2.   List of periodicals read

The following periodicals should be read:

(1)   Emory Law Journal (Emory University) (was titled "Journal of Public Law" until 1974). Current cite is as Emory L.   J.

(2)   Georgia Law Review (University of Georgia).   Cite as Ga. L. Rev.

(3)   Georgia State University Law Review (Georgia State University). Cite as Georgia St. U.L. Rev.

(4)   Mercer Law Review (Mercer University). Cite as Mercer L. Rev.

(5)   Georgia State Bar Journal (Georgia State Bar) (was titled "Georgia Bar Journal" until 1964). Current cite is as Ga. St. B. J.

## 29.3.   Categories of annotations

**(a) Articles.**   Author is an attorney, judge, professor, or other professional, <u>not</u> a law student.   The periodical will provide the information necessary to determine the author's educational status.   Surveys, if not written by a law student, are included with articles.

**(b) Notes.** Author is a law student.   The scope of notes is usually narrower than that of articles.   Notes are usually labeled as such in law reviews (follow label used in publication).

The Georgia State University Law Review periodically publishes notes on peach-colored pages, known as the "Peach Sheets."   These are surveys of selected recent legislation, which are helpful, since Georgia does not publish official legislative history, other than the information contained in the House and Senate Journals.   These are retained indefinitely and are worded in the following manner:

COMM000152

> For note on the 1990 amendment of this Code section, see 7 Ga. St. U.L. Rev. 201 (1990).

**(c) Comments.**   Author is a law student.   Comments generally pertain to a particular court decision.   Comments are usually labeled as such in law reviews (follow label used in publication).

**(d) Case comments.**   These are read, as are the articles discussed above, with a view to determining whether they may be relevant to any constitutional or statutory section.   Note that it may be helpful to look at the case being treated, in deciding which constitutional or Code provisions (if any) it deals with, and whether the comment deals with the same.   Cite as follows:

> For comment on Independent Bankers Ass'n v. Dunn, 230 Ga. 345, 197 S.E.2d 129 (1973), appearing below, see 10 Ga. St. B.J. 509 (1974).

Case comments are often referred to following the case citation in notes from the case.   The form is "(case cite), commented on in (cite to law review)."

## 29.4.   Reading of publications

**(a) In general.**   The publisher should note articles, notes, and comments that would be of value to a practicing attorney in using the Code.   Do not note those articles, etc., that would be of interest mainly in academic research.

Articles that discuss provisions of the U.S. Constitution, Georgia Constitution, Georgia Code, or Georgia rules should be noted.   Also, the publisher should note articles on a general subject that is dealt with in the Georgia Code, even if a Georgia Code provision is not cited (examples would be articles on contract law, evidence law, the UCC, etc.).   Do not note articles on federal law unless there is a specific tie-in to state law (such as a state statute opting out of the federal bankruptcy exemption scheme).

**(b) Placement of notes.**   Place notes under the provisions that are the main point of discussion in the article.   Do not place notes under every provision cited, particularly if cited only in passing.   An article on a whole chapter of a title should be noted under the chapter heading or under the Code sections mainly discussed but not under every single Code section of the chapter.

## 29.5.   Format of notes

**(a) Title quotation.** Where the title of the article, note, or comment is fairly self-explanatory, quote the title.

COMM000153

Examples:

> For article, "The Child as a Party in Interest in Custody Proceedings," see 10 Ga. St. B.J. 577 (1974).

> For note, "Klan, Cloth and Constitution: Anti-mask Laws and the First Amendment," see 25 Ga.. L. Rev. 819 (1991).

**(b) Subject description.**   Where the title does not clearly indicate its subject matter and its relation to the constitutional or statutory provision, or is unduly awkward, do not quote it. Instead, simply describe the subject matter (paraphrasing the title may be sufficient). Example:

> For note on condonation as a bar to reconciliation, see 20 Mercer L. Rev. 481 (1969).

**(c) Partial relevance.**   A descriptive type of annotation may also be used where only one subdivision or a few paragraphs of the article are devoted to the constitutional or statutory section in question:

> As to survival of power of attorney following incompetence of principal, see 10 Ga. St. B.J. 189 (1973).

(Note that in an annotation of this sort the page number citation is where the article begins, _not_ where the subdivision on power of attorney begins.)


## 29.6.   Order

**(a) Type.**   The notes from law reviews should be arranged according to type in the following order:

- articles (including surveys)
- notes
- comments

Articles, notes, and comments are each grouped in a separate paragraph.

**(b) Chronology.**   Within each group, notes are arranged chronologically, oldest to newest.

**(c) Publications.**   If there is more than one note for the same year for any of the above groups, then notes for that year should be arranged in the following order:

- Emory L.J. (cited as J. of Public L. until 1974)
- Ga. L. Rev.
- Georgia St. U.L. Rev.

COMM000154

· Mercer L. Rev.
· Ga. St. B.J. (cited as Ga. B.J. until 1964)

COMM000155

## 30. CASE NOTES

### 30.1.   Generally

The original publisher (The Michie Company) prepared and included in the Official Code of Georgia Annotated a complete set of case annotations. All decisions of the Supreme Court of Georgia and the Court of Appeals of Georgia and all decisions of the federal courts in cases which arose in Georgia construing any portion of the general statutory law of the state, the Constitution of the United States, and the Constitution of Georgia were examined and appropriate annotations prepared and included under a "Judicial Decisions" heading following the title, chapter, article, part, subpart, or Code section designation of the Official Code of Georgia Annotated to which they relate.   Annotations contain the name of the case, the complete official and unofficial citations, and the year of the decision. Normally, constructions of statutes relating to constitutionality thereof appear first in the annotations for a particular provision of the Code.

### 30.2.   Scope

Case notes of decisions should be annotated to the following:

(1) Units and Code sections of the Code;

(2) United States Constitution;

(3) Georgia Constitution;

(4) Rules contained in the Georgia Rules of Court Annotated;

(5) Rules and regulations of the State Board of Workers' Compensation (Volume 26 Appendix);

(6) Rules and regulations of the Subsequent Injury Trust Fund (Volume 26 Appendix); and

(7) Population Acts, local Acts, or local constitutional amendments held unconstitutional (see Manual Section 30.5).

The standard for determining if an annotation is necessary is: "is there any indication that the court is construing the Georgia Code or Constitution?"   Be sure that annotations are construing the statutes or Constitution.   The Code already has many case notes, so be sure that annotations have relevancy in the location where the notes are to be placed.   Merely because a Code section is mentioned in a case does not justify taking an annotation.   Because of the already existing volume of notes,   new notes should be brief yet accurately reflect the facts, holding, and

COMM000156

statutory construction.  If a long note is required in order to reflect the opinion, it is better to have a note that is two sentences or at least a sentence that uses proper punctuation and connectors (therefore, however, etc.) rather than a sentence that goes on and on.  The facts included in the annotation should only reflect the facts necessary for the proper construction of that section or those are relevant to the note; therefore, it is possible that facts that are relevant to a note under Code Section 1-1-1 are not relevant to a note under Code Section 1-2-2.  Each case note must be read in its entirety.

Pursuant to a decision in 2002 from the Code commission, unpublished opinions may be included in case notes.


### 30.3.   Cites to Georgia Constitution

(a) **Current Georgia Constitution.**   The proper citation for references to the Georgia Constitution is of the form "Ga. Const. 1983, Art. I, Sec. I, Para. I."  The inclusion of the year is especially important so as to remove any ambiguity from the reference; see Manual Chapter 7 for a discussion of the different Constitutions under which Georgia has operated.

(b) **Prior Constitutions.**   If the publisher encounters a judicial decision or Attorney General opinion which construes a provision of a prior Constitution, cite to the prior Constitution but also include cite to the corresponding provision in the current Constitution in a parenthetical following the old citation.

Example:

"This section is unconstitutional under Ga. Const. 1976, Art. I, Sec. I, Para. II (see Ga. Const. 1983, Art. I, Sec. I, Para. III)."


### 30.4.   Cites to the 1933 Code

If a case cites to the 1933 Code cite only, translate to the appropriate O.C.G.A. cite for placement of the note.

If the text of the note contains a 1933 Code cite, use (see ...) format, to indicate the comparable 1981 Code provision.   If the 1933 Code cite is retained, make sure it was not a number assigned by Harrison--if so, translate to Ga. L. cite or simply delete the reference.  (This is because of Harrison's copyright in 1933 of Code numbers that it assigned.)


### 30.5.   Unconstitutional local Acts

If a case holds unconstitutional a local Act, local constitutional amendment, or population Act, this fact needs to be noted in Volume 42, the Local Laws Index.   These are not noted under any

COMM000157

unit or Code section.   These types of Acts are rarely codified, so case readers must be on the alert for such holdings of unconstitutionality.   If such a holding is encountered, inform the state, which will write a memorandum to the indexer in charge of the Georgia Local Laws Index giving the complete citation of the Act held unconstitutional and the complete citation of the case holding it such.

### 30.6.   Notes to entire unit

If an annotation pertains to a unit of the Code, the note should be marked to the unit itself   rather than to the first Code section in the unit.

### 30.7.   In accords

**(a) Generally.**   "In accords" may be taken even though the wording of the pertinent notes is not precisely the same.   Unless a note is making a significant elaboration on or addition to a similar preexisting note, an "In accord" should be taken.

**(b) Style.**   The following will be the style for "in accord with" notes:

In accord with Doe v. Roe.   See _____ [cite to the case currently being read].

### 30.8.   Analyses of notes

In situations in which an analysis is to be created for notes to judicial decisions or Attorney General opinions:

(1) "General Consideration" and "In General".   A "General Consideration" heading must be created, and it must be the first heading in the analysis.

If headings are further broken into subheadings, a "general consideration" subheading or other general subheading is not required; however, if a general subheading is desired, the phrase "In General" should be used.

Do not break a "General Consideration" heading into subheadings.

(2) Numbering of headings and subheadings.   Headings are not numbered.   Subheadings are designated with Arabic numerals.   If a new subheading needs to be added between two existing subheadings, a decimal number should be used.   If a numbered subheading is carried in the supplement, all superior headings must also be carried.   The following example illustrates these rules:

General Consideration

COMM000158

Applicability of Section

    1.    In General

    1.1. Peddlers
    2.    Sheepherders

Burden of proof

(3) "Decisions under prior law."

See Manual Section 30.13.

## 30.9.   Order of case notes

**(a)   By headings.**   Headings in an analysis (or, if no analysis, the subject matter of the notes themselves) should be arranged according to the following guide.   Any specific heading not covered by this list should be placed in its most logical position.

Constitutionality or validity

Common law

History of section

Origin of section

Legislative intent

Statements pertaining directly to section

Meaning of particular words or phrases in section

Applicability of section

Elements of offense

Definitions of elements

Venue and jurisdiction

Indictment, complaint, answer, etc.

December 2010

COMM000159

Burden of proof

Evidence

Instructions

Jury/court determination of questions

Verdict

Sentence

Appeal

**(b)   Other considerations.**   In addition to the general rules in (a) above, the following concepts are typically applied:

(1)   Annotations are grouped according to their specific fact pattern.

(2)   Annotations should be ordered based upon the stages of the process.   Thus, as noted above, jury instructions come before sentencing provisions.

(3)   Where the same annotation could be reasonably placed in several locations within a unit, a brief review is completed to determine if there are additional annotations to that case or opinion which should impact the placement of the annotation with multiple potential "right" locations for placement.   If there are multiple annotations to a particular case or opinion, an attempt is made to place annotations under multiple major headings to improve accessibility to the end user.

The above-referenced procedures are complicated by three primary factors: first, the subjective nature of the entire process; second, that annotations frequently contain more than one issue or more than one fact pattern; and, third, the constraints of working within the existing structure versus the flexibility to create new groupings for each supplement, as appropriate.   Due to the subjective nature of this process, the state may suggest alternative locations for placement.

## 30.10.   Order of string cited cases

Case cites are arranged chronologically, from earliest to latest.   When cases are from different courts for the same year, the cases are arranged in ascending numerical order by volume and page number, as follows:

(1)   United States Supreme Court (U.S., S. Ct., L. Ed.);

COMM000160

(2)  Georgia Appellate Courts - arranged according to Southeastern Reporter (S.E. or S.E. 2d) citation, without regard as to whether the case is from the state Supreme Court or the state Court of Appeals;

(3)  Federal Reporter (F. or F.2d);

(4)  Federal Supplement (F.Supp.);
(5)  Bankruptcy Reporter (Bankr.);

(6)  Federal Rules Decisions (F.R.D.).

## 30.11.   Catchlines and black-letter lines

Case note catchlines should be short and succinct; the "label" style, akin to a newspaper headline, is best.  Try to limit the catchline to no more than ten words.  The idea is to help the reader find the note by highlighting its central point.   (Some very lengthy catchlines are found in older bound volumes; such catchlines should be shortened upon replacement of the volume).

Running in of note catchlines.  The text of a case note is to be run into the boldface note catchline (separated by a period and a dash), except paragraph the first line of the text of a case note in a supplement to indicate the presence of another note under that catchline in the bound volume.  This rule applies only to case note catchlines and black-letter lines.  All other note catchlines are always run in.

## 30.12.   Running catchlines

Do not make note catchlines "run."  Do not create a new catchline with "And" or "But" or "Or" or some other construction intended to make the note a "continuation" of the prior note.   (This is a change in policy from the method used when the original Code was being edited.   Old running catchlines should be eliminated when replacement volumes are worked up.)

## 30.13.   Decisions under prior law

**(a) Generally.**   When a provision of law was specifically repealed but subsequently succeeded by a similar provision in current law, decisions rendered under the former law may remain relevant, despite the specific repeal due to the similarity of the prior and current provisions of law.   Such relevant decisions under prior law warrant inclusion in case annotations for the current similar Code provision, but the user should be alerted to their presence as specified in this section.

COMM000161

There may be several "prior versions" of a law, so that decisions under any of the prior versions are considered decisions under prior law.

A repeal and reenactment requires treatment of decisions under prior law as described in this section (even for current provisions that read exactly as before in the repealed law and which have the same Code section numbers).   In contrast, an amendatory revision of a unit does <u>not</u> require such treatment.   See Manual Section 12.1 for distinctions between these two types.

Also, a mere recodification (such as the O.C.G.A. itself) that is not intended to make substantive changes in the law does not require such treatment.

**(b) Editor's notes.**   When decisions under prior law are included among case annotations for a current Code provision, the user should be alerted to their presence by an editor's note at the beginning of the case annotations for that Code provision.   The editor's note should include a citation of or reference to the former law and state the fact of its subsequent repeal and succession by similar provisions in current law.   Additional information may be included where useful and appropriate.

Examples:

> **Editor's notes.**–In light of the similarity of the statutory provisions, decisions under former Ga. L. 1937-38, Ex. Sess., p. 103, which was subsequently repealed but was succeeded by provisions in this Code section, are included in the annotations for this Code section.

> **Editor's notes.**–In light of the similarity of the statutory provisions, decisions under former Code Section 14-2-110, which was subsequently repealed but was succeeded by provisions in this Code section, are included in the annotations for this Code section.

> **Editor's notes.**–In light of the similarity of the statutory provisions, decisions under pre-1983 provisions of this chapter pertaining to justices of the peace, which were subsequently repealed but were succeeded by provisions of this Code section, are included in the annotations for this Code section. See the Editor's notes at the beginning of the chapter.

**(c) Separate analysis headings--discontinued.**   "Decisions under prior law" may appear as an analysis heading for case notes in earlier O.C.G.A. volumes.   This separate heading should be eliminated when a volume is replaced, and case notes formerly found under such a heading should be transferred to other appropriate locations under the same Code provision.


**30.14.   Cited only**

If a "cited" is carried as a "cited only" and that case is overruled or vacated, the citation will be removed from the "citeds."   In this instance, the state need not be notified.

COMM000162

### 30.15.   Style rules for case notes

**(a)   Comma**.   Use the "Harvard" comma; i.e. a comma appears before the final "and" or "or" in a series or list.

Use a comma preceding or following an "and" to connect two distinct clauses (but not to connect compound verbs).
Use a comma to set off a clause only if that clause can be eliminated without affecting the meaning of the rest of the sentence.

Do <u>not</u> use a comma preceding a clause beginning with "where".

**(b)   Grammar**.   Besides using standard English grammar rules, do not drop articles, particularly "the" before a party (e.g., "the defendant") or "that" preceding certain clauses (e.g., "notify the courts that he had not").

**(c)   Capitalization**.   Generally, the rules are the basic grammar rules learned during elementary school.

Words such as paragraph, subsection, or state should be lower cased.

Titles of state officials (e.g., commissioner of revenue) should not be capitalized unless they are elected Constitutional officers (e.g., Commissioner of Agriculture).

U.S. Constitutional amendments should be capitalized (e.g., Fifth Amendment, <u>not</u> fifth amendment).

"State" should not be capitalized unless it is the full phrase State of Georgia.

**(d)   Numbers**.   Numbers 11 or more should be written as numerals.

**(e)   References**.   References to subunits may be aggregated; e.g., paragraph (a)(1), rather than paragraph (1) of subsection (a).

**(f)   Detail.**   Notes should be written with more, as opposed to less, detail, making sure that the resulting annotation is not unduly long.

**(g)   Gender neutrality.**   Where possible, he and she should be eliminated from the body of the case note.   Clearly, there are exceptions to this rule such as when a father is required to take a paternity test.   However, in most instances gender neutral terms such as the defendant or the victim can be used.

COMM000163

**(h)   References to "this section" or "this Code section."**  In case notes, the former preferred style was to use the term "this section" or "this Code section." In order to facilitate linking in electronic products, an O.C.G.A. citation (e.g., "O.C.G.A. §21-2-21") may be substituted in reprint volumes in lieu of an existing reference to "this section" or "this Code section" for cases that were actually decided under the O.C.G.A.

However, for cases decided under pre-O.C.G.A. provisions, such conversions to O.C.G.A. cites are misleading and should not be made.  For such pre-O.C.G.A. case annotations in reprint volumes, a sentence containing a reference to "this section" may, where feasible, be reworded slightly to eliminate such reference, but without substituting an O.C.G.A. section number.

**(i)   "Where."**  If possible, eliminate the use of the word "where".  Many people believe that "where" should only be used to refer to a place.  Therefore, if possible, use other words such as because, although, etc.  Do not use a comma preceding a clause beginning with "where".

**(j)   "It."**  Make sure that the case note is clear.  Often, the reference made by "it" will be unclear.   Thus, translate this word, if possible.

**(k)   ALR .**  Between the text of the ALR and the citation to the ALR, verify there should be a comma.   The period only appears at the end of the ALR annotation, following the citation.   See Manual Section 33.2.

**(l)   Multiple sentences.**  If the case note will be easier to read and be more effective as multiple sentences, divide as appropriate.   Under no circumstances should the case note exceed three sentences.

## 30.16.   Information in parentheses at end of case cite

If adding history to state case in Georgia, indicate date.

If adding history from F.2d, indicate circuit ("llth Cir." in Georgia) and date.

If adding history from F. Supp. or Bankr. (there should not be many of these), indicate district ("N.D. Ga.", "M.D. Ga.", or "S.D. Ga.") and date.

## 30.17.   How case annotation style differs from Code section text

The style used in case annotations differs in some key respects from the style used in the text of Code sections.   The following are some variations in style:

COMM000164

(1) References to sublevels may be shortened in all case annotations.   Thus a reference such as paragraph (a)(1) (as opposed to paragraph (1) of subsection (a)) is acceptable in case annotations.   This applies to amendment notes, editor's notes, or Code Commission notes as of the 2000 session of the General Assembly.

(2) The section symbol should be used in case notes to refer to sections of Acts and to Code sections.

(3) Constitutional references should appear in the following form: "Ga. Const. 1983, Art. I, Sec. II, Para. III." (always list a date with a Constitutional reference in the notes.)

## 30.18.   Record of deleted notes

The state needs to be notified in writing of any case notes that are deleted.   Notification can be in the form of xerox copies or a word processing document that lists the Code section and case.

## 30.19.   Shephard's treatment

affirmed - Add.

cert. denied - Add.

withdrawal of cert. by court upon further consideration - Add.

modified - Determine grounds for modification.   Delete notes from modified portions of decision (do not try to rework them based on modifying decision).   Add "modified on other grounds" to notes from modified decision not based on modified portion.   Make sure there are notes from modifying decision that state correct rule.

overruled - Determine grounds for overruling.   Delete notes from overruled portions of decision.   Add "overruled on other grounds" to notes from overruled decision not based on overruled portion.   Make sure there are notes from overruling decision that state correct rule.

rehearing denied - Do not add.

reversed - Determine grounds for reversal. Any notes from reversed decision that are based on reversed portions of that decision should be deleted.   Add "reversed on other grounds" to notes from reversed decision not based on reversed portions.   Make sure there are notes from reversing decision that state correct rule.

COMM000165

vacated - Frequently, Georgia courts will vacate only a specific portion of the prior case. Delete the note from a vacated decision if vacated on that point.   Use "vacated on other grounds" if vacated on some other point.

COMM000166

# 31. ATTORNEY GENERAL OPINIONS

## 31.1.   Generally

Where appropriate, annotations are included concerning relevant opinions of the Attorney General of Georgia, and citations to those opinions are given. These annotations are included under the heading "Opinions of the Attorney General" following the particular title, Code section, or other designation to which they relate.

## 31.2.   Receipt of opinions

Every month the publisher should receive a packet from the Georgia Department of Law containing the Opinions of the Attorney General from the previous month.  Opinions are designated as "Official" if the opinion was requested by a state agency or state official or "Unofficial" if requested by any other person or if an opinion of an unofficial nature is specifically requested.

## 31.3.   Numbering of opinions

Opinions are numbered according to year of issuance and sequence of issuance within the year; thus, Op. #83-75 is the 75th official opinion issued during 1983, Op. #U80-15 is the 15th unofficial opinion issued during 1980.

## 31.4.   Annotations

Official and unofficial Attorney General opinions are read, annotated, and ordered in the same manner as judicial decisions except that no "Citeds" are taken to Attorney General Opinions. Notes generally should be limited to the opinion of the Attorney General in response to the question asked.  Look for statements near the end of the opinion beginning with "it is my opinion that" or "it is my unofficial opinion that."  Do not annotate statements that merely constitute part of the Attorney General's reasoning, unless the note also contains his or her opinion in the matter.

## 31.5.   Citation form

Opinions on or before June 14, 1965, are cited using the style of Example 1.  Later opinions are cited using the style of Examples 2 and 3, depending upon the date and whether the opinion is official or unofficial:

COMM000167

(1) Opinions on or before June 14, 1965, cite to pages in the bound volume.  Example, "1958-59 Op. Att'y Gen. p. 1."

(2) Opinions after June 14, 1965, and prior to 2000 cite to the two-digit year and the opinion number:

    (A) Official: Example, "1976 Op. Att'y Gen. No. 76-121."
    (B) Unofficial: Example, "1976 Op. Att'y Gen. No. U76-69."

(3) Opinions on or after 2000 cite to the four-digit year and the opinion number:

    (A) Official: Example, "2000 Op. Att'y Gen. No. 2000-121.
    (B) Unofficial:   Example, "2000 Op. Att'y Gen. No. U2000-121.

## 31.6.   Editor's notes

Editor's notes pertaining to opinions can be found following that heading, as needed.

## 31.7.   Opinions under prior law

These should be treated similarly to judicial decisions under prior law; see Manual Section 30.13 (but be sure to use the word "opinions" instead of "decisions" in the editor's notes in such instances, as shown below).

    Example:

      **Editor's notes.–**In light of the similarity of the statutory provisions, opinions under former Ga. L. 1937-38, Ex. Sess., p. 103, which was subsequently repealed but was succeeded by provisions in this Code section, are included in the annotations for this Code section.

COMM000168

# 32.   STATE BAR ADVISORY OPINIONS

## 32.1.   Generally

Where appropriate, annotations are included concerning relevant advisory opinions of the State Bar of Georgia, and citations to those opinions are given. These annotations are included under the heading "Advisory Opinions of the State Bar" following the particular unit or Code section to which they relate.

December 2010

COMM000169

## 33. RESEARCH REFERENCES

### 33.1.  Generally

Research references are designed to aid the user in locating materials outside of the Official Code of Georgia which may be helpful in understanding the applicability of certain provisions of the Georgia Code.

To aid in legal research, collateral references are included to appropriate material in American Jurisprudence, American Jurisprudence 2nd, American Jurisprudence Trials, American Jurisprudence Pleading and Practice, American Jurisprudence Proof of Facts, Corpus Juris Secundum, Uniform Laws Annotated, and American Law Reports. These annotations are included under the heading Research References following the particular title, Code section, or other designation to which they relate.

### 33.2.  Form

Am. Jur. 1d: 56 Am. Jur. 2d, Municipal Corporations, §§ 126-138.

Am. Jur. 2d New Topic Service, Comparative Negligence, § 1.

Am. Jur. Trials

Am. Jur. Pleading and Practice

Am. Jur. Proof of Facts

C.J.S.: 62 C.J.S., Municipal Corporations, §§ 108, 124

U.L.A.: Uniform Limited Partnership Act (U.L.A.) § 1.

A.L.R.: Accused's right to interview witnesses held in public custody, 14 ALR3d 652.

### 33.3.  Order

The collateral references under a Code section will appear in the following order following the heading, "Research References":

Am. Jur. 2d (all in one paragraph and in ascending numerical order).

Am. Jur. Trials

COMM000170

Am. Jur. Pleading and Practice

Am. Jur. Proof of Facts

C.J.S. (all in one paragraph and in ascending order).

U.L.A. (all in one paragraph).

ALR (the first one run into the boldface "ALR" catchline, with each succeeding one made an individual paragraph and in ascending numerical order). A.L.R. Fed. notes follow all other A.L.R. notes.

## 33.4.   Retention of ALR notes

Do not delete any ALR notes without first notifying the state.   Global deletions are unacceptable.   The only exception to this rule is if an ALR is superseded by a later ALR.   In only the aforementioned instance can an ALR note be deleted.

COMM000171

# 34. INDEXES

## 34.1.  General index

**(a)  Generally.**  The Official Code of Georgia Annotated contains a general index.  All major headings in the Code are represented in the index.

**(b)  Updating and publication.**  The general index shall be updated and published annually.  The general index shall be published in three softcover volumes (Volumes 43, 44, and 45) in a format similar to the current index, unless otherwise specified by the Code Commission.  Repealed laws shall be deleted from the general index and references to new laws or new subjects in amended laws shall be integrated annually.  General index volumes will be bound with flexible, perfect bound covers.  The general index shall be prepared in accordance with the following general specifications:

(1)  Lines will be produced by an actual reading of the body of the statutes and other material and not merely from headings or catchlines;

(2)  All sections of the Code, appropriate statutes, and other appropriate material will be separately indexed, although blanket references may also be used where a group of Code sections includes the same general subject matter or where separate indexing of each Code section will serve no useful purpose;

(3)  The headings used in the index shall not be a mere alphabetical arrangement of those used in the body of the statutes and other material.  In choosing index headings, the indexers shall, whenever practical, break down the large divisions employed by the compilers of the statutes and arrange index lines under such group headings as the user may reasonably be expected to look for in an index prepared on an alphabetical or catchword plan.  All major terms used in the statutory portion of the Code shall be represented in the index.  All short titles used in the statutory portion of the Code shall be represented as main headings in the index and shall also be compiled in a separate table index preceding the general index entries;

(4)  Headings, subheadings, and the lines and sublines under the headings and subheadings shall be arranged alphabetically throughout;

(5)  Where matter may be reasonably indexed under more than one descriptive word, it shall be indexed under each of such descriptive words either by a direct reference or a cross-reference, and no section shall be indexed in less than two entries;

(6)  Under each heading the lines will begin with some descriptive word, so as to be readily located without the necessity of scanning everything under such heading;

COMM000172

(7)   The index shall include popular names of Acts; and

(8)   All cross-references shall be made:

(A)   Wherever a heading consists of an expression for which there is a common synonym;

(B)   Whenever there is a group of lines (one flush line and two or more indented lines) which, having been put under a chosen heading, might also properly be put under other headings; the object being to gather all related matter together in one place, with cross-references in all the other places, rather than scattering the lines around, with some under one heading and others under different headings; but this will not apply to single lines, which shall be duplicated in all appropriate places;

(C)   Where matter under a heading might reasonably be expected to be found under some other heading; and

(D)   In all other instances, where, in the judgment of the indexers or the Code Commission, cross-references would be helpful to the user.

**(c)   No blind or double jump references.**   Adequate precautions shall be taken to see that all cross-references correctly refer to the place intended and are not of the "blind" or "double jump" type, leading either to nothing or to another cross-reference.

## 34.2.   Title indexes

In addition to the general index, each title of the Code contains an individual title index prepared by the publisher and covering the material contained in that title.   Individual title indexes will not be revised in the annual supplements but will be revised and updated when a volume is recompiled and republished.

## 34.3.   Index of local and special laws and general laws of local application

**(a)   Definition.**   As used in this section, the term "local and special laws" shall include laws enacted by the General Assembly of Georgia which, by their terms, are of less than state-wide application and shall also include ordinances and resolutions adopted by municipalities and counties under their home rule powers and which are published in the Georgia Laws, local amendments to the Constitutions of Georgia, miscellaneous resolutions adopted by the General Assembly which are not codified but which appear in the Georgia Laws, and other laws and resolutions which appear in the Georgia Laws but which are not included in the general index.

COMM000173

**(b)   Complete index.**   A complete index to all local and special laws and general laws of local application shall be published in two volumes (Volumes 42 and 42A) as a part of the Code.   The local and special laws index shall contain references to the volume and page of the Georgia Laws at which all local and special laws may be found.

**(c)   Current and noncurrent entries.**   Entries relating to each municipality, county, authority, court, or other topic shall be divided into two sections.   The first section shall contain all currently effective local and special laws pertaining to such topic and each amendment to such laws, even though any such amendments may have been superseded by a later amendment.   The second section under each topic shall contain references to all local and special laws pertaining to such topic which have been repealed and which are no longer in effect.   In the event that the name of any municipality, county, authority, court, or other topic for which index entries are made in the local and special laws index has been changed, index entries shall be made under the current name and cross-references shall be made to former names.

**(d)   Consistency.**   Care shall be taken to ensure consistency in the manner in which Acts of similar subject matter pertaining to the same topic are indexed.

**(e)   Population Acts.**   The local and special laws index shall also include an index of general laws of local application, arranged according to the census under which they were originally enacted.   Such local and special laws index shall also include a table showing the population of Georgia counties according to each census beginning with the United States Decennial Census of 1920 and shall likewise include a list of the population of each county in order according to the population of each county according to the most recent census available.

**(f)   Further information.**   For further information regarding the index to local and special laws and general laws of local application, see the foreword to that index and the user's guide preceding the portion of that index dealing specifically with general laws of local application.

COMM000174

# 35. TABLES

## 35.1. Conversion tables generally

Conversion tables are included in Volume 41 to assist the user of the Code in converting citations between the Official Code of Georgia Annotated and the Georgia Code Annotated, the Code of Georgia of 1933, and all previous codes of the State of Georgia. Also included are a table showing the location of each section of the Georgia Laws which has been codified in the Official Code of Georgia Annotated and tables which indicate corresponding provisions of the 1877 Constitution of Georgia, the 1945 Constitution of Georgia, the 1976 Constitution of Georgia, and the 1983 Constitution of Georgia. Conversion tables for the present and prior Constitutions of Georgia are also contained in Volume 2.

## 35.2. Disposition of Acts table

Various disposition tables may be found in Volume 41 of the Code.  The disposition of Acts from the most current year should be added to the end of Table 15 in the supplement; do not go back to entries from earlier years and add any notations regarding subsequent repeals or renumberings.  Table 15 lists only those Act sections that are codified; do not add any information regarding uncodified sections of Acts.

## 35.3. Codification of language from pre-Code Act

Occasionally the General Assembly will codify language that in fact derives from a pre-Code Act that was not codified in the original Code.  Any such pre-Code Act should be reflected in its appropriate year category in Table 15.  If the pre-Code Act was codified in the original 1933 Code or any prior Codes, do not make any entries to any of the comparative sections tables to reflect this fact.

## 35.4. Corresponding provisions of 1933 and 1981 Codes

Tables One and Two indicate corresponding provisions of the original O.C.G.A. codification and Harrison codifications.  Table 11 indicates those original O.C.G.A. sections that can be traced back to the original 1933 Code; thus, Table 11 does not indicate any provisions that were first enacted after 1933.

COMM000175

# APPENDIX A.   INTERNAL REFERENCE UPDATES

## A.1.   Generally

References in notes to state and federal Constitutions, statutes, court rules, and administrative rules and regulations must be checked periodically to ensure continued accuracy, in light of later amendments and repeals.

## A.2.   Currency

Internal references to O.C.G.A. sections should be checked annually for references to Code sections affected by that year's legislation.   References to Constitutions, rules, and federal statutes should be checked also (constitutional references change infrequently, so do not check unless there has been an amendment).

## A.3.   Updating references other than in Code section text

If legislation has renumbered, amended, or repealed the Code section referred to so that the reference is no longer accurate, it should be changed outright, updated with a parenthetical reference to the comparable new provision, or deleted, as appropriate.

References in Code section catchlines and cross-references are changed outright or deleted.

References in all other types of notes should not be changed outright, but, instead, a parenthetical notation to the current provision should be inserted; e.g., "(see now O.C.G.A. § 1-2-3)".   If there is no comparable provision, insert "former" preceding the reference or delete the reference altogether, as appropriate.

## A.4.   Updating of references in Code section text

Do not update references in Code section text.   The state performs its own computer checks on statutory references within Code text and adjusts them by legislation or Code Commission note as required.

## A.5.   Georgia administrative rules and regulations

State administrative rules and regulations are updated monthly and, therefore, administrative rules and regulations notes need to be checked and updated periodically to maintain currency. This should be done as part of the preliminary work for replacement volumes.

COMM000176

## APPENDIX B.   PUBLISHER'S SPECIAL TASKS ON SUPPLEMENTS

### B.1.   Generally

Besides the incorporation of legislative amendments, there are other aspects of the Code that must be checked annually and updated as necessary.

### B.2.   Proposed constitutional amendments

See the discussion regarding this subject at Manual Section 7.4.

### B.3.   Corporations comments

(a)   There are two sets of comments contained in Title 14:   Comments on Chapters 2 and 3 (which are contained both in the bound volume and in the supplement) and Comments on Chapter 8 (which were contained for the first time in the 1985 Supplement).

(b)(1)   The general corporation comments contained in Chapters 2 and 3 are updated in many years by the Corporate Code Committee of the Business Law Section of the State Bar of Georgia, with comments on the current year's legislation being added. The contact person is the committee's chairperson; for the name and contact information for the current chairperson, see the State Bar of Georgia website, Business Law Section, Executive Committee Members, Corporate Code Committee chairperson listing:

http://www.gabar.org/sections/section_web_pages/business_law/

Sometime in late February or early March, the state bar contact should be queried as to whether the committee will be preparing updated commentary on the current year's corporation legislation. This commentary is commonly included in first proof.

(2)   The Comments in Chapter 8 to the new partnership law were prepared by Professor Larry Ribstein of Mercer University, Walter F. George School of Law, Macon, GA 31207. The comments, which were first included in the 1985 supplement, accounted for the original 1984 enactment of the partnership law as well as its 1985 amendments.

### B.4.   Rules and regulations of State Board of Workers' Compensation; rules and regulations of Subsequent Injury Trust Fund

These rules appear as appendixes to Title 34.  The Workers' Compensation and  Subsequent Injury Trust Fund (SITF) rules are set up as entirely separate sets of rules and the corresponding

COMM000177

appendixes are organized similarly to separate chapters of a title.  The main heading for Appendix A should be "Rules and Regulations of the State Board of Workers' Compensation," and the main heading for Appendix B should be "Rules and Regulations of the Subsequent Injury Trust Fund."

For Workers' Compensation rules, the contact is:

> [name] _____
> Chief Operating Officer
> State Board of Workers' Compensation
> 270 Peachtree St., N.W.
> Atlanta, GA   30303-1299
> 404-656-2048

The name of the current chief operating officer of the board can be found via the "Contact Information" link on the board's website:

> http://sbwc.georgia.gov/portal/site/SBWC/

For SITF rules, the contact is:

> [name] _____
> Administrator [or Deputy Administrator] of Subsequent Injury Trust Fund
> Marquis Two Tower, Suite 1250
> 285 Peachtree Center Avenue NE
> Atlanta, GA 30303
> (404) 656-7000

The name of the current fund administrator (or deputy administrator) can be found via  the "Contact Information" link to the staff directory on the fund's website:

> http://sitf.georgia.gov/portal/site/SITF/

Separate requests for rules updates should go to each of these officials.


**B.5.   Delayed effective dates from prior years**

Delayed effective dates are accounted for in supplements by means of catchline parentheticals, editor's notes, or both.

COMM000178

Further, keep in mind that each year there may be contingent effective dates lurking throughout the Code, waiting for the particular contingency to occur. This information usually is also contained in editor's notes.  It is necessary to regularly check with the state as to whether the contingencies have been met.

Another situation involving "old" delayed effective dates is represented by the termination provisions, showing when certain provisions of the Code are scheduled for repeal.

COMM000179

## APPENDIX C.   PUBLISHER'S SPECIAL TASKS ON REPLACEMENT VOLUMES

### C.1.   Statute text

Bear in mind that the publisher has absolutely no authority to make any changes or corrections, however minor, in statute text without authority from the state.   Generally, limit changes and corrections to fixing misspellings and typos, indention, (unbalanced designations (a), but no (b)), and name changes.   There are not many name changes in Georgia but the publisher should be alert to changes that might affect the volume.   Internal references in statutes are checked by the state.   A Code Section 28-9-5 Code Commission note is often required by the state in conjunction with a textual change made by the publisher (be sure to ask in memo if a Code Commission note needed).

### C.2.   Statute catchlines and unit headings

The statute catchlines in the original 1981 Code and early replacements are often far too lengthy.   As a rule of thumb, shorten catchlines to three lines of print or less.   Catchlines in earlier volumes often itemized the contents of the Code section in too much detail.   The publisher should consider substitution of broader language that adequately covers the subject of the Code section.

Do not memo catchline or heading changes to the state.   Brackets on proof serve as sufficient notice that a change has been made.

Delete "Same--" from statute catchlines in replacement volumes and substitute the full text of the phrase that "Same--" stood for (retain the dash following the phrase).   The publisher should consider revision of the catchline to eliminate the phrase preceding the dash altogether if it is lengthy.

"Etc." should be deleted from catchlines and the catchline revised as necessary, either by enumerating the items that "etc." stood for or by substituting a shorter, more general summary description of the enumerated items.

### C.3.   Case notes

Review case notes in light of later amendments to the section.   Catchlines probably need to be shortened, especially in original volumes and earlier replacement volumes--try to keep catchlines to ten words or fewer.   Add analyses if there are more than two pages of notes for any one unit or Code section.

COMM000180

Review case notes throughout the volume before editing begins to see if any notes require such extensive revision that they need to be moved.

"Decisions under prior law" should be eliminated as a separate analysis category in most instances;   see Manual Section 30.13 for treatment of decisions under prior law.
Xerox all deleted case notes and opinions of the Attorney General, briefly state reason for deletion (reversal on appeal, later amendment of section, overruled, etc.), and send to the state.

## C.4.   Editor's notes and Code Commission notes

These notes need to be reviewed for continued accuracy and often are either reedited or deleted. They often are made obsolete by the passage of time or a subsequent amendment.   Naturally, there should be no notes referring the user to the bound volume.   Notes as to a delayed effective date which has passed are an example, as are Code Commission notes describing changes made pursuant to Code Section 28-9-5, where a later amendment has deleted or corrected the language in question.   If the editor's note pertains to applicability of an act (for example, pending litigation, etc.) retain it.   Deletion of Code Commission notes should always be memoed; great caution should be used in deleting Code Commission notes.

## C.5.   Cross-references

The style of these notes should be "(subject), §   _____."

## C.6.   U.S. Code notes

Check to make sure that the federal reference is still in the text of the Code section and make sure the reference in the note is correct.

## C.7.   Administrative rules and regulations

Check for sense and check rule references against the Compilation of Rules and Regulations of Georgia.   Change form of these notes from "As to ..., see" to "(subject), (cite)".

## C.8.   Amendment notes and effective date notes

Keep only the last three years -- legislation from the year of replacement and the two preceding years.   Delete earlier notes.

COMM000181

**C.9.   Delayed effective date notes**

Delete if date has passed.  Also delete any effective date information inserted in parentheses in section catchline or at the beginning of a subsection.  If provision becomes effective only on fulfillment of a condition such as adequate funding, check with the state to see whether the condition has been met.


**C.10.   Notes under repealed sections**

The only note that should generally appear under a repealed Code section (or unit) is an editor's note enumerating the Georgia Laws on which the repealed Code section or unit was based and referring the user to where that subject is now treated in the Code.

Other notes for the repealed Code section or unit should either have been deleted or transferred to the comparable provisions (if any) referred to in the Editor's note.


**C.11.   Notes under repealed and reenacted units**

When a unit is repealed and reenacted, the new provisions are usually sufficiently similar to the old provisions that case notes, cross-references, research references, and other notes not specifically applicable only to the old section can be transferred.  Be careful in this situation, since Georgia often reuses Code section numbers in repeals and reenactments, and the new section to which notes are transferred may have the same section number as an old section whose notes need to be transferred to another location.


**C.12.   Research references**

Check research references for continued accuracy.  References to A.L.R. 1st should not be deleted globally.  There is no need to check other A.L.R. references (other than to make sure subject matter fits in with statute text).  Check citations of Am. Jur. 2d's and C.J.S.'s.  These may have become out of date due to Am. Jur. 2d or C.J.S. replacing volumes.

COMM000182

# INDEX

                                                                    Section

Acts, generally
        approval by Governor; veto; veto override............................2.1
        codification ...............................................................2.3
        comparing ................................................................2.6
        numbering and citation ................................................2.4
        proofreading ............................................................2.9
        reading ...................................................................2.7
        text .......................................................................2.8
        transmission of information ..........................................2.5
        types ....................................................................2.2

Amendment notes
        form ......................................................................23.2
        generally.................................................................23.1
        multiple amendments ..................................................23.6
        order and location of changes .......................................23.4
        retention .................................................................23.9
        reviser bills .............................................................23.7
        stylistic items ..........................................................23.3
        terminology.............................................................23.5
        veto Acts ...............................................................23.8

Attorney general opinions.................................................31.1
        annotations .............................................................31.4
        citation form ...........................................................31.5
        editor's notes ..........................................................31.6
        generally.................................................................31.1
        numbering ..............................................................31.3
        receipt ...................................................................31.2
        under prior law ........................................................31.7

Case notes
        analyses.................................................................30.8
        catchlines and black-letter lines.....................................30.11
        cited only...............................................................30.14
        cites to 1933 Code....................................................30.4
        cites to Georgia Constitution ........................................30.3
        decisions under prior law.............................................30.13
        generally.................................................................30.1
        how style differs from Code text ...................................30.17
        in accord................................................................30.7

COMM000183

    information in parentheses at end of case cite ...................................................30.16
    notes to entire unit...................................................................................30.6
    order of notes ...........................................................................................30.9
    order of string cites ................................................................................30.10
    record of deleted notes...........................................................................30.18
    running catchlines ..................................................................................30.12
    scope ........................................................................................................30.2
    Shepard's treatment ...............................................................................30.19
    style rules ...............................................................................................30.15
    unconstitutional local Acts......................................................................30.5

Catchlines (see Headings and catchlines)

Code Commission notes and changes
    changes in text generally...........................................................................25.1
    Code Commission note errors....................................................................25.9
    discrepancies in AP and ENR versions of Acts..........................................25.3
    effective date references ...........................................................................25.2
    enactment of new Code section with wrong number...................................25.6
    history cite................................................................................................25.7
    missing Code text or other inadvertent change..........................................25.8
    multiple and conflicting amendments and enactments ...............................25.5
    problems and inconsistencies in amendments ............................................25.4

Constitution text and amendments
    citation form; references ............................................................................7.3
    generally....................................................................................................7.1
    local amendments to Georgia Constitution..................................................7.5
    proposed amendments to Georgia Constitution............................................7.4
    tables of comparable provisions ..................................................................7.2

Corner heads (see Running heads and corner heads)

Cross-references
    generally..................................................................................................24.1

Delayed effective dates
    amendments
        caution...................................................................................16.6
        defined...................................................................................16.1
        effective after July 1 of following year....................................16.3
        effective on or before July 1 of following year .......................16.2
        multiple .................................................................................16.4
        with provision for repeal........................................................16.5

COMM000184

contingent amendments
    Code section in bound volume only ........................................21.2
    Code section in supplement or current revised volume ............................21.3
    concurrent funding of retirement provisions ............................................21.5
    generally ........................................................................................21.1
    reenactment of repealed and reserved Code section ..................................21.6
    when text set out in 11 point type ......................................................21.4
contingent enactments
    retirement provisions requiring concurrent funding ................................20.3
    new Code section ............................................................................20.2
    new unit ........................................................................................20.1
contingent, generally
    conversion of notes ........................................................................19.4
    funding contingencies ......................................................................19.3
    generally ........................................................................................19.1
    instructions from state as to unusual situations ........................................19.2
enactments
    generally ........................................................................................15.1
generally
    introduction....................................................................................14.1
    memos to state................................................................................14.2
repeals
    caution..........................................................................................17.5
    Code section ..................................................................................17.1
    comparison of editor's notes and delayed effective date notes.................17.8
    effective after July 1 of following year....................................................17.4
    effective date extended by legislation....................................................17.6
    subsection ......................................................................................17.2
    termination of Code sections (sunsetting) ..................................................17.7
    unit ..............................................................................................17.3
repeals and reenactments
    effective after July 1 of year following supplement ..................................18.3
    effective between September 1 and the following July 1 ........................18.2
    generally ........................................................................................18.1

Editor's notes
    generally
        deleting notes in volume revision ..........................................................26.4
        examples ........................................................................................26.3
        introduction....................................................................................26.1
        required notes annually under Code Section 1-1-1...................................26.2
    repeals
        amendment by other Acts in year of repeal ..............................................28.8
        chapter repealed that contains earlier repealed Code sections.................28.10

COMM000185

Code section itself provides for automatic repeal....................................28.9
comparable provisions ........................................................................28.12
delayed repeals....................................................................................28.2
former chapter repealed previously and new chapter enacted................28.11
generally...............................................................................................28.1
previously repealed Code sections in chapter being repealed ..................28.6
repeal and reenactment of repealed and reserved Code section .............28.13
repeal of entire unit.............................................................................28.5
repeal of single Code section................................................................28.4
retention of editor's notes under repeal lines ............................................28.7
sublevel repeals....................................................................................28.3
resolutions Acts
form of notes ........................................................................................27.3
generally...............................................................................................27.1
retention of notes ................................................................................27.4
specific types of resolutions to be noted................................................27.2

Effective date notes
change of date by later legislation .......................................................22.7
date preceding approval by Governor....................................................22.6
default dates .........................................................................................22.2
form of notes ........................................................................................22.5
generally...............................................................................................22.1
notes    ..................................................................................................22.4
retention ...............................................................................................22.8
veto override . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22.3

General provisions
arrangement and numbering system .....................................................1.6
arrangement of specific types of materials ...........................................1.7
background.............................................................................................1.2
citation of O.C.G.A. .............................................................................1.5
contract..................................................................................................1.3
definitions .............................................................................................1.1
dictionary ..............................................................................................1.10
effective date of Code ...........................................................................1.11
general content of O.C.G.A. .................................................................1.4
Office of Legislative Counsel (state contact) .......................................1.13
official nature of Code ..........................................................................1.12
order of notes and annotations..............................................................1.8
printing specifications and type sizes ...................................................1.9

Headings and catchlines
capitalization ........................................................................................6.4

COMM000186

functions...........................................................................................................6.1
official or unofficial status...........................................................................6.2
rules   ...............................................................................................................6.3

Historical citations
Code sections in amendatory revisions...............................................13.10
amendment of Code section not having history cite.............................13.8
amendment to effective date of Act.....................................................13.14
amendments to Code sections................................................................13.4
Code sections omitted from 1981 Code and added later .....................13.13
Constitution Paragraphs.........................................................................13.2
delayed and contingent amendments to Constitution ...........................13.6
delayed or contingent amendments to Code ..........................................13.5
directory amendments to units...............................................................13.7
double drafting at 1982 session .........................................................13.12
generally.................................................................................................13.1
new Code sections .................................................................................13.3
number redesignated by General Assembly ...........................................13.9
repeals and reenactments of Code sections.........................................13.11

Indexes
general 34.1
local and special laws and general laws of local application................34.3
title indexes...........................................................................................34.2

Internal reference updates
currency ...................................................................................................A.2
generally...................................................................................................A.1
Georgia administrative rules and regulations ........................................A.5
updating references
in Code section text..................................................................A.4
other .........................................................................................A.3

Law reviews and bar journal
categories of annotations .......................................................................29.3
format of notes ......................................................................................29.5
generally.................................................................................................29.1
list of periodicals read...........................................................................29.2
order   ....................................................................................................29.6
reading of publications..........................................................................29.4

Publisher's special tasks on replacement volumes
administrative rules and regulations .....................................................C. 7
amendment notes and effective date notes.............................................C.8

COMM000187

case notes ................................................................................. C.3
cross-references ......................................................................... C.5
delayed effective date notes ......................................................... C.9
editor's notes and Code Commission notes...................................... C.4
notes under repealed and reenacted units ...................................... C.11
notes under repealed Code sections or units................................... C.10
research references ..................................................................... C.12
statute catchlines and unit headings............................................... C.2
statute text ................................................................................ C.1
U.S. Code notes.......................................................................... C.6

Publisher's special tasks on supplements
corporation comments.................................................................. B.3
delayed effective dates from prior years........................................ B.5
generally .................................................................................. B.1
proposed constitutional amendments............................................. B.2
rules and regulations; Subsequent Injury Trust Fund; Workers' compensation ..... B.4

Repeals, generally
editor's notes ............................................................................ 11.5
form for analyses of repealed provisions......................................... 11.4
form for repeal lines .................................................................. 11.2
repeal lines in original O.C.G.A. volumes ...................................... 11.8
repeal prior to effective date ...................................................... 11.9
reserved Code sections............................................................... 11.6
reused Code sections.................................................................. 11.7
scope of discussion .................................................................... 11.1
sublevels.................................................................................. 11.3

Repeals and reenactments; amendatory revisions of entire units
generally.................................................................................. 12.1
reenactment of lapsed Code sections .............................................. 12.4
repeal of Code section and reuse of number.................................... 12.5
treatment of amendatory revisions of entire units ............................ 12.2
treatment of repeals and reenactments........................................... 12.3

Research references
form     ................................................................................ 33.2
generally.................................................................................. 33.1
order     ................................................................................ 33.3
retention of ALR notes ................................................................ 33.4

Running heads and corner heads

COMM000188

corner heads .................................................................................................5.2
running heads ...............................................................................................5.1

Secretary of State's certificates
      generally..............................................................................................3.1

State bar advisory opinions
      generally............................................................................................32.1

Statutory text and amendments
      generally
             amended Code section set out in full ..............................................8.2
             amended subsection with fewer paragraphs than old Code section............8.4
             restated language and directory language in Acts .......................8.1
             use of restated language set out in Act .......................................8.3
      interstate compacts
             quotation marks...........................................................................10.2
             style.............................................................................................10.1
      reviser bills and Acts
             amendment notes .........................................................................9.5
             Code sections printed in full .......................................................9.4
             generally......................................................................................9.1
             incorporation procedure..............................................................9.3
             organization and history cites .....................................................9.2
             other amendments to same Code section ....................................9.6

Tables
      codification of language from pre-Code Act ......................................35.3
      conversion tables generally.................................................................35.1
      corresponding provisions of 1933 and 1981 Codes............................35.4
      disposition of Acts tables....................................................................35.2

Title and chapter analyses
      analyses in supplements......................................................................4.3
      chapter analysis...................................................................................4.2
      title analysis ........................................................................................4.1

COMM000189