IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

CODE REVISION COMMISSION on
behalf of and for the benefit of THE
GENERAL ASSEMBLY OF
GEORGIA, and THE STATE OF
GEORGIA,

        Plaintiff,

   v.

PUBLIC.RESOURCE.ORG, INC.

        Defendant.

CIVIL ACTION NO.

1:15-CV-02594-MHC

## PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT

Lisa C. Pavento (G.A. Bar: 246698)
Anthony B. Askew (G.A. Bar: 025300)
Warren Thomas (G.A. Bar: 164714)
Meunier Carlin & Curfman LLC
999 Peachtree Street, NE, Suite 1300
Atlanta, Georgia 30309
Phone: 404-645-7700
Fax: 404-645-7707
lpavento@mcciplaw.com
taskew@mcciplaw.com
wthomas@mcciplaw.com
*Counsel for the Plaintiff, Code Revision
Commission on behalf of and for the benefit
of the General Assembly of Georgia, and the
State of Georgia*

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ............................................................................ iii, iv

PRELIMINARY STATEMENT .......................................................................... 1

STATEMENT OF FACTS .................................................................................... 3

   I.   CREATION AND COPYRIGHT REGISTRATION OF THE OCGA
      ANNOTATIONS ..................................................................................... 4

   II.  THE STATE MAKES THE GEORGIA CODE, OCGA AND MANY
      OTHER GOVERNMENT DOCUMENTS ACCESSIBLE...................... 7

   III.  PR COPIED AND DISTRIBUTED THE OCGA IN ITS ENTIRETY
      TO PROVOKE THIS LAWSUIT ............................................................ 9

ARGUMENT ...................................................................................................... 11

   I.   THE SUMMARY JUDGMENT STANDARD ...................................... 12

   II.  PR DELIBERATELY INFRINGED COMMISSION'S
      COPYRIGHTS ....................................................................................... 12

      A. Commission Owns Valid Copyrights In the OCGA Works .............. 12

      B.  PR Copied The Protectable Annotation Elements In The OCGA ..... 15

   III.  THE O.C.G.A ANNOTATIONS ARE NOT THE LAW ........................ 16

   IV.  DEFENDANT'S COPYING WAS NOT A FAIR USE .......................... 19

      A. Factor One ........................................................................................ 19

        1.  PR's Use Does Not Serve a Nonprofit Educational Purpose ............. 20

        2.  PR's Use Is Not Transformative ....................................................... 22

     B.  Factor Two.............................................................................................23

     C.  Factor Three.........................................................................................24

     D. Factor Four ..........................................................................................24

V.     CONCLUSION.............................................................................................25

# TABLE OF AUTHORITIES

## Cases

*Anderson v. Liberty Lobby, Inc.,*
   477 U.S. 242 (1986) ....................................................................... 12

*Authors Guild v. Google, Inc.,*
   804 F.3d 202 (2d Cir. 2015) .......................................................... 21

*Authors Guild, Inc. v. HathiTrust,*
   755 F.3d 87 (2d Cir. 2014) ............................................................ 23

*Bateman v. Mnemonics, Inc.,*
   79 F.3d 1532 (11th Cir. 1996) ....................................................... 15

*BUC Int'l Corp. v. Int'l Yacht Council Ltd.,*
   489 F.3d 1129 (11th Cir. 2007) ..................................................... 18

*Callaghan v. Meyers,*
   128 U.S. 617 (1888) ................................................................ 14, 17

*Cambridge Univ. Press v. Patton,*
   769 F.3d 1232 (11th Cir. 2014) ............................................... passim

*Campbell v. Acuff–Rose Music, Inc.,*
   510 U.S. 569 (1994) ................................................................ 18, 21

*Celotex Corp. v. Catrett,*
   477 U.S. 317 (1986) ....................................................................... 12

*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.,*
   499 U.S. 340 (1991) ................................................................ 12, 14

*Harper & Row Publishers v. Nation Enters.,*
   471 U.S. 539 (1985) ....................................................................... 24

*Katz v. Google,*
   802 F.3d 1178 (11th Cir. 2015) ..................................................... 19

*Latimer v. Roaring Toyz, Inc.,*
   601 F.3d 1224 (11th Cir. 2010) ..................................................... 13

*Peter Letterese & Assocs. v. World Inst. Of Scientology Enters., Int'l*, 533 F.3d 1287 (11th Cir. 2008) ................................... 12, 19, 22

*State of Georgia v. The Harrison Company,* 548 F. Supp. 110 (N.D. Ga. 1982) ............................................. 1-2

*Wheaton v. Peters*, 33 U.S. 591 (1834) ....................................................... 17

*West Publ'g Co. v. Mead Data Cent., Inc.*, 799 F.2d 1219 (8th Cir. 1986) ...................................... 14

**Statutes**

2014 Ga. Laws 866 .......................................................... 16
2015 Ga. Laws 5, § 54 ................................................. 2, 16
OCGA § 1-1-1 ................................................................. 3
OCGA § 20-5-2 ............................................................... 8
17 U.S.C. § 105 ............................................................ 13
17 U.S.C. § 107 ....................................................... 19, 24

**Other Authorities**

Article III, § 1, paragraph 1, of the Georgia Constitution ................... 16
*U.S. Copyright Office,*
*Compendium of U.S. Copyright Office Practices*
§ 3163.6(C)(1) (3d Ed.) (2014).......................................... 13

Plaintiff and Counterclaim-Defendant the Code Revision Commission, on behalf of and for the benefit of the General Assembly of Georgia, and the State of Georgia (Commission), submits this Memorandum of Law In Support of Its Motion for Partial Summary Judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure and Local Civil Rule 56.1 N.D. Ga.

## PRELIMINARY STATEMENT

This case is the culmination of a well-laid plan by Public.Resource.Org, Inc. (PR) to challenge in court a state's ability to own a copyright in annotations of the state's laws. In furtherance of this plan, PR copied and posted hundreds of annotated state code volumes and informed several states of its actions. Now that the State of Georgia has filed suit for infringement of its copyrights in the 2014 edition of the Official Code of Georgia Annotated (OCGA), PR argues that the annotations in the OCGA are the law and not copyrightable, or in the alternative, that its use is fair. Dkt. 16, Def's Answer To Amended Compl. and Counterclaim (Def's Answer), p. 10 ¶ 49-50.

At the outset, both parties agree that the Georgia statutes and the statutory numbering are not copyrightable—the state makes no such claim of copyright. Pl's Statement of Undisputed Material Facts (SUMF) ¶ 38; Stipulation of Facts [Dkt. 17] (Stip.) ¶ 45. This case is also not about the ability of a state to own a copyright generally. *See State of Georgia v. The Harrison Company*, 548 F. Supp. 110, 112

1

(N.D. Ga. 1982) (deciding that it would "not hold that copyright protection is not available to the states") *vacated at request of parties* 559 F. Supp. 37 (N.D. Ga. 1983). This case is specific to the issue of whether a state can own a copyright in the original and creative annotations of the uncopyrightable state's laws. PR argues that the OCGA annotations are not copyrightable because they are associated with an official state document (the Official Code of Georgia), and therefore, incorporated into the law.

It is clear that the OCGA annotations are not the law. The OCGA annotations are compilations, summary materials and notes prepared by the OCGA publisher, not statutes enacted by the Georgia General Assembly or legal decisions rendered by a court of law. The Georgia Legislature has passed several laws dictating that the OCGA annotations are not the law, and any decision by this Court to the contrary would require an overturning of these laws. *See*, *e.g.*, 2015 Ga. Laws 5, § 54.

PR's arguments regarding the uncopyrightability of the OCGA annotations should fail. The State of Georgia maintains valid copyrights in the numerous original and creative elements of the OCGA annotations, and PR has deliberately infringed these copyrights with acts of copying that do not fall within the fair use exception. In order to redress these acts of infringement, Commission seeks removal of the infringing materials from the internet and an appropriate injunction

2

to prevent PR's continued infringement.[1]  Commission does not seek monetary

damages.

## STATEMENT OF FACTS

Since 1982, certain laws have been published by the State of Georgia in

codified form in the OCGA, or the Official Code of Georgia Annotated. SUMF, ¶

59; Exhibit 1, Declaration of Elizabeth P. Howerton (Howerton Dec.), ¶ 3). The

OCGA contains the official, or State of Georgia-approved, codified statutory text

(OCGA § 1-1-1). A second annotated code publication is West's Code of Georgia

Annotated, published by West Publishing. *Id*. ¶ 63; Howerton Dec. ¶ 7. The

statutory text in West's Code of Georgia Annotated is not approved by the State.

*Id*. ¶ 64; Howerton Dec. ¶ 8. As each publication's name indicates by the term

"annotated," neither is a mere listing of the statutes of the State of Georgia, but is

instead a compilation of the statutes and other non-statutory materials, or

annotations. *Id*. ¶ 60; Howerton Dec. ¶¶ 3, 4.

---

[1] Commission does not elaborate on the propriety and scope of injunctive relief
here and requests that this Court set a briefing schedule on the matter, as
appropriate, following its decision on this motion.

## I.   CREATION AND COPYRIGHT REGISTRATION OF THE OCGA ANNOTATIONS

The OCGA annotations are a combination of original text and original compilation, and their purpose is to assist in the understanding of the Georgia statutes. *Id*. ¶ 60; Howerton Dec. ¶ 4. Summaries of judicial decisions, editor's notes, summaries of opinions of the Attorney General of Georgia, and summaries of research references are all annotations in the OCGA volumes and supplements listed in Exhibit A to Commission's Amended Complaint. *Id*. ¶¶ 1, 3, 10, 16, 24; Stip. ¶¶ 1, 4, 10, 18, 26. The non-statutory annotations in each of these OCGA publications were prepared as a work for hire by Mathew Bender and Company, Inc., a member of the LexisNexis Group ("Lexis"), under contract for the State of Georgia. *Id*. ¶¶ 4, 5, 11, 17, 25, 27, 61; Stip. ¶¶ 4, 5, 11, 19, 27; Howerton Dec. ¶ 5. Under the contract, the annotations remain the property of the State of Georgia. *Id*. ¶ 76; Exhibit 2, Agreement for Publication (Contract) § 6.1.

Lexis is granted the exclusive right to publish and sell the OCGA according to the prices set in the contract, with any price increases at the sole discretion of the Commission. *Id*. ¶ 77; Contract §§ 5, 8. The ability of the State to keep the price of the OCGA low for the benefit of the citizens of Georgia was an important consideration of the Commission when entering the contract with LexisNexis. *Id*. ¶ 62; Howerton Dec. ¶ 6. The current price of a complete OCGA set is $404.00

while a complete set of West's Code of Georgia Annotated costs much more—
$2,570.00. *Id*. ¶ 65; Howerton Dec. ¶ 9.

Under the terms of the contract, Lexis filed for and obtained copyright
registrations for the original and creative annotations in the OCGA volumes and
supplements as shown in the Stipulation of Facts, Exhibit A (hereinafter, "OCGA
Works"). *Id*. ¶¶ 15, 76; Stip. ¶ 17; Dkt. 17-1; Contract § 6.1(c). The original and
creative annotations in the OCGA Works encompassed by these registrations
include the summaries of judicial decisions, editor's notes, summaries of opinions
of the Attorney General of Georgia, and compilations thereof. *Id*. ¶¶ 36, 60; Stip. ¶
40; Howerton Dec. ¶ 4.

Lexis created the summaries of judicial decisions in the OCGA Works using
a lengthy process of selection, analysis and summarization. *Id*. ¶ 78; Exhibit 3,
Declaration of Anders Ganten (Ganten Dec.) ¶¶ 3-17. Lexis identified and read
each potentially relevant judicial decision, determined how the judicial decision
relates to a statute, and then determined the type of annotation that should be
created. *Id*. ¶ 79; Ganten Dec. ¶¶ 4, 5. For those cases of significance, Lexis
created an original several line summary of the case that distills the case's relevant
holding relating to the statute. *Id*. ¶ 80; Ganten Dec. ¶¶ 6, 7. An exemplary
summary of a judicial decision is provided below next to a comparable judicial
summary in West's Code of Georgia Annotated demonstrating the differences

5

between the summaries' text, and the original and creative nature of the OCGA

judicial summaries. *Id*. ¶ 81; Ganten Dec. ¶ 13.

| OCGA § 34-9-260 | West's Ga. Code Ann. § 34-9-260 |
|---|---|
| Average weekly wage calculated correctly. – Award of workers' compensation benefits was upheld because there was some evidence to support the administrative law judge's calculation of the claimant's average weekly wage under OCGA § 34-9-260(3) based on the claimant's testimony that the claimant was supposed to work from the car wash's opening until its close. *Cho Carwash Property, LLC. v. Everett*, 326 Ga. App. 6, 755 S.E.2d 823 (2014). | Some evidence supported ALJ's calculation that workers' compensation claimant worked 38 hours per week when he was injured during training and thus that claimant's average weekly wage was $323, although claimant had worked only three days before being injured, and although employer testified that claimant would have been placed on part-time schedule once training had been completed; evidence indicated that lube technicians, such as claimant, worked four days per week, employer's business was open ten hours per day for six days of the week, claimant was supposed to work from time that business opened until it closed, and employees took 30-minute lunch. *Cho Carwash Property, LLC v. Everett*, 2014, 326 Ga.App. 6, 755 S.E.2d 823. |

Each of the OCGA Works further contains original and creative

compilations of: summaries of judicial decisions, editor's notes, summaries of

opinions of the Attorney General of Georgia, summaries of research references. *Id*.

¶ 82; Ganten Dec. ¶ 18). Each judicial decision summary, editor's note, and

summary of an opinion of the Attorney General of Georgia was first selected for

inclusion in the OCGA by Lexis. *Id*. ¶ 83; Ganten Dec. ¶ 16). Each selection was

then coordinated with a particular codified statute of Georgia. *Id*. When multiple summaries or editor's notes were coordinated with a single code section, each was arranged in a particular order. *Id*. ¶ 84; Ganten Dec. ¶ 17). Accordingly, each of the OCGA Works contains numerous selections, coordinations, or arrangements that are encompassed by the copyright registrations listed in Exhibit A of the Stipulation of Facts. *Id*. ¶¶ 6-9, 12-14, 18-23, 26-31; Stip. ¶¶ 6-9, 12-14, 20-25, 28-33. There is no dispute of material fact that these compilations are original and creative. *Id*. ¶ 82; Ganten Dec. ¶ 18.

## II.   THE STATE MAKES THE GEORGIA CODE, OCGA AND MANY OTHER GOVERNMENT DOCUMENTS ACCESSIBLE

The entire OCGA, including the annotations, is available for viewing on compact disc at over 60 state- and county-operated facilities, such as state and county libraries, state universities, and county law enforcement offices, within the State of Georgia. *Id*. ¶ 66; Howerton Dec. ¶ 10). The State of Georgia has further placed the statutory text of the OCGA on the internet for even easier access by its citizens. *Id*. ¶¶ 50-53, 67; Stip. ¶¶ 73-77; Howerton Dec. ¶ 11. The statutory text of the OCGA can be accessed via several websites maintained by the Georgia General Assembly including at http://www.legis.ga.gov. *Id*.

The accessibility of the statutory text of the OCGA and the complete OCGA is but one part of the State of Georgia's provision of government documents and

information to its citizens. *Id*. ¶¶ 67-74; Howerton Dec. ¶¶ 11-17. Each of the

Georgia House and Senate maintain their own websites at

http://www.house.ga.gov and http://www.senate.ga.gov, respectively. *Id*. ¶ 67;

Howerton Dec. ¶ 11. Those websites provide the ability to access the statutory text

of the OCGA, search pending legislation, obtain contact information for

legislators, and obtain state budget documents, among other things. *Id*. Further, in

1994, the Board of Regents of the University System of Georgia, an arm of the

state, created GALILEO, the first state wide digital library

(http://dlg.galileo.usg.edu). *Id*. ¶¶ 69, 70; Howerton Dec. ¶ 12. GALILEO provides

access to the *Georgia Laws*, which is a publication of Georgia laws (both codified

and uncodified) as enacted by the Georgia Legislature. *Id*. ¶ 71; Howerton Dec. ¶

14. In 1996, the Georgia Government Publications database (GGP) was created as

GALILEO's first digital conversion initiative of publications released by agencies

of Georgia's executive branch. *Id*. ¶ 72; Howerton Dec. ¶ 15. The GGP database

consists of over 70,000 documents produced by Georgia state agencies, and

Georgia law (OCGA 20-5-2) requires Georgia state agencies to submit

publications to GALILEO that they produce for the public. *Id*. ¶ 73; Howerton

Dec. ¶¶ 16, 17.

## III.   PR COPIED AND DISTRIBUTED THE OCGA IN ITS ENTIRETY TO PROVOKE THIS LAWSUIT

Even though the un-annotated Code of Georgia is publicly available on legislative websites, PR deliberately copied and distributed the OCGA (*id*. ¶¶ 68, 32-35, 37, 39-48, 55; Howerton Dec. ¶ 11; Stip. ¶¶ 34, 36, 38-41, 46, 48-50, 52, 54, 55, 63-65, 79) and informed Commission of its actions. *Id*. ¶¶ 49, 85; Stip. ¶¶ 66, 67.  In multiple letters, Commission demanded that PR cease and desist its infringement. *Id*. ¶¶ 87-89; Stip. ¶¶ 69-71. PR refused, ultimately sending Commission a "Proclamation of Promulgation" that indicated its intention to continue to copy and distribute the OCGA. *Id*. ¶¶ 85-86; Stip. ¶¶ 68, 69.

Commission filed its Complaint against PR on July 1, 2015 for copyright infringement of the OCGA Works. Dkt. 1. PR filed an Answer and a Counterclaim for Declaratory Relief requesting a judgment of non-infringement; Commission answered. Dkts. 6, 10. With full knowledge of Commission's Complaint, PR then copied and distributed on the internet the entirety of all of the volumes and supplements of the 2015 edition of the Official Code of Georgia Annotated. *Id*. ¶¶ 39, 43; Stip. ¶¶ 46, 52. Commission amended its Complaint to include the copyrights for those 2015 Works on October 8, 2015, and PR again answered and counterclaimed. Dkts. 11, 16.

In a Stipulation of Facts (Dkt. 17), PR admitted copying and posting on the internet the entirety (front and back covers included) of the OCGA Works (and the 2015 edition) without authorization from the State of Georgia. *Id.* ¶¶ 39-45; Stip. ¶¶ 46-55. PR admitted to posting these copies on two websites, https://law.resource. org and www.archive.org, for the purpose of facilitating, enabling, encouraging and inducing others to view, download, print, copy and distribute those volumes and supplements of the OCGA. *Id.* ¶¶ 40, 44; Stip. ¶¶ 48, 54. These internet postings by PR resulted in the copying of each of the OCGA Works by members of the public as indicated in Exhibit A to the Stipulation of Facts, with several of the OCGA volumes being copied over one thousand times *Id.* ¶ 45, Stip. ¶ 55.

Having admitted to its copying and distribution of the OCGA Works, PR asserts the following defenses relating to its infringement: 1) the annotations in the OCGA are not copyrightable because they are the law, 2) the annotations in the OCGA are not copyrightable for lack of originality, 3) lack of ownership of the asserted copyrights—the state cannot own a copyright in the law, 4) fair use, and 5) failure to obtain a registration prior to filing suit. Def's Answer; Stip. ¶ 96;

Exhibit 4, Def's Response to Pl's First Set of Interrogatories, p. 7.[2] PR further

seeks a declaratory judgment of non-infringement because it alleges the OCGA,

including its annotations, are the law and not copyrightable. Def's Answer, p. 12 ¶

1.

## **ARGUMENT**

Commission requests partial summary judgment regarding PR's

infringement of Commission's copyrights in the 68 registered OCGA Works of the

2014 edition listed in Exhibit A of the Stipulation of Facts. Dkt. 17-1 (Stip. Exhibit

A). This request seeks partial summary judgment because Commission does not

request judgment as to the 2015 yet-to-be-registered works. Thus, PR's defense of

failure to obtain a registration prior to filing suit is irrelevant as to this request.

Only PR's second, third and fourth defenses are at issue. PR's third defense, failure

to establish copyright ownership, relates to its assertion that the annotations are the

law, and therefore, there are only two general defenses that are presented for

---

[2] PR dropped its first and seventh affirmative defenses in the Stipulation of Facts
(Stip.) and then effectively abandoned its sixth and eighth affirmative defenses in
its response to Commission's interrogatories (Def's Answer).

consideration by this Court: Whether the OCGA Works are uncopyrightable as the law and, if copyrightable, whether PR's admitted infringement constitutes fair use.

## I.   THE SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). To defeat a properly made and supported motion for summary judgment, the opposing party must come forward with "specific facts showing there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc*. 477 U.S. 242, 248 (1986). That factual evidence must be "of such a character that it would warrant the jury in finding a verdict in favor of the nonmoving party." *Id*. at 251 (citation omitted).

## II.   PR DELIBERATELY INFRINGED COMMISSION'S COPYRIGHTS

In order to establish a case of direct copyright infringement, Commission must demonstrate that 1) it owns a valid copyright in the allegedly infringing works and 2) PR copied the protected elements of the works.  *Peter Letterese & Assocs. v. World Inst. Of Scientology Enters., Int'l*, 533 F.3d 1287, 1300 (11th Cir. 2008) (citing *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co*., 499 U.S. 340, 361 (1991)).

### A. Commission Owns Valid Copyrights In the OCGA Works

Commission has already met its burden under the first prong of *Feist* with respect to the registered OCGA Works. Defendant has stipulated that, outside of

the works published in 2015, each of the OCGA Works is the subject of a

copyright registration as shown in the Stipulation of Facts, Exhibit A. Stip. ¶ 17. A

certificate of copyright registration made within five years after first publication of

the work constitutes "*prima facie* evidence of the validity of the copyright and of

the facts stated in the certificate." *Latimer v. Roaring Toyz, Inc.*, 601 F.3d 1224,

1233 (11th Cir. 2010); 17 U.S.C. § 410(c). Production of these registrations shifts

the burden to the defendant to establish that the registered works are

uncopyrightable. *Latimer,* 601 F.3d at 1233.

   PR cannot meet its burden as it is well established that compilations and

annotations of laws are copyrightable. The U.S. Copyright Office specifically

recognizes that "[a]nnotated codes that summarize or comment upon legal

materials issued by a federal, state, local, or foreign government" and

"compilations of legislative enactments" are examples of a "legal publication that .

. . may be registered as a nondramatic literary work." *U.S. Copyright Office,*

*Compendium of U.S. Copyright Office Practices* § 3163.6(C)(1) (3d Ed.) (2014)

(citing 17 U.S.C. § 105). These annotations and compilations are copyrightable

when they possess a sufficient amount of originality. *Id*.

   "Copyright protection subsists . . . in original works of authorship fixed in

any tangible medium of expression." 17 U.S.C. § 102(a). The term "original"

merely requires "that the work was independently created by the author (as

13

opposed to copied from other works)" and that it possess "more than a *de minimis* quantum of creativity." *See Feist*, 499 U.S. at 345, 363. This originality can not only be found in text, but also in a compilation of facts. *Id*. at 348. A compilation copyright is inevitably thin and covers the original selection, coordination or arrangement of facts, but not the underlying facts themselves. *Id*. at 349. In *Feist*, an alphabetization of names and addresses in a white pages telephone directory did not meet the *de minimis* amount of creativity required for a compilation because alphabetization was "an age-old" practice that was expected in a telephone directory. *Id*. at 363.

The OCGA annotations easily pass the originality muster. Annotations in legal reporters have been found to be copyrightable dating back to the 1880s and through recent times. *See, e.g.*, *Callaghan v. Meyers*, 128 U.S. 617, 650 (1888) ("The general proposition that the reporter of a volume of law reports can obtain a copyright for it as an author, and that such copyright will cover the parts of the book of which he is the author, although he has no exclusive right in the judicial opinions published, is supported by authority."); *West Publ'g Co. v. Mead Data Cent., Inc.*, 799 F.2d 1219, 1227 (8th Cir. 1986) (holding that "West's case arrangements easily meet this standard.") PR itself admits that annotations in an unofficial reporter would be copyrightable. SUMF ¶ 58; Dkt. 17-4, p. 2 (Stip. Exhibit D).

14

The OCGA annotations not only include original compilations that are the result of a layered and subjective decision making process that far exceeds the mere alphabetizing in *Feist*, but also include original text in the judicial summaries, editor's notes and summaries of the opinions of the Attorney General of Georgia. S*ee supra* Statement of Facts, Section I. These summary and editor's notes annotations are clearly original as they differ between the OCGA and West's Ga. Code Annotated. *Id*. Further, because PR copied the entirety of the OCGA Works, it must demonstrate that the OCGA Works as a whole lack the requisite originality. *Bateman v. Mnemonics, Inc*. 79 F.3d 1532, 1541 (11th Cir. 1996) (accused infringer must prove "the portion of the copyright work actually taken is unworthy of copyright protection"). PR cannot meet its burden under the first prong of *Feist*.

## B. PR Copied The Protectable Annotation Elements In The OCGA

PR readily admits to its own copying and distribution of hundreds of OCGA volumes and supplements. *See supra*, Statement of Facts, Section III.  PR did not limit its copying or its distribution to certain elements of the OCGA Works, but instead copied and distributed the works in their entireties—even including the preface and both front and back OCGA covers of each volume.  *See supra*, Statement of Facts, Section III; SUMF ¶¶ 56 (including Stip. Exhibit B showing the Georgia state seal as copied and distributed by PR), 57. Accordingly, PR

15

copied the protectable elements of the OCGA Works at issue, and Commission has met its burden of proof under the second prong of *Feist*.

## III. THE O.C.G.A ANNOTATIONS ARE NOT THE LAW

PR's second and third defenses hinge on its claim that the OCGA annotations are the law: "The OCGA including annotations, regardless of how they were authored, is the law of Georgia, and should be free to the public." Def's Answer, Second Affirmative Defense, p. 10. These defenses should fail. The Georgia Constitution and the Georgia Legislature have made clear that the OCGA annotations—summary materials not created through the legislative process—are not the law. Article III, § 1, paragraph 1, of the Georgia Constitution confers the power to enact legislation on the general assembly alone. The annotations in the OCGA are prepared by the publisher for the Code Revision Commission and not enacted by the General Assembly. Further, the 2014 and 2015 State of Georgia session laws state, in part:

> Annotations; editorial notes; Code Revision Commission notes; research references; notes on law review articles; opinions of the Attorney General of Georgia; indexes; analyses; title, chapter, article, part, and subpart captions or headings, except as otherwise provided in the Code; catchlines of Code sections or portions thereof, except as otherwise provided in the Code; and rules and regulations of state agencies, departments, boards, commissions, or other entities which are contained in the Official Code of Georgia Annotated are not enacted as statutes by the provisions of this Act.

2014 Ga. Laws 866, 2015 Ga. Laws 5, § 54.  SUMF ¶ 2; Stip. ¶ 2.

16

In asking this Court to find that the OCGA annotations are the law, and therefore not copyrightable, PR requires this Court to strike down this Georgia constitutional provision and this law. This is despite the fact that this Georgia law comports with the Supreme Court's decision in *Wheaton v. Peters*, 33 U.S. (8 Pet.) 591 (1834). There, in holding that the laws themselves are not copyrightable, the Court specifically distinguished annotations/compilations of those laws from the laws themselves stating that "compilations [of law] . . . may be of great utility, but they are not the law. Exclude or destroy them, and the law and the knowledge of it still exists." *Id*. at 622.

Placing the OCGA in an "official" state document also does not transform the annotations into the law to make those annotations uncopyrightable.  This has long been recognized, going back to the earliest days of judicial and statutory reporter creation. *See*, *e.g*., *Callaghan*, 128 U.S. at 647 ("Even though a reporter may be a sworn public officer, appointed by the authority of the government which creates the court of which he is made the reporter, and even though he may be paid a fixed salary for his labors . . . he is not deprived of the privilege of taking out a copyright which would otherwise exist."). Further, as indicated above, a transformation of an annotation into the law would be in direct contradiction to current Georgia law.  The general assertion that "being part of an official document makes it law" is also generally illogical. If such were the case, all information,

including the driver's physical description on a Georgia driver's license (an official state document) would be considered the law.

PR further argues that the copyright merger doctrine somehow transforms the annotations into the law. This again is despite the fact that Georgia law prohibits this transformation. The merger doctrine is not applicable.  Under the doctrine of copyright merger, "expression is not protected in those instances where there is only one or so few ways of expressing an idea that protection of the expression would effectively accord protection to the idea itself." *BUC Int'l Corp. v. Int'l Yacht Council Ltd.*, 489 F.3d 1129, 1142 (11th Cir. 2007) (internal quotation marks omitted). Such is not the case here. The mere fact that the judicial summaries in the OCGA are distinctly different from corresponding annotations in West's Code Annotated (*see supra* Statement of Facts, Section I) belies the applicability of the merger doctrine—there is no question that there are a multitude of ways to write a paragraph summarizing a judicial decision, and further, a multitude of ways to compile the different annotations throughout the OCGA. *See, e.g. BUC Int'l*, 489 F.3d at 1142 (holding merger doctrine inapplicable to a compilation of information about yachts listed for sale because there were several ways to organize the information.)

PR's arguments that the OCGA annotations are the law are simply not tenable, and this Court should reject them.

## IV.   DEFENDANT'S COPYING WAS NOT A FAIR USE

In deciding whether PR's copying of the OCGA Works constitutes fair use, this Court should weigh the following four factors: 1) the purpose and character of the allegedly infringing use; 2) the nature of the copyrighted work; 3) the amount of the copyrighted work used; 4) and the effect of the use on the potential market or value of the copyrighted work. 17 U.S.C. § 107.  The four statutory factors are not to be treated in isolation from one another, but are to be weighed together, in light of the purposes of copyright. *Katz v. Google*, 802 F.3d 1178, 1181-82 (11th Cir. 2015) (citing *Campbell v. Acuff–Rose Music, Inc*., 510 U.S. 569, 578 (1994)). Since fair use is an affirmative defense, PR bears the burden of proof in demonstrating that it applies.  *Cambridge Univ. Press v. Patton*, 769 F.3d 1232, 1259 (11th Cir. 2014). PR cannot meet this burden.

### A. Factor One

With respect to factor one, the Court should consider 1) whether the use serves a nonprofit educational purpose, as opposed to a commercial purpose; and 2) the degree to which the use is a "transformative" one. *Peter Letterese*, 533 F.3d at 1309. PR deliberately copied the entirety of 114 OCGA volumes and then notified the State of Georgia of its actions in order to challenge the current state of the law. PR took similar actions with the states of Mississippi and Idaho and the District of Columbia. SUMF ¶ 75; Howerton Dec. ¶ 18. Deliberate copying for the

purpose of invoking a lawsuit cannot be considered either transformative or a non-profit educational purpose—even when Defendant declares that its purpose in deliberately copying the OCGA annotations was to educate the public about the law.

### 1.  PR's Use Does Not Serve a Nonprofit Educational Purpose

PR is not a non-profit educational institution like a university or college whose teaching purpose is clear. *See Cambridge*, 769 F.3d at 1264 (use "in the teaching of university courses is clearly for educational purposes.")  PR argues that by copying the OCGA annotations in their entirety, it "teaches" the public about the law. Def's Answer ¶ 51. In this regard, PR makes much of its alleged need to teach, and the State of Georgia's supposed "restrict[ion of] the public's expression of and distribution of, and access to, [the Georgia] codes." *Id*. ¶ 57.  As evidence of this "restriction," PR points to the website that provides access to the Georgia Code as having "numerous technical deficiencies" such as the inability to "bookmark" a section of the Code and the fact that pages will display differently on different web browsers. *Id*. ¶ 40.  PR further points to the allegedly "onerous terms of use" on that website.  *Id*.

First, the terms of use to which PR refers are not applicable to the Georgia Code, as explicitly stated on the terms of use acceptance page. SUMF ¶ 90; Stip. ¶ 86.  PR also provides no evidence that the terms of use have "restricted" anyone's

access to the Georgia Code.  In fact, the Georgia Code was accessed almost 79 million times between 2007 and 2015 via the exact website that PR deems deficient.  *See supra*, Statement of Facts, Section II.

The State of Georgia has not and does not restrict the public's access, expression or distribution of the Georgia laws or government documents. The Georgia General Assembly's websites and the GALILEO website both provide access to thousands of government documents, with the Georgia Code accessible via several links on the General Assembly's websites. *See supra*, Statement of Facts, Section II. The entire OCGA, including the annotations, is also available for viewing on compact disc at over 60 state- and county-operated facilities such as state and county libraries, state universities, and county law enforcement offices within the State of Georgia. *Id*. Quite simply, the citizens of Georgia have never had more access to the goings-on of Georgia government, its documents, and its laws.

PR's argument that the state is using copyright as a means to restrict access to its laws is a mere smokescreen. PR's true impetus for its actions and this case is its perception of a lack of internet expertise on the part of the government at all levels and in multiple countries. PR's overall purpose may be laudable, increasing government transparency is good, but the problem arises when PR violates the copyrights of others to accomplish its purpose.  Time and time again, PR has

responded by copying the documents at issue and making them Public Resource Approved internet accessible. PR responds in this fashion because its actions, are in a sense, irreversible.

Certainly, if PR truly wanted to educate the public about the Georgia laws, it could copy the publicly available Georgia Code, create its own annotations if it so desired, and disseminate the Code and its annotations to the public at no charge. PR's argument turns the fair use educational analysis on its head since, if accepted, anyone and everyone could claim its benefits by espousing a teaching/educational purpose in relation to any work.  PR is not a teacher, and its use is not educational.

## 2.  PR's Use Is Not Transformative

PR's use is also not transformative.  A transformative use "adds something new, with a further purpose or different character, altering the first [work] with new expression, meaning or message." *Campbell*, 510 U.S. at 579.  A typical transformative work is a parody or satire that comments on an original work. *See Peter Letterese*, 533 F.3d at 1311. A work that is not transformative does not involve the free speech implications of criticism and comment and instead "merely supersede[s] the objects of the original creation." *Campbell*, 510 U.S. at 579.

PR did not comment upon or criticize the OCGA and instead copied the entirety of each OCGA work at issue verbatim. Although several recent cases in the Second Circuit have found verbatim copying of a work transformative, this

22

case is very different. In both *Authors Guild v. Google, Inc.*, 804 F.3d 202 (2d Cir. 2015), and *Authors Guild, Inc. v. HathiTrust*, 755 F.3d 87 (2d Cir. 2014), the use was found to be transformative because, although the entire original work was copied, none (*HathiTrust*) or only a snippet (*Google*) of the copied works were disseminated to the public. *Authors Guil*d, 804 F.3d at 217–18 (noting that "HathiTrust did not display to the user any text from the underlying copyrighted work" and Google Books provided only snippets of the work that did not amount to "revealing so much as to threaten the author's copyright interests"). The dissemination distinction is important because it is the dissemination of the entire work that causes the copied work to supersede the original.  PR did not transform the OCGA Works, its copy superseded the Works, and factor one disfavors fair use.

**B. Factor Two**

An analysis of factor two requires a consideration of the factual and/or fictional nature of the original work and the unpublished nature of a work. *Cambridge*, 769 F.3d at 1268. Factor two is neutral here because the nature of the copyrighted OCGA work is a mix of fact (statutes) and opinion (annotations). Where the original work is published and only somewhat factual, as here, the second fair use factor is of little importance. *Id*. at 1270.

23

### C. Factor Three

Factor three is "the amount and substantiality of the portion used in relation to the copyrighted work as a whole." 17 U.S.C. § 107. As noted by the Eleventh Circuit in *Cambridge*, "there are ample precedents that explain that excessive verbatim copying weighs against fair use under factor three." 769 F.3d at 1274. Factor three strongly disfavors fair use because PR copied the Works in their entireties.

### D. Factor Four

Under factor four, the Court should consider "(1) the extent of the market harm caused by the particular actions of the alleged infringer, and (2) whether unrestricted and widespread conduct of the sort engaged in by the defendant would result in a substantially adverse impact on the potential market." *Cambridge*, 769 F.3d at 1275 (internal quotation marks omitted). This factor is concerned with "use that supplants any part of the normal market for a copyrighted work." *Harper & Row Publishers v. Nation Enters.*, 471 U.S. 539, 568 (1985).

PR's non-transformative, verbatim, mirror-image copying and subsequent distribution of the OCGA Works on the internet causes the copies to be direct substitutes for sales of the OCGA.  If such copying and dissemination were performed by everyone, it "would cause substantial economic harm such that allowing it would frustrate the purposes of copyright by materially impairing

24

[Commission's] incentive to publish the work." *Cambridge*, 769 F.3d at 1276.

Factor four strongly disfavors fair use.

Since all of factors one, three and four disfavor fair use, and factor four must be given additional weight (*Cambridge*, 769 F.3d at 1283), a holistic balancing of all the factors indicates that PR's use was not fair as a matter of law.

## V.   CONCLUSION

This Court should not reward PR's mass copying and distribution of the OCGA and its attempted misuse of the U.S. copyright laws. The State of Georgia owns a valid copyright in the OCGA Works, and PR deliberately infringed those copyrights.  Commission therefore requests that this Court grant its motion for partial summary judgment of copyright infringement as to the 2014 edition of the Official Code of Georgia Annotated.

Respectfully submitted, this 17th day of May, 2016.

*/s/Lisa C. Pavento*
Lisa C. Pavento (G.A. Bar: 246698)
Anthony B. Askew (G.A. Bar: 025300)
Warren Thomas (G.A. Bar: 164714)
Meunier Carlin & Curfman LLC
999 Peachtree Street, NE, Suite 1300
Atlanta, Georgia 30309
Phone: 404-645-7700
Fax: 404-645-7707
lpavento@mcciplaw.com
taskew@mcciplaw.com
wthomas@mcciplaw.com

*Counsel for the Plaintiff, Code Revision Commission on behalf of and for the benefit of the General Assembly of Georgia, and the State of Georgia*

## <u>CERTIFICATE OF COMPLIANCE</u>

I hereby certify that, pursuant to L.R. 5.1C and 7.1D of the Northern District of Georgia, the foregoing MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT complies with the font and point selections approved by the Court in L.R. 5.1C. The foregoing pleading was prepared on a computer using 14-point Times New Roman font.

*/s/Lisa C. Pavento*
Lisa C. Pavento (G.A. Bar: 246698)
Meunier Carlin & Curfman LLC
999 Peachtree Street NE, Suite 1300
Atlanta, Georgia 30309
Telephone: 404-645-7700
Email: lpavento@mcciplaw.com

## **CERTIFICATE OF SERVICE**

I certify that on Tuesday, May 17, 2016, I electronically filed the foregoing

MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR PARTIAL

SUMMARY JUDGMENT with the Clerk of Court using the CM/ECF system,

which constitutes service of the filed document on all counsel of record in this

proceeding under LR 5.1(A)(3), N.D. Ga.

By:     */s/Lisa C. Pavento*
Lisa C. Pavento (G.A. Bar: 246698)
Anthony B. Askew (G.A. Bar: 025300)
Warren Thomas (G.A. Bar: 164714)
Meunier Carlin & Curfman LLC
999 Peachtree Street, NE, Suite 1300
Atlanta, Georgia 30309
Phone: 404-645-7700
Fax: 404-645-7707
lpavento@mcciplaw.com
taskew@mcciplaw.com
wthomas@mcciplaw.com

*Counsel for the Plaintiff, Code Revision*
*Commission on behalf of and for the benefit*
*of the General Assembly of Georgia, and the*
*State of Georgia*

28