# EXHIBIT 3

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| CODE REVISION COMMISSION on behalf of and for the benefit of THE GENERAL ASSEMBLY OF GEORGIA, and THE STATE OF GEORGIA,<br><br>    Plaintiff,<br><br>    v.<br><br>PUBLIC.RESOURCE.ORG, INC.<br><br>    Defendant. | CIVIL ACTION NO.<br><br>1:15-CV-02594-MHC |

## DECLARATION OF ANDERS P. GANTEN

I, Anders P. Ganten, hereby testify and state by declaration as follows:

1.  I began working at Matthew Bender and Company, a member of the LexisNexis Group ("LexisNexis") in August of 2004. I assumed my current position as Senior Director Government Content Acquisition 2009

2.  I make the following declaration on personal knowledge and belief. If called upon to testify to the statements in this Declaration, I could and would competently testify to these facts.

3. LexisNexis editors create original judicial summary annotations in the O.C.G.A. using the procedures as described in paragraphs 4 through 8.

4. In correlation with summary and headnote creation, LexisNexis attorney case law editors create substantive and descriptive original case notes, including fact-specific case notes and black-letter-law case notes. Editors analyze the relevant opinion text and endeavor to provide researchers checking statutes, court rules, and constitutional references a snapshot of how that provision was applied or construed in case law. When a provision has been applied in an opinion without significant discussion or construction, editors additionally create citation-only case notes to alert researchers that the provision was cited.

5. Editors pull an opinion from their assigned task list and open the case in the editing tool (Fab Editor). Once editors have identified the cited and referenced provisions, the editors determine the noteworthiness of the provisions by analyzing whether the provision has been applied or construed, and deciding whether the court's discussion is relevant to an understanding of the provision. Editors additionally evaluate whether a provision falls into a limited non-annotated category.

6. Noteworthy provisions are verified online to ensure the court's cited reference is valid. Editors check the editorial guidelines and jurisdictional

instructions to determine the specific case note requirements for the jurisdiction. For Georgia case notes, inter alia, editors utilize state-specific cite formats and, with limited exceptions, omit gender-specific pronouns.

7. The Lexis Nexis case note creation tool (NoteWriter), part of FabEditor, is utilized to create the case note. Editors select the appropriate jurisdiction, provision type, and section number for case note placement. The appropriate publication status for the opinion is assigned to the case note. For fact-specific case note creation, editors summarize the court's application of the law to the particular facts of the case. For new rules of law, editors create a black letter law case note by summarizing the court's discussion of the provision and relaying the rule of general applicability as it is relevant to the court's resolution of the parties' dispute. Editors may write the black letter rules of law case notes in a fact-specific combination format. Where there is limited discussion of a provision, a citation-only note is assigned to the provision to which it pertains.

8. The case note text is checked for accuracy, style guideline compliance, size requirements, and jurisdictional requirement compliance. For full case notes, the most on-point and specific classification is assigned to the case note from the Lexis Nexis taxonomy scheme for internal indexing. Additionally, the most on-point and specific catchline is selected from existing catchlines, or

created as a new catchline, for jurisdictional-specific indexing.  The editor proofreads and edits the note and then marks it as complete.  With the completion of additional case law enhancement, the case note is transferred to the Statutory Unit for finalization and online and print product publication.

9. One example of a judicial summary created by LexisNexis using the above procedures is provided in paragraphs 10 through 15.  As indicated below, the case of *Cho Carwash Property, LLC. v. Everett*, (326 Ga. App. 6 (2014)) was selected by a LexisNexis editor, summarized, and coordinated with O.C.G.A. 34-9-260 and then published in the 2014 edition of the O.C.G.A.

10. As an editor read the *Cho Carwash Property, LLC. v. Everett* case for legal holdings and analysis for summary and headnote processing, the editor correspondingly read for cited provisions and statutory references.  The first provision cited in the instant case is O.C.G.A. § 34-9-260, the compensation schedule related to calculating an injured claimant's average weekly wage.  The court initially specifies that the employer does not dispute that subsection (3) is the applicable provision for calculating the claimant's average weekly wage in the instant case.

11. The editor analyzed the discussion of whether the lower court erred in applying the statute by using the claimant's training schedule for the compensation

4

determination and whether evidence supports the calculation. In deciding noteworthiness, the editor made a determination that the court relied upon application of the statute to rule that the some evidence supports the administrative law judge's calculation of the average weekly wage.

12. Once the editor had an understanding of the provision application, the editor began the technical aspects of creation of the note. The editor checked the provision online to ensure that the cite in the opinion was accurate and the note was properly placed. The editor opened the NoteWriter tool in FabEditor and created a new note, selecting Georgia as the jurisdiction, and 34-9-260 as the proper code section placement. The editor also checked the publication status of the case and marked the note as published in the editing tool.

13. In creating the case note text, the editor avoided editorializing and tracked the language of the court to create an original summary of the court's verification of the proper weekly wage calculation. The editor summarized the court's compensation holding as follows:

> Award of workers' compensation benefits was upheld because there was some evidence to support the administrative law judge's calculation of the claimant's average weekly wage under O.C.G.A. § 34-9-260(3) based on the claimant's testimony that the claimant was supposed to work from the car wash's opening until its close.

14. The editor used Lexis Advance to select the most specific and on-point catchline to index the note for print and online publication. The editor marked the catchline as an existing catchline in the editing tool. Additionally, the editor assigned the most specific on-point classification from the LexisNexis taxonomy scheme to index the annotation internally. The editor proofread the note and made any necessary edits before marking the note as completed.

15. The editor continued reading the opinion for additional cited provisions. When reaching the end of the opinion, the editor did a final opinion skim to ensure all provisions are accounted for and all necessary case notes were completed. When additional case law enhancement was completed, the case note was sent to the Statutory unit for any final edits and placement in print and online products.

16. Further, a LexisNexis editor selected each judicial decision summary, editor's note, and summary of an opinion of the Attorney General of Georgia for inclusion in the O.C.G.A. and then coordinated the selection with a particular O.C.G.A. statute.

17. When multiple summaries or editor's notes were coordinated with a single code section in the O.C.G.A., LexisNexis arranged in a particular order.

18. Therefore, each O.C.G.A. publication contains original and creative compilations of summaries of judicial decisions, editor's notes, summaries of opinions of the Attorney General of Georgia, summaries of research references and compilations thereof.

May 17, 2016

Anders P. Ganten