IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

CODE REVISION COMMISSION on
behalf of and for the benefit of THE
GENERAL ASSEMBLY OF
GEORGIA, and THE STATE OF
GEORGIA,

       Plaintiff,

   v.

PUBLIC.RESOURCE.ORG, INC.

      Defendant.

CIVIL ACTION NO.

1:15-CV-02594-RWS

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Lisa C. Pavento (GA Bar: 246698)
Anthony B. Askew (GA Bar: 025300)
Warren Thomas (GA Bar: 164714)
Meunier Carlin & Curfman LLC
999 Peachtree Street, NE, Suite 1300
Atlanta, Georgia 30309
Phone: 404-645-7700
Fax: 404-645-7707
lpavento@mcciplaw.com
taskew@mcciplaw.com
wthomas@mcciplaw.com
*Counsel for the Plaintiff, Code Revision
Commission on behalf of and for the benefit
of the General Assembly of Georgia, and the
State of Georgia*

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES .............................................................. iii, iv

PRELIMINARY STATEMENT ...........................................................1

ARGUMENT ..........................................................................................3

   I.     THIS COURT SHOULD UPHOLD THE STATE OF GEORGIA'S
         COPYRIGHTS IN ITS WORKS THAT ARE NOT THE LAW ................3

       A. The OCGA Is Not An Edict of Government With Force of Law ..........4

       B. The Official Nature Of The OCGA Does Not Render It
          Uncopyrightable ..........................................................................8

       C. PR's Arguments Regarding Outsourcing To Lexis/Nexis Are
          Immaterial .................................................................................11

   II.    THE COPYRIGHT MERGER DOCTRINE IS INAPPLICABLE ............11

   III.   PR'S COPYING AND DISTRIBUTION OF HUNDREDS OF ENTIRE
         VOLUMES AND SUPPLEMENTS OF THE OCGA WAS NOT FAIR
         USE .................................................................................................16

       A. Factor One ..................................................................................16

          1.  PR's Use Does Not Serve a Nonprofit Educational Purpose ..........17

          2.  PR's Use Is Not Transformative .....................................................18

       B. Factor Two .................................................................................21

       C. Factor Three ...............................................................................21

       D. Factor Four .................................................................................23

   IV.   CONCLUSION ................................................................................25

# TABLE OF AUTHORITIES

**Cases**

*Authors Guild v. Google, Inc.*,
  804 F.3d 202 (2d Cir. 2015) ................................................................. 19, 25

*Authors Guild, Inc. v. HathiTrust*,
  755 F.3d 87 (2d Cir. 2014) .......................................................................... 19

*A.V. ex rel v. iParadigms*,
  562 F3d 630, 635 (4th Cir. 2009) ................................................................ 20

*BUC Int'l Corp. v. Int'l Yacht Council Ltd.*,
  489 F.3d 1129 (11th Cir. 2007) ............................................................. 11, 12

*Callaghan v. Meyers,*
  128 U.S. 617 (1888) ...................................................................................... 15

*Cambridge Univ. Press v. Becker*,
  No. 1:08-CV-1425-ODE, 2016 WL 3098397, at *23, 30 (N.D. Ga. Mar. 31,
  2016) ............................................................................................................. 22

*Cambridge Univ. Press v. Patton,*
  769 F.3d 1232 (11th Cir. 2014) ............................................................passim

*Campbell v. Acuff–Rose Music, Inc.*,
  510 U.S. 569 (1994) ...................................................................................... 16

*CCC Info. Servs. v. Maclean Hunter Mkt. Reports, Inc.*,
  44 F.3d 61 (2d Cir. 1994) ............................................................................... 9

*Cooper v. Aaron*,
  358 U.S. 1, 18 (1958) ...................................................................................... 7

*County of Suffolk, New York v. First Am. Real Estate Sols.*,
  261 F.3d 179, 195 (2d Cir. 2001) ................................................................... 9

*Feist Publ'ns. Inc. v. Rural Tel. Serv. Co.*,
  499 U.S. 340 (1991) ...................................................................................... 14

*Harper & Row Publishers v. Nation Enters.*,
  471 U.S. 539 (1985) ................................................................................ 17, 23

*Katz v. Google,*
    802 F.3d 1178 (11th Cir. 2015) ................................................................. 16

*Matthew Bender & Co., Inc. v. West Pub. Co.,*
    158 F.3d 674, 681 (2d Cir. 1998) ............................................................. 14

*Nash v. Lathrop,*
    142 Mass. 29, 6 N.E. 559 (1886) ............................................................. 11

*Peter Letterese & Assocs. v. World Inst. Of Scientology Enters.,*
    *Int'l*, 533 F.3d 1287 (11th Cir. 2008) .......................................................... 17

*Peter Veeck v. Southern Bldg. Code Congress Int'l, Inc.*
    293 F.3d 791, 804-805 (5th Cir. 2002) ...................................................... 10

*Practice Mgmt. Info. Corp. v. Am. Med. Ass'n,*
    121 F.3d 516 (9th Cir. 1997) ................................................................... 10

*Sony Corp. of Am. v. Universal City Studios, Inc.,*
    464 U.S. 417, 442 (1984) ................................................................. 23, 25

*State of Georgia v. The Harrison Co.,*
    548 F. Supp. 110 (N.D. Ga. 1982) ............................................................ 8, 9

*Swatch Grp. Mgm't Serv. Ltd. v. Bloomberg L.P.,*
    756 F.3d 73, 85 (2d Cir. 2014) ................................................................. 20

*Weismann v. Freeman,*
    868 F.2d 1313, 1324 (2d Cir. 1989) ........................................................... 17

*West Publ'g Co. v. Mead Data Cent., Inc.,*
    799 F.2d 1219 (8th Cir. 1986) ................................................................. 15

*Wheaton v. Peters,*
    33 U.S. 591 (1834) ................................................................................ 6

*Worldwide Church of God v. Philadelphia Church of God, Inc.,*
    227 F.3d 1110, 1117-18 (9th Cir. 2000) ...................................................... 17

**Statutes**

2014 Ga. Laws 866 ................................................................................ 6

2015 Ga. Laws 5, § 54 ......................................................................... 6

OCGA § 1-1-1 ......................................................................................... 5

OCGA § 1-1-7 ......................................................................................... 5

17 U.S.C. § 107 .............................................................................. 16, 21

17 U.S.C. § 410(c) .............................................................................. 14

**Other Authorities**

Article III, § 1, paragraph 1, of the Georgia Constitution ..................................... 7

Article III, § 5, paragraph 1, of the Georgia Constitution .................................. 6

*U.S. Copyright Office, Compendium of U.S. Copyright Office Practices*
§ 313.6(C)(1) (3d Ed.) (2014) .......................................................... 4, 11

## **PRELIMINARY STATEMENT**

Commission and Public Resource (PR) stand before this Court because PR, wants the entire OCGA to be published on the Internet having PR-approved features. PR freely admits that it "proudly" copied and distributed multiple entire OCGA volumes and supplements without authorization from the State of Georgia because it wants the OCGA provided on the Internet to include "significant metadata," to be "compatible with e-Book readers, smart phones and tablets," to display "pins" showing searched terms, and to "allow a reader to bookmark a particular page." Def's Memo. Of Law in Sup. Of Motion for Summary Judgement (Def's S/J Brief), 17-18.

To be clear, Commission is not asking this Court to deny PR the right to freely publish the unannotated Georgia Code on the Internet with PR-approved features. Commission agrees that PR has this right—including the right to create and publish its own annotations for the Georgia Code. PR instead wants the right to freely copy and distribute the entire OCGA on the Internet including all of the OCGA annotations.PR has developed the following legal arguments in support of this desire: The OCGA annotations are not copyrightable because either 1) the entire OCGA, including the annotations, is an edict of government having the force of law, or 2) each and every part of the OCGA expresses an idea or ideas that cannot be expressed using other words (the copyright merger doctrine). If the

1

Court does not accept these arguments, PR then argues that its use is an excused fair use.

In its first argument, PR is asking this Court to declare that the entire OCGA is the law. If the entire OCGA is law, so must each element in the OCGA be the law. PR provides no suggestions for how the State and this Court might administer and enforce the law of, for example, the OCGA preface or the editor's notes. PR also fails to point to any court decision that has disregarded the Georgia Constitution and clear legislative intent in order to transform into law such state government created text, which was not enacted by the General Assembly. PR's first argument is not only untenable, it is illogical.

PR's second argument that each and every part of the OCGA embodies an idea that cannot be expressed using other words should also fail. If this were the case, the OCGA published by Lexis/Nexis and West's Georgia Code Annotated would contain identical annotations. Commission has demonstrated that such is not the case. Pl's Statement of Undisputed Material Facts [Dkt. 30-02] Pl's SUMF ¶ 81; Pl's Add'l SUMF ¶ 4. PR's second argument is directly contrary to well-established legal precedent that recognizes copyright in government created original works and legal compilations, and should be rejected by this Court.

Finally, PR's arguments regarding fair use should also fail. PR copied and distributed the entirety of multiple OCGA volumes and supplements as shown in

2

the Stipulation of Facts, Exhibit A (hereinafter, "OCGA Works"). Stipulation of Facts [Dkt. 17] (Stip.) ¶ 17; Stip. Exhibit A. [Dkt. 17-1]. PR's use should not be considered educational within the meaning of the fair use analysis, it is not transformative, and its copies directly supersede the market for the original OCGA Works.

## ARGUMENT

Commission submitted its own Motion for Partial Summary Judgement and supporting Memorandum of Law (Dkts. 30 and 30-1 through 30-6 (Pl's S/J Brief)), and agrees with PR that summary judgment is appropriate in this case. However, PR's Motion for Summary Judgment should be denied because PR has failed to demonstrate the OCGA annotations are uncopyrightable either as the law or under the copyright merger doctrine. PR has also failed to demonstrate that its copying and distribution of the OCGA Works in their entirety is a fair use of the Works.

## I. THIS COURT SHOULD UPHOLD THE STATE OF GEORGIA'S COPYRIGHTS IN ITS WORKS THAT ARE NOT THE LAW

PR begins its summary judgment arguments with a statement that "[t]he law of a state cannot be copyrighted under U.S. law" and then cites to several cases that discuss the uncopyrightability of statutory or judge-made law. Def's S/J Brief at 5-7. There is no disagreement between the parties on this issue—Commission agrees that the law of a state cannot be copyrighted and has never argued to the contrary.

3

The true issue at hand is whether this Court should, at PR's request, create a completely new, third category of law—annotation law—by holding that the OCGA as a whole, including its annotations, is the law. Commission submits that this Court should not do so.

### A.   The OCGA Is Not An Edict of Government With Force of Law

As noted by PR, the U.S. Copyright Office has stated: "As a matter of longstanding public policy, the U.S. Copyright Office will not register a government edict that has been issued by any state." *Compendium of U.S. Copyright Office Practices* § 313.6(C)(2) (3d ed. 2014). However, PR neglects to point out that the Copyright Compendium also makes clear in this same section that the Office may register annotations that summarize or comment upon legal materials unless the annotations have the force of law. Only those government documents *having the force of law* are uncopyrightable as "edicts of government."

> A work that does not constitute a government edict may be registered, even if it was prepared by an officer or employee of a state, local, territorial, or foreign government while acting within the course of his or her official duties. For example, the Office may register a tourist magazine written and published by Arizona's department of tourism or a map created and published by the public transit authority for the city of Detroit. Likewise, the Office may register annotations that summarize or comment upon legal materials issued by a federal, state, local, or foreign government, unless the annotations themselves have the force of law. *See* Chapter 700, Section 717.1.

*Id.*

4

The entire OCGA is not enacted into law by the Georgia legislature and does not have the force of law. The Georgia General Assembly has passed not just one, but three different statutes to make clear that the OCGA contains both law and commentary. OCGA § 1-1-1 distinguishes the statutory and non-statutory commentary portions of the OCGA:

> The statutory portion of the codification of Georgia laws prepared by the Code Revision Commission and the Michie Company pursuant to a contract entered into on June 19, 1978, is enacted and shall have the effect of statutes enacted by the General Assembly of Georgia. The statutory portion of such codification shall be merged with annotations, captions, catchlines, history lines, editorial notes, cross-references, indices, title and chapter analyses, and other materials pursuant to the contract and shall be published by authority of the state pursuant to such contract and when so published shall be known and may be cited as the "Official Code of Georgia Annotated."

OCGA § 1-1-7 first enacted as a session law in 1982 further states:

> Unless otherwise provided in this Code, the descriptive headings or catchlines immediately preceding or within the text of the individual Code sections of this Code, except the Code section numbers included in the headings or catchlines immediately preceding the text of the Code sections, and title and chapter analyses do not constitute part of the law and shall in no manner limit or expand the construction of any Code section. All historical citations, title and chapter analyses, and notes set out in this Code are given for the purpose of convenient reference and do not constitute part of the law.

Finally, the State of Georgia session laws include the following:

> Annotations; editorial notes; Code Revision Commission notes; research references; notes on law review articles; opinions of the Attorney General of Georgia; indexes; analyses; title, chapter, article, part, and subpart captions or headings, except as otherwise provided in

5

the Code; catchlines of Code sections or portions thereof, except as otherwise provided in the Code; and rules and regulations of state agencies, departments, boards, commissions, or other entities which are contained in the Official Code of Georgia Annotated *are not enacted as statutes by the provisions of this Act*. (emphasis added)

2014 Ga. Laws 866, 2015 Ga. Laws 5, § 54.

It is clear from these multiple statutes that the entire OCGA is not enacted as the law of Georgia. Yet despite these provisions, PR suggests that the Georgia General Assembly amends the entirety of the OCGA when it enacts a law. Def's S/J Brief at 9. PR states that "The Legislature passes acts 'to amend . . . the Official Code of Georgia Annotated'" and cites the Georgia Constitution, Article 3, Section 5, paragraph 1. *Id*. Commission notes that Article 3, Section 5, paragraph 1 of the Georgia Constitution contains no such language and in fact deals with a different subject matter. Contrary to PR's suggestion, when the Georgia General Assembly enacts a law, it amends a specific statute (a specific article, chapter and title) of the OCGA and not the entire OCGA. Stip. ¶ 81. PR's assertions that the whole OCGA, including the annotations therein, is enacted into law should fail.

Seemingly conceding that the entire OCGA is not statutory law, PR argues that enactment into law is not required for a government document to be considered an "edict of government" having the force of law. PR attempts to analogize the entire OCGA with judge-made law that is uncopyrightable. Def's S/J Brief at 8 (citing *Wheaton v. Peters*). However, judge-made law is considered

6

"law" based on the age-old structure of our legal system and the doctrine of *stare decisis*. *See, e.g.*, *Cooper v. Aaron*, 358 U.S. 1, 18 (1958) (holding that the Court's interpretation of the Fourteenth Amendment "is the supreme law of the land"). There is no doctrine of *stare decisis* applicable to the OCGA as a whole or the annotations contained therein. Furthermore, the power to enact law is conferred solely upon the General Assembly. Ga. Const. Art. 3, § 1, ¶ 1. Courts are not bound by the OCGA annotations and attorneys do not cite to OCGA annotations as statute or precedent. There simply is no third category of "government document law" or "annotation law" similar to judge-made law.

Since the Georgia General Assembly went to such great lengths to make clear that the OCGA annotations are not statutory provisions, it is only logical that the General Assembly also enacted statutes to ensure that the OCGA annotations would not be considered something akin to judge-made law. PR points to no evidence to the contrary, and the logistical problems with making the whole OCGA the law abound. How, for example, would the whole OCGA or its annotations be considered precedential in the courts and enforced as law? PR provides no suggestions for these real-life issues. PR instead provides seemingly unrelated statements such as "some buy the O.C.G.A. for its annotations" (Def's S/J Brief at 10) as the basis for this Court to make a watershed holding that code annotations are part of the law.

## B.   The Official Nature Of The OCGA Does Not Render It Uncopyrightable

PR argues that the OCGA annotations are uncopyrightable because the OCGA must contain the annotations, which are a part of the only "official" code publication. At the outset, the State of Georgia's Constitution does not require the State to issue an "official" code publication, nor does it require that such publication contain annotations. The General Assembly only decided to publish an official code with annotations in 1982, and such was the State's first recodification of its laws since 1933. *State of Georgia v. The Harrison Co.,* 548 F. Supp. 110, 112 (N.D. Ga. 1982) *vacated at request of parties* 559 F. Supp. 37 (N.D. Ga. 1983). Prior to 1982, the State only published its laws in the *Georgia Laws* (an uncodified version of the laws still published today), and unofficial compilations and annotations of the 1933 Georgia Code were provided for sale by various publishers. *Id.*; Pl's SUMF ¶¶ 59, 71. Accordingly, there is no constitutional requirement that the State publish an official version of codified laws (the Georgia Code) or an annotated version of such Code.

The State's decision to publish an *Official* Code of Georgia that includes annotations does not transform all of the non-statutory material therein into law or render that non-statutory material uncopyrightable. When this Court previously considered the copyrightability of elements of the OCGA, it did not find that the

8

"official" nature of the OCGA or the State's authorship of the work precluded copyrightability. *Harrison* at 113–16. When state-approved or "official" state or local government material does not create legal obligations, the material is copyrightable. *County of Suffolk, New York v. First Am. Real Estate Sols.*, 261 F.3d 179, 195 (2d Cir. 2001) (holding that a county could hold copyright in its tax maps because, although the tax maps were used by the county to assess tax amounts, the tax maps themselves created no legal obligations). The court in *County of Suffolk* reasoned that a copyright in official county tax maps was not against public policy, and would not impinge upon due process rights, because notice of the law itself met the Due Process Clause's requirement for "fair warning" of the laws. *Id*. at 194-95. Here, the citizens of Georgia have notice of the laws because they are generally available to them by the exercise of simple diligence—through the *Georgia Laws* publications, through the Georgia Code provided by the State on the Internet, and through the wide availability of the OCGA for viewing (such as at public libraries, Pl's SUMF ¶ 66; Declaration of Elizabeth P. Howerton (Howerton Dec.) ¶ 10).

Even when states have required a citizen's consideration of "official" or "state-approved" non-statutory materials in order to comply with the laws, courts have held that the non-statutory materials are copyrightable. *CCC Info. Servs. v. Maclean Hunter Mkt. Reports, Inc*., 44 F.3d 61 (2d Cir. 1994) (holding that a state law's requirement to consult a Red Book to determine a vehicle's value did not

9

render the Red Book uncopyrightable); *Practice Mgmt. Info. Corp. v. Am. Medical Ass'n*, 121 F.3d 516 (9th Cir. 1997) (holding that a state law's requirement to consult American Medical Association Model Codes did not render the Codes uncopyrightable), *opinion amended by* 133 F.3d 1140 (9th Cir. 1998). Only when courts have found that materials are directly incorporated into the law, have those incorporated materials been found to be uncopyrightable. *Peter Veeck v. Southern Bldg. Code Congress Int'l, Inc*. 293 F.3d 791, 804-805 (5th Cir. 2002) (holding that model building codes that were incorporated into city building codes were uncopyrightable as the law). In *Peter Veeck*, the Fifth Circuit distinguished un-incorporated materials, stating that "copyrighted works do not 'become law' merely because a statute refers to them" and specifically noted that state-approved school books should not be stripped of copyrightability merely because they were state-approved. *Id*.

There is no requirement or need for the citizens of Georgia to consult the OCGA annotations in order to comply with the laws of Georgia. PR itself states that "only the laziest student or lawyer would rely on a judicial summary . . . without reading the actual judicial decision, which is in the public domain." Def's S/J Brief at 23-24. Here, the official nature of the OCGA only indicates that it is "state-approved." PR fails to point to even a single case holding that inclusion of material in an official state publication should either transform the material into the law or

strip the material of its copyrightability. As to the former, the Georgia General Assembly's intent is clear that the OCGA annotations are not the law. As to the latter, the U.S. Copyright Office disagrees with PR's position and indicates that non-statutory official state documents can be copyrighted: "For example, the Office may register a tourist magazine written and published by Arizona's department of tourism or a map created and published by the public transit authority for the city of Detroit." *Compendium* § 313.6(C)(1). For these reasons, PR's arguments should fail.

### C. PR's Arguments Regarding Outsourcing To Lexis/Nexis Are Immaterial

PR argues that the State's decision to outsource preparation of the OCGA to Lexis/Nexis "cannot circumvent U.S. copyright law" and allow the State to own a copyright. Def's S/J Brief at 11. PR cites *Nash v. Lathrop* (142 Mass. 29, 6 N.E. 559 (1886)) in support of this argument, which holds that a publisher cannot hold copyright in the state's judicial decisions or judge-made laws. *Id.* Yet, PR's argument is only relevant if this Court finds that the OCGA annotations are the law. Commission's arguments in Section I.A. *supra* establish that the OCGA annotations are neither statutory nor judge-made law.

## II. THE COPYRIGHT MERGER DOCTRINE IS INAPPLICABLE

The copyright merger doctrine holds that, "when there are so few ways of expressing an idea, not even the expression is protected by copyright." *BUC Int'l*

*Corp. v. Int'l Yacht Council Ltd*., 489 F.3d 1129, 1143 (11th Cir. 2007). Judge

Tjoflat illustrated the doctrine well when he explained:

> To illustrate this point, imagine the symbol often used on public signs displaying a circle with a diagonal line crossed through it. When, for example, an image of a cigarette is centered in the middle of the circle with the line through it, this visual sign expresses the idea that smoking is not allowed. This same symbol is used in a wide variety of contexts to express that something is prohibited, e.g., no swimming, no food or drink, no cell phone. Since there are effectively only a few ways of visually presenting the idea that an activity is not permitted, copyright law would not protect the expression in this case, i.e., the circle with the line through it.

*Id*. The first step in determining whether the merger doctrine applies is to identify

the "idea" and the "expression." *Id*. The "idea" should not be narrowly tailored to

fit the expression at issue as this would "swallow up" the merger doctrine and it

would become the rule rather than the exception. *Id*. at 1144. In *BUC*

*International*, the Eleventh Circuit defined the idea broadly as presenting yacht

owners information about boats when the compilation at issue provided

information about yachts for sale. *Id*. The Court held that the merger doctrine did

not preclude copyright in section headings such as "mechanical equipment" and

"accommodations" in the compilation because different headings were selected for

different yacht listings, and "BUC'S selection of section headings did not merge

with the larger idea of describing a yacht." *Id*.

Here, the "idea" of the OCGA annotations is providing information about the statutes of Georgia. The OCGA annotations simply do not limit expression of that idea. PR fails to even identify the "idea" at issue and merely argues that some judicial decision summaries in the OCGA and West's Code Annotated "home in on the same facts." Def's S/J Brief at 13.[1] But homing in on the same facts is not the test under the copyright merger doctrine—as indicated in *BUC International*, the test is whether a copyright in the expression would preclude another's expression of the entire broad idea. PR's own examples regarding Section 50-2-1 of the Georgia Code demonstrate that there is no merger because each of the OCGA's and West's summaries regarding the same judicial decision are different and can be separately copyrightable as such. Def's Statement of Undisputed Material Facts [Dkt. 29-1] (Def's SUMF) ¶¶ 46-51. PR further fails to make any showing of merger regarding all of the other OCGA annotations that PR copied and distributed. PR has in no way demonstrated that the copyright merger doctrine applies.

Finally, PR has conflated the copyright merger doctrine with the test for minimal originality and creativity. Since it is established that the Commission has

---

[1] Commission assumes that there is a typographical error in PR's brief and associated Statement of Undisputed Material Facts as it erroneously refers to the OCGA excerpt as a Ga. Code Ann. excerpt from West.

certificates of copyright registration for many of the OCGA Works at issue (Pl's SUMF ¶¶ 15, 76), PR bears the burden of proof regarding any alleged lack of originality or creativity of these Works. 17 U.S.C. § 410(c) ("[A] certificate of registration made . . . within five years after first publication of the work constitutes *prima facie* evidence of the validity of the copyright and of the facts stated in the certificate."). PR must meet this burden with respect to each and every page of each and every registered Work because it did not simply copy and distribute small portions of the registered Works; it instead copied and distributed the entirety of each registered Work.

PR has not met its burden with respect to challenging the minimal originality and creativity necessary to maintain copyright in the registered Works. PR provides this Court with absolutely no discussion of the originality requirements set forth in *Feist* and only a few broad statements regarding judicial summaries "homing in" on similar facts and that indexes are meant to be accurate compilations of facts. Def's S/J Brief at 13; *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340 (1991). PR points to a single case, *Matthew Bender & Co., Inc. v. West Pub. Co.*, as support where the court found that the following elements of a judicial summary lacked the requisite originality: 1) arrangement of information specifying the parties, court and date of decision, 2) selection and arrangement of attorney information, 3) arrangement of subsequent procedural information, and 4)

14

parallel and alternative citations. 158 F.3d 674, 681 (2d Cir. 1998). Yet, none of

these elements are at issue in this case. Here, at issue are the additional substantive

content and selection, coordination or arrangement of judicial summaries, editor's

notes, prefaces, summaries of Opinions of the Attorney General, and summaries of

research references. Unlike *Mathew Bender*, the content of the OCGA annotations

differs materially in each Work, and they cannot be placed into general categories

such as "parallel citations." PR bears the burden to show this Court that *each* of the

annotations in *each* of the registered OCGA Works (totaling thousands of

annotations) are not of sufficient originality and creativity under *Feist*. It must do

this in the context of annotations of legal reporters being found to be copyrightable

for over one hundred years. *See*, *e.g.*, *Callaghan v. Meyers*, 128 U.S. 617, 650

(1888); *West Publ'g Co. v. Mead Data Cent., Inc*., 799 F.2d 1219, 1227 (8th Cir.

1986). PR bears this significant burden because instead of copying only certain

portions of a few OCGA Works, it deliberately copied the entirety of hundreds of

OCGA volumes and supplements. PR has not come close to meeting its burden.

PR also fails to establish sufficient factual evidence to show that the 2015

Works not yet registered lack the required minimal originality and creativity.

Commission has demonstrated that at least the judicial summaries in all of the

OCGA Works are created using a lengthy process of selection, analysis and

summarization. Pl's SUMF ¶ 78; Exhibit 3, Declaration of Anders Ganten (Ganten

15

Dec.) ¶¶ 3-17. The layered and subjective decision making process used to create these annotations in particular result in original and creative judicial decision summaries that are distinct from those generated by West Publishing. Pl's SUMF ¶ 81; Pl's Add'l SUMF ¶ 4, 8, 9.

## III.   PR'S COPYING AND DISTRIBUTION OF HUNDREDS OF ENTIRE VOLUMES AND SUPPLEMENTS OF THE OCGA WAS NOT FAIR USE

In deciding whether PR's copying of the OCGA Works constitutes fair use, this Court should weigh the following four factors: 1) the purpose and character of the allegedly infringing use; 2) the nature of the copyrighted work; 3) the amount of the copyrighted work used; 4) and the effect of the use on the potential market or value of the copyrighted work. 17 U.S.C. § 107. The four statutory factors are not to be treated in isolation from one another, but are to be weighed together, in light of the purposes of copyright. *Katz v. Google*, 802 F.3d 1178, 1181-82 (11th Cir. 2015) (citing *Campbell v. Acuff–Rose Music, Inc.*, 510 U.S. 569, 578 (1994)). Since fair use is an affirmative defense, PR bears the burden of proof in demonstrating that it applies. *Cambridge Univ. Press v. Patton*, 769 F.3d 1232, 1259 (11th Cir. 2014). PR has not met this burden.

### A. Factor One

With respect to factor one, the Court should consider 1) whether the use serves a nonprofit educational purpose, as opposed to a commercial purpose; and

2) the degree to which the use is a "transformative" one. *Peter Letterese & Assocs. v. World Inst. of Scientology Enters., Int'l*, 533 F.3d 1287, 1309 (11th Cir. 2008).

### 1.  PR's Use Does Not Serve a Nonprofit Educational Purpose

PR argues that it is "undisputed that Public Resource's use is for nonprofit, educational use." Def's S/J Brief at 14. Commission agrees that PR describes itself as a nonprofit entity and that Mr. Malamud states that his purpose is to educate the public about the law. However, factor one's educational use analysis would be meaningless if it permitted disseminating a work in its entirety because a defendant wanted to "teach" the entire work to others. Education requires more than copying a work to provide it to the public free of charge. PR provides no education by doing so.

Further, the "crux of the profit/nonprofit distinction is not whether the sole motive of the use is monetary gain but whether the user stands to profit from exploitation of the copyrighted material without paying the customary price." *Harper & Row Publishers v. Nation Enters.*, 471 U.S. 539, 562 (1985). Both the Second and Ninth Circuits have held that non-monetary benefits such as peer recognition and attracting new members are a form of profit under factor one. *Weismann v. Freeman*, 868 F.2d 1313, 1324 (2d Cir. 1989) (finding that a professor could profit by gaining recognition among his peers and via authorship credit); *Worldwide Church of God v. Philadelphia Church of God, Inc.*, 227 F.3d

17

1110, 1117-18 (9th Cir. 2000) (holding that in attracting new church members the defendant profited from its copying and distribution of the copyrighted work).

PR's business involves copying and providing what it deems to be "primary legal materials" on the Internet. Def's SUMF ¶ 2. PR is paid in the form of grants and contributions to further its practice of copying and distributing copyrighted material. Pl's Additional Statement of Undisputed Material Facts (Pl's Add'l SUMF) ¶ 1; Exhibit 1; PRO000591. PR published "10 Rules for Radicals" that describes its copying and distribution of government documents and teaches others how to take actions similar to PR's. *Id*. ¶ 2; Ex. 1; PRO000571-PRO000602. PR specifically discusses in "10 Rules for Radicals" its copying and distribution of another state's revised codes, and Rule 9 relates to PR's experience in that regard. *Id*. ¶ 3; Ex. 1; PRO000596- PRO000598. Therefore, PR "profits" for the purpose of the fair use analysis by the attention, recognition, and contributions it receives in associations with its copying and distributing the copyrighted OCGA annotations. This Court should find that PR's use was neither non-profit nor educational.

### 2.  PR's Use Is Not Transformative

PR asserts that its use is transformative because it "provide[s] a significantly more useful version" of the OCGA. Def's S/J Brief at 17. The version that PR provides, however, is a mirror image copy of the OCGA. PR argues that it adds features so that the copy is "compatible with e-Book readers," and includes

18

"significant metadata" so that the OCGA is "more easily discovered using search engines." *Id*. Adding features is not transformative. If these types of modifications were considered transformative, then each and every literary work produced could be "transformed" by being copied and then making the copy more internet accessible.

PR fails to point to a single case where a court found that distributing an entire work in a more internet accessible form was transformative. Each of the cases cited by PR is distinguishable. In *Authors Guild, Inc. v. HathiTrust*, 755 F.3d 87 (2d Cir. 2014), a word search use was found to be transformative because, although the entire original work was copied in order to permit the word search, only the word search result was disseminated to the public and not the entire original work. *Id.* at 97. The court specifically noted "in providing this service, [defendant] does not add into circulation any new, human-readable copies of any books." *Id*. at 97. The court in *HathiTrust* also held that modification of works for use by the print disabled, and a very limited distribution of those modified works to only those with *certified* print disabilities, was a valid purpose but not transformative under factor one. *Id*. at 91, 102. In *Author's Guild v. Google, Inc*., the court held that copying a book in its entirety but only disseminating small snippets was transformative because a viewer was provided "just enough context surrounding the searched term to help her evaluate whether the book falls within

19

the scope of her interest (without revealing so much as to threaten the author's copyright interests)." 804 F.3d 202, 218 (2d Cir. 2015). In *A.V. ex rel v. iParadigms*, a use of student manuscripts was considered transformative when the manuscripts were used to ferret out plagiarism but "no one at iParadigms read or reviewed the papers submitted by plaintiffs, and iParadigms did not send any paper at issue in this action to anybody other than the instructor to whom plaintiffs submitted their own papers." 562 F3d 630, 635 (4th Cir. 2009) (quotation marks and alterations omitted). In stark contrast to each of these cases, PR has both copied *and distributed on the Internet* the OCGA annotations in their entirety, placing into internet circulation new, human-readable copies of each Work.

In *Swatch Grp. Mgm't Serv. Ltd. v. Bloomberg L.P.*, the court held that the copying and distribution of a single financial earnings telephone call held after a public reporting of Swatch's earnings was a fair use because such use was news reporting. 756 F.3d 73, 85 (2d Cir. 2014). Unlike *Swatch Group*, PR has not distributed anything as a "news report" and has distributed *hundreds* of volumes and supplements of the OCGA in their entirety, which directly supersedes the original purpose of the OCGA and does not transform the OCGA Works.

In addition to the lack of case support for PR's position on transformation, there is no need for PR to be able to copy and disseminate the OCGA at will. The Georgia Code has been accessed almost 79 million times between 2007 and 2015

20

on a free internet website, and the entire OCGA is available for viewing at over 60

public libraries in the state of Georgia. Pl's SUMF ¶¶ 66-68. PR already has the

right to disseminate the Georgia Code in any internet format it desires. PR's claim

of a single citizen's "distaste" for the Lexis/Nexis website is also unavailing.

Certainly, if this citizen's distaste were shared by even a substantial number of

voters in Georgia, the democratic process would likely correct the purported

"problem[s]" with the Lexis/Nexis website.[2] This Court should not find that PR's

addition of internet features to a copyrighted work "transforms" that work.

## B. Factor Two

An analysis of factor two requires a consideration of the factual and/or

fictional nature of the original work. *Cambridge*, 769 F.3d at 1268. Factor two is

neutral here because the nature of the copyrighted OCGA Work is a mix of fact

(statutes) and opinion (annotations). Where the original work is published and is a

mix of fact and opinion, as here, the second fair use factor is of little importance.

*Id*. at 1270.

---

[2] The Johnson Declaration (Dkt. 29-13) is in the form of impermissible expert
testimony and should be disregarded as not in compliance with the Local Rules or
the Scheduling Order in this case.

### C. Factor Three

Factor three is "the amount and substantiality of the portion used in relation to the copyrighted work as a whole." 17 U.S.C. § 107. There is no question that PR copied hundreds of OCGA volumes and supplements in their entirety. Pl's SUMF ¶¶ 40, 43; Stip. ¶¶ 48, 52. As noted by the Eleventh Circuit in *Cambridge*, "there are ample precedents that explain that excessive verbatim copying weighs against fair use under factor three." 769 F.3d at 1274. On remand, this Court held that amounts ranging from 3.01% (2 chapters of a work) to 12.45% (7 chapters of a work) disfavored fair use under factor three. *Cambridge Univ. Press v. Becker*, No. 1:08-CV-1425-ODE, 2016 WL 3098397, at *23, 30 (N.D. Ga. Mar. 31, 2016) (holding that copying 12.45% of a work caused factor three to weigh strongly against fair use). This was despite the purpose of the copies being classroom teaching. *Id*. PR's 100% copying exceeds these numbers approximately ten fold.

PR argues that its copying of 100% of the Works does not cause factor three to disfavor fair use because it was only posting as much of the OCGA as it needed to fulfill its purpose: "[P]osting only the statutory text would not serve the same purpose" and "judges, lawyers and citizens treat the annotations as authoritative." Def's S/J Brief at 20. Commission is unaware of, and PR fails to point to, any judge, lawyer or citizen that actually treats the OCGA annotations as authoritative. It is the underlying legal decision or statute that is authoritative—not the summary

22

of such. PR could easily post the statutory portion alone and, in fact, has *already done so*: it created and distributed a structured, XML-encoded version of the OCGA that does *not* include any annotations. Pl's Add'l SUMF ¶¶ 10–12; Ex. 2; PRO000633; PRO000654; Ex. 3. Consequently, PR's verbatim copying and distribution of the entire OCGA far exceeds what is even arguably necessary.

Additionally, Commission has already distinguished the *Swatch* case in Section III.A.2 supra, and the *Sony* case did not consider the four fair use factors, but instead applied an unrelated contributory infringement test of "commercially significant noninfringing uses." *Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417, 442 (1984). Factor three strongly disfavors fair use because PR copied the OCGA Works in their entireties.

### D. Factor Four

Under factor four, the Court should consider "(1) the extent of the market harm caused by the particular actions of the alleged infringer, and (2) whether unrestricted and widespread conduct of the sort engaged in by the defendant would result in a substantially adverse impact on the potential market." *Cambridge*, 769 F.3d at 1275 (internal quotation marks omitted). This factor is concerned with "use that supplants any part of the normal market for a copyrighted work." *Harper*, 471 U.S. at 568.

Commission has established the markets for the OCGA Works: printed publications, CD-ROM, and subscription services (with PR itself purchasing from the first market). Pls's SUMF ¶¶ 32, 65, 77; Stip. ¶ 34, Howerton Dec. ¶ 9, Publication Agreement §§ 5, 8; Pl's Add'l SUMF ¶¶ 5–7; Stip. ¶¶ 35, 84–85. PR places verbatim copies of the entire OCGA Works on the Internet. When considering defendant's actions being performed by everyone, as instructed by the Eleventh Circuit in *Cambridge*, it is inevitable that Commission's markets would be substantially adversely impacted. 769 F.3d at 1275.

PR has the ultimate burden of proof under factor four and must demonstrate that that Commission's market would not be substantially adversely impacted. *Id*. at 1279 (holding that "the evidentiary burden on all four of its factors rests on the alleged infringer"). Plaintiff only bears the burden to *establish* a market it argues as relevant. *Id*. (holding that the plaintiff there had to demonstrate the existence of a book excerpt licensing market when it argued that only the excerpt licensing market, and not the market for the whole book, was relevant to factor four). Here, Commission has met its burden and established that there are three existing markets for the OCGA: printed publications, CD-ROM, and subscription services.

PR has not demonstrated that unrestricted and widespread conduct of the sort engaged in by the defendant (i.e., unrestricted internet distribution of verbatim copies of hundreds of volumes of the OCGA by everyone) would not result in a

24

substantially adverse impact on Commission's established markets. PR cites a litany of unsubstantiated facts in its factor four arguments without including these in its Statement of Undisputed Facts. PR makes arguments about the "likely" limited use of the copies distributed by PR on the Internet as if PR were controlling those uses. PR also cites the *Google* case where the defendant was limiting distribution to a small snippet of the work. 804 F.3d at 224. But PR's widespread distribution of the OCGA annotations on the Internet is not controlled or limited in any way—there is nothing to prevent use of PR's copies for the exact purposes that the OCGA is sold or licensed. Further, the *Sony* case did not consider the four fair use factors, but instead applied an unrelated contributory infringement test of "commercially significant noninfringing uses." 464 U.S. at 442. This Court should find that factor four disfavors fair use.

Since all of factors one, three and four disfavor fair use, and factor four must be given additional weight (*Cambridge*, 769 F.3d at 1283), a holistic balancing of all the factors indicates that PR's use was not fair as a matter of law.

## IV.    CONCLUSION

PR has failed to show that the OCGA annotations are uncopyrightable laws or that the copyright merger doctrine applies. PR has also not established that its use of the OCGA Works was fair. Commission therefore requests that this Court deny PR's motion for summary judgment.

Respectfully submitted, this 10th day of June, 2016.

> */s/Lisa C. Pavento*
> Lisa C. Pavento (GA Bar: 246698)
> Anthony B. Askew (GA Bar: 025300)
> Warren Thomas (GA Bar: 164714)
> Meunier Carlin & Curfman LLC
> 999 Peachtree Street, NE, Suite 1300
> Atlanta, Georgia 30309
> Phone: 404-645-7700
> Fax: 404-645-7707
> lpavento@mcciplaw.com
> taskew@mcciplaw.com
> wthomas@mcciplaw.com
> *Counsel for the Plaintiff, Code Revision*
> *Commission on behalf of and for the benefit*
> *of the General Assembly of Georgia, and the*
> *State of Georgia*

## **CERTIFICATE OF COMPLIANCE**

I hereby certify that, pursuant to L.R. 5.1C and 7.1D of the Northern District of Georgia, the foregoing MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT complies with the font and point selections approved by the Court in L.R. 5.1C. The foregoing pleading was prepared on a computer using 14-point Times New Roman font.

*/s/Lisa C. Pavento*
Lisa C. Pavento (GA Bar: 246698)
Meunier Carlin & Curfman LLC
999 Peachtree Street NE, Suite 1300
Atlanta, Georgia 30309
Telephone: 404-645-7700
Email: lpavento@mcciplaw.com

**<u>CERTIFICATE OF SERVICE</u>**

I certify that on June 10 2016, I electronically filed the foregoing

MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S

MOTION FOR SUMMARY JUDGMENT with the Clerk of Court using the

CM/ECF system, which constitutes service of the filed document on all counsel of

record in this proceeding under LR 5.1(A)(3), N.D. Ga.

By:    */s/Lisa C. Pavento*
Lisa C. Pavento (GA Bar: 246698)
Anthony B. Askew (GA Bar: 025300)
Warren Thomas (GA Bar: 164714)
Meunier Carlin & Curfman LLC
999 Peachtree Street, NE, Suite 1300
Atlanta, Georgia 30309
Phone: 404-645-7700
Fax: 404-645-7707
lpavento@mcciplaw.com
taskew@mcciplaw.com
wthomas@mcciplaw.com

*Counsel for the Plaintiff, Code Revision*
*Commission on behalf of and for the benefit*
*of the General Assembly of Georgia, and the*
*State of Georgia*

28