IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| CODE REVISION COMMISSION on behalf of and for the benefit of THE GENERAL ASSEMBLY OF GEORGIA, and THE STATE OF GEORGIA, | |
| Plaintiff, | CIVIL ACTION NO. |
| v. | 1:15-CV-02594-MHC |
| PUBLIC.RESOURCE.ORG, INC. | |
| Defendant. | |

## PLAINTIFF'S RESPONSES TO DEFENDANT'S STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

Pursuant to Local Rule 56.1(B)(2), Plaintiff and Counterclaim-Defendant the Code Revision Commission, on behalf of and for the benefit of the General Assembly of Georgia, and the State of Georgia ("Commission"), responds Defendant's Statement of Undisputed Material Facts as follows:

### INTRODUCTION

PR includes many alleged facts in its Statement Of Undisputed Material Facts that are not referenced in its Memorandum Of Law In Support Of Its Motion For Summary Judgment (Dkt. 29-02). Alleged facts upon which PR does not rely

in its arguments should not be considered material, and Commission objects

accordingly below. Any admissions made by Commission below are for the sole

purpose of responding to Defendant's summary judgment motion.

## COMMISSION'S RESPONSES AND OBJECTIONS

1. Carl Malamud is the founder of the nonprofit Public.Resource.org

("Public Resource"). Declaration of Carl Malamud ("Malamud Decl."), Ex. A at

¶¶ 1, 14; Ex. B.

**RESPONSE:** Admitted

2.      Mr. Malamud founded Public Resource in 2007 to address an absence

of primary legal materials on the Internet, including judicial opinions (and the

underlying dockets leading to those opinions), statutes and the codifications of

those statutes (including the legislative hearings that led to those statues), and

federal regulations (including the underlying notices and comments leading to

those regulations). Malamud Decl., Ex. A at ¶¶ 15, 19.

**RESPONSE**: Commission admits that Mr. Malamud founded Public

Resource in 2007. Commission objects to the fact alleged in the remainder of

paragraph two as not material. PR does not rely on or even mention this alleged

fact in its summary judgment arguments. To the extent that the Mr. Malamud's

opinion testimony is offered as a lay witness under Fed. R. Evid. 701, Commission

2

objects that the cited paragraphs of Mr. Malamud's Declaration do not support the assertions of fact in the remainder of paragraph two. Otherwise, Commission objects under Fed. R. Evid. 702 because these statements are supported by opinion testimony of Mr. Malamud on a subject for which he has not been qualified as an expert. Further, Commission objects under Fed. R. Civ. P. 26(a)(2) and 37(c)(1) because Defendant did not timely disclose Mr. Malamud as an expert on whom it would rely in accordance with the Court's scheduling order, Dkt. 13. Subject to these objections, Commission admits the remainder of paragraph two.

3.      Mr. Malamud found that most states' statutes, regulations, and the codification of those statutes and regulations were publicly available in some form on the Internet. *Id*. at ¶ 33.

**RESPONSE**: Commission admits paragraph three represents Mr. Malamud's opinion as stated. If PR submits the alleged facts in paragraph three as expert testimony, Commission objects under Fed. R. Evid. 702 because these statements are supported by opinion testimony of Mr. Malamud on a subject for which he has not been qualified as an expert. Further, Commission objects under Fed. R. Civ. P. 26(a)(2) and 37(c)(1) because Defendant did not timely disclose Mr. Malamud as an expert on whom it would rely in accordance with the Court's scheduling order, Dkt. 13. Commission objects to the fact alleged in paragraph

three as not material. PR does not rely on or even mention this alleged fact in its summary judgment arguments.

4.     The technology employed to make those materials available to the public, however, did not provide the information in a user-friendly fashion or take advantage of the features of the Internet and its potential. *Id*.; *see also* Declaration of Beth Noveck ("Noveck Decl."), Ex. C at ¶ 14.

**RESPONSE**: Commission objects to the fact alleged in paragraph four as not material. PR does not rely on or even mention this alleged fact in its summary judgment arguments. To the extent that Mr. Malamud's or Ms. Noveck's opinion testimony is offered as a lay witness under Fed. R. Evid. 701, Commission objects that the cited paragraphs of Mr. Malamud's and Ms. Noveck's Declarations do not support the assertions of fact in paragraph four. If PR submits the alleged facts in paragraph four as expert testimony, Commission objects under Fed. R. Evid. 702 because these statements are supported by opinion testimony of either Mr. Malamud or Ms. Noveck on a subject for which he or she has not been qualified as an expert. Further, Commission objects under Fed. R. Civ. P. 26(a)(2) and 37(c)(1) because Defendant did not timely disclose Mr. Malamud or Ms. Noveck as an expert on whom it would rely in accordance with the Court's scheduling order, Dkt. 13. Subject to these objections, Commission admits paragraph four.

5.     In an effort to remedy this shortcoming, Public Resource has made publicly available on the Internet, for example, copies of the Oregon Revised Statutes, California Code of Regulations, District of Columbia Code, and the Chicago Building, Municipal and Zoning Codes. Malamud Decl., Ex. A at ¶¶ 31, 34, 37, 39.

**RESPONSE**: Commission admits that Public Resource has made publicly available on the Internet, for example, copies of the Oregon Revised Statutes, California Code of Regulations, District of Columbia Code, and the Chicago Building, Municipal and Zoning Codes. Commission objects to the fact alleged in paragraph five as not material. PR does not rely on or even mention this alleged fact in its summary judgment arguments.  To the extent that the Mr. Malamud's opinion testimony regarding a "shortcoming" is offered as a lay witness under Fed. R. Evid. 701, Commission objects that the cited paragraphs of Mr. Malamud's Declaration do not support the assertions of fact regarding the "shortcoming." Otherwise, Commission objects under Fed. R. Evid. 702 because this statement is supported by opinion testimony of Mr. Malamud on a subject for which he has not been qualified as an expert. Further, Commission objects under Fed. R. Civ. P. 26(a)(2) and 37(c)(1) because Defendant did not timely disclose Mr. Malamud as an expert on whom it would rely in accordance with the Court's scheduling order,

Dkt. 13. Subject to these objections, Commission admits the alleged fact of a "shortcoming."

6.     In each of the above instances, Public Resource's posting of these edicts of government resulted in an improved web presence coded by individuals and volunteers and increased public access for the materials. In the cases of Washington, D.C. and Chicago, city officials also were involved in the process.

**RESPONSE**: Commission admits the last sentence of paragraph six. To the extent that the Mr. Malamud's opinion testimony regarding the first sentence is offered as a lay witness under Fed. R. Evid. 701, Commission objects that the cited paragraphs of Mr. Malamud's Declaration do not support the assertions of fact. Otherwise, Commission objects under Fed. R. Evid. 702 because this statement is supported by opinion testimony of Mr. Malamud on a subject for which he has not been qualified as an expert. Further, Commission objects under Fed. R. Civ. P. 26(a)(2) and 37(c)(1) because Defendant did not timely disclose Mr. Malamud as an expert on whom it would rely in accordance with the Court's scheduling order, Dkt. 13. Commission denies the first sentence of paragraph six. Commission further objects to the fact alleged in paragraph six as not material. PR does not rely on or even mention this alleged fact in its summary judgment arguments. Id. at ¶¶

31-41, 44. Subject to these objections, Commission admits the first sentence of this paragraph.

7.     Indeed, making edicts of government, such as legal codes, available in bulk leads to more innovation, a better-informed citizenry, and a better democracy. Noveck Decl. Ex. C at ¶ 14.

**RESPONSE**: Commission objects to the fact alleged in paragraph 7 as not material. PR does not rely on or even mention this alleged fact in its summary judgment arguments. To the extent that Ms. Noveck's opinion testimony is offered as a lay witness under Fed. R. Evid. 701, Commission objects that the cited paragraphs of Ms. Noveck's Declaration does not support the assertions of fact in paragraph seven. If PR submits the alleged facts in paragraph 7 as expert testimony, Commission objects under Fed. R. Evid. 702 because these statements are supported by opinion testimony of Ms. Noveck on a subject for which she has not been qualified as an expert. Further, Commission objects under Fed. R. Civ. P. 26(a)(2) and 37(c)(1) because Defendant did not timely disclose Ms. Noveck as an expert on whom it would rely in accordance with the Court's scheduling order, Dkt. 13. Subject to these objections, Commission admits paragraph seven.

8.     The State of Georgia enacts and promulgates its laws through its legislature. Stipulation of Facts ("Stip."), Dkt. 17 at ¶ 44.

**RESPONSE**: Admitted.

9.      Georgia's Constitution provides that "[t]he General Assembly shall provide for the publication of the laws passed at each session."

**RESPONSE**: Admitted. Commission objects to the fact alleged in paragraph nine as not material. PR does not rely on or even mention this alleged fact in its summary judgment arguments.

10.      It is typical for bills introduced in the General Assembly to begin, "an Act to amend Article…Chapter…Titles of the Official Code of Georgia Annotated," Stip., Dkt. 17 at ¶ 81, as required by Georgia's Constitution, Ga. Const., Art. 3, Section 5, ¶ 4.

**RESPONSE**:  Commission admits that it is typical for bills introduced in the General Assembly to begin, "an Act to amend Article…Chapter…Titles of the Official Code of Georgia Annotated." Commission denies the statement "as required by Georgia's Constitution, Ga. Const., Art. 3, Section 5, ¶ 4" because that paragraph of the Georgia Constitution does not require that bills contain the quoted wording "an Act to amend Article…Chapter…Tiles of the Official Code of Georgia Annotated." Paragraph four instead states: "No law or section of the Code shall be amended or repealed by mere reference to its title or to the number of the section of the Code; but the amending or repealing Act shall distinctly describe the

law or Code section to be amended or repealed as well as the alteration to be made." Ga. Const., Art. 3, Section 5, ¶ 4. Commission objects to the fact alleged in this paragraph as not material. PR does not rely on or even mention this alleged fact in its summary judgment arguments.

11.     Each year the General Assembly passes a bill to reenact the statutory portions of the O.C.G.A. Senate Bill 340 (2014), Ex. M.

**RESPONSE**: Admitted. Commission objects to the fact alleged in paragraph eleven as not material. PR does not rely on or even mention this alleged fact in its summary judgment arguments.

12.     The Code Revision Commission assists the legislature in publishing the laws it enacts in the Official Code of Georgia ('O.C.G.A."). Stip., Dkt. 17 at ¶ 82.

**RESPONSE**: Admitted.

13.     The Commission was created by the General Assembly in 1977 and tasked with selecting a publishing firm "possessing the necessary expertise and manpower to accomplish a complete recodification [of the state's laws] as quickly as possible." Ga. Code Ann., Foreword, Ex. D at ix-x.

**RESPONSE**: Commission admits paragraph 13 in substance but objects to Defendant's citation to Ga. Code. Ann., which is an indicator of West's Georgia

Code Annotated. The citation should instead be to the O.C.G.A. Commission

further objects to the fact alleged in this paragraph as not material. PR does not

rely on or even mention this alleged fact in its summary judgment arguments.

14.    The Code Revision Study Committee, also created by the General

Assembly, concluded that a complete revision and recodification of the state's laws

was "long overdue" and that "the most economical and satisfactory method to

accomplish code revision within the State of Georgia is through a negotiated

contract with a publishing firm possessing the necessary expertise and manpower

to accomplish a complete recodification as quickly as possible. " *Id*. at ix.

**RESPONSE**: Commission admits paragraph 14 in substance but objects to

Defendant's citation to Ga. Code. Ann., which is an indicator of West's Georgia

Code Annotated. The citation should instead be to the O.C.G.A. Commission

further objects to the fact alleged in this paragraph as not material. PR does not

rely on or even mention this alleged fact in its summary judgment arguments.

15.    Upon the Study Committee's recommendation, the General Assembly

created the Commission to select a publishing firm and "resolve the myriad of

details connect with the code revision project." *Id*. at ix.-x.

**RESPONSE**: Commission admits paragraph 15 in substance but objects to

Defendant's citation to Ga. Code. Ann., which is an indicator of West's Georgia

Code Annotated. The citation should instead be to the O.C.G.A. Commission further objects to the fact alleged in this paragraph as not material. PR does not rely on or even mention this alleged fact in its summary judgment arguments.

16.    The Commission is composed of the Lieutenant Governor, four members of the Senate, the Speaker of the House of Representatives and four additional members of the House of Representatives, and four members appointed by the State Bar of Georgia, one of whom is a judge or senior judge of the State Superior Courts and one of whom is a State district attorney. *Id.* at x.

**RESPONSE**: Commission admits paragraph 16 in substance but objects to Defendant's citation to Ga. Code. Ann., which is an indicator of West's Georgia Code Annotated. The citation should instead be to the O.C.G.A.

17.    From five law publishers, the Commission selected the Michie Company to prepare and publish what would become the O.C.G.A., and entered into a contract. *Id.*

**RESPONSE**: Commission admits paragraph 17 in substance but objects to Defendant's citation to Ga. Code. Ann., which is an indicator of West's Georgia Code Annotated. The citation should instead be to the O.C.G.A. Commission further objects to the fact alleged in this paragraph as not material. PR does not rely on or even mention this alleged fact in its summary judgment arguments.

18.    Despite contracting with Michie, the Commission itself developed the uniform numbering system and rules of style used in the new (1981) Code and adopted an arrangement into 53 Code titles. *Id*. at xi.

**RESPONSE**: Commission admits that the Commission contracted with Michie and itself developed the uniform numbering system and rules of style used in the new (1981) Code and adopted an arrangement into 53 Code titles. Commission denies the term "despite" since it is not included in the OCGA Foreward. OCGA, Foreword, Def's Ex. D at xi. Commission further objects to the fact alleged in paragraph 18 as not material. PR does not rely on or even mention this alleged fact in its summary judgment arguments.

23.    The Commission has regularly asserted copyright in the "catchlines of Code sections; names of Titles, Chapters, Articles, Parts and Subparts; history lines, editor's notes; Code Commission notes; annotations; research references; cross-references; indexes and other such materials." Dkt 17-8 at 1.

**RESPONSE**: Commission objects in accordance with Local Rule 56.1(B)(2)(a)(2)(iii) because the cited document does not support that the Commission has "regularly" asserted copyright in the stated materials. Commission further objects to this alleged fact as not material. PR does not rely on

or even mention this alleged fact in its summary judgment arguments. Subject to these objections, Commission admits paragraph 23.

24.    The Agreement requires Lexis/Nexis to adhere to the organization and numbering used by the previous publisher. Publication Agreement, Ex. F at 3.

**RESPONSE**: Commission admits paragraph 24 since the Agreement requires Lexis/Nexis to maintain the State's prior general organization and arrangement of the OCGA. Publication Agreement, Def's Ex. F at 3.Commission objects to the fact alleged in paragraph twenty four as not material. PR does not rely on or even mention this alleged fact in its summary judgment arguments.

25.    The Agreement also provides that the Commission, not its hired publisher, has "the ultimate right of editorial control" both over all material contained in the O.C.G.A. and over what material is selected to become part of the O.C.G.A. I*d*. at 2.

**RESPONSE**: Admitted.

26.    The Agreement requires Lexis/Nexis to follow the Commission's detailed publication manual, which "reflect[s] those specific content, style and publishing standards of the Code as adopted, approved or amended from time to time by the Commission or its staff pursuant to Code Section 28-9-3 of the Official Code of Georgia Annotated." *Id.*

**RESPONSE**: Admitted.

27.     Lexis/Nexis does not choose which cases to summarize in the Code's annotations, as the Agreement requires Lexis/Nexis to summarize "all published opinions of the Georgia Supreme Court and the Court of Appeals of Georgia, and all published opinions of the United States Supreme Court and other federal courts that arose in Georgia and construed Georgia general statue, whether such decisions favor plaintiffs, defendants, or the prosecution." *Id*. at 3.

**RESPONSE**: Commission admits that the Publication Agreement contains the quoted statement in paragraph 27, but such statement does not establish Defendant's alleged fact: "Lexis/Nexis does not choose which cases to summarize in the Code's annotations." Commission denies that Lexis/Nexis does not chose which cases to summarize. Declaration of Anders P. Ganten, [Dkt. 30-05] ¶ 5. Further, the Publication Agreement's next sentence is "Additional annotations to those required by the Paragraph may be included where determined useful as determined or approved by the Commission."

28.     The Agreement similarly requires that the Annotations include research references and legislative history." *Id*. at 4-5.

**RESPONSE**: Commission admits that the Agreement requires that research references and legislative history are included in the OCGA, but the Agreement

also indicates that the form arrangement and content of the research references and form of the history lines can be chosen by Lexis/Nexis subject to the approval of the Commission. Publication Agreement, Def's Ex. F at 5.

29.    The Commission's Publication Manual is even more detailed in its directions to Lexis/Nexis, for example providing nine pages of instruction in the proper formulation of amendment notes and ten pages to that of Editor's Notes. Publication Manual, Ex. G at 78-79, 99-109.

**RESPONSE**: Commission admits that the Publication Manual provides nine pages of instruction on proper formulation of amendment notes and ten pages of instruction on editor's notes, but since the substance of each amendment note and editor's note is different, the content of each note is not dictated by the Manual. Def's Ex. G at 78-79, 99-109. Commission objects to the fact alleged in paragraph twenty nine as not material. PR does not rely on or even mention this alleged fact in its summary judgment arguments.

30.    The Agreement requires that Lexis/Nexis provide Georgia's statutes unannotated ("Unannotated code") on a website that the public can access for free using the Internet. Id. at 11-12; Stip., Dkt. 17 at ¶¶ 73-75.

**RESPONSE**: Admitted.

31.     The free public website contains only the statutory text and numbering of the O.C.G.A., stripped of its Annotations. Stip., Dkt. 17 at ¶¶ 73, 75.

**RESPONSE**: Admitted.

32.     The Agreement requires Lexis/Nexis to track usage of the Unannotated Code on the public website and to report annually to the Commission the amount of usage and whether its sales of, or subscriptions to, the printed O.C.G.A., the C.D. ROM version and similar commercial versions have decreased. Publication Agreement, Ex. F at 12; 2015 Usage Report, Ex. H.

**RESPONSE**: Commission admits that the Publication Agreement requires that "The Publisher shall track usage of the Code on its Internet site, and after each year of publication, the Publisher shall provide usage reports to the Commission with usage and the effect, if any, on subscriptions to the Code in print and on CD-ROM." Publication Agreement, Ex. F at 12. Commission admits that Def's Exhibit H is such a usage report, which reflects the effect of Lexis/Nexis providing the Unnanotated Code on the internet.

33.     The Agreement requires Lexis/Nexis to provide appropriate copyright notice on both the free public website for the unannotated Code and the online O.C.G.A. available as part of the Lexis/Nexis for-profit online services and to

notify visitors that any reproduction of the O.C.G.A. other than the statutory text and numbering is prohibited. *Id*. at 12.

**RESPONSE**: Commission admits that the Agreement requires what paragraph 33 states and after the term "is prohibited," includes "unless permission has been granted by the State." Publication Agreement, Def's Ex. F at 12. Commission objects to the fact alleged in this paragraph as not material. PR does not rely on or even mention this alleged fact in its summary judgment arguments.

34.    According to Lexis/Nexis's representative, Anders Ganten, the Agreement between Georgia, through the Commission, and the O.G.C.A's publisher is unique. Commission Minutes, Ex. I at 2.

**RESPONSE**: Admitted. Commission objects to the fact alleged in this paragraph as not material. PR does not rely on or even mention this alleged fact in its summary judgment arguments.

35.    "In other states, the work on annotations is done in house or contracted as a fee for service arrangement." *Id*.

**RESPONSE**: Commission admits that the statement in paragraph 35 was made by Anders Ganten. Commission objects to the fact alleged in this paragraph as not material. PR does not rely on or even mention this alleged fact in its summary judgment arguments.

36.     In Georgia, Lexis/Nexis has the exclusive right to publish and sell the O.C.G.A. as a printed publication, on CD-ROM, and in an online version and receives income from its sales of the O.C.G.A. Stip., Dkt. 17 at ¶¶ 84-85.

**RESPONSE**: Admitted.

37.     The Commission, however, only receives royalties from the licensing fee for the CD-ROM and online versions of the O.C.G.A. Pl.'s Resp. to D.'s Interrogatories, Ex. O at 14.

**RESPONSE**: Admitted.

38.     In fiscal year 2014, the Commission received $85,747.91 in licensing fee royalties. Mar. 29, 2016 Letter from L. Pavento, Ex. J at 1.

**RESPONSE**: Admitted.

39.     For Lexis/Nexis, "the cost of publishing the Code rises each year" and "the print publication is a struggle each year."

**RESPONSE**: Commission admits that Anders Ganten made the statement in paragraph 39.  Commission objects to the fact alleged in this paragraph as not material. PR does not rely on or even mention this alleged fact in its summary judgment arguments.

40.     The Legislative Counsel publishes the *User's Guide to the Official Code of Georgia, Annotated*. User's Guide, Ex. N.

**RESPONSE**: Admitted.

41.     The User's Guide instructs those citing the Code of Georgia to cite to the O.C.G.A. *Id.* at xvii

**RESPONSE**: Denied. The User's Guide states on the cited page: "The Official Code of Georgia Annotated may be cited as 'O.C.G.A.' See Code Section 1-1-8 as to citation of the Official Code of Georgia Annotated." User's Guide, Def's Ex. N. at xvii. Commission objects to the fact alleged in this paragraph as not material.

42.     The User's Guide explains that some annotations are indexes, tables and research references that advise the reader of other materials relevant to understanding the nuances and interpretations of the statutory text itself. *Id.* at xxi-xxii.

**RESPONSE**: Commission admits that the User's Guide explains that some annotations in the OCGA are indexes, tables and research references.  Commission denies Defendant's characterization that the indexes, tables and research references "advise the reader of other materials relevant to understanding the nuances and interpretations of the statutory text itself."  Commission admits that the User's Guide states that the research references "aid in legal research" and that conversion tables are included in Volume 41 (an OCGA volume not at issue in this case) to

assist the user in converting citations between the OCGA and prior Code

publications. Commission objects to the fact alleged in this paragraph as not

material.

43.     The Annotations to the O.C.G.A. include a summary of a vacated

Northern District of Georgia case that quotes "[a]ttorneys who cite unofficial

publications of 1981 code do so at their peril." The heading of that summary reads:

"Official Code publication controls over unofficial compilation." Ga Code Ann. §

1-1-1, note (Judicial Decisions); Stip. Dkt. 17 at ¶ 94.

**RESPONSE**: Commission admits paragraph 43 in substance but objects to

Defendant's citation to Ga. Code. Ann., which is an indicator of West's Georgia

Code Annotated. The citation should instead be to the O.C.G.A. Commission

objects to the fact alleged in this paragraph as not material.

44.     Lexis/Nexis markets its printed O.C.G.A. stating "the Official Code of

Georgia Annotated (O.C.G.A.) provides users with the official Georgia statutes,

fully annotated." Stip., Dkt. 17 at ¶ 95; Ex. M to Stip., Dkt. 17-3.

**RESPONSE**: Admitted. Commission objects to the fact alleged in this

paragraph as not material.

45.     The Honorable Johnnie Caldwell, Representative, Chairman of the

Commission and a lawyer in Georgia for at least 43 years, told the Commission

that he buys to the O.C.G.A. for the annotations.  Commission Minutes, Ex. I at 2.

**RESPONSE**: Admitted. Commission objects to the fact alleged in this

paragraph as not material.

46.     The judicial summary annotation for Ga. Code Ann. § 50-2-1- for the

case *Dep't of Natural Resources v. Joyner*, 241 Ga. 390 (1978) reads:

> Salt waters of this state extend from the mean low watermark of
> the foreshore three geographical miles offshore; except where a
> low tide elevation is situated within three nautical miles seaward of
> the low water line along the coast, the state's three mile boundary
> is measured from such low tide elevation.

Ga. Code Ann. § 50-2-1 ann.

**RESPONSE**: Commission admits paragraph 46 is one of the judicial

summary annotations for OCGA § 50-2-1 for the case *Dep't of Natural Resources

v. Joyner*, 241 Ga. 390 (1978).  Commission objects to Defendant's citation to Ga.

Code. Ann., which is an indicator of West's Georgia Code Annotated.

47.     The judicial summary annotation for West's Code of Georgia

Annotated for the same case reads: "Salt waters of Georgia extend from mean low

water mark of foreshore three geographical miles offshore, except where a low tide

elevation is situated within three nautical miles seaward of low waterline along

coast, in which case state's three-mile boundary is measured from such low tide

elevation."  Ga. Code Ann. § 50-2-1- ann. (West 2016).

    **RESPONSE**: Admitted.

    48.    The judicial summary annotation for Ga. Code Ann. § 50-2-1 for the

case *State v. Bruce*, 231 Ga. 783 (1974) reads:

> Whichever line is correct, low tide or high tide, as the dividing line
> between private property sought to be registered and the state's
> property, the state is still an adjoining landowner and should have
> been named in the petition and served other than by the
> advertisement "to whom it may concern," and a land registration
> judgement, if granted, would not be binding upon an adjoining
> landowner who was not named and served.

Ga. Code Ann. § 50-2-1.

    **RESPONSE**: Commission admits paragraph 48 is the judicial summary

annotation for OCGA § 50-2-1.  Commission objects to Defendant's citation to Ga.

Code. Ann., which is an indicator of West's Georgia Code Annotated.

    49.    The judicial summary annotation for West's Code of Georgia

Annotated for the same case reads:

> Regardless of whether the low-tide line or the high-tide line was the
> dividing line between property sought to be registered and the States
> property as the owner of the ocean within three geographical miles of
> ordinary low-water mark, State was an "adjoining landowner" and
> should have been so named in the petition and served other than be
> advertisement, despite contention that by reason of statute and
> revision of the Constitution petitioners were already owners of land
> between the high and low-tide marks and that the land which they

were seeking to register, which had been built up by accretion, was only land above the high-tide line.

Ga. Code Ann. § 50-2-1 ann. (West 2016).

50.   The judicial summary annotation for O.C.G.A. § 50-2-1 for the case

*Ga. Ry. & Power Co. v. Wright*, 146 Ga. 29 (1916) reads:

> That part of the Savannah River which is broken by islands, located between an island the Georgia mainland, is within the jurisdiction and sovereignty of this state by virtue of this section, and a dam constructed across the river from an island to the Georgia shore is subject to taxation in this state.

> **RESPONSE**: Commission admits that paragraph 50 provides one of the

judicial summary annotations for OCGA § 50-2-1 for the case *Ga. Ry. & Power*

*Co. v. Wright*, 146 Ga. 29 (1916).

51.   The judicial summary annotation for West's Code of Georgia

Annotated for the same case reads:

> Under Beaufort Convention 1787 and Civ. Code 1910, § 16, that part of the Savannah river which is broken by islands, located between an island and the Georgia mainland, is in Georgia, and a dam from an island to the Georgia shore is subject to taxation in Georgia.

Ga. Code. Ann. § 50-2-1 (West 2016)

> **RESPONSE**: Admitted.

52.   To access the unannotated code via the website link found on the

Georgia website, www.legis.ga.gov, one must accept the terms and conditions of

use generally applicable to the Lexis/Nexis websites. Stip., Dkt. 17 at ¶ 86; Ex. I to Stip., Dkt. 17-9.

**RESPONSE**: Admitted to the extent that "unannotated code" means "statutory text and numbering in the OCGA." Commission objects to the fact alleged in this paragraph as not material.

53.     The access page that allows users to access the online publication, however, states that the Lexis/Nexis website terms and conditions do not apply to the O.C.G.A. statutory text and numbering.  Stip., Dkt. 17 at ¶ 86; Ex. J to Stip., Dkt. 17-10.

**RESPONSE**: Admitted. Commission objects to the fact alleged in this paragraph as not material to any argument offered by PR in its motion.

54.     The Lexis/Nexis website use terms and conditions are governed by New York state law and require the user to submit to the personal jurisdiction of New York state courts for the purpose of litigating any action arising out of or relating to the Lexis Nexis website use terms and conditions. Stip., Dkt. 17 at ¶ 87.

**RESPONSE**: Admitted. Commission objects to the fact alleged in this paragraph as not material.

55.     Until at least May 28, 2014, the notice displayed before users could access the unannotated code on the public access Lexis/Nexis site included a

banner page that the user had to acknowledge to gain access to the Lexis/Nexis site. Id. at ¶ 92; Ex. L to Stip., Dkt. 17-12. This banner page stated "the latest print version of the O.C.G.A. is the authoritative version."  Stip., Dkt. 17 at ¶ 92.

**RESPONSE**: Admitted. Commission objects to the fact alleged in paragraph fifty five as not material. PR does not rely on or even mention this alleged fact in its summary judgment arguments.

56.    This 2014 banner page also did not explicitly state that the Lexis/Nexis terms and conditions of use do not apply to the Georgia Code statutory text and numbering. *Id*. at ¶ 93; Ex. L to Stip., Dkt. 17-12.

**RESPONSE**: Admitted. Commission objects to the fact alleged in paragraph fifty six as not material. PR does not rely on or even mention this alleged fact in its summary judgment arguments.

57.    Once within the Lexis/Nexis public access site, one notice on the website is a hyperlink to the terms and conditions specific to the Georgia Code materials. Stip., Dkt. 17at ¶ 88; Ex. K to Stip., Dkt 17-11. These terms and conditions explain that a user may copy Georgia Code sections' text and numbering. Stip., Dkt. at ¶ 90.

**RESPONSE**: Admitted. Commission objects to the fact alleged in paragraph fifty seven as not material. PR does not rely on or even mention this alleged fact in its summary judgment arguments.

58.     At least one citizen of Georgia found the requirement to accept the Lexis/Nexis terms of use before being able to access the Georgia statutory materials "distasteful," particularly the provision agreeing to jurisdiction in a New York court and the provisions prohibiting use of the data even by "public non-profit users." Declaration of Clay Johnson ("Johnson Decl.") Ex. K at ¶ 10. The Lexis/Nexis free online site also suffers from technical challenges, including generating unwarranted security errors, displaying a blank screen in certain web browsers, lack of bookmarking function, lack of permanent links, HTML and CSS errors, and limited accessibility for the visually impaired. Id. at ¶¶ 11-18. Finally, it is unclear to users what Lexis/Nexis is doing with their search terms and navigation history.

**RESPONSE**: Commission objects to the fact alleged in this paragraph as not material. Commission admits the first sentence of this paragraph. Commission objects that the second and third sentences are not indicated as the personal opinion of a single individual, Mr. Clay Johnson. To the extent that the Mr. Johnson's opinion testimony is offered as a lay

witness under Fed. R. Evid. 701, Commission objects that the cited

paragraphs of Mr. Johnson's Declaration do not support the assertions of

fact in the second and third sentences of paragraph fifty-eight. Otherwise,

Commission objects to the second and third sentences of paragraph fifty-

eight under Fed. R. Evid. 702 because these statements are supported by

opinion testimony of Mr. Johnson on a subject for which he has not been

qualified as an expert. Further, Commission objects under Fed. R. Civ. P.

26(a)(2) and 37(c)(1) because Defendant did not timely disclose Mr.

Johnson as an expert on whom it would rely in accordance with the Court's

scheduling order, Dkt. 13. Commission denies the second and third

sentences of paragraph fifty-eight.

59.     Fastcase, Inc. ("Fastcase") provides subscribers a comprehensive legal

research service, including cases, statutes, regulations, court rules and constitutions

for all 50 states. Declaration of Edward Walters ("Walters Decl.") Ex. L at ¶ 8.

**RESPONSE**: Admitted. Commission objects that the fact alleged in

paragraph 59 is not material since it does not concern or relate to Defendant's

copying or distribution of the OCGA or Defendant's fair use arguments in this

case.

60.    The Fastcase service is often offered to end users as part of an arrangement with state and local bar association, which contract with Fastcase so they may offer the service as a free benefit to their members. *Id*. at ¶ 9.

**RESPONSE**: Admitted. Commission objects that the fact alleged in paragraph sixty is not material since it does not concern or relate to Defendant's copying or distribution of the OCGA or Defendant's fair use arguments in this case.

61.    In January 2011, Fastcase and the State Bar of Georgia announced a partnership that made the Fastcase service available to the 42,000 members of the State Bar of Georgia.  *Id*. at ¶ 10.

**RESPONSE**: Admitted. Commission objects that the fact alleged in paragraph sixty one is not material since it does not concern or relate to Defendant's copying or distribution of the OCGA or Defendant's fair use arguments.

62.    Fastcase has attempted on numerous occasions to license the O.C.G.A. from the State of Georgia and Lexis/Nexis, but has been informed that no license would be granted, at any price. *Id*. at ¶ 11.

**RESPONSE**: Admitted. Commission objects that the fact alleged in paragraph 62 is not material since it does not concern or relate to Defendant's

copying or distribution of the OCGA or Defendant's fair use arguments in this case.

63.     Instead, Fastcase offers its subscribers a version of the Code of Georgia, but it is what O.C.G.A. § 1-1-1 terms an "unofficial compilation." *Id*. at ¶ 12.

**RESPONSE**: Admitted. Commission objects that the fact alleged in paragraph sixty three is not material since it does not concern Defendant's copying or distribution of the OCGA or Defendant's fair use arguments.

64.     Fastcase would prefer to offer the O.C.G.A. to its subscribers because it is the version of these edicts of government promulgated by the State of Georgia. *Id*. at ¶ 10.

**RESPONSE**: Admitted. Commission objects that the fact alleged in paragraph sixty four is not material since it does not concern Defendant's copying or distribution of the OCGA or Defendant's fair use arguments. Commission objects to the remaining assertion that the OCGA is an "edict of government" that is "promulgated" as stating a legal conclusion and as mischaracterizing the OCGA as an edict of government having the force of law. Commission denies the legal conclusion that the OCGA is an edict of government promulgated by the State of Georgia.

65.     To make the O.C.G.A., including the annotations, available on the Internet, Public Resource purchase the entirety of 186 printed volumes and supplements of the O.C.G.A. and them all, including their front and back covers, and then posted those copies on its website: https//law.resource.org. Stip., Dkt. 17 at ¶¶ 34-36.

**RESPONSE**: Admitted.

66.     At least one copy of each O.C.G.A. volume and supplement that Public Resource posted on its https//law.resource.org website is in an electronic format that displays an image of the printed publication as copied by Public resource, which image allows for electronic page turning of the printed publication. *Id*. at ¶ 37.

**RESPONSE**: Admitted.

67.     Public Resource distributed copies of the entirety of the O.C.G.A. contained on USB thumb drives, to the Speaker of the House, Georgia House of Representatives, Mr. Wayne Allen, Legislative Counsel, Office of Legislative Counsel, Georgia General Assembly, and other members of the State of Georgia Legislature. *Id*. at ¶¶ 63-64.

**RESPONSE**: Admitted.

68.     Public Resource's purpose in scanning and posting the O.C.G.A. was to facilitate scholarship, criticism and analysis of the official Code, to inform the public about the laws that govern it, for educational purposes and to encourage public engagement with the law. (Malamud Decl., Ex. A. at ¶ 45.

**RESPONSE**: Commission admits that Public Resource's stated purpose in scanning and posting the O.C.G.A. was to facilitate scholarship, criticism and analysis of the official Code, to inform the public about the laws that govern it, for educational purposes and to encourage public engagement with the law.

69.     After the Commission commenced this action, Public Resource purchased and copied the 2015 volumes and supplements of the O.C.G.A. and copies and posted them on its website. Stip., Dkt. 17 at ¶ 46.

**RESPONSE**: Admitted.

70.     In addition to posting volumes of the O.C.G.A. on its own website, Public Resource also posted them on the Internet Archive website. www.archive.org. *Id*. at ¶¶ 50-52, 54-56.

**RESPONSE**: Admitted.

71.     Each scanned copy has optimal character recognition, making it significantly more accessible to people who are visually impaired. Malamud Decl., Ex. A at ¶ 46.

**RESPONSE**:  Admitted. Defendant's statement has an apparent typographical error in that it appears to refer to "*optical* character recognition." Commission objects to the allegation that creating a version of the OCGA having optical character recognition makes it significantly more accessible to people who are visually impaired. Defendant's record evidence, Malamud Declaration, Ex. A ¶ 46, does not establish this as a fact, but merely presents it as an opinion of a non-expert declarant. Commission also objects to this statement under Fed. R. Evid. 703 because the cited testimony of Mr. Malamud is on a subject for which he has not been qualified as an expert. Further, Commission objects under Fed. R. Civ. P. 26(a)(2) and 37(c)(1) because Defendant did not timely disclose Mr. Malamud as an expert on whom it would rely in accordance with the Court's scheduling order, Dkt. 13.

72.     The process of posting each volume includes significant metadata, such as the names of the titles included in each volume, making them more easily discovered using search engines. *Id*.

**RESPONSE**: Admitted. Commission objects to the allegation that each volume includes significant metadata, making them more easily discovered using search engines. Defendant's record evidence, Malamud Declaration, Ex. A ¶ 46, does not establish this as a fact, but merely presents

it as an opinion of a non-expert declarant. Commission also objects to this statement under Fed. R. Evid. 703 because the cited testimony of Mr. Malamud is on a subject for which he has not been qualified as an expert. Further, Commission objects under Fed. R. Civ. P. 26(a)(2) and 37(c)(1) because Defendant did not timely disclose Mr. Malamud as an expert on whom it would rely in accordance with the Court's scheduling order, Dkt. 13.

73. The process of posting each volume creates a version that is compatible with e-Book readers, smart phones, and tablets. *Id.*

**RESPONSE**: Admitted. Commission objects to the allegation in paragraph 73 because Defendant's record evidence, Malamud Declaration, Ex. A ¶ 46, does not establish this as a fact, but merely presents it as an opinion of a non-expert declarant. Commission also objects to this statement under Fed. R. Evid. 703 because the cited testimony of Mr. Malamud is on a subject for which he has not been qualified as an expert. Further, Commission objects under Fed. R. Civ. P. 26(a)(2) and 37(c)(1) because Defendant did not timely disclose Mr. Malamud as an expert on whom it would rely in accordance with the Court's scheduling order, Dkt. 13.

33

74.    Public Resource actively encourages all citizens to copy, use, and disseminate the O.C.G.A. volumes and to create works containing them. *Id.*

**RESPONSE**: Admitted.

75.    Public Resource also provides all the volumes in bulk on its servers, allowing users to quickly access the entire Code or a specific volume, and copy and paste relevant sections into their own documents. *Id.*

**RESPONSE**: Admitted.

76.    The Internet Archive's user interface allows readers to search a volume of the O.C.G.A. displaying "pins" for each page that contain the search terms, allowing a reader to quickly look for key phrases in different locations. *Id.*

**RESPONSE**: Admitted. Commission objects to the allegation in paragraph 76 because Defendant's record evidence, Malamud Declaration, Ex. A ¶ 46, does not establish this as a fact, but merely presents it as an opinion of a non-expert declarant. Commission also objects to this statement under Fed. R. Evid. 703 because the cited testimony of Mr. Malamud is on a subject for which he has not been qualified as an expert. Further, Commission objects under Fed. R. Civ. P. 26(a)(2) and 37(c)(1) because Defendant did not timely disclose Mr. Malamud as an expert on whom it would rely in accordance with the Court's scheduling order, Dkt. 13.

77.    In 2014, Public Resource solicited crowd funding on the website

<Indiegogo.com> to support its scanning and posting of the O.C.G.A. *Id*. at ¶ 42.

**RESPONSE**: Admitted.

78.    This campaign ended on July 11, 2014 and raised

approximately $3000 *Id*. at ¶ 42, 62.

**RESPONSE**: Admitted.


Respectfully submitted, this 10th day of June, 2016.

*/s/Lisa C. Pavento*
Lisa C. Pavento (G.A. Bar: 246698)
Anthony B. Askew (G.A. Bar: 025300)
Warren Thomas (G.A. Bar: 164714)
Meunier Carlin & Curfman LLC
999 Peachtree Street, NE, Suite 1300
Atlanta, Georgia 30309
Phone: 404-645-7700
Fax: 404-645-7707
taskew@mcciplaw.com
lpavento@mcciplaw.com
wthomas@mcciplaw.com

*Counsel for the Plaintiff, Code Revision Commission on behalf of and for the benefit of the General Assembly of Georgia, and the State of Georgia*

## <u>CERTIFICATE OF COMPLIANCE</u>

I hereby certify that, pursuant to L.R. 5.1C and 7.1D of the Northern District

of Georgia, the foregoing PLAINTIFF'S OPPOSITION TO

DEFENDANT'S STATEMENT OF UNDISPUTED MATERIAL

FACTS IN SUPPORT OF ITS MOTION FOR SUMMARY

JUDGMENT complies with the font and point selections approved by the Court

in L.R. 5.1C. The foregoing pleading was prepared on a computer using 14-point

Times New Roman font.


*/s/Lisa C. Pavento*
Lisa C. Pavento (G.A. Bar: 246698)
Meunier Carlin & Curfman LLC
999 Peachtree Street NE, Suite 1300
Atlanta, Georgia 30309
Telephone: 404-645-7700
Email: lpavento@mcciplaw.com

## <u>CERTIFICATE OF SERVICE</u>

I certify that on Friday, June 10, 2016, I electronically filed the foregoing

PLAINTIFF'S OPPOSITION TO DEFENDANT'S STATEMENT OF

UNDISPUTED MATERIAL FACTS IN SUPPORT OF ITS MOTION

FOR SUMMARY JUDGMENT with the Clerk of Court using the CM/ECF

system, which constitutes service of the filed document on all counsel of record in

this proceeding under LR 5.1(A)(3), N.D. Ga.

By:   */s/Lisa C. Pavento*_____
      Lisa C. Pavento (G.A. Bar: 246698)
      Anthony B. Askew (G.A. Bar: 025300)
      Warren Thomas (G.A. Bar: 164714)
      Meunier Carlin & Curfman LLC
      999 Peachtree Street, NE, Suite 1300
      Atlanta, Georgia 30309
      Phone: 404-645-7700
      Fax: 404-645-7707
      taskew@mcciplaw.com
      lpavento@mcciplaw.com
      wthomas@mcciplaw.com

      *Counsel for the Plaintiff, Code Revision*
      *Commission on behalf of and for the benefit*
      *of the General Assembly of Georgia, and the*
      *State of Georgia*