IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

CODE REVISION COMMISSION on
behalf of and for the benefit of THE
GENERAL ASSEMBLY OF
GEORGIA, and THE STATE OF
GEORGIA,

       Plaintiff,

  v.

PUBLIC.RESOURCE.ORG, INC.

      Defendant.

CIVIL ACTION NO.

1:15-CV-02594-RWS

## PLAINTIFF'S REPLY TO DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

Lisa C. Pavento (G.A. Bar: 246698)
Anthony B. Askew (G.A. Bar: 025300)
Warren Thomas (G.A. Bar: 164714)
Meunier Carlin & Curfman LLC
999 Peachtree Street, NE, Suite 1300
Atlanta, Georgia 30309
Phone: 404-645-7700
Fax: 404-645-7707
lpavento@mcciplaw.com
taskew@mcciplaw.com
wthomas@mcciplaw.com
*Counsel for the Plaintiff, Code Revision Commission on behalf of and for the benefit of the General Assembly of Georgia, and the State of Georgia*

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ...................................................... ii

INTRODUCTION ...................................................................1

ARGUMENT ........................................................................1

    I.    THE WHOLE OCGA IS NOT THE LAW OF GEORGIA ....................1

    II.    A STATE MAY HOLD COPYRIGHT IN STATE CREATED WORKS
        ....................................................................3

    III.    THE OCGA WORKS SHOULD NOT BE CONSIDERED WITHIN
        THE PUBLIC DOMAIN FROM INCEPTION .........................................4

        A. OCGA Creation Relies Upon Copyright Protection Incentives ..........5

        B.  A Copyright In The OCGA Does Not Prevent Notice Of The Law ....7

    II.    PR HAS NOT MET ITS BURDEN TO SHOW THAT EACH OF THE
        OCGA WORKS AT ISSUE LACKS SUFFICIENT ORIGINALITY......8

    III.    PR'S COPYING WAS NOT A FAIR USE ...........................................10

        A. Factor One ..........................................................11

        B. Factor Two..........................................................11

        C. Factor Three ........................................................12

        D. Factor Four .........................................................12

    IV.    CONCLUSION...........................................................15

## TABLE OF AUTHORITIES

**Cases**

*Banks v. Manchester*,
   128 U.S. 244 (1888) ........................................................................ 6

*Bldg. Officials & Code Adm. v. Code Tech., Inc.*,
   628 F.2d 730 (1st Cir. 1980) ........................................................ 3, 5

*Callaghan v. Meyers*,
   128 U.S. 617 (1888) ..................................................................... 2, 3

*Cambridge Univ. Press v. Becker*,
   No. 1:08-CV-1425-ODE, 2016 WL 3098397 (N.D. Ga. Mar. 31, 2016) ...... 12

*Cambridge Univ. Press v. Patton*,
   769 F.3d 1232 (11th Cir. 2014) ................................... 10, 11, 13, 14

*Campbell v. Acuff–Rose Music, Inc.*,
   510 U.S. 569 (1994) ...................................................................... 11

*County of Suffolk, New York v. First Am. Real Estate Sols.*,
   261 F.3d 179 (2d Cir. 2001) ......................................................... 5, 7

*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*,
   499 U.S. 340 (1991) .................................................................... 9, 10

*Harper & Row Publishers v. Nation Enters.*,
   471 U.S. 539 (1985) ...................................................................... 14

*Matthew Bender & Co., Inc. v. West Pub. Co.*,
   158 F.3d 674 (2d Cir. 1998) ............................................................ 9

*Nat'l Conf. of Bar Exam'rs v. Multistate Legal Studies, Inc.*,
   495 F. Supp. 34 (N.D. Ill. 1980), *aff'd*, 692 F.2d 478 (7th Cir. 1982) ............. 3

*Practice Mgmt. Info. Corp. v. American Med. Assoc.*,
   121 F.3d 516 (9th Cir. 1997) ........................................................... 5

*State of Georgia v. The Harrison Company*,
   548 F. Supp. 110 (N.D. Ga. 1982) ................................................... 7

*Wheaton v. Peters*,

    33 U.S. 591 (1834) ............................................................................... 2


**Statutes**

2014 Ga. Laws 866 ............................................................................... 2
2015 Ga. Laws 5, § 54 ......................................................................... 2
OCGA § 1-1-1 ....................................................................................... 2
OCGA § 1-1-7 ....................................................................................... 2
17 U.S.C. § 105 ..................................................................................... 3


**Other Authorities**

*Compendium of U.S. Copyright Office Practices*
§ 3163.6(C)(1) (3d Ed.) (2014) ........................................................... 4

Melville B. Nimmer & David Nimmer, <u>Nimmer on Copyright,</u>
Vol. 1, § 5.06[A] (2001) ....................................................................... 4

## **INTRODUCTION**

Over thirty years ago, the Georgia General Assembly decided that an Official Code of Georgia Annotated ("OCGA"), an annotated version of the Georgia Code, should be published, the publication itself being handled by a third party publisher. Under the publication agreement, the publisher bears the costs of publication in exchange for the exclusive right to sell the OCGA and the right to a share of the profits from those sales. This exclusive right is grantable pursuant to the copyright in the OCGA Works held by the State of Georgia. The agreement regulates the cost of the OCGA Works, requires internet distribution of the Georgia Code, and requires distribution of CD-ROM versions of the OCGA Works to many public libraries within the State. Public Resource ("PR") labels this agreement "unusual," but unusual or not, it reflects the success of the Georgia General Assembly in providing tangible benefits to its citizens while still maintaining a small government footprint and low taxes.

## **ARGUMENT**

### I.   **THE WHOLE OCGA IS NOT THE LAW OF GEORGIA**

PR asserts that Commission has misconstrued its arguments by indicating PR's position is that the OCGA annotations are the law, whereas its actual position is that the whole OCGA (including the annotations) is the law. Def's Memo. Of Law In Opp. to Pl's Mot. For Partial S/J [Dkt. 33] (Def's S/J Opp.) p. 1, 4.

1

Commission believes this is a distinction without a difference and is only a matter of semantics. Commission reiterates that the Georgia General Assembly has passed not just one, but three different statutes to make clear that the entire OCGA is not the law and instead contains both law and commentary. OCGA § 1-1-1; OCGA § 1-1-7; 2014 Ga. Laws 866; 2015 Ga. Laws 5, § 54.

The commentary in the OCGA is in the form of original text annotations (*e.g.*, judicial decision summaries) and compilations (selection, coordination or arrangement of original text annotations). Courts have long recognized the copyrightability of just this type of work. As far back as 1834, the U.S. Supreme Court recognized a copyright in these value-add materials in a legal reporter. *Wheaton v. Peters*, 33 U.S. (8 Pet.) 591, 668 (1834) (indicating that judicial decisions themselves are not copyrightable, but remanding the case to determine if deposit requirements were satisfied so that the remainder of the judicial decision reporter was copyrighted). In *Callaghan v. Myers*, the Court confirmed *Wheaton's* reasoning regarding copyrightability of the value-add materials and further specifically rejected the argument that the copyrightable material in a reporter was "public and common property, forming part of the law of the state" because it was created by the state's "official reporter." 128 U.S. 617, 623, 646-650 (1888) (emphasis added).

Although the argument rejected in *Callaghan* is almost identical to PR's

2

arguments here, PR attempts to dismiss *Callaghan's* holding regarding an "official reporter" by distinguishing a judge-made law reporter (Illinois Reports) and a statutory law reporter (OCGA). The distinction is unclear at best—both are "official editions" of compilations/annotations to the laws of a state, the official judicial decision reporter being found copyrightable by the U.S. Supreme Court. *Callaghan*, 128 U.S. at 667. Accordingly, Supreme Court precedent is consistent with the laws passed by the Georgia General Assembly dictating that neither the OCGA as a whole nor the OCGA annotations within the OCGA are the law.

## II.   A STATE MAY HOLD COPYRIGHT IN STATE CREATED WORKS

*Callaghan* might be distinguished on the basis that there, an individual instead of a state held copyright to the official reporter. However, when *Callaghan* was decided in 1888, the 1870 Copyright Act was in effect, which prevented a state from being a copyright holder by requiring a citizen or resident author. *Banks v. Manchester*, 128 U.S. 244, 253 (1888). Today, the Copyright Act does not restrict copyright ownership to individuals. 17 U.S.C. § 105. Although the Copyright Act limits copyright ownership by the federal government, the Act permits a state's ownership of its government works. *Id. See also Bldg. Officials & Code Adm. v. Code Tech., Inc.,* 628 F.2d 730, 735–36 (1st Cir. 1980) ("Works of state governments are therefore left available for copyright protection by the state or the individual author . . . ."); *Nat'l Conf. of Bar Exam'rs v. Multistate Legal*

3

*Studies, Inc.,* 495 F. Supp. 34, 35 (N.D. Ill. 1980), *aff'd,* 692 F.2d 478 (7th Cir.

1982); Melville B. Nimmer & David Nimmer, <u>Nimmer on Copyright</u>, Vol. 1, §

5.06[A], at 5-81 n.1 (2001). Only state government documents having the force of

law (true "edicts of government") are not copyrightable. *Compendium of U.S.*

*Copyright Office Practices* § 313.6(C)(2) (3d ed. 2014). The OCGA as a whole is

not an edict of government having the force of law, and therefore, the State may

hold copyright to the copyrightable portions therein (such as the annotations).

## III.   THE OCGA WORKS SHOULD NOT BE CONSIDERED WITHIN THE PUBLIC DOMAIN FROM INCEPTION

PR's most recent arguments center upon the OCGA being a "single edict of

government, with one author, Georgia's General Assembly" born in the public

domain. Def's S/J Opp.at 4, 7. The "edict of government" label used so frequently

by PR has no import because the OCGA as a whole does not have the force of law.

Commission is also unaware of a single case that has held or even suggested that a

copyrighted work must be copyrightable in whole or not at all—even if written by

a single author. Accordingly, the only remaining element in PR's argument relates

to the OCGA being created by the Georgia General Assembly.

First, the Georgia General Assembly is an arm of the State of Georgia. The

State of Georgia is the author of the OCGA Works for copyright purposes, not the

Georgia General Assembly. Section II *supra* demonstrates that a state may own

4

copyright in state created works. Commission is unaware of, and PR fails to point

to, any precedent indicating that certain arms of a state are prohibited from creating

copyrightable works. Other courts analyzing copyrights owned by state or local

government have not created such a bright line exclusion. In *County of Suffolk*, the

Second Circuit considered a county's ability to hold a copyright in its tax maps.

261 F.3d 179 (2d. Cir. 2001). The defendant there argued that the tax maps were

uncopyrightable and in the public domain from inception. *Id*. at 193. Looking to

similar cases in the First and Ninth Circuits, the Second Circuit held that there are

two considerations that influence whether a particular state government work

should be deemed in the public domain from its inception: "(1) whether the entity

or individual who created the work needs an economic incentive to create or has a

proprietary interest in creating the work and (2) whether the public needs notice of

this particular work to have notice of the law." *County of Suffolk, New York v. First*

*Am. Real Estate Sols.*, 261 F.3d 179, 194 (2d Cir. 2001) (citing *Practice Mgmt.*

*Info. Corp. v. American Med. Assoc.*, 121 F.3d 516, 518–19 (9th Cir. 1997); *Bldg.*

*Officials & Code Adm. v. Code Tech., Inc.,* 628 F.2d 730, 734-35 (1st Cir. 1980)

(hereinafter "BOCA")).

### A. OCGA Creation Relies Upon Copyright Protection Incentives

With regard to the first consideration in *County of Suffolk*, the Second

Circuit recognized that judges do not require an incentive to write judicial opinions

because they receive a salary to prepare such opinions. *Id*. at 194 (explaining the holding in *Banks v. Manchester*, 128 U.S. 244, 253 (1888)). Similarly, legislators do not require an incentive to enact laws. *Id*. However, "[m]any works of government, . . . due to their expense, may require additional incentives in order to justify their creation." *Id*. The court noted that the tax maps could be just such an expensive work of government requiring a copyright incentive, but ultimately remanded due to lack of argument and evidence on the subject. *Id*.

Here, the OCGA annotations are not the law and their creation has been and continues to be directly incentivized by the availability of copyright protection for those annotations. The General Assembly's initial decision to create the OCGA hinged upon the publisher bearing the OCGA creation costs in return for an exclusive copyright license and share of the profits:

> [T]he Georgia General Assembly, in 1976, created the Code Revision Study Committee to study the need for a recodification of the Georgia code. That committee recommended that not only was a new code needed but also that there should be an official publication of that code with the publication, including the price thereof, being controlled by the state. To carry out the recommendations of this study committee, the General Assembly created the Code Revision Commission in 1977, which was authorized, together with other duties, to select and contract with a publisher to conduct a revision of the 1933 code and the subsequently enacted laws of the state of Georgia.

> Following discussions with and presentations by five law publishers, including the defendants, the Code Revision Commission entered into a contract on June 19, 1978, with The Michie Company of Charlottesville, Virginia, to codify, revise, index, print, bind, and

deliver according to the directions of the Commission 500 sets of a revised and recodified code of Georgia, which was to be designated as the "Official Code of Georgia Annotated." *Both the enabling legislation and the contract with Michie provided that the code was a "work made for hire," pursuant to 17 U.S.C. §§ 101 and 201, and that the state would own the copyright in the code. The contract further provided that The Michie Company was to have exclusive rights to reproduce and distribute the code for a 10-year period extending from the date of publication of the code*, with the state reserving the right to authorize computer retrieval systems to utilize sections of the code or cases annotated thereunder.

*State of Georgia v. The Harrison Co.,* 548 F. Supp. 110, 112 (N.D. Ga. 1982)

(emphasis added) *vacated at request of parties* 559 F. Supp. 37 (N.D. Ga. 1983).

Cost saving measures were understandably at the forefront of the General

Assembly's decision making process.

The OCGA annotations are not laws that the Georgia General Assembly is required to enact and that require no copyright incentive. The specific content of the OCGA annotations is also not dictated by law such that no copyright incentive is required for its creation. The OCGA is a voluntary but extensive 52 volume publication created by the State, the publication of which is directly incentivized by and reliant upon copyright protections for the annotations therein.

### B. A Copyright In The OCGA Does Not Prevent Notice Of The Law

The second consideration is whether a copyright in the specific government work prevents notice of the law and thereby impinges upon due process rights.

*County of Suffolk*, 261 F.3d at 195. In *County of Suffolk*, the tax maps were "the

means by which the government assesse[d] a preexisting obligation" and did not create the legal obligation itself. *Id*. A copyright in the tax maps themselves would not prevent "fair warning" of the laws required under the Due Process Clause, and the tax maps were not considered within the public domain from inception based on this consideration. *Id*. Here, the citizens of Georgia have much more than fair warning of the laws because they are available to them by the exercise of simple diligence—through the *Georgia Laws* publications, through the Georgia Code provided by the State on the Internet (accessed almost 79 million times between 2007 and 2015), and through the wide availability of the OCGA for viewing at over 60 public libraries across the State. Pl's SUMF ¶¶ 66-68; Declaration of Elizabeth P. Howerton (Howerton Dec.) ¶ 10.

Although PR continues to allege that Commission uses copyright to restrict access to the Georgia laws, PR has failed to demonstrate any such restriction. A single citizen's distaste for online click-through provisions that PR has admitted do not even apply to the Georgia Code (Stipulation of Facts [Dkt. 17] ¶ 86), certainly does not amount to a Due Process violation. Neither the notice of law consideration nor the incentive consideration, as used by the First, Second and Ninth Circuits, indicates that the OCGA Works should be deemed within the public domain from inception as argued by PR.

## IV.   PR HAS NOT MET ITS BURDEN TO SHOW THAT EACH OF THE

8

## OCGA WORKS AT ISSUE LACKS SUFFICIENT ORIGINALITY

Since it is established that the Commission has certificates of copyright registration for the OCGA Works at issue in Commission's Motion for Partial Summary Judgment (Pl's SUMF ¶¶ 15, 76), PR bears the burden of proof regarding any alleged lack of originality or creativity of these Works. 17 U.S.C. § 410(c). In this regard, PR argues that the OCGA is merely an uncopyrightable collection of facts, and that somehow, even a summary of a judicial decision—one that differs from a different publisher's summary of the same decision—is a only an uncopyrightable "collection" of facts.

Certainly, facts themselves are not copyrightable. *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 347 (1991); *Matthew Bender & Co., Inc. v. West Pub. Co.*, 158 F.3d 674, 681 (2d Cir. 1998) (holding *facts* such as the names of the parties to a court case and the deciding court are not copyrightable). But original discussions or descriptions of facts and compilations of facts are copyrightable. *See Feist*, 499 U.S. at 348–50 (discussing the idea/expression or fact/expression dichotomy and that original expressions of ideas or facts are copyrightable, leaving the ideas or facts in the public domain). If PR's arguments were accepted, no two descriptions of a factual event could be copyrighted. Further, "even a directory that contains absolutely no protectable written

expression, only facts, meets the constitutional minimum for copyright protection if it features an original selection or arrangement." *Id*. at 348.

Each OCGA Work contains hundreds of original descriptions of facts and compilations of facts (for example, hundreds of specific orderings and groupings of judicial decision summaries). Although PR could have taken the facts in the OCGA and created its own description and/or arrangement of those facts—its own Georgia Code annotations, its own judicial decision summaries, its own ordering and grouping of those summaries—PR copied the OCGA descriptions and arrangements in their entirety. PR must therefore demonstrate that *each* of those copied elements does not meet the originality standard set forth in *Feist*. *Feist* sets a very low requirement, holding that arrangement of facts (names and addresses in a telephone directory) by alphabetization is not original enough to be copyrightable. 499 U.S. at 363. Creating an original summary of a judicial decision far exceeds mere alphabetization. Selecting certain judicial decisions for summarizing far exceeds mere alphabetization. Arranging groups of judicial decisions in a particular order far exceeds mere alphabetization. Accordingly, the OCGA Works are original and creative works that are copyrightable.

## V.   PR'S COPYING WAS NOT A FAIR USE

Fair use is an affirmative defense, and PR bears the burden of proof with respect to all four fair use factors, including factor four. *Cambridge Univ. Press v.*

*Patton*, 769 F.3d 1232, 1279 (11th Cir. 2014).

### A. Factor One

PR argues that its copying and posting of the OCGA is a non-profit educational use under factor one—"increas[ing] public access to the OCGA." Def's S/J Opp. at 12-13. However, the Eleventh Circuit has recognized that "all unpaid copying could be said to promote the spread of knowledge, so this principal is not particularly helpful in 'separating the fair use sheep from the infringing goats.'" *Cambridge*, 769 F.3d at 1282 (citing *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 586 (1994)). This Court should not recognize a blanket right to "build websites" that "speak" a copyrighted work (Def's S/J Opp. at 13) under a guise of teaching others about the Georgia laws. If PR truly wanted to educate the public about the Georgia laws, it could copy the publicly available Georgia Code, create its own annotations, and disseminate the Code and its annotations to the public at no charge.

### B. Factor Two

Under factor two, the Eleventh Circuit requires an analysis of the "evaluative, analytical or subjectively descriptive material that surpasses the bare facts" within each OCGA Work. *Cambridge*, 769 F.3d at 1283 (holding that the District Court erred in finding that factor two favored fair use across the board in every case). Without the benefit of a specific work-by-work analysis by PR, this

11

Court should recognize that judicial decision summaries are evaluative, analytical or subjectively descriptive material that surpasses the bare facts. Factor two is at least neutral based on the nature of these summaries and has little weight in a fair use analysis.

### C. Factor Three

There is no dispute that PR copied the OCGA Works in their entireties. Even when a defendant had a legitimate educational purpose, this Court found that amounts of use ranging from 3.01% (2 chapters of a work) to 12.45% (7 chapters of a work) disfavored fair use under factor three. *Cambridge Univ. Press v. Becker*, No. 1:08-CV-1425-ODE, 2016 WL 3098397, at *23, 30 (N.D. Ga. Mar. 31, 2016) (holding that copying 12.45% of a work caused factor three to weigh strongly against fair use).

### D. Factor Four

PR argues that since Commission has not shown evidence of lost sales since PR copied and distributed the OCGA or evidence of licenses available to PR that factor four favors fair use. There are several problems with PR's arguments.

First, PR bears the burden of proof on factor four and must demonstrate that none of Commission's markets would be substantially adversely impacted by its copying and distribution if everyone else did the same. *Cambridge,* 769 F.3d at 1279 (holding that "the evidentiary burden on all four of its factors rests on the

alleged infringer"). *Cambridge* only held that when a plaintiff argues the relevancy of an existing market (there, a book excerpt licensing market), it must demonstrate that the market actually exists. *Id*. Commission has already established that there are three existing markets for the OCGA Works: printed publications, CD-ROM, and subscription services. Pl's SUMF ¶¶ 32, 65, 77; Stip. ¶ 34, Howerton Dec. ¶ 9, Publication Agreement §§ 5, 8; Pl's Add'l SUMF ¶¶ 5–7; Stip. ¶¶ 35, 84–85.

Second, PR's arguments that any lack of harm to Commission's actual markets thus far indicates that there will be no harm to those markets if everyone could copy the OCGA in its entirety are unavailing. PR argues that it purchased a copy of the OCGA book to make the copies in the first place, so anyone doing exactly what PR did would also buy the OCGA book, thereby increasing sales of the book. Def's S/J Opp. at 21. PR misses the point. The fair use analysis is with respect to a defendant's unauthorized copying and distribution of a copyrighted work, not a defendant's authorized purchase of the work. Otherwise, anyone purchasing a book could make and distribute an infinite number of copies.

The question under factor four is whether everyone making PR's unauthorized use would cause substantial harm to Commission's markets and materially impair Commission's incentive to publish the OCGA statutes with annotations. *Cambridge*, 769 F.3d at 1276. "To negate fair use one need only show that if the challenged use 'should become widespread, it would adversely affect the

*potential* market for the copyrighted work.'" *Harper & Row Publishers, Inc. v. Nation Enterprises*, 471 U.S. 539, 568 (1985) (emphasis added in original). The potential or "threat" for market harm must be considered in light of the likely effect of the other fair use factors and whether those factors cause the copy to substitute for the original work. *Cambridge*, 769 F.3d at 1275.

In *Cambridge*, the Eleventh Circuit held that small excerpts from books did not substitute for the full books that were the works at issue, and therefore, the use did not affect plaintiff's potential sales of the works. *Id*. at 1276. Here, PR did not copy small excerpts of the OCGA Works, but instead copied hundreds of them in their entirety. There is no question that PR's nontransformative, mirror-image copies fulfill the same purpose as, and directly substitute for, the original OCGA Works—the threat of market substitution could be no greater. If everyone could copy and distribute on the internet every volume of the OCGA in its entirety, at a minimum, there would be no market for the CD-ROM OCGA Works. Since the OCGA distributed by PR is also searchable and similar to that distributed via on-line subscription, there would also be no market for the OCGA on-line subscription. Contrary to PR's assertions (Def's S/J Opp. at 20-21), PR's type of use is not currently widespread by others—libraries that hold the OCGA CD-ROM do not scan and post the OCGA as PR has done; use of the Code of Georgia on the free website does not result in the scanning and posting of the OCGA as PR has

14

done. If everyone could make PR's use, Commission's markets would be substantially adversely impacted and its incentive to publish the OCGA materially impaired.

Finally, there is no requirement under any fair use factor that Commission provide PR with a license to copy and distribute the OCGA works in their entireties. PR provides no case law support for such a proposition. Commission already provides an exclusive license of the OCGA Works copyrights to Lexis/Nexis. Under PR's theory, no entity could be given an exclusive license to any copyrighted work because non-exclusive licenses should be required for anyone that wants to copy the work in its entirety.

Weighing all four factors together, this Court should find that PR's use was unfair. Factor one disfavors fair use since PR does not have a legitimate educational purpose and the use was not transformative. Factor two is neutral and has little weight. PR's 100% copying strongly disfavors fair use under factor three. Due to the non-transformative mirror-image nature of PR's copies, there is a severe threat of market substitution under factor four.

## VI. CONCLUSION

For the reasons set forth above and in Commission's other summary judgment briefings, the Court should grant its motion for partial summary judgment of copyright infringement as to the 2014 edition of the OCGA.

Respectfully submitted, this 5th day of July, 2016.

<div style="margin-left:40%;">

*/s/Lisa C. Pavento*

Lisa C. Pavento (G.A. Bar: 246698)
Anthony B. Askew (G.A. Bar: 025300)
Warren Thomas (G.A. Bar: 164714)
Meunier Carlin & Curfman LLC
999 Peachtree Street, NE, Suite 1300
Atlanta, Georgia 30309
Phone: 404-645-7700
Fax: 404-645-7707
lpavento@mcciplaw.com
taskew@mcciplaw.com
wthomas@mcciplaw.com
*Counsel for the Plaintiff, Code Revision Commission on behalf of and for the benefit of the General Assembly of Georgia, and the State of Georgia*

</div>

## <u>CERTIFICATE OF COMPLIANCE</u>

I hereby certify that, pursuant to L.R. 5.1C and 7.1D of the Northern District of Georgia, the foregoing PLAINTIFF'S REPLY TO DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT complies with the font and point selections approved by the Court in L.R. 5.1C. The foregoing pleading was prepared on a computer using 14-point Times New Roman font.

*/s/Lisa C. Pavento*
Lisa C. Pavento (G.A. Bar: 246698)
Meunier Carlin & Curfman LLC
999 Peachtree Street NE, Suite 1300
Atlanta, Georgia 30309
Telephone: 404-645-7700
Email: lpavento@mcciplaw.com

17

## <u>CERTIFICATE OF SERVICE</u>

I certify that on July 5, 2016, I electronically filed the foregoing

PLAINTIFF'S REPLY TO DEFENDANT'S OPPOSITION TO

PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT with

the Clerk of Court using the CM/ECF system, which constitutes service of the filed

document on all counsel of record in this proceeding under LR 5.1(A)(3), N.D. Ga.


By:    */s/Lisa C. Pavento*
             Lisa C. Pavento (G.A. Bar: 246698)
             Anthony B. Askew (G.A. Bar: 025300)
             Warren Thomas (G.A. Bar: 164714)
             Meunier Carlin & Curfman LLC
             999 Peachtree Street, NE, Suite 1300
             Atlanta, Georgia 30309
             Phone: 404-645-7700
             Fax: 404-645-7707
             lpavento@mcciplaw.com
             taskew@mcciplaw.com
             wthomas@mcciplaw.com

             *Counsel for the Plaintiff, Code Revision*
             *Commission on behalf of and for the benefit*
             *of the General Assembly of Georgia, and the*
             *State of Georgia*