# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| CODE REVISION COMMISSION on Behalf of and For the Benefit of the GENERAL ASSEMBLY OF GEORGIA and the STATE OF GEORGIA, <br><br> Plaintiff, <br><br> v. <br><br> PUBLIC.RESOURCE.ORG, INC., <br><br> Defendant. | ) ) ) ) ) ) ) ) ) ) ) ) ) **CIVIL ACTION** <br><br> **FILE NO.   1:15-CV-2594-RWS** |

## REPLY BRIEF OF DEFENDANT PUBLIC.RESOURCE.ORG, INC. IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

# TABLE OF CONTENTS

I.  INTRODUCTION ............................................................... 1

II. LEGAL ARGUMENTS .................................................... 1

    A.  The O.C.G.A is an edict of government that includes both
        enacted statutes and annotations......................................... 1

    B.  The idea/expression dichotomy and the merger doctrine
        preclude copyright protection for the O.C.G.A.'s annotations............ 5

    C.  Even if the O.C.G.A. contains copyrightable expression, Public
        Resource's harmless non-commercial use for the purpose of
        improving the public's access to edicts of government is a fair
        use. ................................................................... 9

        i.  The Commission's argument that Public Resource profits
            from distributing primary legal materials lacks support in
            facts or law. ................................................. 9

        ii.  The factual and legal nature of the O.C.G.A. favors fair
            use. ..........................................................12

        iii. The Commission mischaracterizes Public Resource's
            purpose for posting the entire O.C.G.A. and improperly
            relies on percentages as evidence that use was excessive. .......12

        iv.  The Commission offers no evidence of harm to the
            market for the O.C.G.A.—only speculation and
            invective. ....................................................13

III. CONCLUSION....................................................14

# TABLE OF AUTHORITIES

## CASES

*BellSouth Advert & Publ'g Corp v. Donnelly Info. Publ'g. Inc.*,
    999 F.3d 1436 (11th Cir. 1993) ........................................................... 6

*BUC Int'l. Corp. v. International Yacht Council Ltd.*,
    489 F.3d 1129 (11th Cir. 2007) ......................................................... 7

*Cambridge Univ. Press v. Patton*,
    769 F.3d 1232 (11th Cir. 2014) ..................................................... 11, 14

*CCC Info. Servs. v. MacLean Hunter Mkt. Reports, Inc.*,
    44 F.3d 61 (2d Cir. 1994) .................................................................. 3

*CMM Cable Rep., Inc. v. Ocean Coast Props., Inc.*,
    97 F.3d 1504 (1st Cir. 1996) .............................................................10

*County of Suffolk, New York v. First Am. Real Estate Solutions*,
    261 F.3d 179 (2d Cir. 2001) ............................................................... 4

*Feist Publ'ns., Inc. v. Rural Tel. Serv. Co.*,
    499 U.S. 340 (1991) ......................................................................... 9

*Golan v. Holder*,
    132 S. Ct. 873 (2012) .......................................................................11

*Higgens v. Keuffel*,
    140 U.S. 428 (1891) ......................................................................... 6

*Home Design Servs. Inc. v. Turner Heritage Homes*,
    No. 15-11912, 2016 WL 3361479 (11th Cir. June 17, 2016) ........................... 9

*Intervest Constr., Inc. v. Canterbury Estate Homes, Inc.*,
    554 F.3d 914 (11th Cir. 2008) ........................................................... 9

*Practice Mgmt. Info. Corp. v. American Med. Assoc.*,
    121 F.3d 516 (9th Cir. 1997) ............................................................. 3

LEGAL02/36480729v1

*Southco, Inc. v. Kanebridge Corp.*,
    390 F.3d 276 (3d Cir. 2004) (en banc) (Alito, J.) .............................................. 5

*Warren Pub'g., Inc. v. Microdos Data Corp.*,
    115 F.3d 1509 (11th Cir. 1997) ........................................................................ 6

## OTHER AUTHORITIES

Compendium of U.S. Copyright Office Practices § 313.4(C) (3d Ed. 2014) .......... 6

## I.  <u>INTRODUCTION</u>

The Commission, as in its opening brief, recasts the issues to suggest that Public Resource is asking for some novel and wide-sweeping holding that annotations can never be copyrighted.  On the contrary, Public Resource merely asks to be exonerated on the Commission's claims of copyright infringement and for a declaratory judgment vindicating its right to share the only official Code of Georgia, an edict of government, on its website to encourage and enable public engagement with the law.  For the reasons stated in its opening memorandum, its opposition to the Commission's motion for summary judgment and in this reply, its motion for summary judgment should be granted.

## II.  <u>LEGAL ARGUMENTS</u>

**A.     The O.C.G.A is an edict of government that includes both enacted statutes and annotations.**

There is no dispute that a state's law cannot be copyrighted.  The parties dispute whether the O.C.G.A. is properly analyzed as one edict of government or as numerous discrete works, some of which are Georgia law that belongs to the people but others of which are somehow private property.  Public Resource has not asked the Court to "create a completely new, third category of law—annotation law."  This Court need only decide whether Georgia, having long ago decided that

its only official Code should be annotated, should be able to use copyright law to enjoin anyone but its publisher from distributing it.

The Commission urges that the annotations are not government edicts, because they are not enacted and, standing apart from the statutes, do not have the force of law. Pl. Opp'n., Dkt. 34 at 4. But the O.C.G.A. is a single edict of government with one author, Georgia's General Assembly, which both passed the statutes and determined that the official Code should contain specific kinds of annotations. It supervises the annotations' preparation and maintenance. That makes the O.C.G.A. different from annotated codes private publishers prepare on their own initiative. Georgia cannot carve the annotations out of the O.C.G.A., and out of the public domain, by passing session laws providing that they are not enacted. The Commission urges that a so-called watershed holding that the O.C.G.A. is not subject to copyright would create logistical problems, such as how the courts could treat annotations as precedential and enforce them. Pl. Opp'n., Dkt. 34 at 7. No such problems would arise. Courts would treat the O.C.G.A. as they always have—as an invaluable reference that includes Georgia's statutes, sensibly arranged, other sources of Georgia law, and annotations that help a reader—whether a judge, lawyer or member of the public—locate other material relevant to each statute, including judicial opinions that also have the force of law.

- 2 -

The Commission's discussion of this Court's previous consideration, in *Harrison*, of copyrightability of elements of the O.C.G.A. (statutes and title, chapter and article headings), other than for background, is surprising; the Court vacated *Harrison*. The Commission also cites several cases in which other courts held that a state's requirement that a citizen refer to state-approved publications to comply with the laws did not prevent or destroy the copyright in those materials. Pl. Opp'n., Dkt 34 at 9-10, citing *CCC Info. Servs. v. MacLean Hunter Mkt. Reports, Inc.*, 44 F.3d 61 (2d Cir. 1994) (Red Book providing used car valuations did not pass into the public domain because states required insurance companies to use those values) and *Practice Mgmt. Info. Corp. v. American Med. Assoc.*, 121 F.3d 516 (9th Cir. 1997) opinion amended by 133 F.3d 1140 (9th Cir. 1998). These are distinguishable because the statutes or regulations referred to other sources of information. Here, the O.C.G.A. volumes are self-contained and the annotations controlled by the General Assembly, not by a company or another entity. In *Practice Management*, the federal Health Care Finance Administration (HCFA) required health care providers to use the American Medical Association's billing codes, for federal reimbursement forms. 121 F.3d at 517-18. The AMA's billing codes were extrinsic, preexisting standards the HCFA deemed useful to identify medical procedures. And although the court declined to find that the AMA's text

- 3 -

was placed into the public domain, it reached almost the same result by finding copyright misuse.  *Id.* at 520-521.

The Commission relies too much on a Second Circuit case about county maps used to assess taxes.  Dkt. 34 at 9, citing *County of Suffolk, New York v. First Am. Real Estate Solutions*, 261 F.3d 179 (2d Cir. 2001).  That court derived a two-part test, never adopted by the Eleventh Circuit, for when state-authored works can be protected by copyright, from other circuit's cases dealing with asserted copyright in sources of law.  The two parts are (1) whether the work's creator had adequate incentives, absent copyright, to create the work, and (2) whether the public needs notice of the work to have notice of the applicable law.  *Id.* at 194. The court recognized, however, that copyright protects only expression, not facts or ideas, and that courts must avoid applying the copyright act to enjoin fair uses. *Id.* at 193.  Even if the Court decided to adopt the Second Circuit's test, here the record shows that the General Assembly determined that the only official Code should contain annotations to benefit Georgia's citizens.  The mere fact that it arranged for Georgia to hold copyright in the O.C.G.A. is not evidence that it would have no incentive to author the O.C.G.A. absent copyright protection.  If it were, all state-authored works registered with the Copyright Office would pass the first part of the test, including the maps at issue in *Suffolk County*.

The Copyright Office's statement that it may register copyright in Arizona's department of tourism's magazine or Detroit's transit authority's transit map is also irrelevant.  This case involves the official Code of Georgia Annotated, not a tourism magazine or a bus route map and not statutes that refer to other publications.  And while the U.S. Copyright Office has registered previous O.C.G.A. works, there is still no evidence that it will register the 2015 works, and discovery is closed.  As an integrated edict of government, completely controlled by the Georgia legislature, the O.C.G.A. is in the public domain from inception.

### B.    The idea/expression dichotomy and the merger doctrine preclude copyright protection for the O.C.G.A.'s annotations.

The Commission asserts copyright in numerous parts of the O.C.G.A., not just summaries of opinions.   DSUMF Ex. H, Dkt. 29-10.  Words and short phrases such as catchlines, names, titles and subtitles are not copyrightable because they contain a de minimus amount of authorship, if any.  *Southco, Inc. v. Kanebridge Corp.*, 390 F.3d 276, 286 (3d Cir. 2004) (en banc) (Alito, J.); Compendium of U.S. Copyright Office Practices § 313.4(C) (3d Ed. 2014).  To be copyright eligible, written expression must have some value as a composition, and not be a mere subject designation or label.  *Higgens v. Keuffel*, 140 U.S. 428 (1891).

Other kinds of O.C.G.A. annotations are purely factual.  History lines show where a new Code section appeared in earlier official codes to trace that Code

section back to its origin.  DSUMF Ex. E, Dkt. 29-7.  No creativity is required to trace history lines, merely careful reading and note-taking.  Code citations are facts not protected by copyright.  Likewise, research references, cross-references, indexes and a case's subsequent history are facts discovered by Lexis/Nexis's editors, not creative or original expression.  *See BellSouth Advert & Publ'g Corp v. Donnelly Info. Publ'g. Inc.*, 999 F.3d 1436 (11th Cir. 1993) (en banc) (distinguishing techniques for discovering facts from acts of authorship); *Warren Pub'g., Inc. v. Microdos Data Corp.*, 115 F.3d 1509 (11th Cir. 1997) (same).

The Commission contends that the merger doctrine—when there are so few ways of expressing an idea, not even the expression is protected by copyright—is inapplicable to all the annotations because there are differences between Lexis/Nexis's and West's summaries of the same decisions.  Dkt. 34 at 13.  The opinion on which the Commission relies accurately describes the merger doctrine, but is otherwise irrelevant because it reviewed a trial court's denial of judgment as a matter of law after a jury trial.  Therefore, the issue was whether the specific testimony by yacht brokers, and other evidence, supported the jury's verdict that the plaintiff's expression of the idea of providing information about yachts for sale was original and creative.  *BUC Int'l. Corp. v. International Yacht Council Ltd.*, 489 F.3d 1129 (11th Cir. 2007).  Here, the Court is familiar with the kinds of

- 6 -

information typically included in annotated codes and the parties agree that summary judgment as to whether the annotations are copyrightable is proper.

The Commission also asserts that the *idea* of the O.C.G.A.'s annotations is "providing information about the statutes of Georgia." Dkt. 34 at 13. Assigning a single idea to all the O.C.G.A.'s annotations is too abstract, overbroad, and misunderstands Public Resource's merger argument. *Any* expression of facts could be described as "providing information about X." The idea of an index is to provide a list of topics and the places at which the O.C.G.A. addresses each one. That idea can only be expressed accurately in so many ways. Likewise, the idea of identifying all the cases in which a given statute has been applied can only be expressed accurately in so many ways. The idea of summarizing an opinion can be accurately expressed in more ways than the idea of an index, but these ways are still limited consistent with the goals of such a summary. Therefore, copyright for these kinds of annotations would preclude others' expressing the same ideas.

The Commission argues that Public Resource fails to establish sufficient facts to show that the annotations lack the required originality and creativity for copyright. Dkt. 34 at 15. It argues that it has demonstrated these qualities through undisputed facts: the Howerton declaration and the Ganten affidavit. *Id.* at 15-16. But the existence of the requisite originality and creativity for copyright in

- 7 -

selection and arrangement in a compilation is not a pure question of fact.
"[S]eparating protectable expression from non-protectable expression is … a
question of law or, at the very least, a mixed question of law and fact." *Intervest
Constr., Inc. v. Canterbury Estate Homes, Inc.*, 554 F.3d 914 (11th Cir. 2008).
The *Intervest* court explained that a judge is better able than juries "to separate
original expression from the non-original elements of a work where the copying of
the latter is not protectable and the former is protectable." *Id.*  A few weeks ago,
the Eleventh Circuit reiterated that courts are best situated to decide whether
similarity between two works concerns only their noncopyrightable elements.
*Home Design Servs. Inc. v. Turner Heritage Homes*, No. 15-11912, 2016 WL
3361479 (11th Cir. June 17, 2016).  Indeed, in *Feist*, the Supreme Court decided
the issue of originality as a matter of law, not fact, when it held that the white
pages listings in a telephone directory lacked the requisite originality for copyright.
*Feist Publ'ns., Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340 (1991); *see also CMM
Cable Rep., Inc. v. Ocean Coast Props., Inc.*, 97 F.3d 1504 (1ˢᵗ Cir. 1996)
(affirming summary judgment that aspects defendant copied were uncopyrightable
ideas, concepts, unoriginal metaphors, words and short phrases).

Here, admittedly, the annotations that are summaries of opinions present a
closer question than the annotations that are names, titles or collections of facts.

- 8 -

But on inspection, the Court can still conclude, as a matter of law, that they lack the requisite originality to be copyrightable.  Every fact or idea in each summary can be traced to the opinion itself, and in many cases to the briefs and supporting papers underlying the opinion.  And the editors at Lexis/Nexis follow the Commission's instructions for distilling opinions into summaries.  DSUMF Ex. E, Dkt. 29-7 at 104.  The differences between the O.C.G.A's annotations and those in West's Code of Georgia Annotated can be attributed to differences between the Commission's and West's instructions.  For all these reasons, the annotations in the O.C.G.A. should not be protected by copyright.

**C.  Even if the O.C.G.A. contains copyrightable expression, Public Resource's harmless non-commercial use for the purpose of improving the public's access to edicts of government is a fair use.**

*i.  The Commission's argument that Public Resource profits from distributing primary legal materials lacks support in facts or law.*

The Commission's statement that copying a work to provide it to the public is not educational is simply wrong.  Applying the fair use doctrine in a way that promotes the dissemination of knowledge, not simply its creation, is consistent with copyright's goals.  *Cambridge Univ. Press v. Patton*, 769 F.3d 1232 (11th Cir. 2014) (citing *Golan v. Holder*, 132 S. Ct. 873 (2012)).  Therefore, Public Resource agrees that the more important inquiry is whether Public Resource stands to profit

from using the O.C.G.A. without paying the customary price. It does not. The testimony is unrebutted that Public Resource's purpose was to facilitate scholarship, criticism, and analysis of the official Code, to inform the public, for education and to encourage public engagement with the law. Malamud Decl., Dkt. 29-3 ¶ 45. Making official codes available in bulk enables volunteers in the community to create a better web. *Id.* at ¶¶ 36, 39-41, 44.

The argument that Public Resource profits from exploiting the O.C.G.A. is meritless. First, there is no customary price for Public Resource's use because the Commission refuses to license anyone but Lexis/Nexis to provide online access. Second, Public Resource paid Lexis/Nexis's price for the print volumes it scanned and posted. Moreover, Public Resource posts numerous other public domain edicts of government and primary sources of law on its website. *Id.* at ¶¶ 19-21, 31-32. The Commission offers no evidence that Public Resource receives grants specifically for distributing copyrighted material or for posting the O.C.G.A. Contributions made specifically to defray the cost of scanning the O.C.G.A. were only about $3,000.00. DSUMF, Dkt. 29 at ¶¶ 77-78.

Lacking any evidence that Public Resource profits from posting the O.C.G.A., the Commission cites two cases in which other courts found that "profit" can include non-monetary, intangible benefits. No controlling case,

however, holds that such benefits, even if they were shown, weigh against finding a nonprofit educational use to be fair use.  Indeed, if more courts accepted and applied that theory, it could eliminate the fair use defense for many nonprofit uses otherwise at the core of fair use, such as quoting a poem in a political speech.

This Court need not find that Public Resource's use is transformative to weigh the first factor in favor of fair use.  The Court can find, however, that Public Resource's use is transformative because the code on its website makes it more useful to citizens who use e-readers and for the print disabled, and serves the purpose making the entire O.C.G.A. available to people who cannot travel to Georgia to read it in a library or afford to purchase a Lexis/Nexis product or service.  Finally, the Johnson Declaration is not impermissible expert testimony.  First, the outcome of this motion does not turn on whether Lexis/Nexis's free online site providing access to the unannotated Georgia code is adequate or better or worse than another website that displays Georgia code.  Mr. Johnson's declaration is background information to give context to Public Resource's actions and its counterclaim.  Second, Mr. Johnson is a Georgia citizen voluntarily providing fact testimony, as an unpaid public service, about his personal experience using the unannotated Georgia code on the Lexis/Nexis website.  That his education and experience might qualify him as an expert is no reason for the

Court to disregard his testimony from personal knowledge. For all these reasons, the Court should find that factor one favors fair use.

### ii.     *The factual and legal nature of the O.C.G.A. favors fair use.*

The Commission asserts that the statutes are facts but the annotations are opinion—without any explanation of why the Court should consider them opinion. Case annotations include summaries *of* judicial opinions, but that does not make *them* opinions. The annotations that are catchlines, history lines, editor's notes, research references, cross-references and indexes are factual. Additionally, it is relevant that the O.C.G.A. is the only official Code of Georgia. For these reasons, second fair use factor is not neutral but weighs in favor of fair use.

### iii.    *The Commission mischaracterizes Public Resource's purpose for posting the entire O.C.G.A. and improperly relies on percentages as evidence that use was excessive.*

The Commission observes that excessive verbatim copying weighs against fair use. It fails to acknowledge, however, the authorities explaining that verbatim copying of a work is sometimes necessary to serve a fair use purpose. It is correct that a court has found copying small percentages and small numbers of chapters of books to be excessive and weigh against fair use, despite the purpose being classroom teaching. But this is a different case, and the Court would abdicate its duty to analyze the third factor for each separate instance of alleged infringement if

- 12 -

it applied a blanket rule or benchmark.  *Cambridge*, 769 F.3d at 271-72.  And fair use analysis must be performed on a case-by-case/work-by-work basis.  Of course Public Resource could have posted the unannotated statutes.  But that would not have served its purpose, to make the only official Code of Georgia available, in its entirety, to the public for its use and re-use in other works.  The Court can properly find that this factor does not weigh against fair use.

### iv.        The Commission offers no evidence of harm to the market for the O.C.G.A..

Public Resource cited many reasons in its opening brief why scanning and posting the O.C.G.A. does not substantially supplant the normal market for it.  Def.'s Mem., Dkt. 29-2 at 22-24.  In response, the Commission argues that an adverse impact is "inevitable" but still cites no evidence.  Likewise, Mr. Ganten, a senior director of Lexis/Nexis, opines that if the public could freely access the O.C.G.A. as a fair use, Lexis/Nexis could not recoup its investment and would have no incentive to create the annotations unless it were directly paid to do so.  Ganten Aff., Dkt. 30-5 ¶ 30.  He claims Public Resource's acts "destroy the marketplace" because "no person will pay for annotations when the identical annotations are available online for free."  *Id.* at ¶ 32.

The record simply does not support these claims.  Public Resource posted the O.C.G.A. over three years ago and announced the Summer of Code in 2014.  If

- 13 -

it destroyed the market for the O.C.G.A., and no one is still paying for it, the

Commission should be able to show *some* evidence of this impact.  But it has not

shown the loss of one single sale or subscription, let alone significant damage to its

income or the value of the work.  Nor has its amicus. There is no *evidence* before

the Court that Public Resource's acts have damaged any of the markets for the

O.C.G.A.   In the absence of any such evidence, the Court cannot presume harm

and factor four has to weigh heavily in favor of fair use.

## III.  <u>CONCLUSION</u>

For the reasons set forth above, the Court should grant summary judgment in

favor of Public Resource on its counterclaim and both the Commission's claims.

Respectfully submitted this 5th day of July, 2016.

By:  */s/ Elizabeth H. Rader*
     Jason D. Rosenberg
     Georgia Bar No. 510855
     jason.rosenberg@alston.com
     Sarah P. LaFantano
     Georgia Bar No. 734610
     sarah.lafantano@alston.com
     ALSTON & BIRD LLP
     One Atlantic Center
     1201 West Peachtree Street
     Atlanta, GA  30309-3424
     Telephone 404-881-7461
     Fax (404) 253-8861

     Elizabeth H. Rader

_Admitted pro hac vice_
elizabeth.rader@alston.com
ALSTON & BIRD LLP
950 F Street, NW
Washington, DC 20004
Telephone:  202-239-3008
Fax: (202) 239-3333
_Attorneys for Defendant_

LEGAL02/36480729v1

| | |
|---|---|
| CODE REVISION COMMISSION on Behalf of and For the Benefit of the GENERAL ASSEMBLY OF GEORGIA and the STATE OF GEORGIA, | ) ) ) ) ) **CIVIL ACTION** **FILE NO.   1:15-CV-2594-RWS** |
| Plaintiff, | ) ) |
| v. | ) ) |
| PUBLIC.RESOURCE.ORG, INC., | ) ) |
| Defendant. | ) |

## CERTIFICATE OF SERVICE

I hereby certify that I have filed the foregoing **Reply Brief of Defendant**

**Public.Resource.Org, Inc.** was electronically filed with Clerk of Court using the

CM/ECF system which will automatically send notification of such filing to all

attorneys of record.


/s/ Sarah P. LaFantano
Sarah P. LaFantano
Georgia Bar No. 734610