# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | | |
|---|---|---|
| CODE REVISION COMMISSION on Behalf of and For the Benefit of the GENERAL ASSEMBLY OF GEORGIA and the STATE OF GEORGIA, | ) ) ) ) ) | |
| Plaintiff, | ) ) | **CIVIL ACTION** |
| v. | ) ) ) | **FILE NO.   1:15-CV-2594-RWS** |
| PUBLIC.RESOURCE.ORG, INC., | ) ) | |
| Defendant. | ) ) ) | |

## DEFENDANT'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR AN AWARD OF ATTORNEY'S FEES AND OTHER COSTS

# **TABLE OF CONTENTS**

I.    INTRODUCTION ..........................................................................1

II.   ARGUMENT AND CITATION OF AUTHORITIES ...................................3

    A.    The Court has discretion to decline to award the Commission
its fees and costs after considering all relevant factors.........................3

    B.    Public Resource's alternative defenses, that the O.C.G.A. is not
copyrightable, and that its posting of the O.C.G.A. constituted a
fair use were both objectively reasonable. ............................................4

          i.    Public Resource's defense that all of the O.C.G.A. is in
the public domain was objectively reasonable in light of
the long line of cases holding that edicts of government
cannot be copyrighted. ...............................................................4

          ii.   Public Resource's argument, that posting the O.C.G.A.
was a fair use to improve the accessibility of the laws of
the State to the public, was not objectively unreasonable. .........7

    C.    Public Resource's motivations were first, to improve access and
usability of the State's only official code, and second, to engage
Georgia's legislators in a dialogue about those goals. ........................10

    D.    Public Resource did not willfully infringe the State's copyright
in the annotations.................................................................................14

    E.    An award of attorney's fees and costs is unwarranted because
litigation of meritorious arguments like Public Resource's
furthers the interests of the Copyright Act. .........................................15

    F.    The Commission's request for fees and costs of a quarter
million dollars is patently unreasonable.............................................21

III.  CONCLUSION............................................................................22

# TABLE OF AUTHORITIES

## CASES

*A.V. ex rel v. iParadigms, LLC*, 562 F.3d 630 (4th Cir. 2009)..................................9

*Advanced Tech. Servs., Inc. v. K.M. Docs, LLC*, U.S. Dist. LEXIS 90361 (N.D. Ga. June 27, 2013)..........................................................................................4, 13

*American Inst. of Physics v. Schwegman, Lundberg & Woessner, P.A.*, No. 12-528, 2013 WL 4666330 (D. Minn. Aug. 30, 2013).........................................................9

*Authors' Guild v. Google, Inc.*, 804 F.3d 202 (2d. Cir. 2015) (Leval, J), *cert. denied*, No. 15-849, 2016 WL 1551263 (April 18, 2016)....................................9

*Authors' Guild, Inc. v. Hathitrust*, 755 F.3d 87 (2d. Cir. 2014)..............................9

*Bellsouth Adver. & Publ'g Corp. v. Donnelly Info. Publ'g, Inc.*, 999 F.2d 1436 (11th Cir. 1993) (en banc).................................................................................6, 8

*Brewer-Giorgio v. Producers' Video, Inc.*, 985 F. Supp. 1478 (N.D. Ga. 1997)......4

*Broad. Music, Inc. v. Evie's Tavern Ellenton, Inc.*, 772 F.3d 1254 (11th Cir. 2014) ........................................................................................................................3

*Cable/Home Commc'n Corp. v. Network Prods. Inc.*, 902 F.2d 829 (11th Cir. 1990) ................................................................................................... 14, 18

*Cambridge Univ. Press v. Patton*, 769 F.3d 1232 (11th Cir. 2014)........................10

*Evans & Assocs. v. Meadows*, 785 F.2d 897 (11th Cir. 1986) ..................................4

*Feist Publ'ns., Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340 (1991).............................8

*Fogerty v. Fantasy, Inc.*, 510 U.S. 517 (1994) ....................................................3, 15

*International Korwin Corp. v. Kowalczyck*, 855 F.2d 375 (7th Cir. 1988).............18

*Jacob Maxwell v. Veeck*, 110 F.3d 749 (11th Cir. 1997)...........................................4

*Kirtsaeng v. John Wiley & Sons, Inc.*, 136 S. Ct. 1979 (2016) ............................3, 7

LEGAL02/37166208v4

*Lotus Dev. Corp. v. Borland Int'l, Inc.*, 140 F. 3d 70 (1st Cir. 1998) ....................15

*Matthew Bender & Co., Inc. v. West Pub. Co.*, 158 F.3d 674 (2d Cir. 1998) ...........8

*Mitek Holdings, Inc. v. Arce Eng'g Co., Inc.*, 198 F.3d 840 (11th Cir. 1999) ....4, 15

*Sherry Mfg. Co. v. Towel King of Fla., Inc.*, 822 F.2d 1031 (11th Cir. 1985) .........4

*Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417 (1984)................9

*Swatch Grp. Mgm't. Serv. Ltd. v. Bloomberg L.P.*, 756 F.3d 73 (2d. Cir. 2014)......9

*Warren Publ'g, Inc. v. Microdos Data Corp.*, 115 F.3d 1509 (11th Cir. 1997) (en banc)......................................................................................................................6

*White v. Alcon Film Fund*, LLC, No. 1:13-CV-1163-TCB, 2015 WL 11199163 (N.D. Ga. Jan. 30, 2015) .....................................................................................17

## STATUTES

17 U.S.C. § 107(4) ...........................................................................................................9

17 U.S.C. § 504 (c)(2) ...................................................................................................18

17 U.S.C. § 505 .........................................................................................................3, 15

17 U.S.C. § 102(b) ....................................................................................................6, 13

17 U.S.C. § 107 .........................................................................................................7, 13

# I. <u>INTRODUCTION</u>

In order to promote public education and public safety, equal justice for all, a better informed citizenry, more efficient markets, and the Rule of Law, Defendant Public.Resource.Org, Inc. ("Public Resource") has undertaken to make edicts of government, including the O.C.G.A., available on a noncommercial basis. In making primary sources of law available, Public Resource relies on the time-honored doctrine that laws and other edicts of government cannot be copyrighted because they belong to the people.  Furthermore, access to the law is a fundamental aspect of our system of democracy, an essential element of due process, equal protection, and access to justice.  Thus, it was reasonable for Public Resource to conclude that the O.C.G.A., as the only official code of Georgia, is not copyrightable subject matter.

In this sincere belief, Public Resource purchased the O.C.G.A. and posted it on its website.  In order to efficiently create digital copies from primary sources of law, which, like the O.C.G.A., are sold as bound paper volumes, Public Resource uses a scanner.  Public Resource had no particular interest in the O.C.G.A.'s annotations, other than that they are part of the only official code of Georgia and are there to help the reader better understand and use the statutes and other edicts in the O.C.G.A.

Public Resource does not dispute that the Code Revision Commission is the prevailing party. The Supreme Court, however, has repeatedly stated that attorney's fees should not be awarded to the prevailing party as a matter of course. Instead, courts exercising their discretion must give substantial weight to the objective reasonableness of a losing party's litigation position. They must also consider all circumstances relevant to granting fees.

Here, although the Court granted the Commission's Motion for Partial Summary Judgment [Doc. No. 44], Public Resource's litigation positions on both the copyrightability of the annotations and the fair use defense were objectively reasonable based on its application of federal copyright law, including Supreme Court and Eleventh Circuit cases, to the undisputed facts.

Consideration of other circumstances also should persuade the Court to deny the motion for fees and costs. First, Public Resource's motivation was to improve the public's access to the official code, in the interest of due process, equal protection and access to justice. Second, awarding fees is not necessary to deter future infringement of similar copyrights because the Court's holding, alone, will do so. Finally, Public Resource's vigorous litigation of its defenses furthers the purposes of the Copyright Act by helping to ensure that the boundaries of copyrightability and fair use are demarcated as clearly as possible, so that both

- 2 -

creators and users will enjoy the substantive rights the Copyright Act provides. For all these reasons, Public Resource respectfully urges the Court to deny the Commission's motion.

## II.  ARGUMENT AND CITATION OF AUTHORITIES

### A.    The Court has discretion to decline to award the Commission its fees and costs after considering all relevant factors.

The Supreme Court and the Eleventh Circuit have instructed district courts to exercise equitable discretion to decide whether to award attorney's fees under 17 U.S.C. § 505. *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 (1994); *Kirtsaeng v. John Wiley & Sons, Inc.*, 136 S. Ct. 1979, 1985 (2016); *Broad. Music, Inc. v. Evie's Tavern Ellenton, Inc.*, 772 F.3d 1254, 1261 (11th Cir. 2014). The Commission cites an unpublished decision from the Southern District of Florida for the proposition that, in copyright cases, attorney's fees "are the rule rather than the exception and should be awarded routinely." [Doc. 55-1 at 3]. But the Supreme Court has repeatedly rejected any interpretation of 17 U.S.C. § 505 that would require a court to award attorney's fees "as a matter of course." *Fogerty*, 510 U.S. at 533; *Kirtsaeng*, 136 S. Ct. at 1985. Instead, the Court recently held that the district court should consider all relevant factors, and give substantial, but not controlling, weight to the objective reasonableness of the losing party's positions. *Kirtsaeng*, 136 S. Ct. at 1988.

Even before *Fogerty*, the Eleventh Circuit had long noted that denying fees to a prevailing party in a copyright case is likely justified where the losing party acted in good faith and the legal issues were complex. *Evans & Assocs. v. Meadows*, 785 F.2d 897, 916 (11th Cir. 1986) (affirming district court's denial of fees where losing parties' claims were "colorable" and of the type that 17 U.S.C. § 505 is intended to encourage); *Sherry Mfg. Co. v. Towel King of Fla., Inc.*, 822 F.2d 1031, 1034-35 (11th Cir. 1985) (district court's finding that losing party brought a colorable claim in good faith would justify denial of fees); *Jacob Maxwell v. Veeck*, 110 F. 3d 749, 754 (11th Cir. 1997); *Mitek Holdings, Inc. v. Arce Eng'g Co., Inc.*, 198 F.3d 840, 842-43 (11th Cir. 1999).  Courts in this district have followed those precedents.  *See, e.g.*, *Brewer-Giorgio v. Producers' Video, Inc.*, 985 F. Supp. 1478, 1484 (N.D. Ga. 1997); *Advanced Tech. Servs., Inc. v. K.M. Docs, LLC*, U.S. Dist. LEXIS 90361, at *5 No. 1:11-cv-3121-TWT (N.D. Ga. June 27, 2013).

**B.    Public Resource's alternative defenses, that the O.C.G.A. is not copyrightable, and that its posting of the O.C.G.A. constituted a fair use were both objectively reasonable.**

> ***i.   Public Resource's defense that all of the O.C.G.A. is in the public domain was objectively reasonable in light of the long line of cases holding that edicts of government cannot be copyrighted.***

It is well-established that federal and state judicial opinions and statutes are in the public domain and not subject to copyright protection.  Accordingly, the Parties stipulated that the Georgia statutes and their statutory numbering in the O.C.G.A. are not copyrightable.  [Doc. No. 17 at ¶ 38].  The central dispute was whether the annotations created by Lexis/Nexis under the Commission's supervision are copyrightable works separate from the statutory text itself.

Public Resource's position that the *entire* O.C.G.A. is an edict of government and a necessary source to understand and use Georgia's laws was supported by language in the O.C.G.A. itself.  One of the first annotations warns that "[a]ttorneys who cite unofficial publications of 1981 code do so at their peril" and that the "Official Code publication controls over unofficial compilations."  Ga. Code Ann. § 1-1-1, note (West 2016).  The Court acknowledged that "this is an unusual case because most official codes are not annotated and most annotated codes are not official."  [Doc. No. 44 at 11].  Public Resource also reasonably argued that, because the Georgia legislature mandated that the O.C.G.A. contain certain specific annotations, the fact that the Commission hired a private publisher to create and maintain those annotations does not separate them from the O.C.G.A. so as to make the annotations independently copyrightable.

Public Resource's alternative position, that the annotations of the O.C.G.A. were not copyrightable under the merger doctrine, was also reasonable under the current state of the law. Under Section 102(b) of the Copyright Act and the merger doctrine, copyright does not protect expression when there is only one way, or so few ways to express an idea, that protecting the expression would effectively protect—and remove from the public domain—the idea itself. *See* 17 U.S.C. § 102(b); *Bellsouth Adver. & Publ'g Corp. v. Donnelly Info. Publ'g, Inc.*, 999 F.2d 1436, 1442 (11th Cir. 1993) (en banc); *Warren Publ'g, Inc. v. Microdos Data Corp.*, 115 F.3d 1509, 1518 n.27 (11th Cir. 1997) (en banc). Despite the Court's finding that there are "a multitude of ways to compile the different annotations throughout the O.C.G.A." [Doc. No. 44 at 14], it was not objectively unreasonable for Public Resource to conclude, and therefore to argue, based on those Eleventh Circuit cases and others, that the annotations (especially the Editor's notes, indexes, and lists of law review articles) are uncopyrightable compilations of uncopyrightable facts that lack sufficient creativity to establish these annotations as original or protectable works within the O.C.G.A.

Because Public Resource's legal position that the annotations were not copyrightable was objectively reasonable given the unusual nature of the O.C.G.A. and the annotations' factual nature, this factor weighs substantially against

- 6 -

awarding the Commission its fees and costs.  *See Kirtsaeng*, 136 S. Ct. at 1986

(adopting the approach of giving substantial weight to the objective reasonableness

of a losing party's litigating positions).

> ### ii. *Public Resource's argument, that posting the O.C.G.A. was a fair use to improve the accessibility of the laws of the State to the public, was not objectively unreasonable.*

As the Court recognized, the fair use doctrine, codified in Section 107 of the

Copyright Act, requires a court to consider four nonexclusive factors:

> (1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit education purposes;
> (2) the nature of the copyrighted work;
> (3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and
> (4) the effect of the use upon the potential market for or value of the copyrighted work.

17 U.S.C. § 107.

As to the first factor, the Commission miscasts Public Resource's argument

as one that Public Resource's purpose in copying entire O.C.G.A. volumes and

encouraging others to do the same was its "alleged desire to teach the public about

Commission's copyrighted works" because Public Resource decided that "the

public needs to be educated."  [Doc. No. 55 at 12].  The Court, however,

recognized the difference between *teaching* and *access*, stating that Public

Resource "purports to provide wider distribution of the annotations."  [Doc. No. 44

at 16].  In fact, Public Resource's only interest in "wider distribution of the *annotations*" is to serve its goal of improving the public's access to the only official code of Georgia—which by the State's own definition is not the official code unless it includes the annotations.

The scope of fair use is also greater when informational—as opposed to more creative—works are involved.  Copyright in a factual compilation like the O.C.G.A. is "thin" and does not extend to the facts themselves.  *Feist Publ'ns., Inc. v. Rural Tel. Serv. Co., 499 U.S. 340 (1991)*; *Bellsouth*, 999 F.3d at 1445. Moreover, most of the annotations—such as indexes, tables, and research references—are even less expressive and more factual than the summaries of judicial decisions and attorney general and state bar opinions.  Public Resource reasonably argued that Lexis/Nexis's selection and arrangement of preexisting facts in the annotations displayed insufficient creativity to be protectable, relying on *Matthew Bender & Co., Inc. v. West Pub. Co*., 158 F.3d 674, 681-82 (2d Cir. 1998).

As to the third factor, Public Resource reasonably argued that its use of 100% of each O.C.G.A. volume, and thus 100% of the annotations, was necessary to achieve its purpose of improving access to the only official code of Georgia.  It relied upon, and cited, a number of cases in which using an entire copyrighted

work for a transformative purpose was held to be fair use, including *Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417, 449-450 (1984); *Authors' Guild v. Google, Inc.*, 804 F.3d 202, 225 (2d. Cir. 2015) (Leval, J), *cert. denied*, No. 15-849, 2016 WL 1551263 (April 18, 2016); *American Inst. of Physics v. Schwegman, Lundberg & Woessner, P.A.*, No. 12-528, 2013 WL 4666330, at *11 (D. Minn. Aug. 30, 2013); *A.V. ex rel v. iParadigms, LLC*, 562 F.3d 630, 639 (4th Cir. 2009); *Swatch Grp. Mgm't. Serv. Ltd. v. Bloomberg L.P.*, 756 F.3d 73, 85 (2d. Cir. 2014); *Authors' Guild, Inc. v. Hathitrust*, 755 F.3d 87, 97 (2d. Cir. 2014).  These cases illustrate that the *purpose* of using an entire work is relevant to whether that factor weighs in favor of a finding of fair use.  Here, Public Resource's purpose in scanning and posting the O.C.G.A. was not merely to educate the public about the code.  It was also to facilitate scholarship, criticism and analysis of the official code, and to encourage public engagement with the law, indeed so that people will be able to use the Internet and programming skills to create other websites that make the O.C.G.A. even more useful to Georgia's citizens and the general public.

The fourth fair use factor is "the effect of the use upon the potential market for, or value of the copyrighted work."  17 U.S.C. § 107(4); *Campbell*, 510 U.S. at 590.  The Eleventh Circuit has held that the scope of fair use in a given case, and whether the secondary use has injured the market for the copyrighted work, is an

*evidentiary* question.  *Cambridge Univ. Press v. Patton*, 769 F.3d 1232, 1258, 1276 (11th Cir. 2014) (affirming finding that use did not injure the market for plaintiffs' works where publishers offered no evidence showing that they lost any book sales due to defendant's use).  Here, the Commission offered no actual *evidence* of injury from the availability of the O.C.G.A. on the Internet; it only *argued* that injury was inevitable.  Therefore, Public Resource was objectively reasonable in contending that most or all of the fair use factors weighed in favor of a finding of fair use.

**C.    Public Resource's motivations were first, to improve access and usability of the State's only official code, and second, to engage Georgia's legislators in a dialogue about those goals.**

Public Resource's posting of the O.C.G.A., and its litigation positions were primarily motivated by its mission to improve public access to sources of law such as the O.C.G.A. and to encourage others to make the law more useful for the public.  Secondarily, Public Resource invited Georgia's legislators to engage in a dialogue about how legislators and the Commission could improve Georgia's citizens and the general public's access to the O.C.G.A.

- 10 -

The Commission contends that Public Resource's motivation was, instead, to provoke the State to litigate[1] or "force the Commission to capitulate and adopt Public Resource's ideas." [Doc. No. 55-1 at 6]. The Commission complains of Public Resource's "planning and soliciting funds for its infringement" and "taunting the Commission to file a lawsuit by informing it of Public Resource's infringement." [*Id.* at 8].

The Commission's hyperbole is contradicted by the record. First, Public Resource did not inform the Commission of its "infringement" because Public Resource has consistently taken the position that the O.C.G.A. is in the public domain. The very letter the Commission selectively quotes as evidence of "taunting the Commission to file a lawsuit" states Public Resource's primary motivation for scanning and posting the O.C.G.A. volumes: "Our purpose in making these statutes available is to promote access to the law by citizens and to promote innovation in ways the statutes are made available so that public servants, members of the bar, citizens, and members of the business community have ready access to the laws that govern them." [Doc. No. 17-3; Doc. No. 29-3 at ¶ 45]. The

---

[1] While the Commission asserts, without citing any facts or law, that it had a fiduciary duty to file suit to "defend" its copyrights in the annotations or else it would be derelict in that duty, the Commission nevertheless waited several years after Public Resource scanned and posted the O.C.G.A., and after it declined to cease and desist, to file this action.

letter continues: "Access to the law is a fundamental aspect of our system of democracy, an essential element of due process, equal protection, and access to justice." [*Id.*]  Public Resource brought its scanning, posting and distribution of the O.C.G.A. to the attention of Georgia's legislature to invite a dialogue, hoping to encourage—not force—the Commission and the legislature to leverage the power of the Internet to improve its citizens' access to the laws that govern them. Public Resource's founder, Carl Malamud, testified in his declaration about his successful dialogues with Oregon, the District of Columbia and the city of Chicago, each of which made their laws more accessible and useful to the public after engaging in constructive discussions with Public Resource.  [Doc. No. 29-3 at ¶¶ 34-41].  Thus, Public Resource's motivation was not only in good faith but in the furtherance of the common good, even if it did not ultimately prevail.

The Commission also asserts that "Public Resource's motivation was to challenge both the laws of the State of Georgia and federal copyright law." [Doc. 55-1 at 5].  This is overreaching and incorrect.  Both of Public Resource's defenses *relied* on federal copyright law.  Specifically, Public Resource relied on federal case law and guidance from the Copyright Office holding that edicts of government are not subject to copyright. [Doc. No. 16 at ¶ 20 and ¶¶ 42-50]; [Doc. No. 29-2 at 5-10].  It also relied on 17 U.S.C. § 102(b), excluding from copyright

"ideas" and "principles," among other things, and on an 11th Circuit case holding that that facts and obvious organizations of facts in case reporters are not copyrightable.  [Doc. No. 29-2 at 11-12].  Finally, it relied on 17 U.S.C. § 107, which codifies the fair use defense. [Doc. No. 16 at ¶¶ 51-53 [Doc. No. 29-2 at 13-23].  Second, Public Resource did not challenge the laws of the State of Georgia.  On the contrary, it relied on statements in the O.C.G.A. that those who rely on other, unofficial compilations for Georgia statutes do so at their peril.  [Doc. No. 29-2 at 10].  The Commission's allegation of "challenging Georgia's law" may refer to sessions laws that provide that the O.C.G.A.'s annotations are not enacted as statutes.  But Public Resource did not challenge those laws or ask the Court to hold that the annotations *themselves* have the force of law.  Instead, it argued that those sessions laws do not make the annotations separate, copyrightable works.  Instead, Public Resource argued that the annotations are in the public domain along with the rest of the O.C.G.A, an uncopyrightable work because the annotated code is the only official code of the State of Georgia.  [Doc. No. 29-2 at 8-9].  Additionally, the Commission's argument that Public Resource's motivation was to goad the Commission into suing it is highly speculative and should not weigh in favor of awarding fees and costs.  *See Advanced Tech. Servs.*, U.S. Dist. LEXIS 90361, at *5, (N.D. Ga. 2013) (denying motion for fees where, among other things,

- 13 -

the prevailing party's argument that the losing plaintiff sued simply to harass the defendants was "very speculative."). For all these reasons, Public Resource's motivation weighs against an award of attorney's fees and costs.

### D. Public Resource did not willfully infringe the State's copyright in the annotations.

The Commission also asserts that Public Resource *willfully* infringed Georgia's copyright because it readily admitted deliberately copying and distributing the O.C.G.A. [Doc. No. 30-1 at 8]. The Court, in contrast, recognizes that Public Resource's position has *always* been that the entire O.C.G.A. works, including the annotations, are not copyrightable because they are government edicts, because the O.C.G.A. is the only official code of Georgia. [Doc. No. 44 at 11]. That the Court held otherwise does not make Public Resource a willful infringer. The Court did not reach the issue of whether Public Resource willfully infringed copyrights in the annotations. [Doc. No. 44, *passim*].

The Commission relies on *Cable/Home Commc'n Corp. v. Network Prods. Inc.*, 902 F.2d 829 (11th Cir. 1990) for its position that an infringer's willfulness weighs heavily in favor of awarding fees. The defendants' conduct in that case, however, was strikingly different and egregious compared with that of Public Resource. *Cable/Home* concerned "the recurring problem of piracy of satellite television programming." *Id.* at 834. There was no dispute that the defendants

knew their for-profit sales of pirate chips were both infringing and illegal because they informed potential purchasers of those facts. *Id.* at 837. Additionally, the defendants continued promoting pirate chips despite the Court's issuance of a preliminary injunction. *Id.* at 839. Here, Public Resource had a good faith belief that the works it copied were not subject to federal copyright law, and an objectively reasonable basis for that belief. Thus, *Cable/Home* offers no support for the Commission's argument that the Court should award attorney's fees in this very different action.

### E. An award of attorney's fees and costs is unwarranted because litigation of meritorious arguments like Public Resource's furthers the interests of the Copyright Act.

"The touchstone of attorney's fees under § 505 is whether imposition of attorney's fees will further the interests of the Copyright Act . . . ." *Mitek Holdings*, 198 F.3d at 842. Those interests are furthered "by encouraging the raising of objectively reasonable claims and defenses, which may serve not only to deter infringement but also to ensure 'that the boundaries of copyright [are] demarcated as clearly as possible' in order to maximize the public exposure to valuable works." *Id.* at 843-43 quoting *Fogerty*, 510 U.S. at 526-27. "When close infringement cases are litigated, copyright law benefits from the resulting clarification of the doctrine's boundaries." *Lotus Dev. Corp. v. Borland Int'l, Inc.*,

- 15 -

140 F. 3d 70, 75 (1st Cir. 1998) (the need to encourage meritorious defenses is a factor a district court may consider); *see also Mitek Holdings*, 198 F.3d at 142 (vacating district court's fee award and remanding because the district court did not assess whether the imposition of fees would further the goals of the Copyright Act).

As the Court acknowledged, this is an unusual case because most official code are not annotated and most annotated codes are not official. Both parties' briefs illustrate that there have been few cases dealing with copyrightability of portions of official codes.

The Commission argues that an award of fees is needed because without one, Public Resource and other parties will be encouraged to infringe copyrights. But because this Court rejected Public Resource's arguments that copyright cannot protect annotations that are part of Georgia's only official code, and rejected its fair use defense, it cannot be disputed that the Court's ruling on Public Resource's litigation positions more clearly demarcates the boundaries of copyright. Therefore, the Court's decision, holding that such annotations are independently copyrightable, will deter future copying and distribution of official state codes that are annotated, even without an award of fees.

It is not clear why the Commission, for the proposition that a party's bad faith, frivolity, unreasonableness or willful wrongdoing weigh heavily in a court's consideration, cites dicta in *White v. Alcon Film Fund*, LLC, No. 1:13-CV-1163-TCB, 2015 WL 11199163, at * 4 (N.D. Ga. Jan. 30, 2015).  In that copyright case, the court *denied* a prevailing party's motion for fees and costs, reasoning "there is little need to deter claims brought in good faith with a sufficient, albeit ultimately unsuccessful, factual basis." *Id.* at*3.  That court, like the *Mitek Holdings* court, concluded that it does not promote the purposes of the Copyright Act to award fees against a party that has advanced a reasonable, yet unsuccessful claim.  *Id.*  On the contrary, "the purposes of the Copyright Act are well-served by the litigation of meritorious arguments" even if they do not survive summary judgment.  *Id.*

Despite the Commission's assertion that without an award of attorney's fees, Public Resource and similar third parties "will be encouraged to flagrantly violate copyright laws," the Commission points to no other parties copying and posting annotated codes, either before or after this Court's decision granting the Commission's motion for partial summary judgment.  There is no dispute that, upon learning of the Court's order, Public Resource immediately took down all versions of the O.C.G.A. from its website and any other website within its possession, custody or control, and joined with the Commission in moving for

- 17 -

entry of an injunction.  [Doc. No. 45].  This is strong evidence that an award of attorney's fees, in addition to the Court's decision, is not needed for deterrence.

The Commission's allegation that Public Resource is "in the business of challenging laws and targeting entities like the Commission" ignores Public Resource's primary mission of improving access to public domain sources of law. The Commission next asserts that attorney's fees are necessary in this action because '"defendants must not be able to sneer in the face of copyright owners and copyright laws"' quoting *Cable/Home*, 902 F.2d at 851, quoting *International Korwin Corp. v. Kowalczyck*, 855 F.2d 375, 383 (7th Cir. 1988).  But the "sneering" in *Cable/Home* was by defendants who sold pirate chips for stealing cable television broadcasts, for profit, knowing full well that the pirate chips violated the Copyright Act.  Additionally, the *Cable/Home* court used the "sneer" quotation in the section of its opinion affirming the district court's decision to award increased statutory damages—not attorney's fees—under 17 U.S.C. § 504 (c)(2).  Here, there is no evidence in the record that Public Resource used the O.C.G.A. intending to violate copyrights in the annotations for profit.  On the contrary, Public Resource for years expounded on its reasons for concluding that the O.C.G.A. is in the public domain.

The Commission repeatedly accuses Public Resource of "flagrantly violating copyright laws "simply because they believe they 'know better'" or "to advance its 'cause' through flagrant violation" [Docket No. 55-1 at 4, 14].  Similarly, the Commission repeatedly asserts that Public Resource's legal theories are based on its own views of what the law should be or the format a sovereign state should use to publish its laws [*Id.* at 5, 12].  It seems to offer two undisputed facts in support of these characterizations: (1) that Carl Malamud campaigned, unsuccessfully, to be appointed U.S. Public Printer and (2) that Public Resource advocated for an amendment to the U.S. Copyright Act to state that state and local official legal documents are not copyrightable for reasons of public policy.

Neither of these facts is evidence that Public Resource is inciting lawsuits because its advocacy efforts have "failed."  Mr. Malamud's interest in serving as Public Printer in the Obama administration had nothing to do with Public Resource's posting of the O.C.G.A.  Both efforts are merely examples of Mr. Malamud's efforts to make primary legal materials readily available to the public. Public Resource advocated, and continues to advocate, for an amendment of the Copyright Act, not to *change* the scope of copyright law, but to provide in the Copyright Act, expressly, what federal common law *already* provides.  While the Commission calls this a failed effort, and implies that the proposed amendment

- 19 -

was nothing more than wishful thinking, it was supported by dozens of law professors from some of the nation's most prestigious universities.  That the amendment was not enacted after Mr. Malamud advocated for it proves nothing: partisan gridlock in Washington has prevented the passage of any significant copyright law revision, or, for that matter, nearly any other significant federal legislation, in recent years.

Finally, the Commission claims that Public Resource "has a history of inciting copyright litigation" because it is currently a defendant in two other copyright infringement suits arising from its posting of copyrighted safety standards.  But being a defendant in several lawsuits is not evidence of inciting litigation.  For example, companies perceived to have deep pockets are regularly sued by dozens of patent trolls, yet they are never accused of inciting patent litigation by going about their business.  The Commission's accusation also ignores that Public Resource has been placing federal materials and state and municipal codes on its website more than a decade.  If posting these primary legal materials constituted "inciting copyright litigation," it would be surprising that so *few* copyright holders have filed suit against Public Resource.

Finally, the Court can consider that throughout this litigation, the Commission has tried to influence the Court's analysis of the parties' legal

- 20 -

arguments through personal attacks on Public Resource and its founder.  Its complaint accused Public Resource of employing a strategy of "terrorism" to force government entities to publish documents on Mr. Malamud's terms.  [Doc. No. 11 at ¶ 20].  Its current moving papers are peppered with similar inappropriate invective.  For its part, Public Resource has never stooped to this level.  Moreover, Public Resource, whenever possible, stipulated to facts that the Commission, as plaintiff, would otherwise have had to prove, and also stipulated to a permanent injunction, minimizing the Commission's attorney's fees and costs.  The Court would be entitled to consider the parties' respective litigation conduct as part of all the circumstances relevant to the Commission's request for an award of fees and costs.

### F.      The Commission's request for fees and costs of a quarter million dollars is patently unreasonable.

If the Court grants the Commission's motion, Public Resource submits that the Commission's requested award is unreasonable.  This action concerned essentially the Commission's one claim for injunctive relief for copyright infringement and Public Resource's defenses.  It is difficult to understand how the Commission incurred the staggering amount of $250,000 when this matter involved only drafting two complaints and a stipulation, and briefing cross motions for summary judgment.  [Doc. Nos. 1, 10, 11, 17, 29, 30, 33, 34, 40, 43].  The

- 21 -

parties propounded minimal paper discovery, produced fewer than 2,000 pages of documents, and took no depositions. There were no discovery disputes or hearings. The parties were able to stipulate to numerous facts not in dispute [Doc. No. 17], streamlining the briefing of the cross-motions for summary judgment and partial summary judgment.

Public Resource is dismayed to see the State spend approximately a quarter million of the taxpayer's dollars to prevent its own citizens and the general public being able to access the full O.C.G.A. online for free and to use it as they see fit. This is especially wasteful where the State failed to introduce any evidence of actual injury, to itself or even to its publisher, from Public Interest's posting. Public Resource hopes the Court will closely scrutinize the Commission's counsel's specification and itemization of the requested award, including time records, to determine whether the requested fees and costs are truly reasonable.

### III.  CONCLUSION

For the reasons set forth above, the Court should deny the Commission's motion for an award of attorney's fees and other costs.

Respectfully submitted this 5th day of May, 2017.


By:  /s/ *Elizabeth H. Rader*
       Sarah P. LaFantano
       Georgia Bar No. 734610
       sarah.lafantano@alston.com
       ALSTON & BIRD LLP
       One Atlantic Center
       1201 West Peachtree Street
       Atlanta, GA  30309-3424
       Telephone 404-881-7461
       Fax (404) 253-8861

       Elizabeth H. Rader
       *Admitted pro hac vice*
       elizabeth.rader@alston.com
       ALSTON & BIRD LLP
       950 F Street, NW
       Washington, DC 20004
       Telephone:  202-239-3008
       Fax: (202) 239-3333

       *Attorneys for Defendant*
       *Public.Resource.Org, Inc.*

LEGAL02/37166208v4

CODE REVISION COMMISSION on          )
Behalf of and For the Benefit of the  )
GENERAL ASSEMBLY OF                  )   **CIVIL ACTION**
GEORGIA and the STATE OF             )
GEORGIA,                             )   **FILE NO.   1:15-CV-2594-MHC**
                                )
     Plaintiff, )
v.                                   )
                                )
PUBLIC.RESOURCE.ORG, INC.,           )
 
     Defendant.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I have electronically filed the foregoing **Defendant's**

**Memorandum of Law In Opposition to Plaintiff's Motion for an Award of**

**Attorney's Fees and Other Costs** with the Clerk of Court using the CM/ECF

system which will automatically send notification of such filing to all attorneys of

record.


*/s/ Elizabeth H. Rader*
Elizabeth H. Rader