# EXHIBIT 3

# AN EDICTS OF GOVERNMENT AMENDMENT

Testimony of
Carl Malamud, Public.Resource.Org

Before the House Judiciary Committee
U.S. House of Representatives

PRO-000003



# An Edicts of Government Amendment

PRO-000005

*https://public.resource.org/edicts/*

Cover art courtesy of Library of Congress
Greek Tablets. Wady Kardassy.
Francis Frith, Photographer.
Between 1856 and 1860.
*http://hdl.loc.gov/loc.pnp/ppmsca.04485*

CC-Zero, No Rights Reserved.
*http://creativecommons.org/publicdomain/zero/1.0/*

*Last Revised January 17, 2014*

PRO-000006

# An Edicts of Government Amendment

Testimony of Carl Malamud, Public.Resource.Org
Hearings on Review of U.S. Copyright Law

House Judiciary Committee

Courts, Intellectual Property, and the Internet Subcommittee

U.S. House of Representatives

January 14, 2014

PRO-000007

PRO-000008

Chairman Goodlatte, Subcommittee Chairman Coble, Ranking
Member Conyers, and members of the Committee. Thank you
for the opportunity to provide to you this testimony on the subject
of edicts of government. In this testimony, I will:

1. Review the long-standing doctrine in the common law
   that edicts of government have no copyright because
   such court opinions, statutes, regulations, and other
   pronouncements of general applicability belong to the
   people.

2. Discuss the legal threats that my non-profit,
   Public.Resource.Org, faces from several states for
   copying and posting their state laws online.

3. Discuss similar threats that Public.Resource.Org faces for
   posting public safety codes incorporated by reference into
   federal and state law.

4. Discuss why making the law available is not a threat to
   the business models of standards bodies and codification
   companies and why making these laws available is
   essential to promote innovation and the rule of law.

5. Propose a simple amendment to the Copyright Act to bring
   it into line with long-standing Supreme Court precedent
   and with public policy.

PRO-000009

## 1. Edicts of Government and the Rule of Law

Edicts of government are the rules of general applicability by which we choose to govern ourselves as a society. When John Adams said we are "an empire of laws, and not of men,"[1] he meant that our democracy is based on public laws that we all know, not on the arbitrary actions taken in star chambers or smoke-filled back rooms.

That ignorance of the law is no excuse is a principle firmly rooted in the law, a principle that can only be true if our laws are public.[2] All modern democracies are based on the doctrine of the rule of law, a doctrine firmly embedded in our common law, enshrined in international treaties, and one of the underpinnings of the constitutions of the United States and other nations.[3]

Legal scholars rarely agree on a single point, but on the idea that the law must be promulgated to be effective, they are unanimous. Professor Tamahana, for example, in his standard text on the subject stated, "Citizens are subject only to the law,

---

[1] John Adams, *Thoughts on Government* in Revolutionary Writings, 1775-1783 (Library of America: 2011), p. 48.

[2] The doctrine of *ignorantia legis neminem excusat* has been repeatedly affirmed. *See, e.g.,* United States v. International Minerals & Chem. Corp., 402 U.S. 558, 563 (1971). ("The principle that ignorance of the law is no defense applies whether the law be a statute or a duly promulgated and published regulation.")

[3] *See* Carl Malamud, 12 Tables of Code, January 7, 2013. https://law.resource.org/pub/12tables.html

not to the arbitrary will or judgment of another who wields coercive government power. This entails that the laws be declared publicly in clear terms in advance."[4] That is why, going back to ancient times, societies that replaced the rule of tyrants with the rule of law prominently displayed the laws in public places for all to see, a point made so well by Senator Robert C. Byrd in his classic lectures on Roman history delivered on the floor of the U.S. Senate.[5]

The issue is about access to justice and equal protection, but having the laws accessible and the rules known to all is also essential to the proper functioning of our market economy. Lord Bingham, in his essay on the rule of law, stated "The law must be accessible...the successful conduct of trade, investment and business generally is promoted by a body of accessible legal rules governing commercial rights and obligations."[6]

The ability to know the law—to read the law—is essential to the functioning of our democracy. But the principle goes even further. Citizens must have the right to speak the law. The First Amendment right to freedom of speech is imperiled if citizens

---

[4] Brian Z. Tamanaha, On the Rule of Law: History, Politics, Theory (Cambridge Univiversity Press, 2004), p. 34. The classic statement of the doctrine is A.V. Dicey, Introduction of the Law of the Constitution (1885, reprinted by Liberty Fund: 1982).

[5] Robert C. Byrd, The Senate of the Roman Republic: Addresses on the History of Roman Constitutionalism (U.S. Government Printing Office, 1995), pp. 33, 128, 135. Public.Resource.Org has also made these lecture available on YouTube. http://www.youtube.com/playlist?list=PL1E1633114E0E358F

[6] Thomas Henry Bingham, The Rule of Law (Penguin Press: 2011), pp. 37–38.

are barred from freely communicating the provisions of the law.[7] By the same token, equal protection of the laws and due process are jeopardized if some citizens can afford to purchase access to the laws that all of us are bound to obey—with potential criminal penalties for non-compliance—but others cannot.[8] Access to justice should not require a Gold Card.

In the United States, the question of whether edicts of government are subject to copyright was first addressed in 1834 by the Supreme Court in the landmark case of Wheaton v. Peters.[9] Henry Wheaton served as the reporter of opinions of the court, a job he performed with great distinction. When he resigned to pursue a career in international diplomacy, he was succeeded by Richard Peters.[10] Peters started to publish a comprehensive set of reports of Supreme Court opinions. Among his innovations were the fact that his reports were significantly cheaper than those issued by Wheaton. Wheaton

---

[7] *Cf.* Nieman v. VersusLaw, Inc., No. 12-2810 (7th Cir. Mar. 19, 2013). ("The First Amendment privileges the publication of facts contained in lawfully obtained judicial records, even if reasonable people would want them concealed.")

[8] *Cf.* Harper v. Va. State Bd.of Elections, 383 U.S. 663, 666 (1966). (A state violates the Equal Protection Clause "whenever it makes the affluence of the voter or payment of any fee an electoral standard"); *See also* Magna Carta cl. 29 (1297). ("We will sell to no man, we will not deny or defer to any man either Justice or Right.")

[9] Wheaton v. Peters, 33 U.S. (8 Pet.) 591 (1834). https://law.resource.org/pub/us/case/reporter/US/33/33.US.591.html

[10] Craig Joyce, *Reporters of Decisions of the Supreme Court of the United States*, University of Houston Law Center No. 2005-A-11. http://papers.ssrn.com/sol3/papers.cfm?abstract_id=800884

sued, claiming the reports issued under his tenure were subject to copyright and Peters should be prohibited from publishing.

The Court ruled that there could be no copyright in its opinions, because the law belonged to all of the people, not to the justices and certainly not to their clerks or reporters:

> It may be proper to remark that the court are unanimously of opinion, that no reporter has or can have any copyright in the written opinions delivered by this court; and that the judges thereof cannot confer on any reporter any such right.[11]

That matter of public policy has been repeatedly reaffirmed. In Banks v. Manchester, the Supreme Court ruled that:

> Judges, as is well understood, receive from the public treasury a stated annual salary, fixed by law, and can themselves have no pecuniary interest or proprietorship, as against the public at large, in the fruits of their judicial labors. This extends to whatever work they perform in their capacity as judges, and as well to the statements of cases and headnotes prepared by them as such, as to the opinions and decisions themselves. The question is one of public policy, and there has always been a judicial consensus, from the time of the decision in the case of Wheaton v. Peters, 8 Pet. 591, that no copyright could,

---

[11] Wheaton v. Peters, *op. cit.*

*Edicts of Government*

under the statutes passed by congress, be secured in the
products of the labor done by judicial officers in the
discharge of their judicial duties. The whole work done
by the judges constitutes the authentic exposition and
interpretation of the law, which, binding every citizen, is
free for publication to all, whether it is a declaration of
unwritten law, or an interpretation of a constitution or a
statute.[12]

Since the 1960s, our modern society has become
increasingly more technical and our legal system has
accelerated the use of technical public safety codes that are
mandated by law. These public safety codes govern building,
electrical, plumbing, fire, elevator, fuel and gas, mechanical,
and plumbing safety. These laws touch our daily lives in ways
that are often much more direct than many of the
pronouncements of the courts or Congress.

In 2002 in Veeck v. Southern Building Code Congress, the
U.S. Court of Appeals for the Fifth Circuit considered the issue
of building codes and copyright, and firmly affirmed the
principle that:

Public ownership of the law means precisely that "the
law" is in the "public domain" for whatever use the

---

[12] Banks v. Manchester, 128 U.S. 244 9 S.Ct. 36 32 L.Ed. 425 (1888) quoting
Nash v. Lathrop, 142 Mass. 29, 35, 6 N. E. Rep. 559 (1886). https://
law.resource.org/pub/us/case/reporter/US/128/128.US.244.html

citizens choose to make of it. Citizens may reproduce copies of the law for many purposes, not only to guide their actions but to influence future legislation, educate their neighborhood association, or simply to amuse.[13]

The principle is clear. The law must be available to all. But the principle—despite long-standing Supreme Court precedent—has increasingly been ignored in practice. This is why congressional action is needed.

## 2. State Laws

In 2013, Public.Resource.Org began publishing official state and municipal codes. In the case of municipal codes, our efforts have been greeted with open arms.[14] For example, we were able to make bulk data from the Chicago Municipal Code available, including quarterly snapshots of the code from 2007 onwards.

Once the data became available, the nonprofit OpenGov Foundation, on its own initiative, built a new web site. If you compare what this nonprofit built at ChicagoCode.Org with

---

[13] Veeck v. Southern Building Code Congress International, Inc., 293 F.3d 791 (5th Cir. 2002). https://law.resource.org/pub/us/case/reporter/F3/293/293.F3d.791.99-40632.html

[14] *See* Cory Doctorow, *City of Chicago and Public-Spirited Hackers Unveil the Chicago City Code,* Boing Boing, November 17, 2013, http://boingboing.net/2013/11/17/city-of-chicago-and-public-spi.html *See also* Tom Lee, *The D.C. Code is Open —Come Hack on It!,* Sunlight Foundation, April 4, 2013, http://sunlightfoundation.com/blog/2013/04/04/the-dc-code-is-open-come-hack-on-it/

what was previously available from the city,[15] you will see how
dramatic the difference is. The version built by the nonprofit is
much easier to navigate, and there are permanent bookmarks
for each section of the code so you can email somebody a link
and they can see the same section you saw. The HTML code
underlying ChicagoCode.Org is valid, which means it works
properly on all browsers. ChicagoCode.Org is available in
bulk so anyone can take this improved data and make their own
even better web site. This flourishing of innovation was warmly
welcomed by the Honorable Susana Mendoza, the City Clerk of
Chicago.

Similar results happened in the District of Columbia when
we made the bulk code available. Several volunteers worked
with the bulk data and produced DCcode.Org, a site
dramatically better than the official site provided by the
vendor.[16] The site provided by the volunteers has valid HTML
code, permanent bookmarks, and significantly better
navigation and user interface. The site provided by the official
vendor imposes major restrictions as part of its terms of
service, and it is not based on valid HTML code so it does not
work properly in modern browsers and is even worse on

---

[15] The official web site is maintained for the City of Chicago by American
Legal Publishing. http://www.amlegal.com/library/il/chicago.shtml *Cf*
Chicago Decoded. http://chicagocode.org/

[16] The District of Columbia contracts with LexisNexis for its codification
services, who provide a primitive web site. http://www.lexisnexis.com/
hottopics/dccode/ *Cf.* DCcode. http://dccode.org/

tablets and smartphones. The official site suffers from a huge
number of accessibility and validity issues.

It is clear that by making municipal codes available,
innovation flourishes and citizens are able to access their laws
in new and better formats. The same should be true for official
state codes. As part of our efforts, we purchased and posted
online the official codes from Arkansas, Colorado, Georgia,
Idaho, and Mississippi. That effort has not been so well
received by authorities.

On May 30, 2013, we posted the Official Idaho Code and
sent a copy with a letter to the Honorable Scott Bedke, Speaker
of the House of the Idaho State Legislature.[17] We posted the
data on our site for bulk access, and also loaded the full code
onto the nonprofit Internet Archive site.[18] Speaker Bedke never
answered our letter, but he did hire an outside law firm, which
sent a sternly worded takedown letter demanding the
immediate removal of the Official Idaho Code from the
Internet.[19]

---

[17] Letter from Carl Malamud, Public.Resource.Org, to Hon. Scott Bedke,
Idaho State Legislature, May 30, 2013. https://law.resource.org/pub/us/
code/id/id.gov.20130530.pdf

[18] Internet Archive, Official State Codes Collection. https://archive.org/
details/govlaw

[19] Letter from Bradlee R. Frazer on behalf of the Idaho State Legislature to
Carl Malamud, Public.Resource.Org, July 12, 2013. https://
law.resource.org/pub/us/code/id/id.gov.20130712.pdf

The position of the State of Idaho is that the Official Idaho Code consists of two components: the statutes and annotations to the statutes. For the core statutes, the State of Idaho demanded that we first obtain a license before making any copies of its laws. Annotations to the statutes, which are prepared under authority of the Legislative Counsel of the State and for which copyright is claimed by the state, include the statutory history and statutory notes. For these annotations, the position of the State is that "reproduction and display...will not be tolerated."[20]

We should be very clear that if the publication of an annotated version of the Official Idaho Code were the independent endeavor of some commercial enterprise, we would fully support and embrace the idea that the work is copyrighted. However, if one goes to the site of the Idaho State Legislature and clicks on the Official Code links, one is directed to either the free vendor site, which is very poor, or sales literature attempting to extract $547 from Idaho residents.[21] The copyright is claimed by the State of Idaho, the work is produced under the direct supervision and control of the Idaho Legislative Counsel, and it is the "only official source" for the

---

[20] *Ibid.*

[21] Public.Resource.Org paid $913.31 on April 9, 2013 for the Official Idaho Code. https://law.resource.org/rfcs/lexis.com.20130409.pdf

law of Idaho.[22] It is clearly an edict of government, not a private work.

In response to Speaker Bedke, we respectfully declined to comply with the sternly-worded letter from his outside counsel.[23] To date, the State of Idaho has not pursued legal action against us, but we live under a cloud fearing that any day the state may take us to court. Because of the 11th Amendment, we are prohibited from seeking declaratory relief in U.S. District Court to clear this threat that looms over us.[24]

We have received a similar threat of legal action from the General Assembly of Georgia for posting the Official Code of Georgia Annotated.[25] When we respectfully declined to remove the Official Code,[26] the State continued to pursue the matter

---

[22] LexisNexis, Idaho Code. ("Smart Idaho practitioners turn to LexisNexis' Idaho Code as the only official source in Idaho for primary law.") http://www.lexisnexis.com/store/catalog/booktemplate/productdetail.jsp?prodId=6981

[23] Letter from Carl Malamud, Public.Resource.Org, to Hon. Ben Ysura, Secretary of State of Idaho, July 15, 2013. https://law.resource.org/pub/us/code/id/id.gov.20130715.pdf

[24] U.S. Const. Amend. XI. (The 11th Amendment establishes sovereign immunity and prohibits "any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.")

[25] Letter from Hon. Josh McKoon, Georgia State Senate, to Carl Malamud, Public.Resource.Org, July 25, 2013. https://law.resource.org/pub/us/code/ga/ga.gov.20130725.pdf

[26] Letter from Carl Malamud, Public.Resource.Org, to Hon. Josh McKoon, Georgia State Senate, July 30, 2013. https://law.resource.org/pub/us/code/ga/ga.gov.20130730.pdf

with threats to "pursue all available remedies."[27] We received
a similar threat from Mississippi.[28]

When a license is required to post the official laws of a state,
innovation suffers. Civic-minded volunteers, such as those who
built the beautifully improved municipal code sites for Chicago
and the District of Columbia, are prohibited from working their
magic. Volunteers who wish to provide sites that compare laws
among the fifty states are prohibited from basing their work on
the official code for fear of angry state officials anxious to
"pursue all official remedies."

States such as Idaho, Georgia, and Mississippi are in the
minority when it comes to state statutes.[29] Those states that have
not exercised such misguided attempts at control have been
able to see the results clearly. In Virginia, for example, a civic-
minded volunteer named Waldo Jaquith put together a site at

---

[27]Letter from Hon. Josh McKoon, Georgia State Senate, to Carl Malamud,
Public.Resource.Org, August 15, 2013. https://law.resource.org/pub/us/
code/ga/ga.gov.20130815.pdf

[28]Letter from Larry A. Schemmel, Special Assistant Attorney General of
Mississippi, to Carl Malamud, Public.Resource.Org, October 7, 2013.
https://law.resource.org/pub/us/code/ms/ms.gov.20131007.pdf

[29] While a few states assert copyright over state statutes, at least 25 states
attempt to assert some kind of copyright control over legal materials such as
state regulations or court opinions. See Tina S. Ching and Emily Feltren,
Update on the National Inventory of Legal Materials, American Association of
Law Libraries, February 1, 2012. http://blog.law.cornell.edu/voxpop/
2012/02/01/protecting-access-one-entry-at-a-time-an-update-on-the-
national-inventory-of-legal-materials/

VaCode.Org with a markedly better version of the Code of
Virginia than the official version provided by the State.[30]

Mr. Jaquith, a former aide in the Obama White House,
developed the States Decoded format[31] and released all his
tools as open source code with no rights reserved, supported
by a small grant from the Knight Foundation.[32] Those tools were
in turn used by the OpenGov Foundation, which is staffed by
former senior aides to Congressman Issa, to develop the
Chicago Decoded site.

The effort to make our laws available is nonpartisan, and we
work across the aisles and across the country. There is a
growing community of citizens eager to undertake this work,
but states such as Georgia, Idaho, and Mississippi have spread
fear, uncertainty, and doubt sufficient to throw a deep chill on
their ardor.

While it is clear that the law has no copyright, a few states
have evidently not received the memo. Their motives for
asserting copyright are perhaps rooted in historical artifact, or
are perhaps based on a desire to preserve the business models

---

[30] State of Virginia, Legislative Information System, Code of Virginia. http://
lis.virginia.gov/cgi-bin/legp604.exe?000+cod+TOC *Cf* Virginia Decoded.
http://vacode.org/

[31] Waldo Jaquith, The State Decoded: Legal codes, for humans. http://
www.statedecoded.com/

[32] Knight Foundation, The State Decoded, 2011 Knight News Challenge.
(Amount: $165,000) http://www.knightfoundation.org/grants/20110158/

of their vendors. No matter what the motive, those who copy the official codes are subject to threats of prosecution. Those threats are clearly groundless and violate long-standing Supreme Court precedent, but the threats are real and they have a substantial chilling effect on efforts to speak the law to inform citizens of their rights and obligations.

## 3. Public Safety Codes

Some of the most important rules in our modern society are technical public safety codes with the force of law. These public safety codes cover fire, electrical, building, plumbing, mechanical, fuel & gas, elevator, and boiler safety and many other topics and are mandated by law by cities, counties, states, and the federal government.

When these public safety codes are ignored, the results are catastrophic. We saw those consequences when the Texas City refinery exploded in 2005 with such force that windows 3/4 mile away shattered from the impact. The explosion was the result of hundreds of violations of federal laws mandated by public safety codes.[33] We saw those consequences when a natural gas explosion in San Bruno, California, resulted in a wall of flame 1,000 feet high, an explosion caused by numerous

---

[33] U.S. Chemical Safety and Hazard Investigation Board, *Investigation Report: Refinery Explosion and Fire,* Report No. 2005-04-I-TX, March, 2007. http://www.csb.gov/assets/1/19/CSBFinalReportBP.pdf

Case 1:15-cv-02594-RWS   Document 58-3   Filed 05/22/17   Page 22 of 62

violations of pipeline standards.[34] We saw those consequences in Bangladesh with the devastating and horrifying Tazreen Factory fire[35] and Rana Plaza collapse.[36]

Public safety codes touch us all. The codes are often developed by nonprofit organizations dedicated to developing standards in a particular area and having them incorporated by law. This public-private partnership is enshrined in federal policy. The National Technology Transfer Act of 1995[37] as implemented in OMB Circular No. A-119[38] "directs agencies to use voluntary consensus standards in lieu of government-unique standards except where inconsistent with law or otherwise impractical." This policy is a recognition of the high quality of the technical standards produced by Standards Development Organizations (SDOs) in the United States. A

---

[34] National Transportation Safety Board, *Pacific Gas and Electric Company Natural Gas Transmission Pipeline Rupture and Fire,* NTSB/PAR-11/01, PB2011-916501. http://www.ntsb.gov/doclib/reports/2011/PAR1101.pdf

[35] Julfikar Ali Manik and Jim Yardley, *Bangladesh Finds Gross Negligence in Factory Fire,* New York Times, December 17, 2012. http://nytimes.com/2012/12/18/world/asia/bangladesh-factory-fire-caused-by-gross-negligence.html

[36] Julfikar Ali Manik and Jim Yardley, *Building Collapse in Bangladesh Leaves Scores Dead,* New York Times, April 24, 2013. http://nytimes.com/2013/04/25/world/asia/bangladesh-building-collapse.html

[37] Pub. L. No. 104-113, March 7, 1996. http://www.gpo.gov/fdsys/pkg/PLAW-104publ113/pdf/PLAW-104publ113.pdf

[38] Office of Management and Budget, *Federal Participation in the Development and Use of Voluntary Consensus Standards and in Conformity Assessment Activities,* Circular No. A-119 Revised, February 10, 1998, http://www.whitehouse.gov/omb/circulars_a119

PRO-000023

similar policy operates at the state and municipal levels, where model codes developed by industry are incorporated into law.

In 2008, Public.Resource.Org began posting state-mandated public safety codes.[39] Although the model codes as developed by the SDOs had copyright restrictions, we based our actions on the ruling in the Veeck case, which stated:

> We emphasize that in continuing to write and publish model building codes, SBCCI is creating copyrightable works of authorship. When those codes are enacted into law, however, they become to that extent "the law" of the governmental entities and may be reproduced or distributed as "the law" of those jurisdictions.[40]

The Veeck court pointed to long-standing precedent, quoting Justice Harlan who said "any person desiring to publish the statutes of a state may use any copy of such statutes to be found in any printed book"[41] and stressing that "the building codes of Anna and Savoy, Texas can be expressed in only one way; they are facts. Veeck placed those facts on his website in

---

[39] Public.Resource.Org, Public Safety Codes Incorporated by Law, Last updated July 31, 2012.  https://law.resource.org/pub/us/code/safety.html

[40] Veeck v. Southern Building Code Congress International, Inc., 293 F. 3d 791 (5th Cir. 2002), ¶ 36.

[41] Quoting Howell v. Miller, 91 F. 129, 137 (6th Cir. 1898).

precisely the form in which they were adopted by the
municipalities."[42]

We received no objections to our actions in posting these
building and other public safety codes on our web site. In
addition to posting high-quality scans "in the form in which they
were adopted, " we invested considerable time and effort in
rekeying select codes, such as the 2010 cycle of California's
Title 24,[43] which includes the building, residential, electrical,
mechanical, plumbing, energy, historical building, fire,
existing building, and green building codes. Our work
transformed these provisions into valid HTML documents so
they worked across multiple browsers and on platforms such as
mobile devices and tablets.[44]

We went a step further, recoding the mathematical formulas
into the Mathematical Markup Language (MathML).[45] By coding
the formulas properly, they can easily be resized or copied into
a word processing program. Likewise, they become
significantly more accessible to those who rely on assistive
technologies, such as speaking text for those with visual

---

[42] Veeck at ¶ 35.

[43] Title 24, California Code of Regulations. https://law.resource.org/pub/us/
code/bsc.ca.gov/

[44] For a comparison of scanned images with the transformed versions see
Public.Resource.Org, 12 Tables of Code, Table 10, Table of Transformative
Use, January 7, 2013. https://law.resource.org/pub/table10.html

[45] World Wide Web Consortium, *Mathematical Markup Language (MathML)
Version 3.0,* October 21, 2010. http://www.w3.org/TR/MathML3/

Case 1:15-cv-02594-RWS    Document 58-3    Filed 05/22/17    Page 25 of 62

impairments. Making government documents more accessible
is a requirement for federal agencies and an important goal for
all governments.[46] In addition to the formulas, most of the
graphics in the 2010 Title 24 code cycle were carefully redrawn
into the industry-standard Scalable Vector Graphics (SVG)
format.[47] By recoding the graphics, they are significantly more
usable than the bitmap images in the original scans.

Before Public.Resource.Org began posting state-mandated
public safety codes, none of them were available on the
Internet. We received no takedown notices, and were very
pleased to see organizations such as the International Code
Council follow our lead and create online reading rooms for
citizens to read the codes on its site.[48] The mission of the ICC is
to create model codes that are incorporated into law. Making
the standards available have not hurt the ICC's bottom line in
the least. The nonprofit corporation has leveraged its position to
sell a number of lucrative services such as education,
certification, and sophisticated electronic value-added systems
such as CodesPlus, which includes not only the law but
commentary on why changes were made in codes.[49] This

---

[46] *See* Section 508 Amendment to the Rehabilitation Act of 1974, 29 U.S.C. §
749d.

[47] World Wide Web Consortium, *Scalable Vector Graphics (SVG) 1.1*, Second
Edition, August 16, 2011. http://www.w3.org/TR/SVG11/

[48] http://www.iccsafe.org/content/pages/freeresources.aspx

[49] http://shop.iccsafe.org/ecodes/codes-plus

PRO-000026

central position in creating legal codes has resulted in a $52.5 million revenue stream in 2011.[50]

In March, 2012, we expanded our work to include posting technical standards that are incorporated by reference into the Code of Federal Regulations (CFR). Incorporation by Reference (IBR) is the formal process by which an agency can make a model code or technical standard part and parcel of a regulation. Federal law specifies that the process include a series of determinations that the incorporation is in the public interest and requires the approval of the Director of the Office of the Federal Register. The rules state that two copies of the standard must be available for public inspection, one at the Office of the Federal Register reading room and a second at the facility of the agency requesting the incorporation.[51]

With the exception of copies in the two reading rooms in Washington, the standards have been unavailable to the public without paying substantial fees. Almost no university or public libraries in the United States have copies of these documents because the costs are prohibitive. When SDOs have offered copies of standards to read, with or without a fee, that access has come with significant limitations on use, and SDOs have jealously guarded against the right of anyone but themselves to

---

[50] International Code Council, *Return of Organization Exempt from Income Tax,* Form 990, 2011. https://archive.org/download/IRS990-2012_11_EO/36-3999004_990O_201112.pdf

[51] Incorporation by Reference is governed by 1 CFR 51 and 5 U.S.C. § 552(a).

communicate these provisions to others. That is, they have systematically sought to block others from speaking the law.

The lack of broader availability of these technical standards has been an issue of growing concern, particularly as access to electronic information has become a priority for successive Congresses and Presidents.[52] The Administrative Conference of the United States stated that "ensuring that regulated and other interested parties have reasonable access to incorporated materials is perhaps the greatest challenge agencies face when incorporating by reference."[53]

The Congress was so shocked by the high cost of crucial, legally-mandated safety documents during the BP Gulf Oil Spill that it amended the Pipeline Safety Act of 2011 with a provision that "the Secretary may not issue guidance or a regulation pursuant to this chapter that incorporates by reference any documents or portions thereof unless the documents or portions thereof are made available to the public, free of charge, on an

---

[52] *See, e.g.,* E-Government Act of 2002, 44 U.S.C. § 101 ("To promote use of the Internet and other information technologies to provide increased opportunities for citizen participation in Government.") and President Obama's *Open Government Directive,* M10-06, December 8, 2009 ("each agency shall take prompt steps to expand access to information by making it available online in open formats").

[53] Administrative Conference of the United States, *Incorporation by Reference,* Administrative Conference Recommendation 2011-5, December 8, 2011. http://www.acus.gov/sites/default/files/Recommendation-2011-5-Incorporation-by-Reference.pdf

PRO-000028

Internet Web site."[54] The Office of the Federal Register was so
concerned by the lack of availability of standards that it turned
an unsolicited petition by a Columbia University professor into
a call for input and a subsequent Notice of Proposed
Rulemaking.[55]

In March 2012, Public.Resource.Org began the process of
making available technical standards incorporated by
reference in the CFR. We started that effort by selecting 73
standards and sending print copies with a request for comment
from 10 leading Standards Development Organizations.[56]
Copies of this notice were also sent to seven key government
officials. No comments were received from any of the SDOs,
and in May 2012, we began the process of posting these
standards on our web site.[57] We have posted a total of 969
standards that are required by federal law.

It may be tempting to dismiss technical standards
incorporated by reference as being of only limited interest, so
it is perhaps important to remind ourselves of the crucially
important role these technical standards play in our daily lives:

---

[54] Pipeline Safety Act of 2011, Pub. L. No. 112-90, January 3, 2012, § 24.

[55] Office of the Federal Register, *Incorporation by Reference,* 78 FR 60784,
October 2, 2013.

[56] Public.Resource.Org, Notice of Incorporation, March 15, 2012. https://
law.resource.org/pub/us/cfr/notice.sdo.20120315_to.pdf

[57] https://law.resource.org/pub/us/cfr/manifest.us.html

- OSHA regulates the safety of our workplaces, and incorporates 262 technical regulations including safety codes for derricks, protective footware, industrial head protection, pressure piping, woodworking machinery, sound level meters, exhaust systems, and respiratory protection.[58]
- The Pipeline and Hazardous Materials Safety Administration incorporates 209 technical regulations including safety codes for the transport of uranium, welding pipelines, storage of liquified natural gas, the transport of hazardous materials by rail, and the International Maritime Dangerous Goods Code.[59]
- The National Highway Traffic Safety Administration incorporates 277 technical regulations governing the testing of automobile safety including standards for brakes, tires, lights, warning devices, and crash test dummies.[60]
- The U.S. Coast Guard incorporates 581 technical regulations including maritime safety codes for fire extinguishers, flotation devices, fuel tanks, cables, electrical installations, and explosive gas atmospheres.[61]
- The Department of Energy incorporates 184 technical regulations including energy efficiency standards for

---

[58] 29 CFR 1910 *et. seq.*

[59] 49 CFR 172 *et. seq.*

[60] 49 CFR 571 *et. seq.*

[61] 46 CFR 111 *et. seq.*

buildings and safety codes for central furnaces, boilers, lamps, air conditioners, dryers, freezers, and dishwashers.[62]

The issue is not whether or not you think there are too many regulations or not enough. The issue is whether people should know what the law is. As Joe Bhatia, the CEO of the nonprofit American National Standards Institute so clearly said:

> A standard that has been incorporated by reference does have the force of law, and it should be available.[63]

Letting people read the law is a threshold question. Only after the citizenry is informed, can we have the discussion as to what kind of regulations we should have.

Our efforts to make technical standards incorporated by law into the Code of Federal Regulations available to citizens in new and more convenient forms at first received no opposition from the Standards Development Organizations. We received a few random takedown notices. For example, an outside law firm wrote to us on behalf of the American Petroleum Institute on

---

[62] 10 CFR 430 *et. seq.*

[63] Joe Bhatia, *ANSI's New IBR Portal Provides Access to Standards Incorporated by Reference,* Administrative Conference of the United States Blog, November 4, 2013. http://www.acus.gov/newsroom/administrative-fix-blog/ansi%E2%80%99s-new-ibr-portal-provides-access-standards-incorporated

November 2, 2012 demanding removal of 24 documents.[64] We
sent them our standard response explaining that the documents
had been incorporated into federal law and politely declined to
remove the documents.[65] We have not heard from them since.

Only one organization, the Sheet Metal and Air Conditioning
Contractors National Association (SMACNA), persisted in
objecting to our action, in this case over the posting of the
HVAC Air Duct Leakage Test Manual, a 1985 document
mandated by the Department of Energy.[66] This was a
particularly egregious objection, because the standard at issue
was no longer even the operative SMACNA standard; its only
remaining function was as law. SMACNA no longer even sold
the standard or otherwise made it available. Yet SMACNA
insisted that Public.Resource.Org take the standard down
anyway.

After SMACNA persisted in its objections,
Public.Resource.Org filed for Declaratory Relief in the U.S.

---

[64] Email from B. Brett Heavner on behalf of the American Petroleum Institute
to the Internet Archive, November 2, 2012. https://law.resource.org/rfcs/
api.20121102.pdf

[65] Email from Carl Malamud, Public.Resource.Org, to B. Brett Heavner via
the Internet Archive, November 3,2012. https://law.resource.org/rfcs/api.
20121103.pdf

[66] Email from Eraj Siddiqui on behalf of SMACNA to Carl Malamud,
Public.Resource.Org, January 10, 2013. https://law.resource.org//rfcs/
smaccna.20130110.from.pdf *See* SMACNA, HVAC Air Duct Leakage Test
Manual (RS-35) (1985) as required by 10 CFR 434.403.2.9.3. https://
law.resource.org/pub/us/cfr/ibr/005/smacna.hvac.1985.pdf

Case 1:15-cv-02594-RWS   Document 58-3   Filed 05/22/17   Page 32 of 62

District Court for the Northern District of California.[67] Before the matter reached the presiding judge, the SMACNA offered to withdraw its copyright assertion and stipulated that it had no objection to our posting of the standard in dispute or the other three standards they had authored that had been incorporated into federal law.[68] We accepted that agreement, which firmly vindicated our rights to post standards incorporated into law.

Because our efforts to publish the law serves an important unmet public need and is firmly grounded in the public policies of the United States, we were surprised to be subsequently served papers to appear in the U.S. District Court for the District of Columbia by three prominent Standards Development Organizations.[69] The suit was filed by the American Society for Testing and Materials (ASTM) for posting federally mandated testing standards, the National Fire Protection Association (NFPA) for posting the National Electrical Code and other fire safety standards, and the American Society of Heating, Refrigerating, and Air-Conditioning Engineers (ASHRAE) for posting DOE-mandated energy standards.

---

[67] Public.Resource.Org v. Sheet Metal and Air Conditioning Contractors' National Association, Inc., 3:13-cv-00815, March 22, 2013, https://archive.org/details/gov.uscourts.cand.263568/

[68] Stipulated Judgement, Public.Resource.Org v. SMACNA, July 9, 2013. https://archive.org/download/gov.uscourts.cand.263568/gov.uscourts.cand.263568.39.0.pdf

[69] American Society for Testing and Materials et. al. v. Public.Resource.Org, Inc., 1:13-cv-01215, August 8, 2013. https://archive.org/details/gov.uscourts.dcd.161410/

Case 1:15-cv-02594-RWS   Document 58-3   Filed 05/22/17   Page 33 of 62

The lead spokesman on this suit is Mr. Jim Shannon, the President of NFPA, who issued a statement accusing us of "massive copyright infringement."[70] In a blog post, Mr. Shannon said that our posting of documents such as the National Electrical Code "threatens our future, our ability to continue our work, and the whole system of standards development that the public and governmental agencies rely on."[71]

Let me be very clear. I am a big fan of the work that NFPA does as an organization and a huge admirer of Mr. Shannon and his leadership of the NFPA. Mr. Shannon has personally led the fight to make fire sprinklers more widespread in homes[72] and to mandate fire-safe cigarettes in state law.[73] He has made our country a safer place.

The National Electrical Code is a very good piece of work, one of the better standards I've come across in over 30 years of

---

[70] National Fire Protection Association, *Media Statement Regarding Lawsuit Against Public.Resource.Org,* August 6, 2013. http://www.nfpa.org/press-room/news-releases/2013/media-statement

[71] NFPA Insider, *NFPA President Jim Shannon Talks About Copyright Lawsuit,* October 8, 2013. http://nfpatoday.blog.nfpa.org/2013/10/nfpa-president-jim-shannon-talks-about-copyright-lawsuit.html

[72] NFPA, *Fire Sprinkler Initiative: Bringing Safety Home*, http://www.firesprinklerinitiative.org/

[73] NFPA, *Coalition for Fire-Safe Cigarettes,* http://www.firesafecigarettes.org/

PRO-000034

working with technical standards.[74] The NFPA has made an invaluable contribution to our nation's public safety. However, I vehemently disagree with its characterization of our efforts to make the laws of the United States available to the people of the United States.

## 4. Why Code Developers Demand a License Before You Can Read the Law

The objection advanced by the Standards Development Organizations to citizens posting codes mandated by law without their permission is two-fold. First, they argue that they need the money. As Mr. Shannon says:

> The development of quality standards requires substantial resources. The NFPA coordinates thousands of volunteers and provides them with meeting space, logistical and administrative support, as well as access to technical staff assistance, research, and analysis. In addition to the staffing and other costs of assembling, editing and preparing the standards for publication, NFPA staff must process, organize, and publish the thousands of technical comments submitted by interested members of the public throughout the code or standard revision cycle. Particularly for non-profit,

---

[74] *See, e.g.,* Eight professional reference books that make heavy use of standards. https://www.google.com/search?q="Carl +Malamud"&btnG=Search+Books *See also* Seven Internet RFCs. http://www.rfc-editor.org/search/rfc_search_detail.php?author=malamud

mission driven organizations like the NFPA, the revenue
derived from the sale of NFPA codes and standards
allows the organization to provide these services while
maintaining its independence, free from reliance on
funds from either industry or government.[75]

The second objection is that only a few people really need
to read these documents and they are highly technical. In other
words, making the documents available for free serves no
public purpose and simply allows those that do need the
documents to get a free ride.

Let me dispose of the second argument, and then deal with
the more serious objections posed in the first.

When I put the SEC's EDGAR database on the Internet,[76] the
objection of the SEC was that the agency needed the money
from selling public reports of public corporations and that
giving these documents away served no useful purpose as the
general public had no interest in these documents. The SEC
was wrong, people flocked to those reports, and I donated my

---

[75] Statement of Jim Shannon on behalf of the National Fire Protection
Association, June 1, 2012 submitted to the Office of the Federal Register,
Request for Comments, Federal Register, Vol. 77, No. 38, February 27, 2012,
NARA 12-0002. https://law.resource.org/pub/us/cfr/regulations.gov.docket.
01/0900006481025751.pdf

[76] John Markoff, *Plan Opens More Data to Public,* N.Y. Times, October 22,
1993. http://www.nytimes.com/1993/10/22/business/plan-opens-more-
data-to-public.html

PRO-000036

software and computers to the SEC so they could take over the service we built.

When I put the U.S. Patent database on the Internet,[77] Commissioner Bruce Lehman objected vigorously to my efforts, claiming that we would be depriving the Patent and Trademark Office of revenue from the sale of patent texts on a pay-per-view basis and that people on the Internet would have no interest in these highly technical documents. Commissioner Lehman was wrong and that database has been wildly popular.

Ignorance of the law is no excuse, and Americans are smart. Any homeowner should be able to easily and quickly check the National Electrical Code to verify their contractor did the right thing. Any parent should be able to check the safety specifications for the safety of toys, the safety of baby pacifiers, or the safety of strollers if they worry the item they bought might not be safe. Any journalist or member of Congress investigating the BP Oil spill ought to be able to read the federally-mandated pipeline safety standards without forking over $1,000 first. Any factory worker ought to be able to check the federal mandates for ventilation or the safety of machinery if they are worried about their personal safety.

---

[77] John Markoff, *U.S. Is Urged to Offer More Data On Line,* N.Y. Times, May 4, 1998. http://www.nytimes.com/1998/05/04/business/us-is-urged-to-offer-more-data-on-line.html

Case 1:15-cv-02594-RWS   Document 58-3   Filed 05/22/17   Page 37 of 62

It is clear that everybody should be able to read the law. It is also clear that anybody should be able to communicate, to transmit, to speak the law. Imagine the outrage if, for example, the Environmental Protection Agency promulgated a new regulation but insisted that nobody could make copies of that regulation without a license or that scholars or journalists were prohibited from quoting that regulation at length. Standards incorporated by reference have the force of law and are no different than text authored directly by the government.

The argument that Mr. Shannon of NFPA and Mr. Bhatia of ANSI make is that technical standards incorporated by law are different because they need the money. That argument is a red herring. They need money, but they have lots of money already. The NFPA, for example, reported 2011 revenue of $80.7 million in 2011 and paid its non-profit CEO $1,044,035.[78] ANSI reported 2012 revenue of $36.5 million and paid its non-profit CEO $1,036,926 for 35 hours of work a week.[79] Indeed, when I surveyed the compensation for 10 leading Standards Development Organizations, all of them nonprofits, every one of their CEOs made more than the President of the United

---

[78] National Fire Protection Association, *Report of Organization Exempt From Income Tax,* Form 990, 2011. https://archive.org/download/ IRS990-2012_10_EO/04-1653090_990_201112.pdf

[79] American National Standards Association, *Report of Organization Exempt From Income Tax,* Form 990, 2012. https://archive.org/download/ IRS990-2013_07_EO/13-1635253_990_201212.pdf

States.[80] The SDOs may need to adjust their business models to meet the realities of the Internet, but have not all organizations, including this House of Representatives, had to adjust their practices?[81]

When a document such as the National Electrical Code is incorporated by law in all 50 states and required by the federal government, the NFPA has received an invaluable endorsement, the Gold Seal of Approval of the United States of America. The NFPA can, and does, sell all sorts of value-added products such as training, certification, membership, handbooks, and annotated codes.

Incorporation into law is not an accidental taking of their work, it is the very purpose of their enterprise. The NFPA wants its standards to be required in all 50 states and hires full-time staff who do nothing but help convince states to require its codes.[82] NFPA lobbies vigorously for adoption of its codes, and when they are successful, they trumpet the news in press

---

[80] Public.Resource.Org, 12 Tables of Code, Table 3, Table of Revenue and Renumeration, January 7, 2013. https://law.resource.org/pub/table03.html

[81] Letter from Speaker John Boehner and Chairman Darrell Issa to Carl Malamud, January 5, 2011. https://law.resource.org/rfcs/gov.house.20110105.pdf

[82] National Fire Protection Association, *Website Provides Resources for National Electrical Code Adoption,* June 11, 2013. http://www.nfpa.org/press-room/news-releases/2013/electrical-code-coalition-launches-website

PRO-000039

releases.[83] The NFPA is an active participant in coalitions such as Build Strong American which are urging governments to incorporate more of their codes into law and to always incorporate the latest revisions.[84]

Just as the International Code Council began posting model building codes in response to our efforts at the state level, the American National Standards Institute has recently announced its new "IBR portal." ANSI maintains that this should be the exclusive method for free access to standards and that any attempts to copy or distribute standards is subject to stringent license requirements.[85] The "legal reading room" requires all users to pre-register before accessing standards and to agree to strong terms of use. Users are required to install special Digital Rights Management (DRM) software on their computer, software that only runs on selected operating systems and does not support mobile or other platforms. Once a user has registered—and they are required to re-register on each day they wish to access standards—they are able to read the

---

[83] *See, e.g.,* NFPA, *NFPA 101 Life Safety Code now required by Dept of Vet Affairs in state homes nationwide,* March 29, 2011. http://www.nfpa.org/press-room/news-releases/2011/latest-from-nfpa-101-life-safety-code-now-required-by-dept-of-vet-affairs-in-state-homes-nationwide

[84] BuildStrong Coalition, Making America Stronger. http://www.buildstrongamerica.com/

[85] ANSI, *ANSI Launches Online Portal for Standards Incorporated by Reference,* October 28, 2013. http://www.ansi.org/news_publications/news_story.aspx?menuid=7&articleid=3771

documents, but cannot print, save, search, copy, or even take a screenshot.

ANSI joins other organizations, including NFPA, ASTM, ASHRAE, Underwriters Laboratories, and the American Petroleum Institute, who have all recently added their own read-only reading rooms. Because most agencies incorporate standards from numerous sources, if one wants to read the law pertaining for example to an area such as hazardous material transport, one can only do so by registering on a half-dozen incompatible sites, each with their own technical requirements and unique restrictions on use.

Reading the law is one thing, but speaking the law is equally important. Activities that our organization undertakes—such as putting all the standards required by law in one location with common access methods or rekeying the texts in order to make them searchable and available on new platforms—are purportedly prohibited under this scheme.

Even more insidious under this scheme advanced by ANSI, your use of the law is carefully monitored. In a briefing to the International Electrotechnical Commission, for example, ANSI agreed to provide regular reports on usage of documents.[86] NFPA's reading room, as a condition for reading the law,

---

[86] United States National Committee of the IEC, *Meeting Minutes,* USNC Council 576, August 13, 2013. http://publicaa.ansi.org/sites/apdl/ Documents/Standards%20Activities/International%20Standardization/IEC/ USNC%20COUNCIL/USNC%20COUNCIL%20576%20Minutes.pdf

PRO-000041

requires that you agree to promotional messages and
campaigns to up-sell you on other goods and services.

One of the arguments made by the Standards Development
Organizations is that if they do not retain a monopoly on the
right to license particular codes, the only alternative would be
for the government to purchase rights and that this would be
extremely expensive. For example, the American Society of
Heating, Refrigerating and Air-Conditioning Engineers has
stated in a submission to the Office of the Federal Register that:

> ASHRAE recommends that agencies should bear the cost
> of making IBR standards available for free online in read-
> only (non-downloadable) format, and should compensate
> standards development organizations (SDOs)
> accordingly for providing free-to-the-public online
> access to their referenced standards. This is consistent
> with the National Science and Technology Council's
> recommendation that federal agencies should consider
> providing monetary compensation to SDOs for the
> provision of their standards to all interested parties.[87]

Again, let us not forget that the goal of ASHRAE and their
fellow Standards Development Organizations is precisely that
their work become law. They lobby aggressively for that

---

[87] Statement of ASHRAE, March 30, 2012, submitted to the Office of the
Federal Register, Request for Comments, Federal Register, Vol. 77, No. 38,
February 27, 2012, NARA 12-0002. https://law.resource.org/pub/us/cfr/
regulations.gov.docket.01/0900006480fe4f55.pdf

outcome and sell a number of products based on their position as one of the developers of energy codes required by law in our country. And, let us not forget that the government does spend considerable amounts of money on supporting this process.

In the case of ASHRAE, for example, over 100 U.S. government officials from organizations that include the Army, Air Force, Centers for Disease Control, numerous national laboratories, Department of Energy, Department of Housing and Urban Development, General Services Administration and even the National Gallery of Art play an integral part in the standards development process.[88] The government even pays a $74,872 salary for an ASHRAE member to spend a year at DOE headquarters as an "ASHRAE DOE Fellow."[89] Not only does ASHRAE lobby governments to incorporate its codes as law, they are greatly assisted in that effort by the National Institute of Standards and Technology, which recently published a study

---

[88] Based on an analysis of published ASHRAE technical committee rosters on December 15, 2013. Note that not all technical committees publish their rosters and not all that do publish affiliations of their members. http://www.ashraetcs.org/

[89] ASHRAE DOE Washington Fellowship, last viewed 12/1/2013. https://www.ashrae.org/government-affairs/ashrae-doe-washington-fellowship

*Edicts of Government*

urging all states to upgrade their laws to require the latest version[90] of ASHRAE 90.1, the Energy Standard for Buildings.[91]

In addition to the costs of thousands of government employees participating in the standards development process, there are huge direct costs incurred by the government in purchasing copies of standards they must enforce. USASpending.Gov shows $7,659,842 in federal funds going to the National Fire Protection Association,[92] $88,706,506 in spending with the American Society for Testing and Materials,[93] and $36,474,899 in spending with the American National Standards Institute.[94] These are just federal costs. Every state, county, and municipal inspector and planning official spend considerable amounts purchasing codes from the SDOs. In Sonoma County, California, for example, the Chief Building Inspector has reported that he must spend $30,000 every code

---

[90] Joshua Kneifel, Benefits and Costs of Energy Standard Adoption in New Commercial Buildings, NIST Special Publication 1147, February 2013. http://nvlpubs.nist.gov/nistpubs/SpecialPublications/NIST.SP.1147.pdf

[91] ANSI/ASHRAE/IES Standard 90.1-2010, Energy Standard for Buildings Except Low-Rise Residential Buildings as incorporated by law in 34 Tex. Admin. Code Tit 34, Part 1, Chapter 19, Rule 19.32. https://law.resource.org/pub/us/code/ibr/ashrae.90.1.ip.2010.pdf

[92] http://usaspending.gov/explore?recipientid=001963206&recipientname=NFPA&fiscal_year=all

[93] http://usaspending.gov/explore?contractorid=557163081&contractorname=ASTM&fiscal_year=all

[94] http://usaspending.gov/explore?contractorid=073294837&contractorname=ANSI&fiscal_year=all

cycle on codes and because of the high cost, he is unable to give his inspectors sufficient copies to do their jobs properly.[95]

There is a tremendous amount of money in the standards development process, and those that have chosen to participate in that process have an explicit goal of making their work into law, a position they exploit with generous salaries and very large revenue streams. Making the law available to the public must be permitted as part of the bargain they have made with the American people to retain this privileged position. Having the law be available to the public is not a burden, it is a fundamental underpinning of the rule of law in our society.

## 5. Amending the Copyright Act

The idea that state statutes or their codification somehow fall outside of long-standing policy that the law must be available is a mistake a few states have made. The idea that the American National Standards Institute can require a license for people to read the law and prohibit anybody from speaking the law is a mistake.

Under the ANSI view of the world, the ruling in Wheaton v. Peters would have been reversed. In their scheme, Peters would have been prohibited from publishing the newer, cheaper version of the Supreme Court Reports because

---

[95] Interview with Head Building Inspector Shems Peterson in Show Me the Manual, available on YouTube at https://www.youtube.com/watch?v=2tOJdGaMvVw

Wheaton needed the money to sustain his lifestyle. There is no dispute that Wheaton worked hard and produced a good product. There is no argument that Wheaton would have liked the money. The Supreme Court rejected Wheaton's claim and held that the law belongs to the people.[96]

One result of Wheaton v. Peters was the creation of the National Reporter System, that magnificent edifice of American jurisprudence and the product that created the West Publishing Corporation, a distinguished provider of legal services to the bar for over 100 years.[97] The National Reporter System only exists because the courts were wise enough to insist that no individual or corporation would be given a monopoly on publishing the law. If there is a monopoly over the right to promulgate the Code of Federal Regulations, innovation will suffer along with democracy.

While our common law is very clear that edicts of government have no copyright, federal and state statutes have arisen that are sometimes ambiguous or conflicting. In Delaware, for example, we risk three months imprisonment for

---

[96] Craig Joyce, *'A Curious Chapter in the History of Judicature': Wheaton v. Peters and the Rest of the Story (of Copyright in the New Republic),* Houston Law Review, Vol. 42, 2005, p. 325. http://papers.ssrn.com/sol3/papers.cfm?abstract_id=801226

[97] Ross E. Davies, *West's Words, Ho! Law Books By the Million, Plus A Few,* Green Bag, Vol. 14, p.303. http://www.greenbag.org/v14n3/v14n3_from_the_bag_davies_sm.pdf

publication of the Delaware Code.[98] The State of Mississippi
maintains that upon unauthorized publication of the Mississippi
Code of 1972 "the person or entity shall be subject to a civil
penalty of not less than One Thousand Dollars ($ 1,000.00) for
each violation, and each day upon which a violation occurs shall
be deemed a separate and additional violation."[99] Before even
being allowed to read that provision of the Mississippi Code on
the only public web site authorized by the state, the reader
must agree to terms of use that say "you may not copy, modify,
reproduce, republish, distribute, display, or transmit for
commercial, non-profit or public purposes."[100]

This conflict also extends to the federal level. When the
Office of the Federal Register accepted a public petition to
increase availability of standards incorporated by reference,
they ultimately responded that "we agree with the petitioners

---

[98] 8 Del. C. 1953, § 397. ("Penalty for unauthorized publication of chapter.
Whoever prints or publishes this chapter…shall be fined not more than $500
or imprisoned not more than 3 months, or both.") http://
delcode.delaware.gov/title8/c001/sc18/index.shtml#397

[99] Miss. Code Ann., §1-1-9(3)(a). ("Copyright; use of code material.") If
Mississippi were successful in establishing jurisdiction in state courts and
were to invoke the minimum penalty, we face potential damages of
$17,010,000 for posting 81 volumes for 210 days in 2013. Alternatively,
Mississippi filed registrations at the U.S. Copyright Office in apparent
violation of Copyright Office policies and in an apparent attempt to qualify
for statutory damages of $150,000 per work, which if a judge were to invoke
such damages in federal court, could be $12,150,000 for the 81 works. *See*
U.S. Copyright Registration TX0007617042, Mississippi Code of 1972 2012
Edition, November 1, 2012.

[100] Lexis Nexis, Terms & Conditions of Use, January 7, 2013. http://
www.lexisnexis.com/terms/

that our regulations need to be updated, however the petitioners proposed changes to our regulations that go beyond our statutory authority."[101] Likewise, the Administrative Conference of the United States, while giving a passing nod to the constitutional provisions of equal protection and due process noted that "there is some ambiguity in current law regarding the continuing scope of copyright protection for materials incorporated into regulations" and then declined to "attempt to resolve the questions of copyright law."[102]

The Administrative Conference of the United States, the Office of the Federal Register, the Office of Management and Budget, and the Department of Transportation have all wrestled with this issue, but their hands are tied by contradictory policies such as those advanced in OMB Circular A-119, which states "if a voluntary standard is used and published in an agency document, your agency must observe and protect the rights of the copyright holder and any other similar obligations."[103] To be very clear, this policy does not preclude an agency and a standards development organization

---

[101] Office of the Federal Register, *Incorporation by Reference,* Docket Number OFR-13-0001, RIN 3095-AB78, October 2, 2013, 78 FR 60784. http://www.regulations.gov/#!docketDetail;D=OFR-2013-0001

[102] Administrative Conference of the United States, *Incorporation by Reference, op. cit.*, pp. 2-3.

[103] Office of Management and Budget, Federal Participation in the Development and Use of Voluntary Consensus Standards and in Conformity Assessment Activities, Circular No. A-119 Revised, Question 6j, February 10, 1998, http://www.whitehouse.gov/omb/circulars_a119

voluntarily making a standard available as required by law and public policy, but the clause has been seized upon by those wishing to protect their current mode of operation.

It is ironic that the Incorporation by Reference mechanism has been used as a way of keeping the law under wraps. IBR became part of federal law as part of the landmark 1966 amendments to the Administrative Procedures Act (APA) in a bill entitled "Clarifying and Protecting the Right of the Public to Information."[104] The bill was based on the fact that while the original 1946 APA was based upon "the theory that administrative operations and procedures are public property which the general public, rather than a few specialists or lobbyists, is entitled to know" in reality, the APA had become an "excuse for withholding."[105]

Congressman Moss spent 11 years working tirelessly on these amendments, stating that "inherent in the right of free speech and of free press is the right to know."[106] Congressman Moss was joined in this bipartisan effort by Congressman Donald Rumsfeld, who stated that "it is our intent that the courts interpret this legislation broadly, as a disclosure statute and not

---

[104] H.R. Rep. No. 1497, 89th Congress, 2d Session (Government Printing Office: 1966), p. 1.

[105] H.R. Rep. No. 752, 79th Congress, 1st Session (Government Printing Office: 1946), p. 198.

[106] 38 Cong. Rec. 13008, 89th Congress, 2d Session, June 20, 1966.

PRO-000049

as an excuse to withhold information from the public."[107]
Congressman Rumsfeld was joined by Congressman Bob Dole,
who stated "in a democracy, the public must be well informed if
it is to intelligently exercise the franchise."[108] The legislation
passed the House unanimously by a vote of 307 to 0.

This legislation had as part and parcel of disclosure a right
to copy. The accompanying report stated "federal agency
records which are available for public inspection also must be
available for copying, since the right to inspect records is of
little value without the right to copy them for future
reference."[109] When the Office of the Federal Register
implemented these provisions, it stated copies of any materials
incorporated by reference must be "readily obtained with
maximum convenience to the user."[110]

A clear statement of these issues, and the overriding policy
consideration that the law must be available to an informed
citizenry, was published by the U.S. Copyright Office in its
official statement of policy:

> Edicts of government, such as judicial opinions,
> administrative rulings, legislative enactments, public

---

[107] *Ibid.* at 13020.

[108] *Ibid.* at 13021.

[109] H.R. Rep. No. 1497, *op. cit.*, p. 8.

[110] Office of the Federal Register, *Incorporation by Reference,* 37 Fed. Reg.
23614, November 4, 1972.

> ordinances, and similar official legal documents are not
> copyrightable for reasons of public policy. This applies
> to such works whether they are Federal, State, or local as
> well as to those of foreign governments.[111]

This clear and compelling statement reflects long-standing
Copyright Office policy that "material as the laws and
governmental rules and decisions must be freely available to
the public and made known as widely as possible; hence there
must be no restriction on the reproduction and dissemination of
such documents."[112]

As this Committee considers revisions to the Copyright Act,
there is one simple change that would make a world of
difference to the functioning of our system of government,
which is to specify, as the Copyright Office stated, that "edicts
of government…are not copyrightable for reasons of public
policy." This amendment to the copyright act was recently
endorsed in a petition signed by 115 of the leading law

---

[111] U.S. Copyright Office, *Edicts of Government,* Compendium of Office
Practices II, §206.01, 1984.

[112] U.S. Copyright Office, *Copyright in Government Publications,* Study No.
33, Prepared for the Committee on the Judiciary, United States Senate,
Government Printing Office, 1961.

librarians and law professors in the country, and is included as an appendix to this testimony.[113]

This simple change would make it clear that the law belongs to the people. If we give those without great means a substandard web site as their only access to the law, we have put a poll tax on access to justice.

When we require a license to speak the law, we have made a mockery of freedom of speech. When we deliberately restrict access to the law—including the public safety codes that protect our homes, families, and workplaces—we have violated the fundamental principle of the rule of law that underpins our democracy.

The Federal Register came about because regulations were being created but the public had no means of knowing what those regulations were.[114] In the 1936 hearings that led to the passage of the Federal Register Act, Congressman D.J. Driscoll reminded this Committee of the Emperor Caligula, "who tacked his edicts so high on the walls of the Forum that nobody

---

[113] The Petition for an Edicts of Government Amendment was circulated by Public.Resource.Org in collaboration with Pam Samuelson, Richard M. Sherman Distinguished Professor of Law, UC Berkeley Law School and Jonathan Zittrain, Professor of Law and Vice-Dean for Library and Information Resources, Harvard Law School. The petition was circulated May, 2013. https://law.resource.org/pub/edicts.html

[114] *See* United States v. Smith, 292 U.S. 633 (1934).  *See also* Panama Refining Company v. Ryan, 293 U.S. 388 (1935). https://law.resource.org/pub/us/case/reporter/US/293/293.US.388.135.260.html

could read them and then punished the people for violations of the edicts."[115]

Professor Erwin Griswold of Harvard Law School, at the prodding of Justice Brandeis, wrote the seminal paper that led to the passage of the act.[116] In his testimony,[117] he reminded this Committee of the words of Jeremy Bentham:

> We hear of tyrants, and those cruel ones; but whatever we may have felt, we have never heard of any truant in such thought cruel, as to punish men for disobedience of laws and orders which he has kept them from the knowledge of.[118]

In introducing the Senate version of the 1966 amendments to the Administrative Procedure Act, Senator Russell B. Long quoted the words of James Madison, who was chairman of the committee which drafted the First Amendment:

> Knowledge will forever govern ignorance, and a people who mean to be their own governors must arm

---

[115] Hearings Before Subcommittee No. II of the Committee on the Judiciary, House of Representatives, Serial 16, February 21, 1936, p. 23.

[116] Erwin Griswold, *Government in Ignorance of the Law—A Plea for Better Publication of Executive Legislation,* Harvard University Law Review, Vol. 48, December 1934, p. 204.

[117] Hearings Before Subcommittee No. II, *op. cit.,* p. 19.

[118] Jeremy Bentham, *Petition for Codification,* in The Works of Jeremy Bentham (W. Tait: 1839), p. 547.

themselves with the power knowledge gives. A popular government without popular information or the means of acquiring it, is but a prologue to a farce or a tragedy or perhaps both.[119]

That efforts to publish edicts of government in the United States have become the subject of threats, suits—and even the threat of jail—is a farce or a tragedy or perhaps both. Congress can make it clear that the law belongs to the people and we all have the right to read, know, and speak the law.

Thank you for the opportunity to appear before you today. I would welcome any questions you might have.

---

[119] Sen. Rep. No. 1219, 88th Congress, 2d Session, July 22, 1964, quoting Letter of James Madison to W.T. Barry, August 4, 1822.

PRO-000055

## Petition for an Edicts of Government Amendment

Note that signatories to this petition have only endorsed the text that follows and have not reviewed nor have they endorsed the testimony of Carl Malamud before the House Judiciary Committee. Please note also that affiliations are listed for identification only and do not imply institutional endorsement.

## Text of the Petition

To promote access to justice, equal protection, innovation in the legal marketplace, and to codify long-standing public policy, the Copyright Act of the United States, 17 U.S.C., should be amended as follows:

> Edicts of government, such as judicial opinions, administrative rulings, legislative enactments, public ordinances, and similar official legal documents are not copyrightable for reasons of public policy. This applies to such works whether they are Federal, State, or local as well as to those of foreign governments.

This language comes directly from Section 206.01, Compendium of Office Practices II, U.S. Copyright Office (1984). It reflects clear and established Supreme Court precedent on the matter in cases such as Wheaton v. Peters, 33 U.S. (8 Pet.) 591 (1834) and Banks v. Manchester, 128 U.S. 244 (1888). The law belongs to the people, who should be free to read, know, and speak the laws by which they choose to govern themselves.

*Appendix: Petition for an Edicts of Government Amendment*

## Signatories to the Petition

1. Jasmine C. Abdel-Khalik, Associate Professor, UMKC School of Law

2. Beth Adelman, Director of the Charles B. Sears Law Library, SUNY Buffalo

3. Julie Ahrens, Director of Copyright and Fair Use, Center for Internet and Society, Stanford Law School

4. John R. Allison, Spence Centennial Professor of Business and Professor of Intellectual Property, Univ. of Texas at Austin

5. Pat Aufderheide, University Professor, American University

6. Margo A. Bagley, Professor of Law, University of Virginia School of Law

7. Ann Bartow, Professor of Law, Pace Law School

8. Karen S. Beck, Manager, Historical and Special Collections, Harvard Law School Library

9. Yochai Benkler, Jack N. and Lillian R. Berkman Professor for Entrepreneurial Legal Studies, Harvard Law School

10. Melissa J. Bernstein, Library Director and Professor of Law, University of Utah

11. Robert C. Berring, Jr., Walter Perry Johnson Professor of Law, UC Berkeley Law School

12. Annemarie Bridy, Associate Professor, College of Law, University of Idaho

13. William J. Brutocao, Adjunct Professor of Intellectual Property Law, University of La Verne College of Law

14. Dan L. Burk, Chancellor's Professor of Law, University of California, Irvine

15. Michael A. Carrier, Professor of Law, Rutgers Law School

16. Michael W. Carroll, Professor of Law, American University, Washington College of Law

*Appendix: Petition for an Edicts of Government Amendment*

17. Brian W. Carver, Assistant Professor, University of California, Berkeley

18. Carol Chomsky, Professor of Law and Associate Dean for Academic Affairs, University of Minnesota Law School

19. Margaret Chon, Donald and Lynda Horowitz Professor for the Pursuit of Justice, Seattle University School of Law

20. Ralph D. Clifford, Professor of Law, University of Massachusetts School of Law

21. Julie E. Cohen, Professor of Law, Georgetown University Law Center

22. Kevin Emerson Collins, Professor of Law, Washington University School of Law

23. David G. Cowan, Vice President and Director of Library Services, South Texas College of Law

24. Susan Crawford, Professor of Law, Cardozo Law School

25. Catherine Crump, Staff Attorney, ACLU

26. Richard A. Danner, Rufty Research Professor of Law and Senior Associate Dean, Duke University School of Law

27. Estelle Derclaye, Professor of Intellectual Property Law, University of Nottingham

28. Pamela Edwards, Professor of Law and Director, Center for Diversity in the Legal Profession, CUNY

29. Michelle Vescio Evenson, Fellow, Center for Law and Intellectual Property, Thomas Jefferson School of Law

30. Thomas G. Field, Jr., Emeritus and Visiting Professor of Law, UNH School of Law

31. John Flym, Professor Emeritus, Northeastern Univ. School of Law

32. A. Michael Froomkin, Laurie Silvers and Mitchell Rubenstein Distinguished Professor of Law, Univ. of Miami School of Law

PRO-000058

*Appendix: Petition for an Edicts of Government Amendment*

33. Jon M. Garon, Professor of Law, Northern Kentucky University Chase College of Law

34. James Gibson, Professor of Law, University of Richmond

35. Eric Goldman, Professor, Santa Clara University School of Law

36. Jerry Goldman, Research Professor of Law, IIT Chicago-Kent College of Law

37. Ellen P. Goodman, Professor, Rutgers University School of Law

38. Jennifer Stisa Granick, Director of Civil Liberties, Stanford Center for Internet and Society

39. James Grimmelmann, Professor of Law, New York Law School

40. David Halperin, Of Counsel, Public.Resource.Org

41. William D. Henslee, Professor of Law, FAMU College of Law

42. Laura A. Heymann, Class of 2014 Professor of Law, College of William and Mary

43. Kenneth J. Hirsh, Director of the Law Library and I.T. and Professor of Practice, University of Cincinnati College of Law

44. Cynthia Ho, Professor of Law, Loyola University of Chicago School of Law

45. Dan Hunter, Professor of Law, New York Law School

46. Todd T. Ito, Reference Librarian and Lecturer in Law, University of Chicago Law School

47. Conrad A. Johnson, Clinical Professor of Law, Columbia University School of Law

48. Janis L. Johnston, Associate Professor of Law, University of Illinois

49. Faye E. Jones, Director and Professor, Legal Research Center, Florida State University

*Appendix: Petition for an Edicts of Government Amendment*

50.  Dennis S. Karjala, Jack E. Brown Professor of Law, Arizona State University

51.  Melinda Kent, Manager, Research Services, Harvard Law School Library

52.  Ian Kerr, Professor of Law, University of Ottawa

53.  Minjeong Kim, Associate Professor, Colorado State University

54.  Anne Klinefelter, Director of the Law Library, University of North Carolina

55.  Amy Landers, Distinguished Professor of Law, Pacific McGeorge School of Law

56.  Sarah Hooke Lee, Assistant Dean and Director, Information and Research Services, Northeastern School of Law Library

57.  Richard Leiter, Director and Professor, Schmid Law Library, University of Nebraska College of Law

58.  Mark A. Lemley, William H. Neukom Professor, Stanford Law School

59.  Lawrence Lessig, Roy L. Furman Professor of Law and Leadership, Harvard Law School

60.  Yvette Joy Liebesman, Assistant Professor of Law, Saint Louis University

61.  Joseph P. Liu, Professor of Law, Boston College Law School

62.  Lee Ann W. Lockridge, David Weston Robinson Professor of Law, Louisiana State University

63.  J. Paul Lomio, Library Director and Lecturer in Law, Stanford Law School

64.  Lydia Pallas Loren, Kay Kitagawa and Andy Johnson-Laird IP Faculty Scholar and Prof. of Law, Lewis & Clark Law School

65.  Brian J. Love, Assistant Professor, Santa Clara University School of Law

*Appendix: Petition for an Edicts of Government Amendment*

66. Carl Malamud, President and Founder, Public.Resource.Org

67. Susan Nevelow Mart, Associate Professor and Director of the Law Library, University of Colorado at Boulder

68. John Mayer, Executive Director, Center for Computer-Assisted Legal Instruction

69. Mark P. McKenna, Professor of Law , Notre Dame Law School

70. Hiram Meléndez-Juarbe, Associate Professor, University of Puerto Rico Law School

71. Michael J. Meurer, Professor of Law, Boston Univ. School of Law

72. Courtney Minick, Attorney, Justia.com

73. Deirdre K. Mulligan, Assistant Professor, UC Berkeley School of Information

74. Ira Steven Nathenson, Associate Professor of Law, St. Thomas University School of Law

75. Charles R. Nesson, Weld Professor of Law, Harvard Law School

76. Beth Noveck, Professor of Law, New York Law School

77. Tyler T. Ochoa, Professor of Law, Santa Clara University School of Law

78. Harlan Onsrud, Professor, University of Maine

79. Sean Pager, Associate Professor of Law, Michigan State University

80. Michelle Pearse, Senior Research Librarian, Harvard Law School Library

81. Richard J. Peltz-Steele, Professor of Law, University of Massachusetts Dartmouth

82. Aaron Perzanowski, Associate Professor of Law, Case Western Reserve University School

*Appendix: Petition for an Edicts of Government Amendment*

83.  Laura Quilter, Copyright Attorney and Information Policy Librarian, University of Massachusetts Amherst

84.  R. Anthony Reese, Chancellor's Professor, UC Irvine School of Law

85.  Blake Reid, Staff Attorney, Institute for Public Representation, Georgetown Law

86.  Michael Risch, Associate Professor of Law, Villanova University School of Law

87.  Matthew Sag, Professor, Loyola University Chicago School of Law

88.  Zahr Said, Assistant Professor of Law, University of Washington School of Law

89.  Pam Samuelson, Richard M. Sherman Distinguished Professor of Law, UC Berkeley Law School

90.  Sharon K. Sandeen, Professor of Law, Hamline University School of Law

91.  Joshua D. Sarnoff, Professor of Law, DePaul University College of Law

92.  Arundhati Satkalmi, Senior Research Librarian, St. John's University School of Law

93.  Roger E. Schechter, Professor of Law, George Washington University Law School

94.  Jason M. Schultz, Assistant Clinical Professor of Law, UC Berkeley School of Law

95.  Wendy Seltzer, Fellow, Berkman Center, Harvard University

96.  Jessica Silbey, Professor of Law, Suffolk University Law School

97.  Joshua M. Silverstein, Professor of Law, University of Arkansas at Little Rock

98.  David A. Simon, Fellow, Project on Law and Mind Sciences, Harvard Law School

*Appendix: Petition for an Edicts of Government Amendment*

99. Christopher Jon Sprigman, Class of 1963 Research Professor, University of Virginia School of Law

100. Tim Stanley, Attorney, Justia.Com

101. Katherine Strandburg, Professor of Law, New York University School of Law

102. Peter Suber, Professor, Earlham College

103. Barbara Gellis Traub, Head of Reference and Instructional Services, St. John's University School of Law

104. Samuel E. Trosow, Associate Professor, University of Western Ontario

105. Geertrui Van Overwalle, Professor of Law, University of Leuven

106. Eugene Volokh, Gary T. Schwartz Professor of Law, UCLA School of Law

107. Erika V. Wayne, Deputy Director and Lecturer in Law, Stanford Law School Library

108. Beth Williams, Director of the Library and Information Technology Services, Louisiana State University Law Center

109. Cicely Wilson, Librarian, Justia.com

110. Jane K. Winn, Charles I. Stone Professor, University of Washington School of Law

111. Suzanne Wones, Executive Director, Harvard Law School Library

112. Richard W. Wright, Distinguished Professor of Law, IIT Chicago-Kent College of Law

113. Alfred C. Yen, Professor of Law, Boston College Law School

114. Sue Zago, Director of Law Library, University of New Hampshire

115. Jonathan Zittrain, Professor of Law and Vice-Dean for Library and Information Resources, Harvard Law School